**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>G.M. CROCETTI, INC.,<br><br>        Debtor. | Bankruptcy Case No. 07-10319 (BRL) |
| G.M. CROCETTI, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>        Defendants. | **Adversary No. 08-01234 (BRL)**<br>**Civil Action No. 08-CV-** _____<br><br>**DECLARATION OF**<br>**ELI J. ROGERS, ESQ.**<br>**IN SUPPORT OF**<br>**MOTION FOR ORDER**<br>**WITHDRAWING THE**<br>**REFERENCE FOR ADVERSARY**<br>**PROCEEDING NO. 08-01234** |

     **ELI J. ROGERS, ESQ.**, of full age and under penalty of perjury, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.10, declares as follows:

     1.    I am associated with the law firm of Dreifuss Bonacci & Parker, LLP, attorneys for Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") in this matter, and as such am fully familiar with the facts set forth herein. I submit this Declaration in support of Travelers' and Trataros' motion pursuant to 28 U.S.C.A. § 157(d) for an Order withdrawing the District Court's referral of the adversary proceeding commenced by G.M. Crocetti, Inc. bearing Adversary No. 08-01234.

**The Parties**

     2.    Trataros was a New York corporation engaged in the construction industry, with its former principal place of business located at 664 64th Street, Brooklyn, New York.

3.      Travelers is a commercial surety incorporated in the State of Connecticut, with its principal place of business located at One Tower Square, Hartford, Connecticut.

4.      Upon information and belief, G.M. Crocetti, Inc. ("Crocetti") is a New York corporation with its principal place of business formerly located at 3960 Merritt Avenue, Bronx, New York 10466, and with a current address of P.O. Box 423, Hopewell Junction, New York 12533.

**Claims Pending Before the District Court**

5.      On August 1, 2007, Travelers commenced a civil action currently pending before the Honorable Denise L. Cote, U.S.D.J. in the United States District Court for the Southern District of New York, entitled <u>Travelers Casualty and Surety Company as Administrator for Reliance Insurance Company v. Dormitory Authority – State of New York, et al.</u>, Case No. 07-CV-6915 (the "2007 Action").  On that same day, Travelers filed its Complaint and Jury Demand (the "Complaint") in the 2007 Action, a true and correct copy of which is attached hereto as **Exhibit A**.

6.      Travelers' Complaint further alleges that Trataros was awarded two prime contracts by the Dormitory Authority - State of New York ("DASNY") in connection with a construction project known as Baruch College, Site B (the "Project"). (Exh. A, ¶¶ 9, 16-19.)

7.      Travelers' Complaint further alleges that Travelers is the administrator of certain surety bonds issued by Reliance Insurance Company to Trataros in connection with Trataros' prime contracts on the Project. (<u>Id.</u>, ¶¶ 20-22.)

8.      In subsequent pleadings filed in the 2007 Action, Travelers and Trataros allege that Crocetti entered into a subcontract with Trataros in connection with the Project. (<u>See</u>, Exh. E hereto, ¶¶ 38-41.)  In prior proceedings, Crocetti produced a number of documents to Travelers

and Trataros, including a copy of the subcontract agreement between Crocetti and Trataros (the "subcontract"). A true and correct copy of the Subcontract, in the form produced by Crocetti, is attached hereto as **Exhibit B**.

9.      In its Complaint in the 2007 Action, Travelers alleges a cause of action seeking pass-through delay, impact and/or inefficiency damages on behalf of certain subcontractors of Trataros. (Exh. A, ¶¶ 68-76.) As disclosed in Travelers' and Trataros' Rule 26 disclosures made in the 2007 Action, Crocetti is one of the subcontractors on whose behalf Travelers is prosecuting a pass-through claim against the Project's owner, DASNY, its construction manager for the Project, TDX Construction Corp. ("TDX"), and its architect for the Project, Kohn Pedersen Fox Associates, P.C. ("KPF").

10.     The pass-through claim on behalf of Crocetti which is being contested by DASNY, TDX and KPF in the 2007 Action, is the same claim which Crocetti asserts now in its Adversary Proceeding.

11.     Under the terms of its Subcontract, Crocetti agreed "to be bound to the same extent that Contractor [Trataros] is bound to Owner" in connection with "any dispute between Contractor and Subcontractor, due to any action of Owner or involving the Contract Documents." (Exh. B, ¶ 9.a, emphasis added.) The Subcontract further provides that Trataros has the option to submit Crocetti's claims to DASNY in Trataros' name, or to authorize Crocetti to pursue the claim in Trataros' name. (Id.)

12.     The same Subcontract clause provides that Crocetti's share of the recovery will be determined "in accordance with Article 7." (Id.) Article 7 of the Subcontract itself provides, in pertinent part, that **"[s]ubcontract adjustments shall be made only to the extent that Contractor receives relief from ... Owner."** (Id., ¶ 7.b, emphasis added.) Article 7 further

provides that "each Subcontract adjustment shall be equal in laid [sic – said] Subcontractor's allocable share of any adjustment in Contractor's contract with Owner, [which is] … determined by Contractor, <u>after allowance of Contractor's normal overhead, profit and other interest</u> in any recovery…." (<u>Id.</u>, emphasis added.)    Thus, under the Subcontract, Crocetti's claim is not due and owing until DASNY first pays the claim to Trataros (and/or its subrogee, Travelers).

13.    Consistent with the structure of the Subcontract, Travelers' Complaint in the 2007 Action attempts to pass-through the Crocetti claim, among others, to DASNY and its "project team," KPF and TDX.

14.    Travelers and Trataros further allege in the 2007 Action that part of the work subcontracted to Crocetti by Trataros included the installation of the Project's epoxy terrazzo. (Exh. E, ¶¶ 40-41).  (<u>And</u> <u>see</u>, Exh. B, p. 1 at ¶ 1.a, and, p. "16 of 25" at ¶ B, listing specification sections included as part of Crocetti's scope of work, including section "09420 Epoxy Terrazzo.")  Pleadings filed by DASNY and TDX in the 2007 Action contain similar allegations. (<u>See</u>, Exh. C, ¶ 30.)

15.    Travelers and Trataros further allege in the 2007 Action that Crocetti obtained subcontract surety bonds from Carolina Casualty Insurance Company ("Carolina"), in connection with the Subcontract. (Exh. E, ¶ 44.) Carolina has entered an answer, and is actively participating in the 2007 Action.  (<u>See</u>, Exh. F hereto.)

16.    On or about October 2, 2007, DASNY and TDX filed a Third-Party Complaint against Trataros in the 2007 Action.  A true and correct copy of the Third-Party Complaint filed by DASNY and TDX in the 2007 Action is attached hereto as **Exhibit C**.

17.    In their Third-Party Complaint, DASNY and/or TDX allege damages in excess of $20 Million associated with purported defects in the epoxy terrazzo flooring and other

miscellaneous construction defects. (Exh. C, ¶¶ 57-62.)  DASNY and/or TDX further allege that

the epoxy terrazzo work which is the subject of their claim was subcontracted by Trataros to

Crocetti (id., ¶ 30), and that "[t]he epoxy terrazzo that Trataros and Crocetti installed in the

Project is deteriorating and is otherwise defective." (Id., ¶ 31.)   DASNY and/or TDX further

allege that "[t]he failure of the epoxy terrazzo was caused by defective workmanship and

inappropriate materials provided by Trataros and its subcontractors and suppliers...." (Id., ¶ 32.)

18.    In light of DASNY's and TDX's affirmative claims in the 2007 Action, Travelers

and Trataros filed a Fourth-Party Complaint in the 2007 Action, on or about November 14, 2007.
[1] The Fourth-Party Complaint alleged, *inter alia*, indemnification/contribution claims against a

number of parties, including Crocetti's surety, Carolina. [2]  A true and correct copy of the Fourth-

Party Complaint in the 2007 Action is attached hereto as **Exhibit E**.

19.    At the time of this filing, there are no less than 16 parties to the 2007 Action

involved in the flooring claims, comprised of DASNY, TDX, KPF, Travelers, Trataros, and

eleven (11) fourth-party defendants, including Carolina, Bartec, Dayton, and a number of

insurance carriers.  In addition, Carolina continues to maintain cross-claims against Specialty

Construction Brands, t/a TEC.  Finally, recent deposition testimony appears to suggest that third-

---

[1]   Although not named a third-party defendant, DASNY and TDX alleged counter-claims against Travelers, including but not limited to a claim for damages resulting from Trataros' allegedly "delayed and defective work" on the Project.  (See, **Exhibit D**, a true and correct copy of the Answer of DASNY and TDX with Affirmative Defenses, Counterclaims, and Cross-Claims, at ¶ 149.)

DASNY and TDX further alleged as against Travelers that "Trataros further breached Contract No. 15 and/or Contract No. 16 by, *inter alia*, performing work that was defective, substandard and/or otherwise unacceptable, including but not limited to ... the defective installation of the Project's epoxy terrazzo flooring...." (Exh. D, ¶ 137.)

[2]   Crocetti was not named as a fourth-party defendant in the 2007 Action due to its pending petition for Chapter 11 bankruptcy protection.  Unbeknownst to Travelers and Trataros at the time, Crocetti filed for bankruptcy during the pendency of the mediation, despite its full participation therein.  Crocetti's bankruptcy filing also was undertaken without notice to DASNY, TDX, and fourth-party defendants Dayton Superior, Bartec, and Ohio Casualty, among others, despite the then-continuing nature of the mediation.  Indeed, Dayton Superior impleaded Crocetti as a Fifth-Party Defendant to the 2007 Action because even at the late date of its filing, it had not been notified as to Crocetti's status as a Chapter 11 debtor.  The Fifth-Party Complaint was subsequently dismissed before an answer was entered.

party defendant Weidlinger Associates Consulting Engineers ("Weidlinger"), one of KPF's subconsultants, may have some connection to the flooring claims.

20.     Upon information and belief, on or about December 14, 2007, Carolina filed its Answer to Fourth-Party Complaint in the 2007 Action (the "Carolina Answer".)  A true and correct copy of the Carolina Answer is attached hereto as **Exhibit F**.

21.     Significantly, in the Carolina Answer, fourth-party defendant Carolina alleged an affirmative defense of set-off against Travelers' and Trataros' fourth-party claims, alleging that "[a]ccording to Crocetti, the Fourth-Party Plaintiffs failed to pay amounts earned by Crocetti totaling not less than $901,091 -- for the unpaid balance of the subcontract price, for extra or additional work, and for damages caused to Crocetti." (Exh. F, Sixth Affirmative Defense, ¶ Seventeenth.)  Carolina asserted a right to set-off any such unpaid amount earned by Crocetti against an award against Crocetti or "Carolina as Crocetti's surety." (Id., ¶ Eighteenth.)

22.     Carolina also alleged counterclaims against Travelers and Trataros, asserting among other things that Carolina is entitled to receive all funds due and owing from Travelers and/or Trataros to Crocetti. (Id., ¶¶ Thirty-Ninth & Forty-Sixth.)  In its counterclaims, Carolina seeks to recover $901,091.65, an amount allegedly representing monies earned by, but unpaid to, Crocetti for its work on the Project. (Id., ¶¶ Thirty-Third to Thirty-Eighth, & Forty-Fifth.)

23.     To date, DASNY has refused to release to Travelers and/or Trataros any of the funds allegedly due owed to Crocetti in connection with its pass-through claim.  DASNY has maintained that no such monies are due and owing.

**Claims Pending Before the Bankruptcy Court**

24.     Upon information and belief, Crocetti filed a voluntary petition for Chapter 11 bankruptcy protection with the United States Bankruptcy Court for the Southern District of New

York on or about February 8, 2007. A true and correct copy of excerpted portions of Crocetti's

Chapter 11 petition (the "Petition") is attached hereto as **Exhibit G**.

25.     Upon information and belief, Crocetti subsequently filed Schedules A, B, D, E, F,

G, and H (the "Schedules") to its Petition on or about March 1, 2007.  True and correct copies of

the Schedules filed by Crocetti on or about March 1, 2007 are attached hereto as **Exhibit H**.

26.     Aside from a representation regarding Accounts Receivable moneys allegedly due

to Crocetti from Trataros for the Project (Exh. H, 12th page), the Schedules make no reference to

any claims alleged against Crocetti by DASNY, Travelers, Trataros, or Carolina.   Neither

DASNY, Travelers, Trataros, nor Carolina is identified as a creditor of the bankruptcy estate.

(See, Exh. H, 1st & 2nd pages, Schedule D, Schedule E, Schedule F, and Statement of Financial

Affairs.)

27.     Upon information and belief, on or about March 3, 2008, the Bankruptcy Court,

the Honorable Burton R. Lifland, U.S.B.J. presiding, entered an "Order Establishing Deadline

for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof," dated

March 3, 2008.  This Order set April 7, 2008, 5:00 p.m. as the deadline for filing Proofs of Claim

in Crocetti's bankruptcy proceeding.

28.     Upon information and belief, on or about March 28, 2008, Crocetti filed with the

Bankruptcy Court its Monthly Operating Report for November, 2007 (the "November 2007

Operating Report"), a true and correct copy of which is attached hereto as **Exhibit I**.

29.     In its November 2007 Operating Report, Crocetti represented that it was allegedly

owed $901,091.65 in Accounts Receivable by Trataros in connection with the Project.  (See,

Exh. I, 14th page "A/R Aging Summary.")  This representation was made, and the subsequent

Adversary Proceeding filed, despite Carolina's asserted rights of subrogation to Crocetti's

receivables, and Carolina's specifically-asserted entitlement to use the claimed $901,091.65 to offset any award against Carolina, and as an affirmative counterclaim against Travelers and Trataros. (Exh. F, pp. 6-12.)

30.     On April 7, 2008, the same date as the deadline for Proofs of Claim established by the Bankruptcy Court, Trataros filed a Proof of Claim in Crocetti's bankruptcy proceeding, asserting a contingent claim against Crocetti arising from DASNY's present allegations of damages in excess of $20,000,000 in connection with purported construction defects arising from the work of Crocetti and/or others on the Project. Trataros' Proof of Claim is partially secured by a right of set-off against the alleged $901,091.65 in accounts receivable allegedly owing from Trataros to Crocetti.

31.     Also on April 7, 2008, Travelers filed a Proof of Claim in Crocetti's bankruptcy proceeding, asserting a contingent claim against Crocetti arising from DASNY's present allegations of damages in excess of $20,000,000 in connection with purported construction defects arising from the work of Crocetti and/or others on the Project. Travelers' Proof of Claim is partially secured by a right of set-off against the alleged $901,091.65 in accounts receivable allegedly owing from Trataros to Crocetti

32.     On or about May 19, 2008, Crocetti commenced an adversary proceeding against Travelers and Trataros in the United States Bankruptcy Court for the Southern District of New York. A true and correct copy of Crocetti's adversary complaint against Travelers and Trataros is attached hereto as **Exhibit J**.

33.     Among the underlying facts alleged by Crocetti in its adversary complaint are the following excerpted allegations:

> a.     "[O]n or about August 27, 1998, Trataros … entered into a contract with the Dormitory Authority of the State of New

York ("DASNY") for certain construction work at Baruch College ... for Site B, Package No. 2 – General Construction Work, Contract No. 16...." (Exh. J, ¶ 11.) (<u>Cf.</u>, Exh. A, ¶¶ 9 & 19, Exh. F, ¶ Thirtieth.)

b.    "...Trataros ... entered into a subcontract agreement with Crocetti to perform certain base subcontract [sic] for **furnishing and installing ... epoxy terrazzo ... and related work** at ... the Project." (Exh. J, ¶ 12, emphasis added.) (<u>Cf.</u>, Exh. C, ¶ 30, Exh. E, ¶¶ 39-41, Exh. F, ¶ Thirty-First.)

c.    "...Crocetti performed all of its labor and furnished all of the materials it was required to perform and/or furnish in connection with the Project." (Exh. J, ¶ 16.) (<u>Cf.</u>, Exh. C, ¶¶ 27-28, 31-34.)

d.    "Crocetti complied with all of the terms and conditions of the subcontract by and between Trataros." (Exh. J, ¶ 17.) (<u>Cf.</u>, Exh. C, 31-32.)

34.    In its adversary complaint, Crocetti seeks judgment against Trataros and Travelers, jointly and severally, in the amount of $901,091.65 for Crocetti's work on the Project. (Exh. J, ¶¶ 21, 28-29.) By contrast, DASNY alleges in its Third-Party Complaint in the 2007 Action that "[t]he remediation of the [allegedly] defective epoxy terrazzo will ... cost an [alleged] estimated thirteen million dollars or more...." (Exh. C., ¶ 33.)

**Prior Proceedings**

35.    The claims at issue in the 2007 Action and Crocetti's Adversary Proceeding were the subject of prior proceedings commenced in 2004 before the Honorable Harold Baer, U.S.D.J.

36.    The proceedings before Judge Baer were captioned as <u>Travelers Casualty and Surety Company as Administrator for Reliance v. The Dormitory of the State of New York, et al.</u>, Civil Action No. 04-CV-5101 (the "2004 Action"). The 2004 Action was commenced on or about June 28, 2004, when Travelers filed its Complaint and Jury Demand (the "Initial

Complaint") with the United States District Court, Southern District of New York. The Initial Complaint named DASNY, TDX, and KPF as defendants.

37.     Subsequently, DASNY joined issue in the 2004 Action, and filed a Third-Party Complaint ("DASNY's Initial Third-Party Complaint") against Travelers and Trataros on or about August 4, 2004. A true and correct copy of DASNY's Initial Third-Party Complaint is attached hereto as **Exhibit K**.

38.     DASNY's Initial Third-Party Complaint alleged, *inter alia*, that the Project's epoxy terrazzo floors were defective, that the epoxy terrazzo work was part of Trataros' work under Contract No. 16, that Trataros had subcontracted the epoxy terrazzo work to Crocetti, and that Trataros and Crocetti had installed the Project's epoxy terrazzo floors. (Exh. K, ¶¶ 28-30.)

39.     In light of the claims alleged in DASNY's Initial Third-Party Complaint, Travelers and Trataros filed a Fourth-Party Complaint (subsequently amended) on or about December 1, 2004 (the "Initial Fourth-Party Complaint"), impleading Crocetti and Carolina, *inter alia*, on theories including indemnification and contribution. A true and correct copy of the Initial Fourth-Party Complaint is attached hereto as **Exhibit L**.

40.     On or about February 28, 2005, Crocetti and Carolina filed their Answer, Affirmative Defenses, Counterclaims and Cross-Claims to Fourth-Party Complaint (the "Crocetti Answer"). A true and correct copy of the Crocetti Answer is attached hereto as **Exhibit M**.

41.     Among other things, the Crocetti Answer alleged counter-claims against Travelers and Trataros, seeking judgment against them, jointly and severally, in the amount of $901,091.65. (Exh. M, ¶ 86.) As with Crocetti's adversary complaint, the counter-claims set forth in the Crocetti Answer arose from Crocetti's work on the Project, including its epoxy terrazzo work. (Id., ¶¶ 67, 71-76.) This is the same claim that Crocetti now alleges in its

Adversary Proceeding, and which Travelers is already prosecuting on Crocetti's behalf against DASNY, TDX and KPF in the 2007 Action.

42.    Subsequently, the parties to the 2004 Action undertook negotiations to dismiss that suit without prejudice, in order to pursue resolution of the claims alleged therein through mediation.  As part of these negotiations, the parties to the 2004 Action, including Crocetti, agreed to toll the statutes of limitation relating to the claims asserted in that action between the parties.

43.    Upon information and belief, on or about October 7, 2005, the Clerk of the Court entered a Stipulation of Dismissal Without Prejudice and marked the 2004 Action as closed.  A true and correct copy of the Stipulation of Dismissal Without Prejudice is attached hereto as **Exhibit N**.

44.    Nearly twenty-two months after the 2004 Action were voluntarily dismissed without prejudice, and consistent with the procedures established by the parties for re-filing the litigation, Travelers filed its Complaint on August 1, 2007.  (See, Exhibit A hereto.)

45.    During the mediation, and without notice to Travelers, Trataros or DASNY, Crocetti filed its petition for Chapter 11 bankruptcy protection with the United States Bankruptcy Court for the Southern District of New York. (See, Exh. G.)  Likewise, TDX, Bartec, Dayton Superior, and Ohio Casualty, among other parties to the mediation, were not notified of Crocetti's bankruptcy filing.

46.    Despite the filing of its voluntary petition, Crocetti continued to participate in the mediation proceedings until the conclusion of those proceedings.

47.     It was not until shortly after the filing of Travelers' Complaint in the 2007 Action that Travelers and Trataros were informed that Crocetti had filed for Chapter 11 bankruptcy protection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: Florham Park, New Jersey
       July 3, 2008

_____/S/_____
**Eli J. Rogers, Esq.**

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TRAVELERS CASUALTY AND SURETY
COMPANY as Administrator for RELIANCE
INSURANCE COMPANY,

<div align="center">Plaintiff,</div>

<div align="center">vs.</div>

DORMITORY AUTHORITY - STATE OF NEW
YORK, TDX CONSTRUCTION CORP.,
and KOHN PEDERSEN FOX ASSOCIATES, P.C.,

<div align="center">Defendants.</div>

Civil Action No.:

# 07 CV 6915

**COMPLAINT and**
**JURY DEMAND**

Plaintiff, Travelers Casualty and Surety Company as Administrator for Reliance Insurance Company (hereinafter "Plaintiff"), by and through its attorneys, Dreifuss Bonacci & Parker, LLP, as and for its Complaint and Jury Demand against the Defendants, Dormitory Authority - State of New York, TDX Construction Corp. and Kohn Pedersen Fox Associates, P.C., alleges as follows:

## JURISDICTION AND VENUE

1.     Travelers Casualty and Surety Company (hereinafter "Travelers") is incorporated in the State of Connecticut with its principal place of business located at One Tower Square, 4PB, Hartford, Connecticut.

2.     Reliance Insurance Company (hereinafter "Reliance") is incorporated in the Commonwealth of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania.

3.      Defendant, Dormitory Authority - State of New York (hereinafter "DASNY"), is a public benefit corporation of the State of New York, with a principal place of business located at 515 Broadway, Albany, New York.

4.      Defendant, TDX Construction Corp. (hereinafter "TDX"), is a New York corporation with its principal place of business located at 345 Seventh Avenue, New York, New York.

5.      Defendant, Kohn Pedersen Fox Associates, P.C. (hereinafter "KPF") is a professional corporation of the State of New York with its principal place of business located at 111 West 57th Street, New York, New York.

6.      The matter in controversy, exclusive of interest, costs and attorney's fees, exceeds $75,000.00.

7.      This Court has jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) as the defendants are believed to be located in this District and the matter in controversy took place in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

9.      This action arises from a public works construction project known as Baruch College, Site B, a/k/a the Baruch College Vertical Campus, a/k/a the Baruch Academic Complex, a/k/a the William & Anita Newman Vertical Campus (the "Project").

10.     The Project involved the design, site preparation, excavation, and construction of a 785,000 square foot mixed-use structure, with three below-grade levels and 14 above-grade stories, occupying approximately ¾ of the city block bounded between 24th and 25th Streets and Lexington and Third Avenues in Manhattan.

***The Parties***

11.    DASNY was the "owner" of the Project.

12.    Upon information and belief, DASNY's client(s) were the City University of New York and/or Baruch College.

13.    DASNY engaged Defendant KPF as the architect of record for the Project.

14.    DASNY engaged Defendant TDX as the construction manager for the Project.

15.    Upon information and belief, TDX served as the "Owner's representative" in connection with this Project, and was designated by DASNY, and operated in fact, as DASNY's authorized agent with respect to the Project.

16.    DASNY also entered into thirteen separate co-prime contracts in connection with the Project's construction work.  DASNY awarded two such co-prime contracts to Trataros Construction, Inc. ("Trataros") as the lowest responsible bidder.

17.    On or about April 22, 1998, DASNY entered into a certain prime contract with Trataros in the amount of $50,222,000.00, said contract being known as "Package No. 1 – General Construction Work, Contract No. 15 at Baruch College, Site B, DA# 6500 1802 2176" (hereinafter "Contract No. 15").

18.    As a prerequisite to being awarding the contract, Trataros was required to and did procure performance and payment bonds with a penal sum of $50,222,000.00 naming DASNY as the obligee and Trataros as the principal.

19.    On or about August 27, 1998, DASNY entered into a separate co-prime contract with Trataros in the amount of $24,140,000.00, said contract being known as "General Construction #2, - Contract #16 at Baruch College – Site B, DA # 6500 1802 2178, JDE# 61506" (hereinafter, "Contract No. 16").

3

20.    As a prerequisite to being awarded the contract, Trataros was required to and did procure performance and payment bonds with a penal sum of $24,140,000.00 naming DASNY as the obligee and Trataros as the principal.

21.    Trataros procured these bonds from Reliance, which at the time was engaged in the business of writing surety bonds at the request, and on behalf, of contractors conducting business in the State of New York. With respect to Contract No. 15 and Contract No. 16, Trataros obtained a separate and distinct set of performance and payment bonds from Reliance with respect to each contract.

22.    Travelers, which also engages in the business of writing surety bonds at the request of and on behalf of contractors conducting business in the State of New York, entered into an agreement with Reliance wherein Reliance granted Travelers a Power of Attorney to act as administrator for Reliance and as a reinsurer with respect to certain reinsured contracts and reinsured liabilities, including the contracts and liabilities relevant to this Complaint. Travelers is the real party in interest since it is the entity which has suffered, and/or in the future may suffer, the losses pursued in this matter.

23.    Trataros has assigned its affirmative claims and causes of action arising from the Project to Travelers.

24.    The impact claims of certain Trataros' subcontractors who allege that they have incurred damages resulting from, *inter alia*, extra work, inefficiencies, lost productivity, escalation costs, and individual and/or cumulative impacts caused by the actions, breaches and/or negligence of the Defendants in connection with the Project, have been liquidated in favor of Travelers and/or its subrogor Trataros, pursuant to the terms of their respective subcontracts with

4

Trataros and/or individual liquidating agreements entered into by and between Travelers and said subcontractors.

### *The Project*

25.    Architecturally, the Project incorporated a number of ambitious design elements, including interlocking atria in the interior spaces, multiple land uses within the building, a complex curvilinear façade, and a variety of façade materials including glass curtainwall, masonry, and aluminum paneling.

26.    The Project's construction work was split up among thirteen separate co-prime contracts. At various points in the Project's design phase, the number of anticipated co-prime contracts fluctuated, at one point numbering as many as seventeen (17) anticipated construction contracts.

27.    Several of the final co-prime contracts were eventually bid out by DASNY as omnibus packages, incorporating work initially designated for other co-prime contracts.

28.    In addition to the work initially intended for Contract No. 15, Contract No. 15 also incorporated the work for former Contract No. 5 (exterior paneling, windows and "curtainwall") and Contract No. 14 (elevator and escalator).

29.    Contract No. 16 incorporated not only the work originally anticipated to be performed under that contract, but also the work for Contracts Nos. 8 (swimming pool) and 17 (roofing systems).

30.    The contract documents, drawings, and technical specifications for the Project were prepared under a compressed design schedule, and the co-prime contracts were bid out on a "fast track" basis, such that certain bid packages were being bid upon and awarded (and construction being commenced under same) before the contracts for related work had been

completed by the architect.   Likewise, the Project's planned construction schedule was compressed, with very little margin for slippage in the completion dates.

31.     The compressed and/or accelerated design phase resulted in numerous design omissions and/or defects.  The plans, specifications, and/or drawings generated by KPF for the various co-prime contracts (the "design documents").

32.     In certain cases, the deficiencies in the design documents manifested themselves as discrepancies as between the several bid packages, such that two (or more) prime contractors performing related or dependent work would be required to rely upon conflicting criteria, such that the work of said co-prime contractors was not compatible.

33.     The numerous defects and/or omissions in the design documents resulted in significant impacts to the performance of the co-prime contracts, including Contracts Nos. 15 and 16.

34.     The Project's construction phase was further hampered by the failure of DASNY, TDX and/or KPF (the "Owner Team") to adequately coordinate, control, and/or manage construction.

35.     The Owner Team severely impacted the Project by providing insufficient supervision and inspection of the installed work, inadequate construction scheduling, and dilatory resolution of issues of design/engineering, *inter alia*.

36.     The conflicting pressures of public construction, ambitious architecture, compressed design and construction phases, fast-track bidding, thirteen co-prime contracts, together with the inadequate supervision and coordination provided by the Owner Team, KPF's flawed and defective work product (including design work performed during the construction phase and after award of Contracts Nos. 15 and 16), as well as the Owner Team's intransigent

uncooperativeness and lack of accountability, all combined to create significant impacts on the Project, which severely affected not only Trataros and its subcontractors/suppliers, but nearly every co-prime contractor on the Project.

37.    As the Project's owner, DASNY was the sole entity to enjoy privity of contract with each of the following, *inter alia*, the architect/engineer of record, KPF; the Project's construction manager, TDX; and each of the thirteen co-prime contractors.

38.    Upon information and belief, DASNY also entered into separate contracts with additional entities engaged to perform and/or provide, *inter alia*, asbestos abatement, demolition, furniture and equipment, telecommunications, and security systems for the Project.

39.    DASNY competitively bid the various co-prime contracts for construction of the Project. The Project's excavation and foundation work was bid out as "Contract No. 1", and was the first co-prime construction contract awarded for the Project. Upon information and belief, DASNY awarded Contract No. 1 on or about May 2, 1997, nearly a year before Contract No. 15 was awarded to Trataros, and more than fifteen months before Trataros was awarded Contract No. 16.

40.    Upon information and belief, although demolition and asbestos activities had preceded it under separate contract(s), construction activities began under Contract No. 1 on or about May 22, 1997.

41.    While the construction phase continued, the various co-prime contractors encountered numerous impacts, including significant problems associated with the structural steel prime contract ("Contract No. 2").

42.    One of the prime contracts (Contract No. 5) was placed out for competitive bidding, however, DASNY received no responsive bids and determined to incorporate the scope of work for this contract into Contract No. 15.

43.    Additional impacts to the Project arose from dilatory finalization, bidding, and award of the various co-prime contracts.

44.    The various co-prime contracts contained numerous omissions, defects, and inconsistencies in the contract documents, drawings, and specifications; these led to the issuance of numerous addenda, bulletins, notices of direction, change orders, and requests for information in order to attempt to resolve the design issues.

45.    The excessive amounts of changes, "clarifications", revisions, amendments, reversals, additions, and directives imposed upon the Project generally, and Contracts Nos. 15 and 16 specifically, caused significant cumulative impact upon Trataros, and/or its subcontractors/suppliers.

46.    All these problems (in addition to impacts associated with the factors outlined in Paragraphs 25-38 & 41-45 ) began affecting the Project even before Contracts Nos. 15 and 16 were awarded, yet Trataros was impacted by these problems insofar as much of the work under its separate co-prime contracts was dependent upon the timely and proper completion of the design work and predecessor construction activities.

47.    Even following the award of Trataros' two separate co-prime contracts, the Project continued to be hampered by the problems of mounting inefficiencies associated with the problems identified in Paragraphs 25-38 & 41-46.

48.    The Owner Team further exacerbated the impacts upon Trataros and/or its subcontractors/suppliers by providing inadequate coordination of the various co-prime

contractors, late and contradictory decision-making, failure to adequately inspect the work of other co-primes, failure to maintain accurate and adequate construction schedules, among other things.

## FIRST COUNT
### (Breach of Contract)

49.    Travelers repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

50.    Despite the aforesaid impacts discussed above, Trataros has completed both of its co-prime contracts with DASNY.

51.    For approximately five years, the Vertical Campus building has been fully occupied and utilized by Baruch College and is fully operational.

52.    Trataros was never defaulted by DASNY with respect to Contract No. 15, nor with respect to Contract No. 16.

53.    Despite this, Trataros has not been paid the entire contract balances and retainages due to it under either of its co-prime contracts. DASY currently owes Trataros approximately $4,000,000 in contract balances and retainage on Contracts No. 15 and 16, plus interest, costs, attorney's fees and expenses.

54.    Travelers, as administrator for the bonds issued by Reliance, is equitably subrogated to the rights of Trataros, which rights have also been assigned to Travelers by Trataros.

55.    Request has been made for payment from DASNY, but DASNY has failed to make said payment.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a.    Compensatory damages;

b.      Costs;

c.      Attorney's fees and expenses;

d.      Interest; and

e.      Such other relief as the Court deems just and proper.

## SECOND COUNT
### (Impact Claims of Trataros)

56.     Travelers repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

57.     Trataros provided formal notification to DASNY of its intent to submit a claim for additional costs incurred by Trataros and its subcontractors while completing the work on Contracts Nos. 15 and 16 via letters dated June 7, 2001, September 7, 2001 and October 22, 2001, *inter alia.*

58.     As a result of the various unforeseeable impacts discussed above, Trataros incurred significant costs and expenses, performed additional work outside its original scope(s) of work under Contracts Nos. 15 and 16, and was obstructed and/or interfered with in its respective performance of Contracts Nos. 15 and 16.

59.     Trataros was impacted by numerous differing site conditions; factors beyond the control of Trataros causing, *inter alia*, delays, lost productivity, inefficiencies, acceleration, cost escalation, and additional work; DASNY's failure to take appropriate action to prevent unreasonable impacts to the Project; DASNY's failure to provide adequate coordination of the Project; DASNY's failure to provide non-defective plans, drawings and specifications; DASNY's breach of the implied covenant of good faith and fair dealing implicit in Contracts Nos. 15 and 16; DASNY's gross negligence in administering the Project; DASNY's active

interference with Trataros' ability to perform Contracts Nos. 15 and 16; and/or DASNY's obstruction of Trataros' ability to perform Contracts Nos. 15 and 16, among other things.

60.     Travelers, in its capacity as surety for Trataros, is equitably subrogated to Trataros' impact claims as well as its rights to the contract funds held by DASNY. Trataros' rights in its impact claims, and/or its entitlement to the funds that should be paid pursuant to said claims, have been assigned to Travelers.

61.     The impacts discussed above, in part and/or cumulatively, were uncontemplated by Trataros at the time it bid on the Project.

62.     The impacts discussed above, in part and/or cumulatively, led to unreasonable and unforeseeable delays, said delays being attributable to breach(es) by DASNY and/or the Owner Team of fundamental contractual obligation(s).

63.     The impacts discussed above, in part and/or cumulatively, were caused by the gross negligence of DASNY and/or its representatives.

64.     The impacts discussed above, in part and/or cumulatively were so unreasonable and of such magnitude as to constitute an intentional abandonment of Contracts Nos. 15 and 16 by DASNY.

65.     DASNY has acknowledged responsibility for at least some of the impacts set forth above by offering to pay, and/or making payment to, some subcontractors of Trataros for the impact of such conditions.

66.     In addition, DASNY has paid certain change orders compensating Trataros and/or certain of Trataros' subcontractors/suppliers for costs/expenses arising from some of the aforesaid impacts and/or delays.

67.    Travelers is entitled to payment far in excess of $5,000,000 (together with interest, costs, attorney's fees, and expenses), as a result of the damages sustained by Trataros caused by the impacts attributable to DASNY and/or its representatives.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a.    Compensatory damages;

b.    Costs;

c.    Attorney's fees and expenses;

d.    Interest;

e.    Costs; and

f.    Such other relief as the Court deems just and proper.

<div align="center">

**THIRD COUNT**
**(Pass Through Claims)**

</div>

68.    Plaintiff, Travelers, repeats and realleges each and every allegation contained in the above paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

69.    Trataros also advised the owner that its subcontractors/suppliers had submitted impact claims and/or were in the process of preparing such claims for which DASNY would be liable, totaling in excess of $20,000,000.00. DASNY was provided with notice of said claims in and around 2002.

70.    DASNY, being aware of its ultimate liability, made partial payments to several of Trataros' subcontractors/suppliers and/or entered into settlements with said subcontractors/suppliers in connection with the aforesaid pass-through impact claims. In addition, DASNY agreed to pay certain of the pass-through impact claims but failed to do so.

71.    DASNY also engaged in discussions with certain additional subcontractors/suppliers of Trataros, with regard to their respective pass-through impact claims, but was not able to reach an amicable agreement regarding same.

72.    DASNY is liable to pay for the pass-through impact claims which it agreed to pay to the extent it has not already done so.

73.    DASNY is also liable to pay Travelers for the damages incurred by any of Trataros' unpaid pass-through impact claimants who were adversely impacted by the unforeseen site conditions, design flaws, inadequate coordination, and other problems attributable to the actions, breaches and/or negligence of DASNY and/or its representatives. Upon information and belief, these claims currently far exceed $15,000,000.00.

74.    DASNY should be held liable to pay all of Trataros' subcontractors/suppliers the amounts which DASNY previously agreed to pay in compromise of their respective claims, and/or those portions of said pass-though impact claims for which Trataros or Travelers would be liable as a result of the acts and/or omissions of the Owner Team, including but not limited to numerous differing site conditions, factors beyond the control of Trataros causing impacts and/or delays, DASNY's failure to take appropriate action, and its provision of defective, incomplete and/or inaccurate contract documents.

75.    Travelers is entitled to said relief pursuant to its rights of equitable subrogation and an assignment by Trataros to Travelers. Further, at least three of said subcontractors have liquidated their pass-through impact claims with Travelers via liquidating agreements, and remaining subcontractors have done so through their subcontract agreements.

76.    Travelers will serve as an intermediary with respect to these pass-through impact claims, and will pay the appropriate subcontractor/supplier pursuant to the terms of the

13

respective subcontracts and/or liquidating agreements, less Travelers' costs in connection with obtaining recovery of same.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a.    The total amount of all such claims;

b.    Attorney's fees and expenses;

c.    Interest;

d.    Costs;

e.    Such other relief as the Court deems just and proper.

## **FOURTH COUNT**

77.    Plaintiff, Travelers repeats and realleges each and every allegation contained in the above paragraphs of the Complaint and Jury Demand as if set forth herein in their entirety.

78.    Travelers, in its capacity as surety for Trataros, itself incurred losses of no less than $3,000,000. A substantial portion of Travelers' losses are attributable to the acts and/or omissions of DASNY, and/or entities with whom DASNY enjoyed privity of contract and over whom DASNY possessed the ability/authority/responsibility to control said parties' actions, including but not limited to KPF, TDX, and the various co-prime contractors.

79.    Travelers is entitled to recover from DASNY such amount of Travelers' own losses as is attributable to DASNY's acts and/or omissions, including but not limited to any expenses and attorney's fees which Travelers has incurred and/or will incur in defending claims brought against Travelers and/or its principal, Trataros, as a result of DASNY's said acts and/or omissions.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a.    Compensatory damages;

14

b.    Consequential and incidental damages;

c.    Attorney's fees and expenses;

d.    Interest;

e.    Costs;

f.    Such other relief as the Court deems just and proper.

## FIFTH COUNT

80.    Plaintiff, Travelers, repeats and realleges each and every allegation contained in the above paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

81.    DASNY engaged Defendant TDX as Construction Manager for the Project.

82.    TDX did not properly perform its contractual and/or professional responsibilities as Construction Manager.    TDX owed a duty of care to Trataros and/or Trataros' subcontractors/suppliers arising from their status as third-party beneficiaries of the contracts between TDX and DASNY, and/or as a result of the functional equivalent of privity existing between same and TDX. Rather than helping alleviate and/or limit the impacts identified above, TDX contributed to the impacts that plagued the Project.

83.    The actions and/or failures to act of TDX constituted negligence and/or professional negligence.

84.    The negligence and/or professional negligence of defendant TDX contributed in a material respect to the damages incurred by Travelers, Trataros and/or Trataros' subcontractors/suppliers resulting from the impacts discussed above.

85.    Travelers has standing to assert claims as against TDX either as a result of the assignment from Trataros; equitable subrogation with respect to the rights of claimants, the

obligees, and/or the principal; third-party beneficiary rights in connection with TDX's contracts with DASNY, and/or as a party whose connection to TDX is so close as to approach privity.

86.    Defendant, TDX is liable to Travelers for the damages incurred by Travelers and by Trataros as well as the damages incurred by the subcontractors and/or suppliers of Trataros, including but not limited to the damages associated with the impacts discussed above and such expenses and attorney's fees that Travelers may incur as a result of defending claims brought against Travelers and/or its principal as a result of the acts, omissions, negligence, and/or professional negligence of TDX.

**WHEREFORE**, Plaintiff hereby requests judgment against TDX Corp for:

a.    Compensatory damages;

b.    Consequential and incidental damages;

c.    Attorney's fees and expenses;

d.    Interest;

e.    Costs;

f.    Such other relief as the Court deems just and proper.

## SIXTH COUNT

87.    Plaintiff, Travelers, repeats and realleges each and every allegation contained in the above paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

88.    DASNY engaged Defendant KPF as architect/engineer of record for the Project.

89.    KPF did not properly perform its contractual and/or professional responsibilities as the Project's architect/engineer. KPF owed a duty of care to Trataros and/or Trataros' subcontractors/suppliers arising from their status as third-party beneficiaries of the contracts between KPF and DASNY, and/or as a result of the functional equivalent of privity existing

16

between same and KPF. Rather than helping alleviate and/or limit the impacts identified above, KPF contributed to the impacts that plagued the Project.

90.    The actions and/or failures to act of KPF constituted negligence and/or professional negligence.

91.    The negligence and/or professional negligence of defendant KPF contributed in a material respect to the damages incurred by Travelers, Trataros and/or Trataros' subcontractors/suppliers resulting from the impacts discussed above.

92.    Travelers has standing to assert claims as against KPF either as a result of the assignment from Trataros; equitable subrogation with respect to the rights of claimants, the obligees, and/or the principal; third-party beneficiary rights in connection with KPF's contracts with DASNY, and/or as a party whose connection to KPF is so close as to approach privity.

93.    Defendant KPF is liable to Travelers for the damages incurred by Travelers and by Trataros as well as the damages incurred by the subcontractors and/or suppliers of Trataros, including but not limited to the damages associated with the impacts discussed above and such expenses and attorney's fees that Travelers may incur as a result of defending claims brought against Travelers and/or its principal as a result of the acts, omissions, negligence, and/or professional negligence of KPF.

**WHEREFORE**, Plaintiff hereby requests judgment against Defendant KPF for:

    a.    Compensatory damages;

    b.    Consequential and incidental damages;

    c.    Attorney's fees and expenses;

    d.    Interest;

    e.    Costs;

    f.    Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff, Travelers Casualty and Surety Company, hereby demands trial by jury as to all issues in the above matter.

Respectfully submitted,
DREIFUSS BONACCI & PARKER, LLP

By: *Eli Rogers*

ELI J. ROGERS (ER-6564)
*Attorneys for Plaintiff,*
*Travelers Casualty and Surety Company as*
*Administrator for Reliance Insurance Company*
One Penn Plaza, 36th Floor
New York, New York 10119
         *and*
26 Columbia Turnpike
North Entrance
Florham Park, New Jersey 07932
973-514-1414
*Please respond to New Jersey office.*

18

# EXHIBIT B



# TRATAROS CONSTRUCTION, INC.

**664 64th Street**
**Brooklyn, NY 11220**
**Tel: (718) 833-6070  Fax: (718) 238-4462**

## Subcontract Agreement

This subcontract made this **18th** day of **September** 19**98**, by and between TRATAROS, the General Contractor (hereinafter "Contractor") and **G. M. Crocetti Inc.  3960 Merritt Avenue  Bronx, New York 10466** (hereinafter "Subcontractor") (hereinafter collectively "Parties")

WITNESSETH:

WHEREAS, Contractor and Dormitory Authority State of New York (hereinafter "Owner") have entered into a contract for Baruch College – Site B, Package No. 2 - General Construction Work, Contract No. 16 (Contract No. DA#6500 1802 2178) (hereinafter "Project"), according to the Contract Documents listed in Exhibit A attached hereto (hereinafter "Contract Documents") which are made a part of this Subcontract insofar as they apply; and

WHEREAS, Contractor desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;

NOW, THEREFORE, in consideration of the mutual agreements herein expressed, the Parties contract as follows:

1.     Subcontractor's Work

    a.     Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Exhibit B (hereinafter "Work") and work incidental thereto, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and Owner.

    b.     In respect of work covered by this Subcontract, and except as expressly modified herein, Subcontractor shall have all rights which contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards Owner in the Contract Documents. Subcontractor shall have the right to enforce its rights and remedies and to defend against claims against it by the Owner as provided in Article 9.

2.     Payment

    a.     Contractor shall pay Subcontractor for performance of the Work, subject to additions and deductions by change order, the total sum of **THREE MILLION EIGHT THOUSAND** Dollars ($ **$3,008,000.00** ) (hereinafter "Subcontract Price")

    b.     Partial payments shall be due Subcontractor in the amount of **90** *% of the Work in place, and for which payment has been made to Contractor by Owner. If the Contract Documents allow Contractor partial payments for stored materials, partial payments shall also be due Subcontractor in the amount of **90** *% of stored materials for which payment has been made to Contractor by Owner. Subcontractor shall submit a breakdown of the total Subcontract Price in form and detail acceptable to Contractor. In the event Contractor disapproves said breakdown, Contractor shall establish a reasonable breakdown which shall serve as the basis for partial payments . (* Subject to Owner's approval)

    c.     Partial payments shall be due on or about the fifteenth day following receipt of payment from Owner by Contractor. No partial payment made under this Subcontract shall be considered an acceptance of the Work in whole or in part. All material and Work covered by partial payments shall become the property of Contractor, or, if the Contract Documents so provide, the property of Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all Work and materials upon which payments have been made until final acceptance thereof by Owner.

    d.     Subcontractor shall ensure that all sub-subcontractors, employees and suppliers at all times, are paid all amounts due in connection with the performance of this Subcontract. After the first partial payment hereunder, Contractor shall have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Contractor that all previous amounts owed in connection with performance of this Subcontract have been paid. In addition to the requirements for payment in the Contract, as requested by Contractor, Subcontractor may be required to furnish with any payment application (a) an affidavit stating that all obligations directly or indirectly related to any payment have been paid, (b) a lien waiver for Subcontractor and its subcontracts and suppliers in a form acceptable to Contractor, and (c) certified copies of payrolls of Subcontractor and its subcontractors. Subcontractor shall also immediately reimburse Contractor for any amounts paid by Contractor or under Contractor's payment bond in connection with this Subcontract caused by failure by Subcontractor to make payment as provided in this Article. Contractor may with hold amounts otherwise due tinder this Subcontract or any other contractual arrangement between the parties to cover any costs or liability Contractor has incurred or may incur for which Subcontractor may be responsible hereunder. THIS TO BE NOT ARBITRARY AND SHALL BE SUBSTANTIATED.

    e.     Subcontractor expressly agrees that payment by the Owner to the Contractor for any Work performed by the Subcontractor is a condition precedent to any payment by the Contractor to the Subcontractor and that the Contractor is under no obligation until and unless the Contractor has been paid by the Owner.

CR0778

f.      Final payment shall be made after Subcontractor's work has been accepted by Owner, satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided, consent of Subcontractor's surety has been received, the Subcontractor's Work is complete, and Contractor has been paid in full for the Subcontractor's Work.

g.      Subcontractor accepts exclusive liability for all taxes and contributions required of Subcontractor by federal, state or local acts or regulations, including, without limitation, the Federal Social Security Act and the Unemployment Compensation Law or similar laws in any state with respect to the employees of Subcontractor and the performance of the Work. Subcontractor agrees to furnish Contractor with suitable written evidence that it has fulfilled such obligation. Subcontractor shall indemnify and hold harmless Contractor with respect to the payment of any such taxes or contributions under any applicable act, law or regulation.

h.      Contractor may withhold from any payment, including final payment, such amount as Contractor, in its discretion, deems reasonably necessary to protect itself against any actual ~~or potential~~ liability or damage directly ~~or indirectly~~ relating to the Subcontract, or for any liability or damage for which Subcontractor otherwise may be liable to Contractor.

3.      Subcontractor's Investigations and Representations

Subcontractor represents that it is fully qualified to perform this Subcontract, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation as ascertained (i) the Work required by this Subcontract, (ii) the conditions involved in performing the Work, and (iii) the obligations of this Subcontract and the Contract Documents; and (b) verified all information furnished by Contractor or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to independently investigate and become fully informed will not relieve Subcontractor from its responsibilities hereunder.

4.      Subcontractors Liability

a.      Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, ~~whether or not erected in place,~~ and for all plant, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until ~~final~~ acceptance of the Work by Owner. In the event of any loss, damage or destruction thereof ~~from any cause,~~ Subcontractor ~~shall be liable therefor~~ and shall repair, rebuild and make good said loss, damage or destruction ~~at Subcontractor's~~ cost as directed by the contractor.

b.      Subcontractor shall be liable for all costs Contractor incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its suppliers or subcontractors of any tier to perform. Subcontractor's liability shall include, but not be limited to (1) damages and other delay costs payable by Contractor to Owner; (2) Contractor's increased costs of performance, delays or improper Subcontract work; (3) warranty and rework costs; (4) liability to third parties; and (5) attorneys' fees and related costs.

c.      Indemnification

To the fullest extent permitted by law, the Subcontractor shall indemnify, hold harmless and defend the Contractor, Owner and all of their agents, directors and employees from and against all claims, damages, demands, losses, expenses, causes of action, suits or other liabilities, (including all costs and reasonable attorney' fees), arising out of or resulting from the performance of Subcontractor's Work under the Subcontract, provided any such claim, damage, demand, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, ~~regardless whether it is caused in part by a party indemnified hereunder.~~ This indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under any workers' compensation acts, disability benefits acts or other employee benefits acts. This indemnification shall be in addition to any indemnity liability imposed by the Contract Documents.

d.      In the event that Subcontractor or any of its agents, employees, suppliers, or lower-tier subcontractors utilizes any machinery, equipment, tools, scaffolding, hoists, lifts or similar items belonging to or under the control of Contractor, Subcontractor shall be liable to Contractor for any loss or damage (including personal injury or death) which may arise from such use, except where such loss or damage shall be due solely to the negligence of Contractor's employees operating Contractor-owned or leased equipment.

e.      Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 5, or otherwise.

5.      Subcontractor's Insurance

Prior to commencing the Work, Subcontractor shall procure, with Contractor and Owner as additional insured parties, and thereafter maintain, at its own expense, until final acceptance of the Work, insurance coverage as more fully described in Exhibit C in a form and from insurers acceptable to Contractor.

6.      Time Performance

a.      Subcontractor will proceed with the Work in a prompt and diligent manner, in accordance with Contractor's schedule, as reasonably amended from time to time. TIME IS OF THE ESSENCE. Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that the Contract Documents entitle Contractor to reimbursement.

b.      If requested by Contractor, Subcontractor Shall submit a detailed schedule for performance of the Subcontract, in a form acceptable to Contractor, which shall comply with all scheduling requirements of the Contract Documents and with Article 6, a, above. Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

c.      Subcontractor will coordinate its work with the work of Contractor, other subcontractors, and Owner's other builders, if any, so no delays or interference will occur in the completion of any part or all of the Project.

d.      Should the Subcontractor's performance of this Subcontract be delayed, impacted or disrupted by any acts of the Contractor, other subcontractors, or the Contractor's suppliers, or delayed, impacted or disrupted by any acts or causes which would entitle Contractor to an extension of time under the Contract Documents, the Subcontractor shall receive an equitable extension of time for the performance of this Subcontract, but shall not be entitled to

CR0779

any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays, impacts, disruptions, or acceleration resulting therefrom unless the Owner is liable and pays Contractor for such delays, impacts, disruptions, or acceleration. Contractor will pay the Subcontractor the amount allowed and paid by the Owner for the Subcontractor's delay, impact, disruption or acceleration. Within five (5) days after the commencement of any delay, impact or disruption, or acceleration caused by Contractor, other subcontractors, or the Contractor's suppliers, the Subcontractor shall notify Contractor in writing stating full details of the cause of the alleged delay, impact, disruption or disruptions or acceleration for which the Owner is responsible in sufficient time so that its claim may be timely processed against the Owner.

7       Changes and Claims

      a.       Contractor may, at any time, unilaterally or by agreement with Subcontractor, and without notice to the sureties, make changes in the Work covered by this Subcontract. Any unilateral order, or agreement, under this Article 7. a. shall be in writing. Subcontractor shall perform the Work as changed without delay.

      b.       Subcontractor shall submit in writing any claims for adjustment in the price, schedule or other provisions of the Subcontract claimed by Subcontractor for changes directed by Owner, or for damages for which the Owners liable, or as a result of deficiencies or discrepancies in the Contract Documents, to Contractor in time to allow Contractor to comply with the applicable provisions of the Contract Documents. Contractor shall process said claims in the manner provided by and according to the provisions of the Contract Documents so as to protect the interests of Subcontractor and others including Contractor. Subcontract adjustments shall be made only to the extent that Contractor receives relief from or must grant relief to Owner. Further, each Subcontract adjustment shall be equal in laid Subcontractor's allocable share of any adjustment in Contractor's contract with owner. Subcontractor's allocable share shall be determined by Contractor, after allowance of Contractor's normal overhead, profit and other interest in any recovery, by making a reasonable apportionment, if applicable, among Subcontractor, Contractor and other subcontractors or persons with interest in the adjustment. This paragraph will also cover other equitable adjustments or other relief allowed by the Contract Documents.

      c.       For changes ordered by Contractor independent of Owner of Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract Price if Subcontractor submits in writing to Contractor its claim within five (5) days of the beginning of the event for which claim is made.

      d.       Pending resolution of any claim, dispute or other controversy nothing shall excuse Subcontractor from proceeding with prosecution of the Subcontract Work.

      e.       Subcontractor shall indemnify and hold Contractor harmless from ~~any~~ cost, expense, fine or liability resulting from a claim or claim certification deemed wrongful in whole or in part.

8       Subcontractor's failure to Perform                                                                                 

      a.       If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the Work according to the current schedule, (3) cause, by any action or omission, the stoppage, delay of, or interference with the work of Contractor or of any other builder or subcontractor, (4) fail to comply with all provisions of this Subcontract or the Contract Documents, (5) be adjudged a bankrupt, or make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent or a debtor in reorganization proceedings, then, after serving three (3) days' written notice, unless the condition specified in such notice shall have been eliminated within such three (3) days, the Contractor may at its option (I) without voiding the other provisions of the Subcontract and without notice to the sureties, take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Contractor for the cost thereof, or (II) terminate the Subcontract for default, or (III) seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance may be necessary to avoid irreparable harm to Contractor and/or Owner. In the event of termination for default, Contractor may, at its option, (1) enter on the premises and take possession, for the purpose of completing the Work, of all materials and equipment of Subcontractor, (2) require Subcontractor to assign to Contractor any or all of its subcontracts or purchase orders involving the Project, or (3) complete the Work either by itself or through others, by whatever method Contractor may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by Owner. At such time, if the unpaid balance of the Subcontract Price to be paid shall exceed the expense incurred by Contractor, including an overhead fee of ten percent (10%) of the costs of finishing the Work, such excess shall be paid by Contractor to Subcontractor. If such amount due Contractor shall exceed such unpaid balance, then Subcontractor shall pay Contractor the difference within five (5) business days following demand by Contractor. Subcontractor shall pay all reasonable costs of collection, if any.

      b.       If Contractor wrongfully terminates Subcontractor under Article 8, the termination shall be deemed to be a termination for convenience, as provided in Article 13.

9       Settlement and Disputes

      a.       In case of any dispute between Contractor and Subcontractor, due to any action of Owner or involving the Contract Documents, Subcontractor agrees to be bound to the same extent that Contractor is bound to Owner, by the terms of the Contract Documents, and by any and III preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, ~~whether or not Subcontractor is a party to such proceedings~~. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for contractor to analyze and forward to Owner any required communications or documentation. Contractor will, at its option (1) present to Owner, in Contractor's name, or (2) authorize Subcontractor to present to Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's Work, whenever Contractor is permitted to do so by the terms of the Contract Documents. IF such dispute is prosecuted or defended by Contractor, Subcontractor agrees to furnish all documents, statements, witnesses, and other information required, and to pay or reimburse Contractor for all costs, including attorneys' fees, incurred in connection therewith. The Subcontract Price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 7 hereof.

      b.       With respect to any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents, Contractor shall issue a decision which shall be followed by Subcontractor. If the Subcontractor is correct as to the controversy, Subcontractor shall be entitled to an equitable adjustment in the Subcontract Price as its sole remedy. Notification of any such claim for equitable adjustment must be asserted in writing within ten (10) days of Subcontractor's knowledge of the claim.

      c.       Anything to the contrary in the Contract Documents notwithstanding, any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents and which is not amicably resolved by the Parties will be submitted to a court of competent jurisdiction in the State of New York, 2nd department, County of Kings. In no event will any such controversy be submitted to arbitration, except at the sole option of Contractor

CR0780

10.    Warranty

      Subcontractor warrants its Work hereunder to Contractor on the same terms, and for the same period, as Contractor warrants the work to Owner under the Contract Documents; and with respect to Subcontractor's Work, Subcontractor shall perform all warranty obligations and responsibilities assumed by Contractor under the Contract Documents.

11.    Liens

      a.    In the event that liens are filed by anyone in relation to the labor or material being furnished by Subcontractor, Subcontractor and its surety agree to protect, indemnify and hold harmless Contractor and Owner therefrom, to have the same discharged or removed, by posting a bond with the appropriate authorities, or otherwise, at its own cost and expense (including attorneys' fees) within five (5) days of notice. In the event such lien is not so discharged, such circumstance shall be deemed a failure to perform the Work on the part of the Subcontractor, subject to the conditions and terms set forth in Article 8 above. **G.M. Crocetti does not agree to waive any rights under New York Lien law.** 

      b.    Subcontractor shall, as often as required by Contractor, furnish a sworn statement showing all parties who furnish labor or material to Subcontractor, with their names and addresses and the amount due or to become due to each. Like statements may be required from any subcontractors or vendors, of any tier, of Subcontractor.

      c.    Prior to final payment, Subcontractor shall provide to Contractor a release of its liens and claims and all liens and claims of all persons furnishing labor or materials for the performance of this Subcontract in the form acceptable to Contractor, and satisfactory evidence that there are no other liens or claims whatsoever outstanding against the Work.

      d.    If required by Contractor, Subcontractor shall furnish releases of liens with respect to all prior payments, as part of each request for partial payment other than the initial request.

12.    Inspection and Acceptance

      Subcontractor shall provide appropriate facilities at all reasonable times for inspection by Contractor or Owner of the Work and materials provided under this Subcontract, whether at the Project site or at any place where such Work or materials may be in preparation, manufacture, storage, or installation. Subcontractor shall promptly replace or correct any Work or materials which Contractor or Owner shall reject as failing to conform to the requirements of this Subcontract. The Work shall be accepted according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by Owner or Contractor shall **not** constitute acceptance of the Work.

13.    Termination for Convenience

      Contractors shall have there right to terminate this Subcontract, in whole or part, for convenience, if there is a termination of Contractor's contract with Owner, by providing Subcontractor with a written notice of termination, to be effective upon receipt by Subcontractor. if the Subcontract is terminated for convenience, the Subcontractor shall be paid the amount representing costs which are due from the Owner for its Work, as provided in the Contract Documents, after payment therefore by the Owner to Contractor. The Subcontractor's remedy under this Article 13, shall be exclusive. Nothing herein shall bar withholdings by Contractor permitted by other provisions of the Subcontract.

14.    Approvals

      a.    Subcontractor shall deliver to Contractor copies of shop drawings, cuts, samples and material lists required by Contractor or the Contract Documents and in accordance with the Contract Documents within sufficient time so as not to delay performance of the Project or within sufficient time for contract or to submit same within the time stated in the Contract Documents, whichever is earlier. Any deviation from the Contract Documents shall be clearly identified on shop drawings.

      b.    Contractor's review of shop drawings, cuts, samples and material lists is only for the convenience of the Owner and shall not relieve the Subcontractor of its obligation to perform the Work in strict accordance with Contract Documents, including addenda, or the proper matching and fitting of the work with contiguous Work. In the event that discrepancies exist in the contract documents which preclude proper matching and fitting of the work with contiguous work, the subcontractor shall at the contractor's direction make the necessary changes to effect proper matching and fitting with contiguous work. There will be no change in contract price unless the owner issues a contract modification. Should the proper and accurate performance of the Work included in this Subcontract depend upon the proper and accurate performance of other work not included in this Subcontract, Subcontractor shall use all necessary means to discover defects in such other work, and shall report the said defects in writing to contractor before proceeding with the Work, and shall allow the Contractor a reasonable time to remedy such defects.

      c.    Subcontractor warrants and agrees that it can and will obtain all requisite approvals from Owner as to its eligibility to serve as a subcontractor and the approvals of all materials and performance of the Work as required by the Contract Documents.

15.    **Clean-Up**

      **All rubbish will be placed at a designated area on each floor and removed by others at no cost to G.M. Crocetti in accordance with contract documents.**

16.    Assignment

      Subcontractor shall not sub-subcontract the Work of this Subcontract and shall not assign or transfer this Subcontract, or funds due hereunder, without the prior written consent of Contractor and Subcontractor's surety. Contractor shall not unreasonably withhold its consent to the assignment of funds due hereunder.

17.    Patents and Royalties

      Except as otherwise provided by the Contract Documents, Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Work. Subcontractor shall defend all suits or claims for infringement of any patent rights that may be brought against Contractor or Owner arising out of the Work, and shall be liable to contractor and Owner for all loss, including all costs and expenses, on account thereof.

CR0781

18.     Taxes and Permits

Except as otherwise provided by the Contract Documents, Subcontractor agrees to pay and comply with and hold Contractor harmless against the payment of all contributions, taxes or premiums which may be payable by it under federal, state or local laws arising out of the performance of this Subcontract, and all sales, use or other taxes of whatever nature levied or assessed against Owner, Contractor, or Subcontractor arising out of this Subcontract, including any interest or penalties. Subcontractor shall obtain and pay for all permits, licenses, fees and certificates of inspection necessary for the prosecution and completion of its Work and shall arrange for all necessary inspections and approvals by public officials.

19.     Laws, Regulations and Ordinances

Subcontractor agrees to be bound by, and, at its own cost, comply with all Federal, state and local laws, ordinances and regulations applicable to this Subcontract and the performance of the Work hereunder including the Occupational Safety and Health Act of 1970. Subcontractor shall be duly licensed to operate under the law of the applicable jurisdictions. Subcontractor shall be liable to Contractor and Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor, its employees and agents resulting from failure to comply including, but not limited to, any fines, penalties or corrective measures.

20.     Labor

a.     Subcontractor and its lower-tier subcontractors shall not employ anyone in Subcontract Work whose employment may be objected to by Contractor or Owner.

b.     Should any workers performing work covered by this Subcontract engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, said circumstances shall be deemed a failure to perform the Work on the part of the Subcontractor subject to the conditions and terms set forth in Article 8 above.

21.     Equal Opportunity

a.     In connection with the performance of Work under this Subcontract, Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, religion, sex, handicap, color or national origin. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. Subcontractor agrees to post hereafter, in conspicuous places, available for employees and applicants for employment, notices, prepared by Subcontractor, and approved by the government when required, setting forth the provision of this Article 21.

b.     Subcontractor shall permit access to its books, records, and accounts by representatives of Contractor or Owner for purposes of investigation to ascertain compliance with the provisions of this Article 21.

c.     In the event of Subcontractor's non-compliance with the equal opportunity provisions of this Subcontract, this Subcontract may be terminated for default.

d.     Subcontractor shall include the provisions of this Article 21 in every lower-tier subcontract and purchase order. The requirements of this Article 21 shall be in addition to any equal opportunity provisions of the Contract Documents.

22.     Notices

All notices shall be addressed to the Parties at the addresses set out herein, and shall be considered as delivered when postmarked, if dispatched by registered mail, or when received in all other cases.

23.     Safety

Subcontractor agrees that the prevention of accidents to workers engaged in the Work is the responsibility of the Subcontractor. Subcontractor shall comply with approved Safety and Accident Plans. Subcontractor agrees to comply with all labor department laws, regulations and codes concerning safety as shall be applicable to the Work and to the safety standards established during the progress of the Work by the Contract. When so ordered, the Subcontractor agrees to stop any part of the Work which the Contractor deems unsafe until corrective measures satisfactory to the Contractor have been taken, and further agrees to make no claim for damages growing out of such Work stoppages. Should the Subcontractor neglect to adopt such corrective measures, Contractor may perform them and deduct the cost from payments due or to become due to Subcontractor. Failure on the part of Contractor to stop unsafe practices shall in no way relieve Subcontractor of its responsibility.

24.     Severability

The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise and right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

25.     Governing Law

This Subcontract shall be governed by and construed in accordance with the laws of the State of New York.

26.     Advertising

Neither Subcontractor, its subcontractors, suppliers nor employees shall take photographs of the Work on site, or publish or display advertising matter of any description relating to the Project without first obtaining the written consent of Contractor and Owner.



CR0782

27.    Bond

The Subcontractor shall furnish at Subcontractor's expense a Performance and Payment Bond in the full amount of this Subcontract. Performances and payment bonds for subcontractors work shall be provided by the subcontractor and are to be issued by a U.S. Department of Treasury listed bonding company acceptable to the Contractor for the full amount of the subcontract  The cost is to be born by the subcontractor and is included in the amount of this Subcontract Agreement.

28.    Execution

The Subcontract is signed and received by a legal representative of the Subcontractor authorized to bind Subcontractor, be it individual, partnership or corporation, to all terms of this Subcontract.  Should this Subcontract, because of the manner of execution, not be legally binding upon the Subcontractor for any reason whatsoever, all Work under this Subcontract shall be performed at the risk of the Subcontractor, and, should this Subcontract be voided due to improper execution, Subcontractor agrees to waive all claims for compensation for Work performed.  **If a portion of the work is completed properly Subcontractor will be compensated accordingly as agreed to with the Owner.**

29.    Complete Agreement

This Subcontract contains the entire agreement between the Parties hereto with respect to the matters covered herein. No other agreements, representations, warranties, or other matters, oral or written, shall be deemed to bind the Parties hereto.

**IN WITNESS WHEREOF,** the Parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year and above written.

Exhibits: A - Contract Document; B - Scope of Work; C - Insurance; D - Partial Lien Waivers; E - Final Release; F - Subcontractor Size Certification; G - Rider to all Subcontracts and/or Purchase Orders

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement

Initials 

CR0783



**TRATAROS**
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

TRADE: Precast Terrazzo, Epoxy Terrazo, Interior Stonework

General Contractor: **Trataros Construction, Inc.**

By:

**Costas N. Trataros, President**

Notary: _____  4/21/99
                                            date

PRISCILLA J. OLIVO
Notary Public, State of New York
No. 01OL5019005
Qualified in Kings County
Commission Expires Jan. 25, 199

Be advised that progress payments, final payment and/or payment of retainage, shall be subject to receipt, acceptance and verification of Item "A" through "H" mentioned in Rider G.

Subcontractor: **G. M. Crocetti, Inc.**

By: _____  V.P.

**Arthur C. Cayazzi, Vice President**

Notary: _____  3/29/99
                                            date

MICHAEL ZANZANO
Notary Public, State of New York
No. 60 483-7765
Qualified in Westchester County
Certificate Filed in Bronx County
Commission Expires Aug. 31, 1999

Seal:

CR0784

Subcontractor No. <u>B09-09420</u>



**TRATAROS**
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

**BARUCH ACADEMIC COMPLEX**
55 Lexington Avenue
New York City, NY 10010

**General Construction Work**
**Package No. 2 - Contract No. 16**
DASNY Project No. 6500 1802 2178

Subcontractor:     G. M. Crocetti, Inc.

By:
**Arthur C. Cavazzi, Vice President**

Witness:     Donna M. Mollica

Traratos Construction, Inc.

By:
**Costas N. Trataros, President**

Witness:

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement     Initials _ac_

CR0785

Subcontractor No. B09-09420



**TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220**

**BARUCH ACADEMIC COMPLEX**
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 – Contract No. 16

EXHIBIT A
LIST OF CONTRACT DOCUMENTS

CONTRACT BETWEEN OWNER AND CONTRACTOR, Dated August 27, 1998 DASNY # 6500 1802 2178, JDE # 61506

TABLE OF CONTENTS

VOLUME #1 - PROJECT MANUAL AND CONTRACT SPECIFICATIONS

ADDENDUMS  1, 2 & 3

TABLE OF CONTENTS

| | |
|---|---|
| I | NOTICE TO BIDDERS |
| II | INFORMATION FOR BIDDERS |
| III | SUPPLEMENT TO INFORMATION FOR BIDDERS |
| IV | FORM OF BID |
| V | FORM OF BID BOND |
| VI | CONTRACT |
| VII | PERFORMANCE BOND |
| VIII | LABOR AND MATERIAL PAYMENT BOND |
| IX | GENERAL CONDITIONS |
| | APPENDICES ATTACHED |
| | NYS UNIFORM CONTRACTING QUESTIONNAIRE |
| | AFFIRMATIVE ACTION FORMS |
| | CHANGE ORDER FORMS |
| | SAMPLE INSURANCE CERTIFICATES |
| | CERTIFICATE FOR PAYMENT |
| | PUBLIC WORK PROJECT DECLARATION |
| X | CONTRACTOR'S TRADE PAYMENT BREAKDOWN |
| XI | WAGE RATES |
| XII | GENERAL REQUIREMENTS |
| XIII | SUPPLEMENTAL GENERAL REQUIREMENTS |
| XIV | SCOPE OF WORK |
| XV | SAMPLE CPM SCHEDULE |
| XVI | TECHNICAL SPECIFICATIONS |

| SECTION | TITLE |
|---|---|
| SECTION 01030 | ALTERNATES |
| SECTION 02518 | SAND SET PAVERS |
| SECTION 02520 | CONCRETE SIDEWALKS |
| SECTION 02900 | LANDSCAPING |
| SECTION 03302 | CAST-IN-PLACE CONCRETE - SWIMMING POOL |
| SECTION 03303 | CAST-IN-PLACE CONCRETE (CURBS, EQUIPMENT PADS, TOPPING) |
| SECTION 03551 | CEMENTITIOUS FLOOR LEVELING |
| SECTION 04101 | MASONRY MORTARS & GROUTS (GC#2) |
| SECTION 04224 | INTERIOR CONCRETE BLOCK CURBS (GC#2) |
| SECTION 04420 | EXTERIOR STONEWORK |
| SECTION 04440 | STONE TESTING |
| SECTION 04450 | INTERIOR STONEWORK |
| SECTION 05301 | METAL DECK (GC#2) - RECITAL HALL STAGE |
| SECTION 05505 | MISCELLANEOUS METAL WORK |
| SECTION 05510 | METAL STAIRS |
| SECTION 05520 | HANDRAILS, RAILINGS & GUARDRAILS |
| SECTION 05540 | CONSTRUCTION CASTINGS |
| SECTION 05700 | ORNAMENTAL METAL |
| SECTION 06100 | ROUGH CARPENTRY |
| SECTION 06200 | FINISH CARPENTRY |
| SECTION 06400 | ARCHITECTURAL WOODWORK |
| SECTION 06420 | WOOD PANELING |
| SECTION 07111 | VAULT WATERPROOFING |
| SECTION 07112 | WATER TANK COATING |
| SECTION 07115 | HOT APPLIED ASPHALTIC MEMBRANE |

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement    Initials _MC_

CR0786

| | |
|---|---|
| SECTION 07125 | CAPILLARY WATERPROOFING |
| SECTION 07131 | BENTONITE WATERPROOFING |
| SECTION 07193 | SELF-ADHESIVE MEMBRANE GALVANIZED STEEL CLOSURES AND INSULATION (EXTERIOR STONE) |
| SECTION 07210 | BUILDING INSULATION |
| SECTION 07218 | SPRAYED THERMAL INSULATION |
| SECTION 07271 | FIRESTOPPING/SMOKE SEALS (GC#2) |
| SECTION 07521 | INVERTED HOT LIQUID MEMBRANE ROOFING |
| SECTION 07575 | TRAFFIC BEARING DECK COATING |
| SECTION 07625 | STAINLESS FLASHING (WITH ROOFING ONLY) |
| SECTION 07628 | EXTERIOR PLAZAS STAINLESS FLASHING |
| SECTION 07700 | ROOF ACCESSORIES |
| SECTION 07903 | INTERIOR JOINT SEALERS (GC#2) |
| SECTION 08301 | SLIDING FIRE DOOR (S) |
| SECTION 08306 | FLOOR HATCHES |
| SECTION 08330 | OVERHEAD COILING DOORS |
| SECTION 08333 | COUNTER SHUTTER |
| SECTION 08340 | OVERHEAD COILING GRILLES |
| SECTION 08348 | MAUNUAL FIRE RATED COUNTER SHUTTERS |
| SECTION 08400 | MAIL SLOT DOORS & FRAMES |
| SECTION 08420 | ALUMINUM AND GLASS DOORS |
| SECTION 08426 | INTERIOR STAINLESS STEEL ENTRANCE DOORS |
| SECTION 08470 | REVOLVING ENTRANCE DOORS |
| SECTION 08830 | UNFRAMED MIRRORS |
| SECTION 08850 | INTERIOR GLASS & GLAZING |
| SECTION 08860 | GLASS RAILINGS |
| SECTION 08955 | TUBULAR ALUMINUM FRAMING |
| SECTION 08960 | INTERIOR ALUMINUM WINDOW WALLS |
| SECTION 09111 | STEEL STUD FRAMING (GC#2) |
| SECTION 09216 | VENEER PLASTER (GC#2) |
| SECTION 09251 | GYPSUM DRYWALL (GC#2) |
| SECTION 09275 | PREFABRICATED REINFORCED GYPSUM (GFRG) |
| SECTION 09310 | CERAMIC TILE |
| SECTION 09315 | SWIMMING POOL TILE |
| SECTION 09330 | QUARRY TILE |
| SECTION 09410 | PRECAST TERRAZZO |
| SECTION 09420 | EPOXY TERRAZO |
| SECTION 09521 | FABRIC WRAPPED PANELS |
| SECTION 09550 | WOOD STRIP FLOORING |
| SECTION 09650 | RESILIENT FLOORING |
| SECTION 09665 | SHEET FLOORING (LINOLEUM) |
| SECTION 09677 | RESILIENT SPORTS FLOORING |
| SECTION 09685 | GLUE-DOWN CARPETING (FOR INFORMATION ONLY) |
| SECTION 09703 | BITUMINOUS EPOXY COATING |
| SECTION 09704 | TROWELED EPOXY RESIN FLOORING |
| SECTION 09781 | CONCRETE FLOOR SEALER |
| SECTION 09900 | PAINTING |
| SECTION 10100 | VISUAL DISPLAY BOARDS |
| SECTION 10120 | BULLETIN BOARDS |
| SECTION 10121 | DISPLAY CASES |
| SECTION 10160 | METAL TOILET PARTITIONS |
| SECTION 10190 | CUBICLE CURTAINS AND TRACKS |
| SECTION 10260 | WALL PROTECTIVE DEVICES |
| SECTION 10350 | FLAGPOLES |
| SECTION 10500 | METAL LOCKERS (FOR INFORMATION ONLY) |
| SECTION 10505 | WOOD LOCKERS (FOR INFORMATION ONLY) |
| SECTION 10520 | FIRE EXTINGUISHER CABINETS |
| SECTION 10601 | WIRE MESH PARTITIONS |
| SECTION 10650 | OPERABLE PARTITIONS |
| SECTION 10675 | METAL STORAGE SHELVING |
| SECTION 10800 | METAL TOILET ACCESSORIES |
| SECTION 11062 | PERFORMANCE DRAPERY (FOR INFORMATION ONLY) |
| SECTION 11063 | PERFORMANCE PLATFORM (FOR INFORMATION ONLY) |
| SECTION 11064 | PERFORMANCE RIGGING (FOR INFORMATION ONLY) |
| SECTION 11065 | PERFORMANCE TENSION WIRE GRID MESH |
| SECTION 11091 | COAT & HAT RACKS |
| SECTION 11132 | PROJECTION SCREENS |
| SECTION 11135 | MOTORIZED PROJECTION SCREENS |
| SECTION 11161 | HYDRAULIC DOCK LEVELER |
| SECTION 11165 | DOCK BUMPERS |
| SECTION 11170 | SOLID WASTE HANDLING EQUIPMENT |
| SECTION 11400 | FOOD SERVICE EQUIPMENT (FOR INFORMATION ONLY) |
| SECTION 11452 | APPLIANCES |
| SECTION 11470 | DARKROOM EQUIPMENT (FOR INFORMATION ONLY) |

CR0787

SECTION 11480   SCOREBOARD
SECTION 11484   BASKETBALL BACKSTOPS
SECTION 11490   GYMNASIUM EQUIPMENT
SECTION 11964   PERFORMANCE LIGHTING INSTRUMENTS &
                ACCESSORIES (FOR INFORMATION ONLY)
SECTION 12522   MANUAL ROLL-UP SHADES
SECTION 12525   MOTORIZED ROLL-UP SHADES
SECTION 12550   FIXED FURNITURE (FOR INFORMATION ONLY)
SECTION 12670   ENTRANCE MAT ASSEMBLIES
SECTION 12691   FLOOR MATS & FRAMES
SECTION 12760   TELESCOPING BLEACHERS
                (FOR INFORMATION ONLY)
SECTION 13030   SAUNA
SECTION 13031   RACQUETBALL COURTS
SECTION 13150   SWIMMING POOL
SECTION 16051   BASIC ELECTRICAL MATERIALS AND METHODS
SECTION 16121   WIRES AND CABLES
SECTION 16131   RACEWAYS AND BOXES


**VOLUME #1**

-----   COVER SHEET
01      GENERAL #2 DRAWING LIST


**ARCHITECTURAL**

A-002   MATERIAL LEGEND, KEY, GRAPHIC SYMBOLS & ABBREVIATIONS
P-2     SITE SURVEY

BP-01   BUILDERS PAVEMENT SITE PLAN & GENERAL NOTES
BP-02   BUILDERS PAVEMENT LAYOUT PLAN
BP-03   BUILDERS PAVEMENT LAYOUT PLAN
BP-04   BUILDERS PAVEMENT LAYOUT PLAN
BP-05   BUILDERS PAVEMENT LAYOUT PLAN
BP-06   BUILDERS PAVEMENT LAYOUT PLAN
BP-07   BUILDERS PAVEMENT LAYOUT PLAN
BP-08   BUILDERS PAVEMENT PROFILE
BP-09   BUILDERS PAVEMENT PROFILE
BP-10   BUILDERS PAVEMENT PROFILE
BP-11   BUILDERS PAVEMENT CROSS SECTION
BP-12   BUILDERS PAVEMENT CROSS SECTION
BP-13   BUILDERS PAVEMENT SECTION
BP-14   BUILDERS PAVEMENT DETAILS
BP-15   BUILDERS PAVEMENT DETAILS
BP-16   BUILDERS PAVEMENT-PAVEMENT PROFILE
BP-17   BUILDERS PAVEMENT RESTORATION

A-050   SITE PLAN
A-051   PLAZA PARTIAL PLANS
A-052   PLAZA ELEVATIONS
A-053   SITE DETAILS
A-054   SITE DETAILS
A-055   SITE DETAILS
A-056   SITE DETAILS


| DWG. NO. | TITLE |
| --- | --- |
| A-101 | 2ND SUBCELLAR/B3 FLOOR PLAN |
| A-102 | SUBCELLAR/B2 FLOOR PLAN |
| A-103 | CELLAR/B1 FLOOR PLAN |
| A-104 | GROUND FLOOR PLAN |
| A-105 | 2ND FLOOR PLAN |
| A-106 | MEZZANINE FLOOR PLAN |
| A-107 | 3RD FLOOR PLAN |
| A-108 | 4TH FLOOR PLAN |
| A-109 | 5TH FLOOR PLAN |
| A-110 | 6TH FLOOR PLAN |
| A-111 | 7TH FLOOR PLAN |
| A-112 | 8TH FLOOR PLAN |
| A-113 | 9TH FLOOR PLAN |
| A-114 | 10TH FLO6R PLAN |
| A-115 | 11TH FLOOR PLAN |
| A-116 | 12TH FLOOR PLAN |



CR0788

Subcontractor No. B09-09420

| | |
|---|---|
| A-117 | 13TH FLOOR PLAN |
| A-118 | 14TH FLOOR PLAN |
| A-119 | MECHANICAL PENTHOUSE PLAN |
| A-120 | ROOF PLAN |
| A-121 | 2ND SUBCELLAR/B3 FLOOR RCP |
| A-122 | SUBCELLAR/B2 FLOOR RCP |
| A-123 | CELLAR/B1 FLOOR RCP |
| A-124 | GROUND FLOOR RCP |
| A-125 | 2ND FLOOR RCP |
| A-126 | 3RD FLOOR RCP |
| A-127 | 4TH FLOOR RCP |
| A-128 | 5TH FLOOR RCP |
| A-129 | 6TH FLOOR RCP |
| A-130 | 7TH FLOOR RCP |
| A-131 | 8TH FLOOR RCP |
| A-132 | 9TH FLOOR RCP |
| A-133 | 10TH FLOOR RCP |
| A-134 | 11TH FLOOR RCP |
| A-135 | 12TH FLOOR RCP |
| A-136 | 13TH FLOOR RCP |
| A-137 | 14TH FLOOR RCP |
| | |
| A-140 | INTERIOR FINISHES SCHEDULE |
| A-141 | 2ND SUBCELLAR/B3 FINISH PLAN |
| A-142 | SUBCELLAR/B2 FINISH AND FIXTURE PLAN |
| A-143 | CELLAR/B1 FINISH AND FIXTURE PLAN |
| A-144 | GROUND FLOOR FINISH AND FIXTURE PLAN |
| A-145 | 2ND FLOOR FINISH AND FIXTURE PLAN |
| A-145A | MEZZANINE FLOOR FINISH AND FIXTURE PLAN |
| A-146 | 3RD FLOOR FINISH AND FIXTURE PLAN |
| A-147 | 4TH FLOOR FINISH AND FIXTURE PLAN |
| A-148 | 5TH FLOOR FINISH AND FIXTURE PLAN |
| A-149 | 6TH FLOOR FINISH AND FIXTURE PLAN |
| | |
| A-309 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| | |
| A-310 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-311 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-312 | EXTERIOR WALL PARTIAL ELEVATIONS – HIGHRISE |
| A-313 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-314 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-315 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-316 | EXTERIOR WALL PARTIAL ELEVATIONS - EXT. STONE PATTERN |
| | |
| A-320 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-321 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-322 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-323 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-324 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| | |
| A-330 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-331 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-332 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-333 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-334 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-335 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| | |
| A-340 | EXTERIOR WALL PARTIAL PLANS - NORTH AND WEST LOWRISE |
| A-341 | EXTERIOR WALL PARTIAL PLANS - SOUTHWEST LOWRISE |
| A-342 | EXTERIOR WALL PARTIAL REFL. CLG. PLAN - NORTH AND WEST LOWRISE |
| | |
| A-350 | EXTERIOR WALL DETAILS - BRICK SCHEDULE |
| A-351 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-351A | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-352 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-353 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-354 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-355 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-356 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-357 | EXTERIOR WALL PLAN DETAILS - LOW RISE |
| A-357A | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-358 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-358A | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-359 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-360 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-360A | EXTERIOR WALL SECTION DETAILS - LOWRISE |

CR0789

Subcontractor No. B09-09420

| A-361 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
|---|---|
| A-362 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-363 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-364 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-365 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-365A | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-366 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-367 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| | |
| A-415 | FIRE STAIR DETAILS |
| A-416 | FIRE STAIR DETAILS |
| A-420 | ELEVATOR HOISTWAY PLANS |
| A-421 | ELEVATOR HOISTWAY PLANS |
| A-422 | ELEVATOR HOISTWAY SECTIONS |
| A-423 | ELEVATOR HOISTWAY PLANS |
| A-425 | THEATER ELEVATOR (HPE-4) CAB ELEVATIONS |
| A-426 | SPORTS ELEVATOR (HPE - 14) CAB ELEVATIONS |
| A-427 | FACULTY ELEVATOR (P E-1, PE-2, PE-3) CAB ELEVATIONS |
| A-428 | STUDENT ELEVATOR (PE-5 THRU PE-11) CAB ELEVATIONS |
| | |
| A-430 | ELEVATOR DETAILS |
| A-431 | ELEVATOR DETAILS |
| A-435 | ESCALATOR SECTIONS |
| A-437 | ESCALATOR DETAILS B2 TO GROUND FLOOR |
| | |
| A-440 | TOILET ROOM PLANS |
| A-441 | TOILET ROOM PLANS |
| A-442 | TOILET ROOM ELEVATIONS |
| A-443 | TOILET ROOM ELEVATIONS |
| A-444 | TOILET ROOM ELEVATIONS |
| A-445 | TOILET ROOM PLANS & ELEVATIONS |
| A-446 | TOILET ROOM PLANS & ELEVATIONS |
| A-447 | TOILET ROOM TILE DETAILS |
| | |
| A-450 | LOADING DOCK AREA PLAN |
| A-451 | LOADING DOCK AREA SECTIONS |
| A-452 | LOADING DOCK AREA DETAILS |
| | |
| A-460 | PUBLIC STAIR #1, PLANS & DETAILS |
| A-461 | PUBLIC STAIR #3, PLANS & DETAILS |
| A-462 | PUBLIC STAIR #4, PLANS & DETAILS |
| A-463 | TYPICAL ATRIUM STAIR PLANS, PUBLIC STAIRS #2, 5-8 |
| A-464 | ATRIUM RAILING PLANS |
| A-465 | PUBLIC STAIR SECTIONS |
| A-466 | PUBLIC STAIR SECTIONS |
| A-467 | PUBLIC STAIR & RAILING DETAILS |
| A-468 | PUBLIC STAIR & RAILING DETAILS |
| A-469 | PUBLIC STAIR #1 DETAILS |
| A-470 | THEATRE AREA DETAIL PLANS |
| A-471 | THEATRE AREA DETAIL PLANS |
| A-475 | MISCELLANEOUS STEEL DETAILS |
| A-476 | MISCELLANEOUS STEEL TYPICAL DETAILS |
| | |
| A-545 | STUDENT ELEVATOR LOBBY ELEVATIONS |
| | |
| A-551 | ELEVATIONS @ CLASSROOM CORRIDOR |
| A-552 | LECTURE HALL - 3RD FLOOR PLAN |
| A-553 | LECTURE HALL -3RD AND 4TH FLOOR PLAN |
| A-554 | LECTURE HALL -5TH FLOOR PLAN |
| | |
| A-555 | LECTURE HALL - SECTIONS |
| A-556 | LECTURE HALL RCP |
| A-557 | LECTURE HALL - SECTIONS |
| A-561 | SUITE ENTRY DETAILS |
| A-563 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-564 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-565 | 14TH FLO6R ELEVATIONS/SECTIONS |
| A-566 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-567 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-568 | 14TH FLOOR ELEVATIONS/SECTIONS |
| | |
| A-601 | INTERIOR MASONRY DETAILS - POOL/GYM |
| A-602 | INTERIOR MASONRY DETAILS - RECITAL HALL & THEATER |
| A-603 | CERAMIC TILE DETAIL @ POOL |
| A-604 | INTERIOR MASONRY DETAILS |
| A-605 | RECITAL HALL/THEATER DETAILS |

CR0790

| A-606 | INT. MASONRY PLAN DETAILS - SPORTS & THEATER ATRIA |
| A-607 | INT. MASONRY PLAN DETAILS - SPORTS, THEATER & GROUND FLOOR ATRIA |
| | |
| A-608 | INTERIOR BRICK PLAN DETAILS |
| A-609 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-610 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-611 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-612 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-613 | INTERIOR MASONRY PLAN DETAILS -24TH ST. LOBBY |
| A-614 | INTERIOR MASONRY PLAN DETAILS - GR. & 2ND FLOOR |
| A-615 | INTERIOR MASONRY SECTION DETAILS - 24TH ST. LOBBY |
| A-616 | INTERIOR MASONRY DETAILS - ENTRY HALL |
| A-618 | FIN TUBE ENCLOSURE DETAILS |
| A-620 | ATRIUM WALL DETAILS |
| A-621 | ATRIUM WALL DETAILS |
| A-622 | ATRIUM WALL DETAILS |
| A-623 | ATRIUM WALL DETAILS |
| A-624 | ATRIUM WALL DETAILS |
| A-625 | ATRIUM WALL DETAILS |
| A-626 | ATRIUM WALL DETAILS |
| A-630 | FOOD COURT BRIDGE DETAILS |
| A-635 | MISCELLANEOUS POOL DETAILS |
| A-637 | TERRAZZO DETAILS |
| A-640 | DISPATCH DESK |
| A-641 | DISPATCH DESK |
| A-642 | GYM CONCESSIONS |
| A-643 | DISPATCH DESK |
| | |
| A-734 | CEILING DETAILS |
| A-735 | CEILING DETAILS |
| A-736 | CEILING DETAILS |
| A-737 | CEILING DETAILS |
| A-738 | LIGHT FIXTURE/CEILING DETAILS |
| A-739 | CEILING DETAILS |
| A-740 | INTERIOR COLUMN ENCLOSURES |
| A-741 | INTERIOR COLUMN ENCLOSURES |
| A-742 | MISCELLANEOUS DRYWALL DETAILS |
| A-743 | MISCELLANEOUS DRYWALL DETAILS |
| A-744 | MISCELLANEOUS DRYWALL DETAILS |
| A-745 | INTERIOR WINDOW DETAILS |
| A-746 | INTERIOR WINDOW DETAILS |
| A-747 | ROLL-DOWN GRILLE - COFFEE SHOP |
| A-750 | PARTITION DETAILS - CLASSROOM CORRIDORS |
| A-751 | CEILING/SOFFIT DETAILS |
| A-752 | PARTITION DETAILS - CLASSROOM CORRIDORS |
| A-753 | PARTITION DETAILS - LOBBY |
| A-755 | MISCELLANEOUS DETAILS - LECTURE HALL |
| A-756 | MISCELLANEOUS DETAILS - LECTURE HALL |
| A-757 | MISCELLANEOUS DETAILS - LECTURE HALL |
| A-757A | MISCELLANEOUS DETAILS - CLASSROOM CORRIDOR |
| A-758 | MISCELLANEOUS DETAILS - CLASSROOM |
| A-759 | MISCELLANEOUS DETAILS - CLASSROOM |
| A-801 | MISCELLANEOUS FLOOR DETAILS |
| A-810 | RECITAL HALL STAGE AND ANTE ROOM DETAILS |
| A-811 | RECITAL HALL ACOUSTIC PANEL DETAILS |
| A-812 | RECITAL HALL ACOUSTIC PANEL DETAILS |
| A-813 | RECITAL HALL MISCELLANEOUS DETAILS |
| A-814 | RECITAL HALL CONTROL ROOM SECTIONS/DETAILS |
| A-821 | MISC. DETAILS, FOOD SERVERY |
| A-822 | MISC. DETAILS, FOOD SERVERY |
| A-825 | MISC. DETAILS, FOOD SERVERY |

**SWIMMING POOL DRAWINGS**

| SP-1.0 | POOL PLAN AND SECTIONS |
| SP-1.1 | POOL AREA DETAILS |
| SP-2.0 | MECHANICAL PLAN & ELEVATIONS |
| SP-2.1 | POOL MECHANICAL DETAILS |

**THEATER DRAWINGS (FOR INFORMATION ONLY)**

| TE-01A | PLATFORMS |
| TE-01B | PLATFORMS |
| TE-02 | PERFORMANCE EQUIPMENT STUDIO THEATRE |
| TE-03 | THEATRE EQUIPMENT RECITAL HALL |

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement        Initials 

CR0791

| S-210 | COLUMN SCHEDULE 1 |
| S-211 | COLUMN SCHEDULE 2 |
| S-212 | WIND BRACING ELEVATIONS |
| S-213 | TRUSS ELEVATIONS 1 |
| S-214 | TRUSS ELEVATIONS 2 |
| S-215 | TYPICAL SECTIONS AND DETAILS |
| S-215A | SUPERSTRUCTURE TYPICAL DETAILS - 2 |
| S-216 | SUPERSTRUCTURE SECTIONS AND DETAILS (1) |
| S-217 | SUPERSTRUCTURE SECTIONS AND DETAILS (2) |
| S-218 | SUPERSTRUCTURE SECTIONS AND DETAILS (3) |
| S-219 | SUPERSTRUCTURE SECTIONS AND DETAILS (4) |
| S-220 | SUPERSTRUCTURE SECTIONS AND DETAILS (5) |
| S-221 | SUPERSTRUCTURE SECTIONS AND DETAILS (6) |
| S-222 | SUPERSTRUCTURE SECTIONS AND DETAILS (7) |
| S-223 | SUPERSTRUCTURE SECTIONS AND DETAILS (8) |
| S-224 | SUPERSTRUCTURE SECTIONS AND DETAILS (9) |
| S-225 | PARAPET SECTIONS AND DETAILS 1 |
| S-226 | PARAPET SECTIONS AND DETAILS 2 |
| S-227 | PARAPET SECTIONS AND DETAILS 3 |
| S-228 | SUPERSTRUCTURE SECTIONS AND DETAILS (10) |
| S-229 | SUPERSTRUCTURE SECTIONS AND DETAILS (11) |
| S-230 | SUPERSTRUCTURE SECTIONS AND DETAILS (12) |
| S-231 | SUPERSTRUCTURE SECTIONS AND DETAILS (13) |
| S-300 | EXTERIOR GIRT SYSTEM - NORTH AND WEST ELEVATIONS |
| S-301 | EXTERIOR GIRT SYSTEM - SOUTH AND EAST ELEVATIONS |
| S-302 | SLOPED EXTERIOR COLUMN GEOMETRY (1) |
| S-303 | SLOPED EXTERIOR COLUMN GEOMETRY (2) |
| S-304 | SLOPED EXTERIOR COLUMN GEOMETRY (3) |
| S-305 | SLOPED EXTERIOR GIRT GEOMETRY (1) |
| S-306 | SLOPED EXTERIOR GIRT GEOMETRY (2) |
| S-307 | SLOPED EXTERIOR GIRT GEOMETRY (3) |
| S-308 | SLOPED EXTERIOR GIRT GEOMETRY (4) |

**CON EDISON DRAWINGS**

| TRANSFORMER VAULT LAYOUT UNDER SIDEWALK | 3/9/98 |
| TRANSFORMER VAULT LAYOUT SECTIONS AND DETAILS | 3/9/98 |
| TRANSFORMER VAULT LAYOUT REINFORCEMENT PLAN | 3/9/98 |
| REMOVABLE P.C. ROOF SLAB SIDEWALK - DETAILS | 3/9/98 |

**THE FOLLOWING BID PACKAGE DRAWINGS ARE INCLUDED AS PART OF THE CONTRACT DOCUMENTS:**

| CONTRACT #3: | DUCTWORK |
| CONTRACT #6: | PLUMBING |
| CONTRACT #7: | SPRINKLER AND STANDPIPE WORK |
| CONTRACT #10: | HEATING, VENTILATION AND AIR CONDITIONING WORK |
| CONTRACT #11: | ELECTRICAL WORK |
| CONTRACT #12: | FIRE ALARM SYSTEM |
| CONTRACT #13: | AUTOMATIC TEMPERATURE CONTROLS |



CR0792



**TRATAROS**
**Construction, Inc.**
**664 64th Street**
**Brooklyn, NY 11220**

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

EXHIBIT B
SCOPE OF WORK

## G. M. Crocetti, Inc.

**TRADE: Precast Terrazzo, Epoxy Terrazzo, Interior Stonework**

A.    <u>GENERAL CONDITIONS</u>

1. The Subcontractor represents that he is familiar with, and has expertise in the scope of this work. The Subcontractor agrees that this Subcontract Agreement includes all work for that scope as may be required to make a complete job which may be fully defined in the Contract Documents.

2. The Subcontractor shall comply with all of the legal regulations including OSHA safety regulations and of other governmental agencies having jurisdiction concerning the work of this Subcontract. The Subcontractor shall deliver all notices and comply with all laws, ordinances, codes, rules and regulations bearing on the conduct of the work such as notifying local agencies and other Governmental agencies having jurisdiction.

3. The Subcontractor shall be fully responsible for all layouts of his work. Axis lines to be provided by others. This subcontractor shall coordinate with the steel shop drawings and flag any deviations. Steel surveys will be provided to this subcontractor for review. Any deviation from the contract documents will be brought to the attention of the General Contractor.

4. The Subcontractor shall collect all rubbish, scrap and other debris resulting from this Subcontractor's work, and dispose as per contract documents.

5. The Subcontractor shall place and relocate his office trailers or shanties when and where directed. It is understood that the Subcontractor is responsible for acquisition, maintenance and subsequent removal of all utility and telephone services required for his office trailers. Each structure this Subcontractor maintains must contain an appropriate number of fire extinguishers.

6. Any temporary openings required for subsequent installation of SubContractors' equipment must be brought to the attention of the General Contractor prior to completion of the pertinent work in the area of the opening needed. Failure to request access will result in the Subcontractor assuming all costs involved in the subsequent movement of the equipment, etc.

7. The Subcontractor must take special care in stocking own material on floors to allow other trades free access to their work and not to overload the slabs.

8. The Subcontractor will provide protection necessary to safeguard his own work, as well as the work of other trades, from damages by his own operations.

9. The Subcontractor has visited and carefully examined the project site and is familiar with the existing conditions and difficulties that may affect the execution of own work. The Subcontractor agrees that he will take all necessary steps to avoid damages to the existing areas. Any damages caused by this Subcontractor will be repaired by Subcontractor at no additional cost to the General Contractor. The Subcontractor is cautioned that due to the location of this job he may encounter certain areas of special coordination involving traffic congestion, building access, security requirements, material delivery, etc. It is understood that the Subcontractor is aware of these conditions and that the Subcontractor will not attempt to seek additional monies for hardships that may arise due to his having to take special measures and precautions regarding the same.

    TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement    Initials 

CR0793

B.    <u>SCOPE OF WORK</u>

Without restricting the generality of work which shall be performed within the contract price.  It is clearly understood and agreed that the Subcontractor shall provide all material, labor, trucking, hoisting, fees, engineering, scaffolding, power hookups, protection, shop drawings, permits, templates, quality, assurance, layout, warranties, guarantees, submittals, equipments, supervision, insurance, etc., necessary for the furnishing and installation of all specified and related work contained herein in accordance with the Contract Drawings, Specifications, Addendums, 1, 2 and 3.

The Scope of Work shall include, but not be limited to, all the work in the following Specification Section (s), except such work as may be specifically excluded in Paragraph "C" "WORK NOT IN SUBCONTRACT".

Specification Section

| | |
|---|---|
| 04450 | Interior Stonework |
| 09410 | Precast Terrazzo |
| 09420 | Epoxy Terrazzo |

Also included in this contract are the requirements of the following specification(s) as they pertain to this subcontractors work.

| | |
|---|---|
| 03300 | Cast-in-Place Concrete |
| 04210 | Brick Masonry |
| 04440 | Stone Testing |
| 04450 | Exterior Stone Work |
| 05510 | Metal Stairs |
| 05700 | Ornamental Metal |
| 06400 | Architectural Woodwork |
| 06420 | Wood Paneling |
| 07900 | Joint Sealers |
| 09250 | Gypsum Drywall |
| 09685 | Glue-Down Carpeting |
| Division 15 | Plumbing – Sinks and Fitting |

Subcontractor shall be responsible for examining all of the Documents listed on the "List of drawings and Specifications (EXHIBIT A) and all items related to this subcontractor's work and called for in these documents shall be included in Subcontract price.

In addition to the above Specification, this Subcontractor's work will include but not be limited to the following items, highlights, clarifications and/or modifications.

1.  This Subcontractor shall furnish and install all epoxy terrazzo complete in strict accordance with contract drawings, specifications and addendums 1 & 2 including but not limited to:

    a.  Epoxy terrazzo floors where scheduled
    b.  Crack suppression membrane
    c.  Precast terrazzo bases
    d.  Divider and control strips
    e.  Colorants and primers
    f.  Cleaners and sealers
    g.  Field constructed mock-up
    h.  The use of specified manufacturers
    i.  Sloping to drains

2.  This Subcontractor shall furnish and install precast terrazzo complete in strict accordance with contract drawings, specifications and addendums 1 & 2 including but not limited to:

    a.  Stair treads and platforms
    b.  Mortar setting materials
    c.  Integral abrasive strips for stair treads

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement    Initials 

CR0794

    d.  Food service tray slide and food guard top
    e.  The use of specified manufacturers
    f   Connecting, anchoring means and method to steel stairs including anchoring devices and all other appurtenances

3.  This Subcontractor shall furnish and install all interior stonework complete in strict accordance with contract drawings, specifications and addendums 1 & 2, including but not limited to:

    a.  Interior stonework as scheduled in specification including brick wall coping, counter tops, security desk, atrium coffee bar, theater-concession, front counter, dispatch desk, gym concessions, toilet room vanities, etc.
    b.  Mortar setting materials
    c.  Shop fabrication and finishing
    d.  Anchoring devices
    e.  Grouting and pointing joints
    f.   The use of specified manufacturers

4.  In general this Subcontractor shall furnish and install all items mentioned in "Scope of Work" which is required by Contract #16 in quantities shown on drawings.

5.  Subcontract price includes allowances of 10,000 SF for repairing random cracks and 20,000 SF for flash patching utilizing a silca graded sand with epoxy in ¼" thickness as indicated in addendum #1.

6.  Subcontractor shall furnish and install all joint sealers if necessary integral with own work in strict accordance with contract drawings, specifications, and addendums 1 & 2.

7.  Subcontract Price includes all material hoisting charges as indicated in Supplemental General Conditions of Contract Documents.

C.  <u>WORK NOT IN SUBCONTRACT</u>

    1.  Ceramic Tile
    2.  Quarry Tile
    3.  Protection
    4.  *Rubbish Removals*

D.  <u>TIME OF PERFORMANCE</u>

This Subcontractor understands the Project Schedule and phasing plan provide by owner.  Subcontractor shall immediately expedite the submission of shop drawing samples and ordering of materials and equipment so that work of this Subcontract shall be installed in sufficient time to comply with the Project Construction Schedule.  This Subcontractor agrees that the following specific scheduling intervals shall be maintained by him and coordinated with other trades provided that the work of others has advanced sufficiently to permit the sequencing as called for:

    1.  Work under this Subcontract shall commence immediately upon receipt of instructions from the General Contractor and shall proceed when and where directed, with sufficient labor and manpower, to allow the entire Project to be completed in accordance with the Project Construction Schedule.  The work under this Subcontract shall follow all interim schedules that may be issued by the General Contractor, as the job conditions require.

    2.  Due to the aggressive schedule provided by owner, all drawings, schedules, literature, samples, certifications, schedule of values, etc. as required by specifications shall be submitted immediately so as not to delay project schedule.

    3.  The Subcontractor understands that work of this trade may not be continuous and that he may be required to work out of sequence and/or leave a portion of work out due to coordination at the direction of the General Contractor.  There shall be no charges for "comeback time" or out of sequence work.

    4.  The Subcontractor shall be prepared to commence his work as directed by General Contractor provided that the work of others has advance sufficiently to permit such a start and shall be capable

CR0795

of completing his work in accordance with the Project Construction Schedule.

E.   BOND

The Subcontractor shall furnish at Subcontractor's expense a Performance and Payment Bond in the full amount of this Subcontract. Performance and payment bonds for subcontractors work shall be provided by the subcontractor and are to be issued by a U.S. Department of Treasury listed bonding company acceptable to the Contractor for the full amount of the subcontract. The cost is to be born by the subcontractor and is included in the amount of this Subcontract Agreement.

F.   ALTERNATES

**The following Alternates shall be excluded when required by the General Contractor and shall be inclusive of furnishing and installing all materials, labor overhead and profit, taxes, equipment, trucking, handling, engineering and layout, hoisting, scaffolding, appliances, permits, insurance, delivery and supervision required for a complete Scope of Work pursuant to contract documents and throughout the course of construction and shall be valid for additions to or deletions from contract amount.**

1.   In the event that subcontractor is required to furnish and install all epoxy terrazzo flooring and bases at office corridors on floors 3-13 as indicated in contract documents;

ADD: $625,000.00

2.   In the event that subcontractor is required to furnish and install all terrazzo flooring and bases at classroom corridors on floors 3-13 as indicated in contract documents;

ADD: $1,050,000.00



CR0796

Subcontractor No. <u>B09-09420</u>



**TRATAROS**
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

**BARUCH ACADEMIC COMPLEX**
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

**EXHIBIT C**
**INSURANCE AND INDEMNIFICATION RIDER**

Prior to commencement of any work under this Contract and until all obligations under this contract are fulfilled, the subcontractor and each and every lower tier Subcontractor of the Subcontractor shall, at its sole expense, maintain the following insurance on its own behalf, and furnish to Trataros Construction, Inc. (hereinafter referred to as "Contractor"), certificates of insurance evidencing same and reflecting the effective date of such coverage as follows:

The term "Subcontractor" as used in this insurance rider shall mean and include Subcontractors of every tier.

Subcontractor shall, at its own expense, maintain in effect until final completion and acceptance with insurers and through policy forms satisfactory to Contractor, minimum insurances as described below. Before permitting any lower tier Subcontractor to perform any work under this subcontract, Subcontractor shall require that Contractor be furnished satisfactory evidence that the lower tier Subcontractor maintains insurance similar to that required below.

Subcontractor shall procure and maintain the following minimum insurance coverages:

The following limits or specific coverages do not restrict or limit any contractual obligation between the parties as may be defined elsewhere. Contractor failure to identify insurance deficiencies does not relieve the Subcontractor from any insurance obligations.

I)    WORKERS COMPENSATION AND OCCUPATIONAL DISEASE INSURANCE & EMPLOYERS LIABILITY INSURANCE covering all
      Subcontractors' employees directly or indirectly engaged in the performance of the subcontract. The latter insurance shall not provide less that $1,000,000
      including.

              - USL&H - 'if any' basis, where applicable
              - Include all states endorsement, where applicable
              - All insurers shall agree to waive the right of subrogation against the Owner and Contractor
              - Certificate must clearly identify that coverage applies in state of operation.

The Subcontractor shall provide a copy of the "Employer's First Report of Injury" or its equivalent to Contractor within thirty (30) days of any injury or illness to any employee of the contractor arising out of, or alleged to have arisen out of or during the course of work performed on this project.

II)   DISABILITY INSURANCE: As required by New York State Law

III)  GENERAL LIABILITY

      A) Commercial General Liability Form
         1988 ISO Occurrence Form or equivalent (identify form # and edition date on certificate)

      Limits:  $5,000,000 - Each occurrence for Bodily Injury and Property Damage
               $5,000,000 - Products, Completed Operations Aggregate Limit
               $5,000,000 - General Aggregate* Limit (other than Products/Completed Operations)
               $5,000,000 - Personal Injury Liability

*General Aggregate MUST include per project endorsement (must evidence on certificate).
Above limits will be revised to coincide with Owner's requirements if necessary.

Policy coverage terms and conditions to include:

1)    Premises/Operations - must cover all work to be performed by Subcontractor & their Subcontractors.
2)    Contractual Liability written specifically for this contract.
3)    Products/Completed Operations must include a two year extension beyond acceptance date (refer to attached wording).
4)    Broad Form Property Damage including completed operations.
5)    Independent Contractors.
6)    Blanket Explosion, Collapse & Underground Property Damage Liability.
7)    Employees as additional insureds.
8)    Supplementary payments in addition to limit of liability.
9)    Contractual exclusion pertaining to operations performed within 50' of railroad must be eliminated (if applicable)
10)   Additional Insureds:  See Item VIII.15 for specific listing of necessary additional insured.
                A) Owner
                B) Contractor
                C) Other
11)   Any deductible causes, exclusions or special endorsements must be approved by contractor prior to inclusion.
12)   Insuring agreement to read "to pay on behalf of".
13)   Waiver of subrogation for Owner, Contractor, its director, officers, employees, subsidiaries and affiliates.
14)   Severability of interests. (cross liability)



CR0797

IV) COMMERCIAL BUSINESS AUTOMOBILE

Covering all owned, non-owned & hired vehicles

Limit: $5,000,000 any one loss for Bodily Injury (including death) & Property Damage combined.
- Contractual liability
- All insurers agree to waive their rights of subrogation against Owner and Contractor, its directors, officers, employees, subsidiaries and affiliates.

V) BUILDER'S RISK/INSTALLATION FLOATER

Where an Off Project Site Property exposure exists, the Contractor at its sole expense shall furnish to Contractor Certificates of Insurance and other required documentation evidencing the following coverage which shall provide for the interests of Contractor To be named as Loss Payees and shall contain a provision requiring the insurance carriers to waive their rights of subrogation against all indemnities named in the contract.

| | |
|---|---|
| NAMED INSURED: | Owner, contractor & Subcontractor, AJMA |
| LIMITS OF LIABILITY: | Amount of subcontract (unless otherwise specified in owner's specifications) |
| DEDUCTIBLE: | $500 per occurrence |

COVERAGE INCLUDING:

1. 60 days notice of cancellation, non-renewal or material policy change
2. "All risk" of loss including flood, earthquake and earth movement
3. Replacement cost valuation
4. Transit limit to offsite storage
5. Agreed amount clause
6. Property in the insured's care, custody and control covered
7. Testing/processing shall be a covered peril.
8. Electrical injury/damage shall be a covered peril.
9. Waive rights of subrogation against contractor and owner.
10. Coverage to apply until machinery/equipment, etc. has been installed and been accepted as satisfactory, coverage to apply after materials have become a physical part of realty.
11. Error, omission or deficiency in design, workmanship or materials shall be considered a covered peril.
12. Exclusion pertaining to property, while it is on premises owned, leased or operated by the insured shall be deleted.
13. Full theft coverage without exception.
14. Permission granted to complete and occupy (if applicable)
15. Eliminate underground exclusion.
16. Standard city wording or special cancellation clauses, when mandated.

VI) POLLUTION LIABILITY INSURANCE

When applicable, Subcontractor shall furnish evidence that it has provided Pollution Liability Insurance covering all lead, asbestos and pollution operations with limits not less than $1,000,000* each occurrence combined singe limit for bodily injury, property damage and clean-up costs including completed operations (5 year continuation beyond acceptance), broad form contractual (including coverage for third party over claims), and independent contractors coverage. If policy contains a general aggregate, this aggregate must apply on a per project basis, all of which must be evidenced on certificate. All insurers agree to waive their rights of subrogation against the additional insureds and the Contractor and its directors, officers, employees, subsidiaries, and affiliates.

- Defense costs must be payable in addition to limit of liability

- Any deductibles, clauses, exclusions or special endorsements must be approved by Contractor prior to inclusion.

- Coverage must include on-site, off-site and in-transit exposures.

- Policy to read "to pay on behalf of" (in lieu of indemnify).

- Must include loading and unloading coverages.

- Must be written on occurrence form.

- Policy to be submitted to the Contractor for review and approval.

- Higher limit to be obtained, if mandated.

Note: The Contractor, at its option, may require a separate contractor's protective liability policy in Contractor's name (at Subcontractor's expense)

VII) ADDITIONAL INSURED ENDORSEMENTS:

Insurance policies specified in III and IV above shall be endorsed to name Owner and Contractor, its directors, officers, employees, subsidiaries and affiliates as additional insureds, and shall stipulate that this insurance is primary, that any other insurance or self-insurance maintained by Owner and Contractor be excess only and shall not be called upon to contribute with this insurance. ISO Additional Insurance Endorsement form number CG2010 1185 Contractors Form B must be utilized and accompany the Certificate of Insurance.

NOTE: Contractor at its option may require a separate contractor's protective liability policy in contractor's name (at subcontractor's expense.)

Initials 

CR0798

VIII) APPLICABLE TO ALL INSURANCES:

1.  Higher limits required depending upon particulars of each specific contract may be obtained. The above limits may be written by combination of CGL & Umbrella policies.

2.  Certificates must include an insurer obligation to provide sixty (60 days) prior written notice of cancellation, material change and non-renewal by certified mail, return receipt requested.

3.  Certificates and endorsements as required must be submitted to Contractor prior to commencement of any work.

4.  Contractor has the right but not the duty to receive copies of all insurance policies upon request. Policies shall not contain any exclusion that are unacceptable to Contractor. If requested by Contractor, all policies must be certified by an insurance carrier as being true and complete.

5.  Contractor must be provided updated renewal certificates and required endorsement as appropriate. Failure of Contractor to request renewal certificates or endorsements does not relieve the Subcontractor from the obligation to maintain such insurances as required herein.

6.  Any deductibles or self-insured retention included within any of the above insurances shall be the responsibility of the Subcontractor.

7.  Owner and Contractor have no obligation for premium payments. Subcontractor acknowledges that any sums necessary for premium payment related to this Subcontract will not be in addition to the price of this Subcontract.

8.  If at any time during the period of this subcontract, insurance as required is not in effect of proof thereof is not provided to Contractor, Contractor shall have the option to:

    a)  Direct the Subcontractor to suspend work with no additional cost of extension for time due on account thereof; or

    b)  Treat such failure as a material breach/default in respect of the Subcontract.

9.  If subcontracted operations involve or are anticipated to involve hazardous operations including but not limited to lead, pollution or asbestos liability, special insurance must be implemented for same. Subcontractor will be responsible for premium.

10. If required by Owner, Contractor may require Subcontractor to carry an Installation Floater covering materials to be installed under Subcontractor's portion of the work. Contractor will advise Subcontractor of same by addendum.

11. Contractor may, at its option, allocate to Subcontractor its proportionate share of the cost of obtaining Builder's Risk (All Risk) insurance, as required by Owner

12. Claims made policies are not acceptable.

13. The amount of insurance contained in aforementioned insurance coverages, shall not be construed to be a limitation of the liability on the part of the Subcontractors or any of their Subcontractors in any tier.

14. The subcontractor shall file certificates of insurance prior to the commencement of work and/or payment with the Contractor which shall be subject to the Contractor's approval of adequacy of protection and the satisfactory character of the Insurer.

15. Trataros Construction, Inc., Baruch College, D.A.S.N.Y., C.U.N.Y., TDX Construction Corp. and The University Construction Fund all must be evidences as Additional Insureds in accordance with all contract obligations.

IX) HOLD HARMLESS AGREEMENT/INDEMNIFICATION AGREEMENT TO ALL WHOM THESE PRESENTS SHALL COME OR MAY CONCERN

To the fullest extent permitted by law, the Subcontractor shall indemnify, hold harmless and defend the Contractor, Owner and all of their agents, directors and employees from and against all claims, damages, demands, losses, expenses, causes of action, suits or other liabilities, (including all costs and reasonable attorney' fees), arising out of or resulting from the performance of Subcontractor's Work under the Subcontract, ' provided any such claim, damage, demand, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless whether it is caused in part by a party indemnified hereunder. This indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under any workers' compensation acts, disability benefits acts or other employee benefits acts. This indemnification shall be in addition to any indemnity liability imposed by the Contract Documents.

X) WAIVER OF SUBROGATION

The General Liability, Automobile Liability, Employers' Liability and Umbrella Liability policies are required to contain a waiver of all subrogation rights of both the subcontractor and their Insurance Company against Trataros Construction Inc. The Certificate of Insurance shall indicate that such waiver is in effect.



CR0799

Subcontractor No. B09-09420



**TRATAROS**
**Construction, Inc.**
**664 64th Street**
**Brooklyn, NY 11220**

**BARUCH ACADEMIC COMPLEX**
**55 Lexington Avenue**
**New York City, NY 10010**

**General Construction Work**
**Package No. 2 - Contract No. 16**
**DASNY Project No. 6500 1802 2178**

**EXHIBIT D**
**PARTIAL LIEN WAIVER**

GREETINGS: KNOW YE, that_____ (Subcontractor supplier) a corporation organized and existing under and by virtue of the laws of the State of_____, with an office and principal place of business in_____, acknowledges receipt of payment for all labor, materials or services up to and including the date of_____referred to hereinafter as the "release date" paid by TRATAROS CONSTRUCTION INC, a corporation organized an existing under the laws of the State of NEW YORK with an office and principal place of business in BROOKLYN, has to the "release date" remised, released and forever 'discharged, and by these presents does for itself and its successors, remised release and forever discharge TRATAROS CONSTRUCTION INC and _____ (surety) a corporation organized and existing under the laws of the New York with an office and principal place of business in_____, its successors, heirs, executors and administrators, of and from all, and all manner of action and actions, cause and causes of actions, suits debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, , trespasses, damages, Judgments, extents, executions, claims and demands whatsoever, in laws, in admiralty, or in equity which against the said TRATAROS CONSTRUCTION INC and said _____, said ever lead, now lead or which it or its successors, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the "release date", and especially in connection with any and all claims of any nature whatsoever arising out of the construction project known as located at in the Town of and the State of _____.

FURTHER, and in addition to the foregoing, said _____ does hereby to the "release date" forever waive, relinquish and release any mechanic's, materialman's or like liens, and all claims of liens it now has, may have or may obtain in the future upon a piece of land and all the buildings thereon standing, known as_____ located at _____ in the Town of _____ and the State of _____ **upon receipt of payment due on said release date. Release is contingent of payment.**

FURTHER and in addition to the, foregoing, said _____ does hereby expressly release, waive and relinquish any and all right or claim it may now have or may hereafter have under the Surety Labor and Material Payment Bond provided on said project by TRATAROS CONSTRUCTION INC as principal and the _____ as surety.

IN WITNESS WHEREOF, the said _____ has caused its corporate seal to be hereunto affixed and these presents to be signed by its_____ on the day of _____, nineteen hundred and ninety.

Signed, sealed and delivered
in the presence of:

_____    BY

_____    Its

STATE OF                                                           SS:

COUNTY OF

On this the _____ day of _____, 19__,before me, _____the undersigned officer, personally appeared _____ who acknowledged himself to be the _____ of _____ and to be duly authorized by said corporation to execute the foregoing document on behalf of said corporation, and that he, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing" the name of the corporation by himself as _____

In witness whereof I hereunto set my hand and official seal.

_____
Commissioner of the Superior Court/Notary Public

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement        Initials 

CR0800



**TRATAROS**
**Construction, Inc.**
**664 64th Street**
**Brooklyn, NY 11220**

**BARUCH ACADEMIC COMPLEX**
55 Lexington Avenue
New York City, NY 10010

**General Construction Work**
**Package No. 2 - Contract No. 16**
**DASNY Project No. 6500 1802 2178**

**EXHIBIT F.**
**FINAL RELEASE**

TO ALL WHOM THESE PRESENTS SHALL COME OR MAY CONCERN,

GREETINGS: KNOW YE, that _____.
                              (A supplier/Subcontractor to our Subcontractor/Supplier)
a corporation organized and existing under and by virtue of the laws of the State of_____with an office and principal place of business in
_____, for and in consideration of the sum of one dollar ( $100) lawful money of the United States of America and other good consideration
to it in hand paid by _____ a corporation organized and existing, under the laws of the State of - with an office and principal
place of business in tie receipt whereof is acknowledged, has remised released and forever discharged, hereby and by these presents does for itself and its
successors, remise, release and forever discharge TRATAROS CONSTRUCTION INC a corporation organized and existing under the laws of the State of New
York and _____ (surety) a corporation organized and existing under the laws of the State of _____ with an office and
principal place of business in _____, its successors, heirs, executors and ad, administrators of and from all, and all manner of action and actions,
cause and causes of actions, suits, debts, dues, suings of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements,
promises, variances, trespasses, damages, judgments, extents, execution, claims and demands whatsoever, in laws, in admiralty, or in equity which against the said
TRATAROS CONSTRUCTION INC, and said _____NY , said ever had, now had or which: it or its successors, hereafter can, shall or
may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of tie world to the day of the date of these presents, and especially in
connection with any and all claims of any nature whatsoever arising out of the construction project known as_____ located at
_____ in the Town of _____ and the State of _____.

FURTHER and in addition to the foregoing, said_____ does hereby forever waive, relinquish and release any mechanic's,
materialman's or like liens, and all claims of liens it now has, may have or may obtain in the future upon a piece of land and all the buildings thereon standing,
known as _____, situated in _____.

FURTHER and in addition to the, foregoing, said _____ does hereby expressly release, waive and relinquish
any and right or claim it may now have or may hereafter have under the Surety Labor and Material Payment Bond provided on said project by TRATAROS
CONSTRUCTION INC as principal and the _____ as surety.

IN WITNESS WHEREOF, the said _____ has caused its corporate seal to be hereunto affixed and these presents
to be signed by its_____ on the day of _____, nineteen hundred and ninety.

Signed, sealed and delivered
in the presence of:

_____ BY

_____ Its

STATE OF

COUNTY OF                                      SS:

On this the _____ day of _____, 19__,before me, _____the undersigned officer, personally appeared
_____ who acknowledged himself to be the _____ of _____ and to be duly
authorized by said corporation to execute the foregoing document on behalf of said corporation, and that he, being authorized so to do, executed the foregoing
instrument for the purposes therein contained, by signing" the name of the corporation by himself as _____

        In witness whereof I hereunto set my hand and official seal.

                                                        _____
                                                        Commissioner of the Superior Court/Notary Public

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement                    Initials 

CR0801



**TRATAROS**
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

EXHIBIT F
SUBCONTRACTOR SIZE CERTIFICATION

Please check off which business indicates the size of your company:

"This is to certify that _G. M. Crocetti, Inc._ is ":

( )     Small Business

( )     Small Disadvantage Business

( )     Women Owned Business

(X)     Large Business

( )     Other     Explain:_____

X _____ _VP_
    Signature of Officer

Please refer to Small Business size regulations part 121.1 for CFR size standards.

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement

Initials _____

CR0802



**TRATAROS**
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

## RIDER "G" TO ALL SUBCONTRACTS AND/OR PURCHASE ORDERS

In accordance with terms of the contract, you are required to provide the following information within five (5) working days:

A) Name and Address of Material Vendor/Supplier:

_Terrazzo Marble Supply_
_5700 South Hamilton Ave., Chicago, Illinois 60636_

B) Name of Material Fabricator:

_N/A_

C) Name of Equipment Rental/Distributor:

_N/A_

D) Certified Payroll Report;

E) Certificate of Insurance;

F) Proposed Delivery Schedule;

G) Proposed Itemized Contract Cost Breakdown, including Labor, Materials, Equipment;

H) Certified Statement Confirming Labor Benefits Contributions have been satisfied;

<u>Include address, telephone number, fax number and person to contract.</u>

Be advised that progress payments and/or final payment, payment of retainage, shall be subject to receipt, acceptance and verification of Item "A" through "H" mentioned above.

SUBCONTRACTOR:

**G. M. Crocetti, Inc.**

BY: _Arthur C. Cavazzi, V.P._  V.P.

DATE: _3/29/99_

TRATAROS/G. M. Crocetti, Inc. Subcontract Agreement          Initials _ACC_

CR0803

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> - against - <br><br> DORMITORY AUTHORITY – THE STATE OF NEW YORK, TDX CONSTRUCTION CORP., and KOHN PEDERSEN FOX ASSOCIATES, P.C., <br><br> Defendants. | Case No. 07 Civ. 6915 (DLC) <br><br><br> **THIRD-PARTY COMPLAINT** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP., <br><br> Third-Party Plaintiffs, <br><br> - against - <br><br> TRATAROS CONSTRUCTION, INC., <br><br> Third-Party Defendant. | |

Third-party plaintiffs Dormitory Authority of the State of New York and TDX

Construction Corp., by their attorneys, Holland & Knight LLP, as and for their complaint against

the third-party defendants allege:

*Parties, Jurisdiction and Venue*

1.      Third-party plaintiff Dormitory Authority of the State of New York ("DASNY")

is a public benefit corporation organized and existing under the Public Authorities Law of the

State of New York, with its principal place of business located at 515 Broadway, Albany, New

York.

2.      Third-party plaintiff TDX Construction Corp. ("TDX") is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 345 Seventh Avenue, New York, New York.

3.      Upon information and belief, third-party defendant Trataros Construction, Inc. ("Trataros") is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 664 64th Street, Brooklyn, New York.

4.      This Court has jurisdiction over this third-party action pursuant to 28 U.S.C. § 1367(a).

5.      This District is the proper venue for this third-party action under 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the cross-claims asserted herein occurred within this District.

*Facts*

6.      This case arises from the construction of a 785,000 gross square foot, 14 story structure located on Lexington Avenue between 24th and 25th Streets in the borough of Manhattan (the "Project"), which was designed to house Baruch College's School of Liberal Arts and Sciences, Business School, Executive Program Division, recreational and performance facilities, and various student activity areas.  The Project is commonly known as the Baruch Academic Complex, Site B.

7.      The Project was designed by Kohn Pedersen Fox Associates, P.C. ("KPF") and built in accordance with the Wicks Law, N.Y. State Finance Law § 135, using multiple trade construction contractors (the "Prime Trade Contractors").

8.      Pursuant to written agreements between DASNY and TDX, TDX performed construction management services for the Project.

- 2 -

9.      On or about April 22, 1998, DASNY, as owner, and Trataros Construction, Inc. ("Trataros"), as contractor, entered into Agreement No. 6500 1802 2176 ("Contract No. 15"). Contract No. 15 required Trataros to provide all labor and material necessary to perform specified general construction work on the Project for the fixed sum of $50,222,000.00. Contract No. 15 included plans, specifications, general conditions and other terms, conditions, obligations, duties, and requirements that Trataros agreed to assume and comply with.

10.     On or about April 22, 1998, Trataros, as principal, and Reliance Insurance Company ("Reliance"), as surety, executed and delivered a labor and material payment bond and a performance bond for Contract No. 15, each having the penal sum of $50,222,000.00 and naming DASNY as obligee.

11.     On or about August 27, 1998, DASNY, as owner, and Trataros, as contractor, entered into Agreement No. 6500 1802 2178 ("Contract No. 16"). Contract No. 16 required Trataros to provide all labor and material necessary to perform specified general construction work at the Project for the fixed sum of $24,140,000.00. Contract No. 16 included plans, specifications, general conditions, and other terms, conditions, duties, and requirements that Trataros agreed to assume and comply with.

12.     On or about August 27, 1998, Trataros, as principal, and Reliance, as surety, executed and delivered a labor and material payment bond and a performance bond for Contract No. 16, each having the penal sum of $24,140,000.00 and naming DASNY as obligee.

13.     Upon information and belief, on or about May 31, 2000, Travelers Casualty and Surety Company ("Travelers") acquired the surety and fidelity business written by Reliance Group Holdings, Inc., including bonds written by Reliance. All duties, rights, and obligations of

Reliance under the labor and material payment and performance bonds for Contract No. 15 and Contract No. 16 were assumed by Travelers by virtue of that transaction.

14.    Trataros entered into various subcontract agreements and purchase orders with trade contractors and material suppliers ("Trataros' Subcontractors and Suppliers") that obligated those subcontractors and suppliers to fulfill certain of Trataros' obligations and under Contract No. 15 and Contract No. 16.

I. *Project Delays*

15.    Contract No. 15 and Contract No. 16 required Trataros to complete its work in accordance with schedules that were developed with input from Trataros and its subcontractors. By entering into Contract No. 15 and Contract No. 16, Trataros agreed to complete the work in accordance with the sequences, milestones and completion dates in those schedules and any updates thereto.

16.    Time was of the essence under Contract No. 15 and Contract No. 16.

17.    Contract No. 15 and Contract No. 16 each contained a provision requiring Trataros to pay DASNY liquidated damages in the amount of $500.00 per day for each and every day that Trataros was in default after the specified time of completion.

18.    Trataros failed to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16.

19.    Trataros' failure to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16 delayed, disrupted and impacted work performed on the Project by other Prime Trade Contractors and Trataros' Subcontractors and Suppliers.  Trataros also is responsible for a delay to the overall completion of the Project.

20.    The delays, disruptions and impacts to work performed by other Prime Trade Contractors and Trataros' Subcontractors and Suppliers is attributable to, *inter alia*, Trataros' failure to properly plan, schedule, coordinate or manage the work and Trataros' failure to provide adequate labor, material and equipment to effectively phase and complete their work.

21.    Certain Prime Trade Contractors have submitted claims to DASNY seeking additional compensation and extensions of time due to alleged delays, disruptions, impacts and inefficiencies. To the extent that DASNY has any responsibility for these claims, that responsibility is at least partially attributable to Trataros' failure to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16 and Trataros' failure to properly administer and execute its work.

22.    Some of Trataros' Subcontractors and Suppliers have submitted claims to Trataros seeking additional compensation and extensions of time due to alleged delays, disruptions, impacts and inefficiencies. Trataros and/or Travelers are attempting to pass liability for these claims through to DASNY and/or TDX. To the extent that DASNY and/or TDX have any responsibility for these claims, that responsibility is partially or completely attributable to Trataros' failure to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16 and Trataros' failure to properly administer and execute its work.

23.    The City University of New York ("CUNY") for whom DASNY oversaw and administered the construction of the Project, suffered substantial damages due to Trataros' delays in completing its work under Contract No. 15 and Contract No. 16. DASNY also suffered substantial damages as a result of Trataros' delays.

II.     *Construction Defects*

24.     Contract No. 15 and Contract No. 16 included plans and specifications that set forth the technical requirements for both the performance and quality of the work.

25.     Trataros agreed to perform its work in accordance with the technical and quality requirements set forth in Contract No. 15 and Contract No. 16.  Trataros also agreed to comply with applicable industry standards and state and local building codes and regulations.

26.     The work performed by Trataros and its subcontractors failed to satisfy the technical and quality requirements in Contract No. 15 and Contract No. 16 or accepted industry practices.

27.     As a result of Trataros and its subcontractors' failure to satisfy the technical and quality control requirements in Contract No. 15 and Contract No. 16 and accepted industry standards, significant portions of Trataros' work were defective, substandard or otherwise unacceptable.  This nonconforming work had to be repaired or replaced at significant expense to DASNY.

28.     In addition to the construction defects described above, Trataros also failed to install flooring material in the Project in accordance with the requirements of Contract No. 15 and Contract No. 16 and accepted industry standards.

29.     The construction documents for the Project specified epoxy terrazzo as the interior finished flooring material for thousands of square feet of public space in the Project.

30.     The epoxy terrazzo installation was part of the scope of work assigned to Trataros under Contract No. 16.  Trataros subcontracted the epoxy terrazzo work to G.M. Crocetti, Inc. ("Crocetti").

- 6 -

31.    The epoxy terrazzo that Trataros and Crocetti installed in the Project is deteriorating and is otherwise defective.  Among other things, the epoxy terrazzo is cracking and crumbling at the perimeter of the poured area at the zinc divider strips over substantial areas of the epoxy terrazzo installation.  The epoxy terrazzo is also delaminating and "blistering" in increasingly larger areas.

32.    The failure of the epoxy terrazzo was caused by defective workmanship and inappropriate materials provided by Trataros and its subcontractors and suppliers, who, among other things, failed to properly prepare and install the material according to either the contract documents or the manufacturer's prescribed procedures.

33.    The remediation of the defective epoxy terrazzo will cause major disruptions to CUNY's operation in the building and will cost an estimated thirteen million dollars or more to accomplish.

34.    Trataros is contractually responsible for the defective epoxy terrazzo installation on the Project in addition to being responsible for all of the costs arising out of its satisfactory remediation.

## FIRST CAUSE OF ACTION
(Contractual Indemnification of DASNY)

35.    Third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 34 above, as if the same were set forth at length herein.

36.    Contract No. 15 and Contract No. 16 require Trataros to indemnify and hold harmless DASNY and DASNY's clients against all claims by third persons on account of loss or damage of any kind whatsoever arising or alleged to arise out of or as a result of or in connection with Trataros' performance of the work.  Contract No. 15 and Contract No. 16 also require

Trataros to bear the risk for all losses sustained or alleged to have been sustained resulting from Trataros' negligence or alleged negligence.

37.     In the complaint filed in this action by Travelers, Travelers alleges that subcontractors of Trataros have suffered damages as a result of delays and other matters allegedly beyond their control, and seeks damages from DASNY on behalf of such subcontractors.

38.     To the extent that DASNY is held liable to Travelers on account of any damages suffered by Trataros' subcontractors as a result of Trataros' negligence, Trataros is required to indemnify DASNY and hold DASNY harmless.

39.     To the extent that DASNY is liable or responsible for any claims for additional compensation by other Prime Trade Contactors as a result of Trataros' negligence, Trataros is required to indemnify DASNY and hold DASNY harmless.

40.     To the extent that DASNY is liable or responsible for any claims for additional compensation by any other third party as a result of Trataros' negligence, DASNY is entitled to indemnification from and to have judgment over against Trataros, in the amount of any judgment or verdict against DASNY in this action by Travelers or any third party.

## SECOND CAUSE OF ACTION
(Common Law Indemnification of DASNY)

41.     Third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 40 above, as if the same were set forth at length herein.

42.     Trataros performed its responsibilities on the Project negligently and/or recklessly.

43.     Trataros' negligent and/or reckless performance of its responsibilities on the Project and/or Trataros' culpable conduct caused the damages alleged by Travelers in its complaint in this action.

44.     If any damages are awarded against DASNY, such damages were actually caused by reason of Trataros' negligence, recklessness, and/or culpable conduct.

45.     In the event that Travelers recovers a judgment against DASNY in this action, or DASNY otherwise becomes obligated to pay Travelers for claims arising from or in connection with the Project, such liability on the part of DASNY, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of Trataros, and will not have been caused by any culpable conduct on the part of DASNY.

46.     In the event that any other third party recovers a judgment against DASNY or DASNY otherwise becomes obligated to pay claims to a third party arising from or in connection with the Project, such liability on the part of DASNY, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of Trataros, and will not have been caused by any culpable conduct on the part of DASNY.

47.     Accordingly, Trataros as the actual tortfeasor is liable to DASNY, and DASNY is entitled to indemnification from and to have judgment over against Trataros, in the amount of any judgment or verdict against DASNY in this action by Travelers or any third party.

**THIRD CAUSE OF ACTION**
(Contribution to DASNY)

48.     Third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47 above, as if the same were set forth at length herein.

49.     Trataros' negligent performance of its responsibilities on the Project caused or contributed to the damages alleged in Travelers' complaint to have been incurred on the Project.

50.    In the event that Travelers recovers a judgment against DASNY in this action, or DASNY otherwise becomes obligated to pay Travelers or any third party for claims arising from or in connection with the Project, such liability, by operation of law or otherwise, will have been caused by Trataros' negligence, carelessness, breach of contract, breach of warranty, and/or other culpable conduct, and will not have been caused by any negligence, carelessness, breach of contract, breach of warranty, and/or other culpable conduct on the part of DASNY.

51.    Pursuant to Article 14 of the New York Civil Practice Law and Rules, DASNY is entitled to recover damages in the amount of any judgment against DASNY by Travelers and/or any other third party as determined in accordance with their relative culpability, and DASNY is entitled to have judgment over against Trataros in an amount equal to any excess paid by DASNY over and above DASNY's equitable share, with interest.

## FOURTH CAUSE OF ACTION
### (By DASNY for Breach of Contract – Delays, Disruptions and Impacts )

52.    Third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 51 above, as if the same were set forth at length herein.

53.    DASNY entered into two valid, binding, and enforceable written prime contracts with Trataros for the construction of certain work on the Project under Contract No. 15 and Contract No. 16.

54.    Under Contract No. 15 and Contract No. 16, Trataros was obligated to perform all of the items in the contractual scope of work in accordance with the sequences, milestones and the time periods provided for in the schedules for the work.

55.    Trataros breached Contract No. 15 and Contract No. 16 by failing to perform its work in accordance with the sequences, milestones and time periods in the schedules for the work.

56.     As a direct and proximate result of Trataros' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the principal sum of Eight Million Dollars ($8,000,000) plus interest, costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
(By DASNY for Breach of Contract – Construction Defects)

57.     Third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 56 above, as if the same were set forth at length herein.

58.     DASNY entered into two valid, binding, and enforceable written prime contracts with Trataros for the construction of certain work on the Project under Contract No. 15 and Contract No. 16.

59.     Under Contract No. 15 and Contract No. 16, Trataros was obligated to perform all of the items in the contractual scope of work in a workmanlike manner and in accordance with contractually mandated technical and quality requirements, applicable industry standards and governing building codes and regulations. Trataros also was obligated to complete its work in a manner that assured that the final work product was free of unacceptable defects.

60.     Trataros materially breached Contract No. 15 and Contract No. 16 by failing to perform all of the items in the contractual scope of work in a workmanlike manner or in accordance with contractually mandated technical and quality requirements, applicable industry standards and governing building codes and regulations. Trataros also materially breached Contract No. 15 and Contract No. 16 by failing to complete its work in a manner that assured that the final work product was free of unacceptable defects.

61.     Trataros materially breached Contract No. 16 by installing epoxy terrazzo flooring that is failing due to construction errors and the use of inappropriate materials by Trataros and its subcontractors and suppliers.

- 11 -

62.    As a direct and proximate result of Trataros' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the principal sum of Twenty Million Dollars ($20,000,000) plus interest, costs and attorneys' fees.

### SIXTH CAUSE OF ACTION
(Common Law Indemnification of TDX)

63.    Third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 62 above, as if the same were set forth at length herein.

64.    Trataros performed its responsibilities on the Project negligently and/or recklessly.

65.    Trataros' negligent and/or reckless performance of its responsibilities on the Project and/or Trataros' culpable conduct caused the damages alleged by Travelers in its complaint in this action.

66.    If any damages are awarded against TDX, such damages were actually caused by reason of Trataros' negligence, recklessness, and/or culpable conduct.

67.    In the event that Travelers recovers a judgment against TDX in this action, or TDX otherwise becomes obligated to pay Travelers for claims arising from or in connection with the Project, such liability on the part of TDX, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of Trataros, and will not have been caused by any culpable conduct on the part of TDX.

68.    In the event that any other third-party recovers a judgment against TDX or TDX otherwise becomes obligated to pay claims to a third party arising from or in connection with the Project, such liability on the part of TDX, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of Trataros, and will not have been caused by any culpable conduct on the part of TDX.

69.    Accordingly, Trataros as the actual tortfeasor is liable to TDX, and TDX is entitled to indemnification from and to have judgment over against Trataros, in the amount of any judgment or verdict against TDX in this action by Travelers or any third party.

## SEVENTH CAUSE OF ACTION
### (Contribution to TDX)

70.    Third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 69 above, as if the same were set forth at length herein.

71.    Trataros' negligent performance of its responsibilities on the Project caused or contributed to the damages alleged in Travelers' complaint to have been incurred on the Project.

72.    In the event that Travelers recovers a judgment against TDX in this action, or TDX otherwise becomes obligated to pay Travelers or any third party for claims arising from or in connection with the Project, such liability, by operation of law or otherwise, will have been caused by Trataros' negligence, carelessness, breach of contract, breach of warranty, and/or other culpable conduct, and will not have been caused by any negligence, carelessness, breach of contract, breach of warranty, and/or other culpable conduct on the part of TDX.

73.    Pursuant to Article 14 of the New York Civil Practice Law and Rules, TDX is entitled to recover damages in the amount of any judgment against TDX by Travelers and/or any other third party as determined in accordance with their relative culpability, and TDX is entitled to have judgment over against Trataros in an amount equal to any excess paid by TDX over and above TDX's equitable share, with interest.

**WHEREFORE**, third-party plaintiffs the Dormitory Authority of the State of New York and TDX Construction Corp. demand judgment:

I.    on the First Cause of Action, awarding damages to DASNY in the amount of any judgment rendered against DASNY in favor of Travelers on behalf of Trataros' subcontractors

- 13 -

and/or any liability DASNY incurs to any other third party as a result of Trataros' negligence, recklessness and/or culpable conduct;

II.　　on the Second Cause of Action, awarding damages to DASNY in the amount of any judgment rendered against DASNY in favor of Travelers on behalf of Trataros' subcontractors and/or any liability DASNY incurs to any other third party as a result of Trataros' negligence, recklessness and/or culpable conduct;

III.　　on the Third Cause of Action, awarding damages to DASNY in the amount of any judgment recovered by Travelers or any third party against DASNY as determined in accordance with their relative culpability, and DASNY further demands judgment against Trataros in an amount equal to any excess paid by DASNY over and above DASNY's equitable share, with interest;

IV.　　on the Fourth Cause of Action, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Eight Million Dollars ($8,000,000);

V.　　on the Fifth Cause of Action, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Twenty Million Dollars ($20,000,000);

VI.　　on the Sixth Cause of Action, awarding damages to TDX in the amount of any judgment rendered against TDX in favor of Travelers on behalf of Trataros' subcontractors and/or any liability TDX incurs to any other third party as a result of Trataros' negligence, recklessness and/or culpable conduct;

VII.　　on the Seventh Cause of Action, awarding damages to TDX in the amount of any judgment rendered against TDX in favor of Travelers or any third party on behalf of Trataros' subcontractors and/or any liability TDX incurs to any other third party as a result of Trataros' negligence, recklessness and/or culpable conduct; and

VIII.    awarding DASNY and/or TDX the costs and disbursements of this action,

interest, attorneys' fees, and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        September 28, 2007

                                    HOLLAND & KNIGHT LLP
                                    *Attorneys for Third-Party Plaintiffs*
                                    *Dormitory Authority of the State of New*
                                    *York and TDX Construction Corp.*


                              By:   _Timothy B. Froessel_
                                    Stephen B. Shapiro
                                    Timothy B. Froessel
                                    195 Broadway
                                    New York, New York  10007
                                    (212) 513-3200

# 4815899_v1

- 15 -

## CERTIFICATE OF SERVICE

TIMOTHY B. FROESSEL hereby declares the following to be true under penalty of perjury:

On September 28, 2007, I caused the foregoing Third-Party Complaint to be served upon all parties listed in the attached Service List, at the addresses designated for service, by depositing same, enclosed in a properly addressed wrapper, first-class postage pre-paid, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Dated: New York, New York
　　　　September 28, 2007


_____
TIMOTHY B. FROESSEL

# SERVICE LIST

Eli J. Rogers, Esq.
Dreifuss Bonacci & Parker, LLP
26 Columbia Turnpike
North Entrance
Florham Park, NJ  07932

*Attorneys for Plaintiff*

Michael K. DeChiara, Esq.
Zetlin & DeChiara LLP
801 Second Avenue
New York, NY  10017

*Attorneys for Defendant*
*Kohn Pedersen Fox Associates, P.C.*

- 2 -

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS CASUALTY AND SURETY
COMPANY as Administrator for RELIANCE
INSURANCE COMPANY,

                    Plaintiff,

         - against -

DORMITORY AUTHORITY – STATE OF NEW
YORK, TDX CONSTRUCTION CORP., and KOHN
PEDERSEN FOX ASSOCIATES, P.C.,

                    Defendants.

Case No. 07 Civ. 6915 (DLC)

**ANSWER OF DASNY
AND TDX WITH
AFFIRMATIVE DEFENSES,
COUNTERCLAIMS,
AND CROSS-CLAIMS**

Defendants Dormitory Authority of the State of New York ("DASNY") and TDX

Construction Corp. ("TDX") (collectively referred to herein as "Defendants"), by their attorneys,

Holland & Knight LLP, answer the Complaint of plaintiff Travelers Casualty and Surety

Company ("Travelers") as follows:

      1.      Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 1 of the Complaint.

      2.      Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 2 of the Complaint.

      3.      Defendants deny the allegations contained in paragraph 3 of the Complaint,

except admit that DASNY is a public benefit corporation organized and existing under the Public

Authorities Law of the State of New York, and that DASNY's principal place of business is

located at 515 Broadway, Albany, New York.

      4.      Defendants admit the allegations contained in paragraph 4 of the Complaint.

      5.      Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 5 of the Complaint.

6.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

7.    The allegations contained in paragraph 7 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.    The allegations contained in paragraph 8 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 8, except admit that certain events or omissions that are alleged to give rise to the claims asserted in this action occurred within the County of New York.

## ALLEGATIONS COMMON TO ALL COUNTS

9.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint, except admit that Travelers alleges that this action arises from the construction of the Baruch College Vertical Campus (the "Project"), and further admit that the Project was a public improvement.

10.    Defendants admit the allegations contained in paragraph 10 of the Complaint.

11.    Defendants deny the allegations contained in paragraph 11 of the Complaint, except Defendants admit that DASNY entered into contracts with Travelers' principal, Trataros Construction, Inc. ("Trataros"), that denominated DASNY as "Owner" for the purposes of said contracts.

12.    Defendants deny the allegations contained in paragraph 12 of the Complaint, except admit that DASNY worked on the Project for the City University of New York.

13.    Defendants admit the allegations contained in paragraph 13 of the Complaint.

14.    Defendants admit the allegations contained in paragraph 14 of the Complaint.

15.    Defendants deny the allegations contained in paragraph 15 of the Complaint, except admit that the duties and obligations of TDX vis-à-vis DASNY in connection with the Project are set forth in written documents that are the best evidence of their terms.

16.    Defendants admit the allegations contained in paragraph 16 of the Complaint.

17.    Defendants deny the allegations contained in paragraph 17 of the Complaint, except admit that DASNY awarded a contract to Trataros Construction, Inc. ("Trataros"), which consists of written documents that serve as the best evidence of their terms.

18.    Defendants deny the allegations contained in paragraph 18 of the Complaint, except admit that Trataros was required to and did procure payment and performance bonds, which are written documents that serve as best evidence of their terms.

19.    Defendants deny the allegations contained in paragraph 19 of the Complaint, except admit that DASNY awarded a contract to Trataros Construction, Inc. ("Trataros"), which is a written document that serves as the best evidence of its terms.

20.    Defendants deny the allegations contained in paragraph 20 of the Complaint, except admit that Trataros was required to and did procure payment and performance bonds, which are written documents that serve as best evidence of their terms.

21.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint, except admit that Reliance Insurance Company ("Reliance") provided performance and payment bonds, which are written documents that serve as best evidence of their terms.

22.    The allegations contained in paragraph 22 of the Complaint state, at least in part, legal conclusions to which no response is required.  To the extent a response is required,

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.

23.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.    The allegations contained in paragraph 24 of the Complaint state, at least in part, legal conclusions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.

25.    Defendants deny the allegations contained in paragraph 25 of the Complaint, except admit that the Project's façade materials included glass curtainwalls, masonry and aluminum paneling.

26.    Defendants deny the allegations contained in paragraph 26 of the Complaint, except admit that DASNY entered into thirteen prime contracts with respect to the construction of the Project.

27.    Defendants deny the allegations contained in paragraph 27 of the Complaint, except admit that DASNY entered into thirteen prime contracts with respect to the construction of the Project, each of which consists of written documents that are the best evidence of their terms.

28.    Defendants deny the allegations contained in paragraph 28 of the Complaint, except admit that DASNY entered into contracts with Trataros, which consist of written documents that are the best evidence of their terms.

29.     Defendants deny the allegations contained in paragraph 29 of the Complaint, except admit that DASNY entered into contracts with Trataros, which consist of written documents that are the best evidence of their terms.

30.     Defendants deny the allegations contained in paragraph 30 of the Complaint, except admit that the drawings, specifications and bid packages for the Project are written documents that are the best evidence of their terms.

31.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint.

32.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint.

34.     Defendants deny the allegations contained in paragraph 34 of the Complaint.

35.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

36.     Defendants deny the allegations contained in paragraph 36 of the Complaint.

37.     The allegations contained in paragraph 37 state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 37 of the Complaint, except admit that DASNY entered into contracts with TDX, KPF, and other prime contractors with respect to the construction of the Project, which are written documents that serve as best evidence of their terms.

38.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

- 5 -

39.    Defendants deny the allegations contained in paragraph 39 of the Complaint, except admit that DASNY entered into a contract for the Project's excavation and foundation which was dated as of May 2, 1997.

40.    Defendants admit the allegations contained in paragraph 40 of the Complaint.

41.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint.

42.    Defendants deny the allegations contained in paragraph 42 of the Complaint, except admit that DASNY entered into contracts with Trataros, which are written documents that are the best evidence of their terms.

43.    Defendants deny the allegations contained in paragraph 43 of the Complaint.

44.    Defendants deny the allegations contained in paragraph 44 of the Complaint.

45.    Defendants deny the allegations contained in paragraph 45 of the Complaint.

46.    Defendants deny the allegations contained in paragraph 46 of the Complaint.

47.    Defendants deny the allegations contained in paragraph 47 of the Complaint.

48.    Defendants deny the allegations contained in paragraph 48 of the Complaint.

## ANSWERING THE "FIRST COUNT"

49.    Defendants repeat and reallege each and every answer to the paragraphs incorporated by reference in paragraph 49 of the Complaint as if fully set forth herein.

50.    Defendants deny the allegations contained in paragraph 50 of the Complaint, except admit that Trataros performed certain work under the contracts it entered into with DASNY in connection with the Project.

- 6 -

51.     Defendants deny the allegations contained in paragraph 51 of the Complaint, except admit that Baruch College has occupied part or all of the Project since in or about September 2001.

52.     The allegations contained in paragraph 52 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52.

53.     Defendants deny the allegations contained in paragraph 53 of the Complaint.

54.     The allegations contained in paragraph 54 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54.

55.     Defendants deny the allegations contained in paragraph 55 of the Complaint.

## ANSWERING THE "SECOND COUNT"

56.     Defendants repeat and reallege each and every answer to the paragraphs incorporated by reference in paragraph 56 of the Complaint as if fully set forth herein.

57.     The allegations contained in paragraph 57 of the Complaint state, at least in part, legal conclusions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57.

58.     Defendants deny the allegations contained in paragraph 58 of the Complaint.

59.     Defendants deny the allegations contained in paragraph 59 of the Complaint.

60.    The allegations contained in paragraph 60 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60.

61.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the Complaint.

62.    Defendants deny the allegations contained in paragraph 62 of the Complaint.

63.    Defendants deny the allegations contained in paragraph 63 of the Complaint.

64.    The allegations contained in paragraph 64 of the Complaint state a legal conclusion to which no response is required.  To the extend a response is required, Defendants deny the allegations contained in paragraph 64.

65.    Defendants deny the allegations contained in paragraph 65 of the Complaint.

66.    Defendants deny the allegations contained in paragraph 66 of the Complaint, except admit that DASNY paid Trataros certain change orders, which are comprised of written documents that are the best evidence of their terms.

67.    Defendants deny the allegations contained in paragraph 67 of the Complaint.

**ANSWERING THE "THIRD COUNT"**

68.    Defendants repeat and reallege each and every answer to the paragraphs incorporated by reference in paragraph 68 of the Complaint as if fully set forth herein.

69.    The allegations contained in paragraph 69 of the Complaint state, at least in part, legal conclusions to which no response is required.  To the extent a response is required, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.

70.    Defendants deny the allegations contained in paragraph 70 of the Complaint.

71.    Defendants deny the allegations contained in paragraph 71 of the Complaint.

72.    The allegations contained in paragraph 72 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 72.

73.    The allegations contained in paragraph 73 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 73.

74.    The allegations contained in paragraph 74 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 74.

75.    The allegations contained in paragraph 75 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 75.

76.    The allegations contained in paragraph 76 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76.

## ANSWERING THE "FOURTH COUNT"

77.    Defendants repeat and reallege each and every answer to the paragraphs incorporated by reference in paragraph 77 of the Complaint as if fully set forth herein.

78.    Defendants deny the allegations contained in paragraph 78 of the Complaint.

79.    Defendants deny the allegations contained in paragraph 79 of the Complaint.

## ANSWERING THE "FIFTH COUNT"

80.    Defendants repeat and reallege each and every answer to the paragraphs

incorporated by reference in paragraph 80 of the Complaint as if fully set forth herein.

81.    Defendants deny the allegations contained in paragraph 81 of the Complaint,

except admit that DASNY and TDX entered into a contract with respect to the Project, which is

comprised of written documents that serve as the best evidence of their terms.

82.    The allegations contained in paragraph 82 of the Complaint state, at least in part,

legal conclusions to which no response is required.  To the extent a response is required,

Defendants deny the allegations contained in paragraph 82.

83.    The allegations contained in paragraph 83 of the Complaint state a legal

conclusion to which no response is required.  To the extent a response is required, Defendants

deny the allegations contained in paragraph 83.

84.    The allegations contained in paragraph 84 of the Complaint state a legal

conclusion to which no response is required.  To the extent a response is required, Defendants

deny the allegations contained in paragraph 84.

85.    The allegations contained in paragraph 85 of the Complaint state a legal

conclusion to which no response is required.  To the extent a response is required, Defendants

are without knowledge or information sufficient to form a belief as to the truth of the allegations

contained in paragraph 85.

86.    The allegations set forth in paragraph 86 of the Complaint state a legal conclusion

to which no response is required.  To the extent a response is required, Defendants deny the

allegations contained in paragraph 86.

## ANSWERING THE "SIXTH COUNT"

87.     Defendants repeat and reallege each and every answer to the paragraphs incorporated by reference in paragraph 87 of the Complaint as if fully set forth herein.

88.     Defendants deny the allegations contained in paragraph 88 of the Complaint, except admit that DASNY and KPF entered into a contract with respect to the Project, which is a written document that is the best evidence of its terms.

89.     The allegations contained in paragraph 89 of the Complaint state, at least in part, legal conclusions to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89.

90.     The allegations contained in paragraph 90 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90.

91.     The allegations contained in paragraph 91 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91.

92.     The allegations contained in paragraph 92 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92.

93.     The allegations contained in paragraph 93 of the complaint state a legal

conclusion to which no response is required.  To the extent a response is required, Defendants

are without knowledge or information sufficient to form a belief as to the truth of the allegations

contained in paragraph 93.

### FIRST AFFIRMATIVE DEFENSE

94.     Plaintiff lacks standing to pursue claims on behalf of Trataros and/or Trataros'

subcontractors.

### SECOND AFFIRMATIVE DEFENSE

95.     Trataros is a necessary party to this action, and the Court cannot proceed in

Trataros' absence.

### THIRD AFFIRMATIVE DEFENSE

96.     The Court lacks subject matter jurisdiction over this controversy.

### FOURTH AFFIRMATIVE DEFENSE

97.     Plaintiff's complaint fails to state a cause of action upon which relief may be

granted.

### FIFTH AFFIRMATIVE DEFENSE

98.     With respect to any alleged contract balance purportedly owed to Trataros,

DASNY has a right of set-off against such funds which is superior to any right of Plaintiff to said

funds.

### SIXTH AFFIRMATIVE DEFENSE

99.     Any damages allegedly sustained by Trataros or Plaintiff were caused in whole or

in part by Trataros' or Plaintiff's own culpable conduct, as a result of which Plaintiff's claims are

therefore barred or diminished in the proportion that such culpable conduct bears to the total

culpable conduct that caused their alleged damages.

## SEVENTH AFFIRMATIVE DEFENSE

100.    Plaintiff's claims are barred by Trataros' breach of contract.

## EIGHTH AFFIRMATIVE DEFENSE

101.    Plaintiff's claims are barred by Trataros' contributory negligence.

## NINTH AFFIRMATIVE DEFENSE

102.    Plaintiff's claims are barred by Trataros' breach of one or more of its subcontract

agreements and/or purchase orders.

## TENTH AFFIRMATIVE DEFENSE

103.    Any alleged liability of Defendants to Plaintiff is derivative of, and secondary to,

the liability of Trataros for damages being claimed in the causes of action set forth against

Defendants in the Complaint.  Therefore, Plaintiff must first seek damages from Trataros before

it may pursue the causes of action Plaintiff has asserted against Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

104.    Any alleged liability of Defendants to Plaintiff is derivative of, and secondary to,

the liability of KPF for the damages being claimed in the causes of action set forth against

Defendants in the Complaint.  Therefore, Plaintiff must first seek damages from KPF before it

may pursue the causes of action Plaintiff has asserted against Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

105.    Plaintiff's claims are barred by Trataros' material breach and/or abandonment of

its contracts with DASNY.

## THIRTEENTH AFFIRMATIVE DEFENSE

106.    Defendants are entitled to indemnity and/or contribution from Trataros and KPF for any liability they may have to Plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

107.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's breach of contract.

## FIFTEENTH AFFIRMATIVE DEFENSE

108.    Plaintiff's claims brought on behalf of Trataros are barred by an accord and satisfaction between DASNY and Trataros.

## SIXTEENTH AFFIRMATIVE DEFENSE

109.    The claims asserted by Plaintiff have been fully or partially paid by DASNY.

## SEVENTEENTH AFFIRMATIVE DEFENSE

110.    Some or all of Plaintiff's claims against DASNY are barred by lack of privity of contract.

## EIGHTEENTH AFFIRMATIVE DEFENSE

111.    Some or all of Plaintiff's claims are barred by the statute of frauds.

## NINETEENTH AFFIRMATIVE DEFENSE

112.    Some or all of Plaintiff's claims are barred by breaches of contract and/or negligence of Trataros' subcontractors and suppliers.

## TWENTIETH AFFIRMATIVE DEFENSE

113.    Plaintiff's claims against TDX are barred by a lack of privity of contract of plaintiff, Trataros, and/or Trataros' subcontractors and suppliers with TDX.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

114.    Plaintiff's claims against DASNY are barred by failure of consideration.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

115.     Plaintiff's claims are barred by waiver, payment and/or release.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

116.     Plaintiff is estopped from bringing the causes of action set forth in the Complaint.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

117.     Plaintiff's claims against DASNY are barred to the extent that Trataros is responsible for the alleged cost overruns and delays that Defendants are alleged to be liable for in the Complaint.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

118.     Plaintiff's claims are barred by the economic loss doctrine.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

119.     Plaintiff's claims are barred to the extent Plaintiff is seeking payment on behalf of itself, Trataros and/or Trataros' subcontractors or suppliers that: (1) can not be substantiated through contemporaneous Project records; (2) that Plaintiff knows is in excess of losses actually incurred by those entities; or (3) that Plaintiff knows is not due and owing from Defendants.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

120.     Plaintiff's claims are barred or limited to the extent that Plaintiff is seeking to recover costs or damages that are unreasonable, duplicative or inappropriate.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

121.     This action and any relief sought may be barred, in whole or in part, by additional defenses that cannot be articulated due to the generality of Plaintiff's Complaint, the fact that discovery is not yet complete, or other presently undeveloped information. Accordingly, Defendants reserve their right to supplement the foregoing defenses and to raise additional

- 15 -

defenses as may appear as this case progresses to the fullest extent permitted by the Federal

Rules of Civil Procedure and applicable law to this case.

## DASNY'S COUNTERCLAIM AGAINST TRAVELERS

### *Parties, Jurisdiction and Venue*

122.　　Defendant and counterclaim plaintiff Dormitory Authority of the State of New

York ("DASNY") is a public benefit corporation organized and existing under the Public

Authorities Law of the State of New York, with its principal place of business located at 515

Broadway, Albany, New York.

123.　　Upon information and belief, plaintiff and counterclaim defendant Travelers

Casualty and Surety Company ("Travelers") is a corporation organized and existing under the

laws of the State of Connecticut, with its principal place of business located at One Tower

Square, Hartford, Connecticut.

124.　　This Court has jurisdiction over DASNY's counterclaim pursuant to 28 U.S.C. §§

1332(a) and 1367(a).

125.　　This District is the proper venue for DASNY's counterclaim under 28 U.S.C. §

1391(a)(2), because a substantial part of the events or omissions giving rise to the counterclaim

asserted herein occurred within this District.

### *Facts*

126.　　On or about April 22, 1998, DASNY, as owner, and Trataros Construction, Inc.

("Trataros"), as contractor, entered into a written contract whereby Trataros agreed to provide the

labor and materials to perform certain general construction at a Project known as the Baruch

Academic Complex, Site B (the "Project"), for the agreed upon price of $50,222,000.00, which

was denominated Agreement No. 6500 1802 2176 ("Contract No. 15"). Contract No. 15

included plans, specifications, general conditions and other terms, conditions, obligations, duties

and requirements that Trataros agreed to assume and comply with.

127.    The Project is a 785,000 gross square foot, 14 story structure located on

Lexington Avenue between 24th and 25th Streets, in the borough of Manhattan, which was

designed to house Baruch College's School of Liberal Arts and Sciences, Business School,

Executive Program Division, recreational and performance facilities, and various student activity

areas.

128.    On or about April 22, 1998, Trataros, as principal, and Reliance Insurance

Company as surety, executed and delivered a labor and material payment bond and a

performance bond for Contract No. 15, each having the penal sum of $50,222,000.00, naming

DASNY as obligee.

129.    On or about August 27, 1998, DASNY, as owner, and Trataros, as contractor,

entered into a written contract whereby Trataros agreed to provide the labor and materials to

perform certain general construction at the Project, for the agreed upon price of $24,140,000.00,

which was denominated Agreement No. 6500 1802 2178 ("Contract No. 16"). Contract No. 16

included plans, specifications, general conditions and other terms, conditions, obligations, duties

and requirements that Trataros agreed to assume and comply with.

130.    On or about August 27, 1998, Trataros, as principal, and Reliance Insurance

Company as surety, executed and delivered a labor and material payment bond and a

performance bond for Contract No. 16, each having the penal sum of $24,140,000.00, naming

DASNY as obligee.

131.    Upon information and belief, on or about May 31, 2000, Travelers acquired the surety and fidelity business written by the various companies owned by Reliance Group Holdings, Inc., including bonds written by Reliance Insurance Company ("Reliance").  All duties, rights, and obligations of Reliance Insurance Company under the labor and material payment bonds for Contract No. 15 and Contract No. 16 were assumed by Travelers by virtue of that transaction.

132.    Trataros entered into various subcontract agreements and purchase orders with trade construction contractors and material suppliers that obligated those subcontractors and suppliers to fulfill certain of Trataros' obligations under Contract No. 15 and Contract No. 16.

133.    Upon information and belief, Travelers took over and assumed Trataros' obligations under Contract No. 15 and Contract No. 16.

134.    Trataros breached Contract No. 15 and Contract No. 16 by, *inter alia*, failing to properly plan, schedule, coordinate or manage its work, and failing to provide adequate labor, material and equipment to effectively phase and/or complete its work, which delayed, disrupted and impacted work performed by other prime contractors on the Project and Trataros' own subcontractors.

135.    Certain of the Project's prime contractors have submitted claims to DASNY seeking additional compensation and extensions of time due to alleged delays, disruptions, impacts and inefficiencies.  To the extent that DASNY has any responsibility for these claims, that responsibility is at least partially attributable to Trataros' aforementioned breaches of Contract No. 15 and Contract No. 16.

136.    Certain of Trataros' subcontractors and/or suppliers have submitted claims to Trataros and/or DASNY seeking additional compensation and extensions of time due to alleged

- 18 -

delays, disruptions, impacts and inefficiencies. Travelers and/or Trataros are attempting to pass

liability for these claims through to DASNY. To the extent that DASNY has any responsibility for

these claims, that responsibility is at least partially attributable to Trataros' aforementioned

breaches of Contract No. 15 and Contract No. 16.

137.    Trataros further breached Contract No. 15 and Contract No. 16 by, *inter alia*,

performing work that was defective, substandard and/or otherwise unacceptable, including but

not limited to the defective installation of the Project's epoxy terrazzo flooring, which is

delaminating, lifting, curling, and/or cracking in substantial areas of the Project.

## **FIRST COUNTERCLAIM**

138.    DASNY repeats and realleges each and every allegation contained in paragraphs

122 through 137 above, as if the same were set forth at length herein.

139.    Certain subcontractors and suppliers to Trataros under Contract No. 15 and/or

Contract No. 16 allege that they have not been paid under their subcontract agreements and

purchase orders with Trataros.

140.    As alleged in Travelers' complaint in this action, several of Trataros'

subcontractors under Contract No. 15 and/or Contract No. 16 have made claims for alleged

additional costs incurred in performing work at the Project, and Trataros and/or Trataros have

failed to pay such additional costs.

141.    Trataros is responsible for all or part of the alleged costs incurred by its

subcontractors at the Project, because, *inter alia*, Trataros failed to: (1) provide sufficient labor;

(2) effectively administer, schedule, coordinate and manage the work; and (3) otherwise satisfy

its obligations under Contract No. 15 and Contract No. 16.

142. DASNY, as obligee, made due demand upon Travelers to perform its obligations under the payment bonds for Contract No. 15 and Contract No. 16.

143. DASNY's demand upon Travelers was wrongfully rejected by Travelers.

144. Travelers' wrongful rejection of DASNY's demand constitutes a breach of its obligations under the performance and payment bonds for Contract No. 15 and Contract No. 16.

145. By reason of Travelers' wrongful rejection of DASNY's demand, DASNY has made payments to Trataros' subcontractors under Contract No. 15 and Contract No. 16, which Travelers was obligated to pay under the terms of the payment bonds.

146. To the extent that the "Pass Through Claims" alleged in the Third Count of Travelers' Complaint in this action seek damages suffered by Trataros' subcontractors that were caused and/or should have been paid by Trataros, Travelers is required under the terms of the labor and material payment bonds for Contract No. 15 and Contract No. 16 and under its assumption of Trataros' obligations under those contracts to undertake the responsibility of its principal, Trataros, to make all payments to the subcontractors or otherwise defend against such claims.

147. As a direct and proximate result of Travelers' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the principal sum of One Million Eight Hundred Thousand Dollars ($1,800,000) plus interest, costs and attorneys' fees.

## SECOND COUNTERCLAIM

148. DASNY repeats and realleges each and every allegation contained in paragraphs 122 through 147 above, as if the same were set forth at length herein.

149. Trataros breached Contract No. 15 and Contract No. 16, by virtue of its delayed and defective work.

150.     As a direct and proximate result of Trataros' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the principal sum of Twenty-One Million Dollars ($21,000,000) plus interest, costs and attorneys' fees.

151.     By virtue of Travelers' assumption of Trataros' obligations under Contract No. 15 and Contract No. 16, Travelers is liable for the damages suffered by DASNY as a result of Trataros' aforementioned breaches of contract.

## THIRD COUNTERCLAIM

152.     DASNY repeats and realleges each and every allegation contained in paragraphs 122 through 151 above, as if the same were set forth at length herein.

153.     DASNY, as obligee, made due demand upon Travelers to perform its obligations under the performance bonds for Contract No. 15 and Contract No. 16.

154.     DASNY's demand upon Travelers was wrongfully rejected by Travelers.

155.     Travelers wrongful rejection of DASNY's demand constitutes a breach of its obligations under the performance bonds for Contract No. 15 and Contract No. 16.

156.     As a direct and proximate result of Travelers' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the principal sum of Nineteen Million Dollars ($19,000,000) plus interest, costs and attorneys' fees.

## ~~CROSS-CLAIMS OF DASNY AND TDX AGAINST KPF~~

### *Parties, Jurisdiction and Venue*

157.     Defendant and cross-claim plaintiff Dormitory Authority of the State of New York ("DASNY") is a public benefit corporation organized and existing under the Public

Authorities Law of the State of New York, with its principal place of business located at 515

Broadway, Albany, New York.

158.    Defendant and cross-claim plaintiff TDX Construction Corp. ("TDX") is a

corporation organized and existing under the laws of the State of New York, with its principal

place of business located at 345 Seventh Avenue, New York, New York.

159.    Upon information and belief, cross-claim defendant Kohn Pedersen Fox

Associates, P.C. ("KPF") is a professional corporation organized and existing under the laws of

the State of New York, with its principal place of business located at 111 East 57th Street, New

York, New York.

160.    This Court has jurisdiction over the within cross-claims pursuant to 28 U.S.C. §

1367(a).

161.    This District is the proper venue for the within cross-claims under 28 U.S.C. §

1391(a)(2), because a substantial part of the events or omissions giving rise to the cross-claims

asserted herein occurred within this District.

162.    At all times mentioned herein, KPF was an architectural firm, and at least one of

its shareholders was licensed as a professional architect in the State of New York.

*Facts*

163.    On or about November 20, 1995, DASNY entered into Contract No. 6500 1802

3145 (the "Design Contract") with KPF for the design of a building known as the Baruch

Academic Complex - Site B at 55 Lexington Avenue, New York, New York 10010 (the

"Project").

164.    Pursuant to the terms of written agreements between DASNY and TDX, TDX

performed construction management services for the Project.

165.    The Project is a 785,000 gross square foot, 14 story structure located on Lexington Avenue between 24th and 25th Streets, in the borough of Manhattan, which was designed to house Baruch College's School of Liberal Arts and Sciences, Business School, Executive Program Division, recreational and performance facilities, and various student activity areas.

166.    The Project was constructed under the Wicks Law, N.Y. State Finance Law § 135, utilizing multiple trade construction contractors to perform various scopes of construction work.

167.    The Design Contract included terms and conditions setting forth KPF's duties and obligations with respect to the Project, which were either included in the Design Contract itself or incorporated into the Design Contract by reference.

168.    Among other things, the Design Contract included a "Scope of Services of Architect," which was attached to the Design Contract as Appendix 'A' and contained additional provisions that are relevant to KPF's duties to DASNY on the Project.

169.    Upon information and belief, KPF entered into agreements with Weidlinger Associates Consulting Engineers, P.C. ("Weidlinger") and Cosentini Associates, Inc. ("Cosentini") for professional engineering services for the Project, and KPF entered into agreements with other sub-consultants under which those sub-consultants agreed to provide additional design services and other services for the Project.

170.    The Design Contract contemplated that KPF would prepare and provide a complete and "fully coordinated" design for the Project.  KPF understood that DASNY would use KPF's design for soliciting bids from various trade construction contractors,

who would use KPF's design to build the Project. In this regard, KPF's design was required to be sufficiently coordinated and complete to permit all of DASNY's trade construction contractors to rely upon that design for purposes of submitting bids to DASNY and performing all aspects their required scopes of work. The Design Contract further required KPF to complete its design within the time periods required by DASNY's program and construction schedules.

171. KPF, Weidlinger, Cosentini and KPF's other subcontractors and consultants (collectively referred to as the "KPF Design Team") prepared plans, specifications and related design information (the "Design Documents"). KPF submitted the Design Documents to DASNY and represented to DASNY that the Design Documents were sufficiently detailed, coordinated and complete to be used by all of the trade contractors to build the Project in accordance with DASNY's requirements and the terms of the Design Contract.

172. The Design Documents that KPF delivered to DASNY were not submitted in a timely fashion, contained errors, omissions and defects, and were not fully coordinated (collectively referred to as the "Design Defects").

173. DASNY notified KPF and the Design Team of the Design Defects and advised KPF that the Design Documents required significant revisions and additional coordination before they could be suitable for use in building the Project. DASNY also advised KPF that Design Defects were adversely impacting the time and cost of construction and directed KPF to implement the necessary corrective work to avoid further cost overruns and delays.

- 24 -

174.    Rather than correcting the Design Defects in a professionally competent and timely fashion, KPF and the Design Team compounded their errors by failing to acknowledge the design and coordination problems and refusing to fully cooperate in offering a solution for their Design Defects.

175.    The Design Defects and coordination errors, along with the Design Team's failure to acknowledge and correct the Design Defects in a timely or professionally competent fashion, caused the cost of construction to increase and significantly delayed, disrupted and impacted the construction of the Project.

176.    DASNY has received claims from trade construction contractors that performed work on the Project requesting additional compensation and time extensions from DASNY based on alleged delays, disruptions and impacts that are directly and indirectly attributable to the Design Defects.

177.    DASNY has been named as a defendant in certain action(s) in the Supreme Court of the State of New York in which various parties seek damages from DASNY, upon information and belief, as a result of KPF's Design Defects.

178.    DASNY and TDX have been named as defendants in this action, in which Travelers Casualty & Surety Company as administrator for Reliance Insurance Company ("Travelers") is seeking damages from DASNY and TDX as a result of KPF's Design Defects, on behalf of itself, its principal, Trataros Construction Inc. ("Trataros"), and Trataros' subcontractors and material suppliers.

179.    KPF is responsible for any loss or damage incurred or suffered by DASNY or TDX, either directly or through the claims and law suits, arising from KPF's

Design Defects and/or failure to implement a timely and professionally competent redesign.

## FIRST CROSS-CLAIM
(Contractual Indemnification – DASNY)

180.    DASNY repeats and realleges each and every allegation contained in paragraphs 157 through 179 above as if fully set forth herein.

181.    The Design Contract requires KPF to indemnify and hold harmless DASNY and DASNY's clients against all claims arising out of the negligent acts, alleged negligent acts, or failure to act, by the Design Team.

182.    Accordingly, to the extent that DASNY is held liable to plaintiff Travelers or any other third-party on account of KPF's negligence, DASNY is entitled to indemnification from and to have judgment over against KPF, in the amount of any judgment or verdict against DASNY by Travelers or any third party.

## SECOND CROSS-CLAIM
(Common Law Indemnification – DASNY)

183.    DASNY repeats and realleges each and every allegation contained in paragraphs 157 through 182 above as if fully set forth herein.

184.    In the event that plaintiff Travelers recovers a judgment against DASNY in this action by reason of the allegations set forth in Travelers' complaint, such liability on the part of DASNY, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of KPF, and will not have been caused by any culpable conduct on the part of DASNY.

185.    In the event that any other third party recovers a judgment against DASNY or DASNY becomes obligated to pay claims to a third party arising from or in

connection with the Project, such liability on the part of DASNY, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of KPF, and will not have been caused by any culpable conduct on the part of DASNY.

186.    Accordingly, KPF as the actual tortfeasor is liable to DASNY, and DASNY is entitled to indemnification from and to have judgment over against KPF, in the amount of any judgment or verdict against DASNY by Travelers or any third party.

### THIRD CROSS-CLAIM
(Common Law Indemnification – TDX)

187.    TDX repeats and realleges each and every allegation contained in paragraphs 157 through 186 above as if fully set forth herein.

188.    In the event that plaintiff Travelers recovers a judgment against TDX in this action by reason of the allegations set forth in Travelers' complaint, such liability on the part of TDX, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of KPF, and will not have been caused by any culpable conduct on the part of TDX.

189.    In the event that any other third party recovers a judgment against TDX or TDX becomes obligated to pay claims to a third party arising from or in connection with the Project, such liability on the part of TDX, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of KPF, and will not have been caused by any culpable conduct on the part of TDX.

190.    Accordingly, KPF as the actual tortfeasor is liable to TDX, and TDX is entitled to indemnification from and to have judgment over against KPF, in the amount of any judgment or verdict against TDX by Travelers or any third party.

## FOURTH CROSS-CLAIM
### (Contribution – DASNY)

191.　　DASNY repeats and realleges each and every allegation contained in paragraphs 157 through 190 above, as if the same were set forth at length herein.

192.　　If the damages alleged by Travelers in this action were caused by culpable conduct other than that of its principal Trataros, such culpable conduct was that of KPF, by reason of its aforementioned errors and negligence in designing the Project.

193.　　In the event that Travelers recovers a judgment against DASNY in this action by reason of the allegations set forth in Travelers' complaint, or DASNY otherwise becomes obligated to pay Travelers or any third party for claims arising from the Project, such liability on the part of DASNY, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of KPF, and will not have been caused by any culpable conduct on the part of DASNY.

194.　　Accordingly, pursuant to Article 14 of the New York Civil Practice Law and Rules, DASNY is entitled to recover damages in the amount of any judgment against DASNY by Travelers and/or any other third party as determined in accordance with their relative culpability, and DASNY is entitled to have judgment over against KPF in an amount equal to any excess paid by DASNY over and above DASNY's equitable share, with interest.

## FIFTH CROSS-CLAIM
### (Contribution – TDX)

195.　　TDX repeats and realleges each and every allegation contained in paragraphs 157 through 194 above, as if the same were set forth at length herein.

- 28 -

196.    If the damages alleged by plaintiff Travelers in this action were caused by culpable conduct other than that of its principal Trataros, such culpable conduct was that of KPF, by reason of its aforementioned errors and negligence in designing the Project.

197.    In the event that plaintiff Travelers recovers a judgment against TDX in this action by reason of the allegations set forth in Travelers' complaint, or TDX otherwise becomes obligated to pay Travelers or any third party for claims arising from the Project, such liability on the part of TDX, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of KPF, and will not have been caused by any culpable conduct on the part of TDX.

198.    Accordingly, pursuant to Article 14 of the New York Civil Practice Law and Rules, TDX is entitled to recover damages in the amount of any judgment recovered against TDX by Travelers and/or any other third party as determined in accordance with their relative culpability, and TDX is entitled to have judgment over against KPF in an amount equal to any excess paid by TDX over and above TDX's equitable share, with interest.

## SIXTH CROSS-CLAIM
### (Breach of Contract – DASNY)

199.    DASNY repeats and realleges each and every allegation contained in paragraphs 157 through 198 above, as if the same were set forth at length herein.

200.    KPF breached the Design Contract by failing to (1) deliver fully coordinated and complete Design Documents (2) submit fully coordinated and complete Design Documents to DASNY within the time frames and schedules provided for and contemplated by the Design Contract, (3) implement necessary remedial corrections in a

- 29 -

timely or professionally competent fashion, and (4) otherwise satisfy its duties, responsibilities and obligations under the Design Contract.

201.    As a direct and proximate result of these breaches, DASNY has suffered and will continue to suffer damages in an amount to be determined at trial, but exceeding the principal sum of Forty Million Dollars ($40,000,000) plus interest, costs and attorneys' fees.

## SEVENTH CROSS-CLAIM
(Professional Malpractice – DASNY)

202.    DASNY repeats and realleges each and every allegation contained in paragraphs 157 through 201 above as if fully set forth herein.

203.    KPF failed to exercise the required standard of care, competence and skill in the completion of its duties as architect of record for the Project.  Among other things, KPF improperly and negligently: (1) failed to complete and coordinate the Design Documents, (2) failed to properly oversee and perform the professional services that were required to complete the Design Documents, (3) failed to supervise and coordinate the work of its subcontractors and consultants and integrate their work into the Design Documents, (4) refused to acknowledge its Design Defects and/or implement the necessary remedial corrections in a timely or professionally competent fashion, and (5) failed to satisfy other elements of the required standard of care.

204.    Such actions and inactions were negligent and fell below the standard of care and conduct that KPF owed to DASNY and that is applicable to architects generally and architects in New York in particular.

205.    As a direct and proximate cause of KPF's improper and negligent actions, DASNY has sustained injury and damage in an amount to be determined at trial, but

exceeding the principal sum of Forty Million Dollars ($40,000,000) plus interest, costs and attorneys' fees.

**WHEREFORE**, the Dormitory Authority of the State of New York and TDX Construction Corp. demand judgment:

I.     dismissing the complaint in its entirety;

II.     on the First Counterclaim against plaintiff Travelers, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of One Million Eight Hundred Thousand Dollars ($1,800,000) plus interest, costs and attorneys' fees;

III.     on the Second Counterclaim against plaintiff Travelers, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Twenty-Eight Million Dollars ($28,000,000) plus interest, costs and attorneys' fees;

IV.     on the Third Counterclaim against plaintiff Travelers, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Twenty-Six Million Dollars ($26,000,000) plus interest, costs and attorneys' fees;

V.     on the First Cross-Claim against defendant KPF, awarding DASNY damages and/or judgment over against KPF in the amount of any judgment or verdict against DASNY by Travelers or any third party;

VI.     on the Second Cross-Claim against defendant KPF, awarding DASNY damages and/or judgment over against KPF in the amount of any judgment or verdict against DASNY by Travelers or any third party;

- 31 -

VII.    on the Third Cross-Claim against defendant KPF, awarding TDX damages and/or judgment over against KPF in the amount of any judgment or verdict against DASNY by Travelers or any third party;

VIII.    on the Fourth Cross-Claim against defendant KPF, awarding damages to DASNY in the amount of any judgment recovered by plaintiff Travelers or any third party against DASNY as determined in accordance with their relative culpability, and awarding judgment to DASNY in an amount equal to any excess paid by DASNY over and above DASNY's equitable share;

IX.    on the Fifth Cross-Claim against defendant KPF, awarding damages to TDX in the amount of any judgment recovered by plaintiff Travelers or any third party against TDX as determined in accordance with their relative culpability, and awarding judgment to TDX in an amount equal to any excess paid by TDX over and above TDX's equitable share;

X.    on the Sixth Cross-Claim against defendant KPF, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Forty Million Dollars ($40,000,000);

XI.    on the Seventh Cross-Claim against defendant KPF, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Forty Million Dollars ($40,000,000); and

XII.    awarding Defendants the costs and disbursements of this action, attorneys' fees, and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       September 28, 2007

                        HOLLAND & KNIGHT LLP
                        *Attorneys for Defendants Dormitory*
                        *Authority of the State of New York and*
                        *TDX Construction Corp.*

                        By: _____
                              Stephen B. Shapiro
                              Timothy B. Froessel
                        195 Broadway
                        New York, New York  10007
                        (212) 513-3200

To:     Eli J. Rogers, Esq.
        Dreifuss, Bonacci & Parker, LLP
        26 Columbia Turnpike
        North Entrance
        Florham Park, New Jersey  07932
        *Attorneys for Plaintiff*

        Michael K. DeChiara, Esq.
        Zetlin & DeChiara LLP
        801 Second Avenue
        New York, New York  10017
        *Attorneys for Defendant*
        *Kohn Pedersen Fox Associates, P.C.*

## CERTIFICATE OF SERVICE

TIMOTHY B. FROESSEL hereby declares the following to be true under penalty of perjury:

On September 28, 2007, I caused the foregoing Answer of DASNY and TDX with Affirmative Defenses, Counterclaims, and Cross-Claims to be served upon all parties listed in the attached Service List, at the addresses designated for service, by depositing same, enclosed in a properly addressed wrapper, first-class postage pre-paid, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Dated: New York, New York
            September 28, 2007

TIMOTHY B. FROESSEL

## SERVICE LIST

Eli J. Rogers, Esq.
Dreifuss Bonacci & Parker, LLP
26 Columbia Turnpike
North Entrance
Florham Park, NJ  07932

*Attorneys for Plaintiff*

Michael K. DeChiara, Esq.
Zetlin & DeChiara LLP
801 Second Avenue
New York, NY  10017

*Attorneys for Defendant*
*Kohn Pedersen Fox Associates, P.C.*

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> DORMITORY AUTHORITY - STATE OF NEW YORK, TDX CONSTRUCTION CORP. and KOHN PEDERSEN FOX ASSOCIATES, P.C., <br><br> Defendants. | Case No. 07-CV-6915 (DLC) <br> **ECF CASE** |

DORMITORY AUTHORITY OF THE STATE OF NEW YORK AND TDX CONSTRUCTION CORP.,

Third-Party Plaintiffs,

vs.

TRATAROS CONSTRUCTION, INC.,

Third-Party Defendant.

TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,

Fourth-Party Plaintiffs,

vs.

CAROLINA CASUALTY INSURANCE COMPANY; BARTEC INDUSTRIES, INC.; DAYTON SUPERIOR SPECIALTY CHEMICAL CORP. a/k/a DAYTON SUPERIOR CORPORATION; SPECIALTY CONSTRUCTION BRANDS, INC. t/a TEC; KEMPER CASUALTY INSURANCE COMPANY d/b/a KEMPER INSURANCE COMPANY; GREAT AMERICAN INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; UNITED STATES FIRE INSURANCE COMPANY; ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. f/k/a COMMERCIAL UNDERWRITERS INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY d/b/a ZURICH INSURANCE COMPANY; OHIO CASUALTY INSURANCE COMPANY d/b/a OHIO CASUALTY GROUP; HARLEYSVILLE MUTUAL INSURANCE COMPANY (a/k/a HARLEYSVILLE INSURANCE COMPANY); JOHN DOES 1-20 and XYZ CORPS. 1-20,

Fourth-Party Defendants.

**FOURTH-PARTY COMPLAINT**

Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company, by and through their attorneys, Dreifuss Bonacci & Parker, LLP, as and for their Fourth-Party Complaint against Fourth-Party Defendants, Carolina Casualty Insurance Company; Bartec Industries, Inc.; Dayton Superior Specialty Chemical Corp. a/k/a Dayton Superior Corporation; Specialty Construction Brands, Inc. t/a TEC; Kemper Casualty Insurance Company d/b/a Kemper Insurance Company; Great American Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; United States Fire Insurance Company; Allied World Assurance Company (U.S.) Inc. f/k/a Commercial Underwriters Insurance Company; Zurich American Insurance Company d/b/a Zurich Insurance Company; Ohio Casualty Insurance Company d/b/a Ohio Casualty Group; Harleysville Mutual Insurance Company (a/k/a Harleysville Insurance Company); John Does 1-20 and XYZ Corps. 1-20 alleges:

<u>*Parties, Jurisdiction, and Venue*</u>

1.      Travelers Casualty and Surety Company (hereinafter "Travelers") is incorporated in the State of Connecticut and its principal place of business is situated at One Tower Square, 4PB, Hartford, Connecticut.

2.      Trataros Construction, Inc. (hereinafter "Trataros") is a corporation organized and existing under the laws of the State of New York. At all times relevant to this Fourth-Party Complaint, Trataros' principal place of business was located at 664 64th Street, Brooklyn, New York.

3.      Upon information and belief, Carolina Casualty Insurance Company and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "Carolina Casualty") is incorporated in the State of Florida with its principal place of business located at 4600 Touchton Road East, Building 100, Suite 400, Jacksonville, Florida 32246.

4.      Upon information and belief, Bartec Industries, Inc. and/or its predecessors,

2

successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "Bartec") is incorporated

in the State of New Jersey with its principal place of business located at 453 Main Street, Little

Falls, New Jersey 07424.

5.     Upon information and belief, Dayton Superior Specialty Chemical Corp. a/k/a

Dayton Superior Corporation and/or its predecessors, successors, parents, subsidiaries, affiliates,

and/or divisions (hereinafter "Dayton Superior") is incorporated in the State of Delaware with its

principal place of business located at 4226 Kansas Avenue, Kansas City, Kansas 66106, and was

formerly known as Conspec Marketing & Manufacturing Co., Inc.

6.     Upon information and belief, Specialty Construction Brands, Inc. t/a TEC and/or

its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "TEC")

is incorporated in the State of Minnesota with its principal place of business located at 1200

Willow Lake Boulevard, Saint Paul, Minnesota 55110.

7.     Upon information and belief, Kemper Casualty Insurance Company d/b/a Kemper

Insurance Company and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or

divisions (hereinafter "Kemper") is/are incorporated in the State of Illinois with its principal

place of business located at 1 Kemper Drive, Long Grove, Illinois 60049.

8.     Upon information and belief, Great American Insurance Company and/or its

predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "Great

American"), is/are incorporated in the State of Ohio with its principal place of business located at

580 Walnut Street, Cincinnati, Ohio 45202.

9.     Upon information and belief, National Union Fire Insurance Company of

Pittsburgh, Pa. and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or

divisions (hereinafter "National Union"), is/are incorporated in the Commonwealth of

3

Pennsylvania with its principal place of business located at 175 Water Street, New York, New York 10038, and offices located at 70 Pine Street, New York, New York 10270.

10.    Upon information and belief, United States Fire Insurance Company and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "US Fire"), is/are incorporated in the State of Delaware with its principal place of business located at 305 Madison Avenue, Morristown, New Jersey 07960.

11.    Upon information and belief, Allied World Assurance Company (U.S.) Inc. f/k/a Commercial Underwriters Insurance Company and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "Allied World"), is/are incorporated in the State of Delaware with its principal place of business located at 225 Franklin Street, Boston, Massachusetts 02110, and offices located within the State of New York at 199 Water Street, New York, New York 10038.

12.    Upon information and belief, Zurich American Insurance Company d/b/a Zurich Insurance Company and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "Zurich"), is/are incorporated in the State of New York with its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.

13.    Upon information and belief, Ohio Casualty Insurance Company d/b/a Ohio Casualty Group and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "Ohio Casualty"), is/are incorporated in the State of Ohio with its principal place of business located at 9450 Seward Road, Fairfield, Ohio 45014.

14.    Upon information and belief, Harleysville Mutual Insurance Company (a/k/a Harleysville Insurance Company) and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions (hereinafter "Harleysville"), is/are incorporated in the Commonwealth

4

of Pennsylvania with its principal place of business located at 355 Maple Avenue, Harleysville, Pennsylvania 19438.

15.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a).

16.    This Court is the proper venue for this action under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### *Interested Non-Parties*

17.    Upon information and belief, interested non-party G.M. Crocetti, Inc. (hereinafter "Crocetti") is incorporated in the State of New York with its principal place of business located at 3960 Merritt Avenue, Bronx, New York, 10466.

18.    Non-party Crocetti is interested in these proceedings due to a certain subcontract agreement by and between Trataros and Crocetti with respect to the Project.

### *Procedural Background*

19.    On or about August 1, 2007, Plaintiff, Travelers Casualty and Surety Company as Administrator for Reliance Insurance Company brought an action in this Court against Defendants, Dormitory Authority - State of New York ("DASNY"), TDX Construction Corp. ("TDX") and Kohn Pedersen Fox Associates, P.C. ("KPF"), which alleged, among other things, claims for Trataros' contract balances and retainage; claims on behalf of Trataros and certain of its subcontractors/suppliers, alleging damages caused by unreasonable delays, disruptions, impacts, and/or inefficiencies on the construction project at issue herein (the "Project"); and claims alleging professional negligence, inter alia, against TDX and KPF.

20.    On or about September 28, 2007, DASNY and TDX filed their "Answer of DASNY and TDX with Affirmative Defenses, Counterclaims, and Cross-Claims" (the "DASNY/TDX Answer") in this action alleging, inter alia, Counterclaims against Travelers

5

which seek recovery for, among other things, alleged damages resulting from purported delays, disruptions, impacts and/or inefficiencies to the Project, and/or as a result of purportedly defective, substandard and/or otherwise unacceptable work on the Project.

21.     In its Counterclaims against Travelers, DASNY further alleges that it is entitled to judgment against Travelers in the amounts of $1,800,000; $21,000,000; and $19,000,000, respectively.

22.     DASNY's Counterclaims further allege counts against Travelers seeking contractual indemnification, common-law indemnification, and contribution.

23.     On or about September 28, 2007, DASNY and TDX filed a Third-Party Complaint against Trataros seeking recovery for, among other things, alleged damages resulting from purported delays, disruptions, impacts and/or inefficiencies allegedly caused in whole or in part by Trataros and/or its subcontractors on the Project, and/or as a result of purportedly defective, substandard and/or otherwise unacceptable work on the Project.

24.     In connection with its Third-Party cause of action alleging "Delays, Disruptions and Impacts" to the Project, DASNY seeks to recover from Trataros damages in excess of $8,000,000.

25.     In connection with its Third-Party cause of action alleging "Construction Defects," DASNY seeks to recover from Trataros damages in excess of $20,000,000.

26.     In addition, DASNY alleges Third-Party causes of action against Trataros seeking contractual indemnification, common-law indemnification, and contribution.

27.     TDX alleges Third-Party causes of action against Trataros seeking common-law indemnification and contribution.

28.     On or about October 26, 2007, Travelers filed its "Plaintiff's Answer to

Counterclaims of Dormitory Authority – State of New York with Cross-Claims," alleging, inter alia, cross-claims against TDX and KPF for indemnification, contribution and exoneration.

29. Subsequently, Trataros filed its "Answer to Third-Party Complaint," alleging, inter alia, cross-claims against TDX and KPF for indemnification, contribution and exoneration.

*Facts Common to All Counts*

30. This action arises from a public works construction project known as Baruch College, Site B, a/k/a the Baruch College Vertical Campus, a/k/a the Baruch Academic Complex, a/k/a the William & Anita Newman Vertical Campus (the "Project").

31. The Project involved the design, site preparation, excavation, and construction of a 785,000 square foot mixed-use structure, with three below-grade levels and 14 above-grade stories, occupying approximately ¾ of the city block bounded between 24th and 25th Streets and Lexington and Third Avenues in Manhattan.

32. DASNY was the "owner" of the Project. Upon information and belief, the City University of New York ("CUNY") and/or Baruch College were DASNY's clients on the Project.

33. In its capacity as owner, DASNY engaged Defendant KPF as the architect of record for the Project.

34. In its capacity as owner, DASNY engaged Defendant TDX as the construction manager for the Project.

35. DASNY also entered into thirteen separate co-prime contracts in connection with the Project's construction work.

36. DASNY awarded two such co-prime contracts to Trataros Construction, Inc. ("Trataros") as the lowest responsible bidder.

37. On or about April 22, 1998, DASNY awarded a certain prime contract to Trataros

in the amount of $50,222,000.00, said contract being known as "Package No. 1 – General Construction Work, Contract No. 15 at Baruch College, Site B, DA# 6500 1802 2176" (hereinafter "Contract No. 15").

38.    On or about August 27, 1998, DASNY awarded a separate co-prime contract to Trataros in the amount of $24,140,000.00, said contract being known as "General Construction #2, - Contract #16 at Baruch College – Site B, DA # 6500 1802 2178, JDE# 61506" (hereinafter, "Contract No. 16").

39.    Trataros entered into a subcontract with Crocetti in connection with a portion of Trataros' work under Contract No. 16.

40.    The work subcontracted by Trataros to Crocetti related to, among other things, interior stonework, precast terrazzo flooring, and epoxy terrazzo flooring.

41.    The work subcontracted by Trataros to Crocetti included the installation of a portion of the Project's epoxy terrazzo flooring system.

42.    Upon information and belief, in connection with the work subcontracted to it by Trataros, Crocetti used materials manufactured and/or supplied by TEC.

43.    Upon information and belief, TEC's materials were incorporated into the Project's epoxy terrazzo flooring system.

44.    Carolina Casualty issued a Subcontract Performance Bond and Subcontract Labor and Material Payment Bond (Bond No. 075641) respectively naming Crocetti as Principal, and Trataros as Obligee, in the respective amounts of $3,008,000.00.

45.    Crocetti delivered to Trataros the aforesaid subcontract bonds issued by Carolina Casualty. Crocetti provided said subcontract bonds as a condition to entering into its subcontract with Trataros.

8

46.     Trataros entered into a subcontract agreement with Bartec in connection with certain work demanded by DASNY, TDX and/or KPF on the Project.

47.     The work subcontracted by Trataros to Bartec included the "leveling" of the Project's concrete floor slabs, among other things.

48.     Upon information and belief, the Project's concrete floor slabs were installed by a separate co-prime contractor other than Trataros.

49.     The work subcontracted by Trataros to Bartec included the installation of a portion of the Project's epoxy terrazzo flooring system.

50.     Upon information and belief, in connection with the work subcontracted to it by Trataros, Bartec used materials manufactured and/or supplied by Dayton Superior.

51.     Upon information and belief, Dayton Superior's materials were incorporated into the Project's epoxy terrazzo flooring system.

52.     In its Counterclaims against Travelers, DASNY alleges among other things that "Trataros ... breached Contract No. 15 and Contract No. 16 by, *inter alia*, performing work that was defective, substandard and/or otherwise unacceptable, including but not limited to the defective installation of the Project's epoxy terrazzo flooring, which is delaminating, lifting, curling, and/or cracking in substantial areas of the Project."

53.     DASNY further alleges in its Counterclaims against Travelers that "Trataros failed to (1) provide sufficient labor; (2) effectively administer, schedule, coordinate and manage the work; and (3) otherwise satisfy its obligations under Contract No. 15 and Contract No. 16."

54.     In its Third-Party Complaint against Trataros, DASNY and TDX allege that "[a]s a result of Trataros and its subcontractors failure to satisfy the technical and quality control requirements in Contract No. 15 and Contract No. 16 and accepted industry standards, significant

portions of Trataros' work were defective, substandard or otherwise unacceptable. This nonconforming work had to be repaired or replaced at significant expense to DASNY."

55.    DASNY and TDX further allege in their Third-Party Complaint that "[i]n addition to the construction defects alleged above, Trataros also failed to install flooring material in the Project in accordance with the requirements of Contract No. 15 and Contract No. 16 and industry standards."

56.    DASNY and TDX further allege in their Third-Party Complaint that the Project's epoxy terrazzo flooring system "is deteriorating and is otherwise defective. Among other things the epoxy terrazzo is cracking and crumbling at the perimeter of the poured area at the zinc divider strips over substantial areas of the epoxy terrazzo installation. The epoxy terrazzo is also delaminating and 'blistering' in increasingly larger areas."

57.    DASNY and TDX further allege in their Third-Party Complaint that "[t]he failure of the epoxy terrazzo was caused by defective workmanship and inappropriate materials provided by Trataros and its subcontractors and suppliers, who, among other things, failed to properly prepare and install the materials according to either the contract documents or the manufacturer's prescribed procedures."

58.    DASNY and TDX allege in their Third-Party Complaint that remediation of the purported defects in the epoxy terrazzo flooring system "will cause major disruptions to CUNY's operation of the building and will cost an estimated thirteen million dollars or more to accomplish."

59.    DASNY alleges in its Counterclaims against Travelers that "[a]s a direct and proximate result of Trataros' breach" of Contract No. 15 and Contract No. 16, "DASNY has suffered damages in an amount ... exceeding the principal sum of Twenty-One Million Dollars

($21,000,000) plus interest, costs and attorneys' fees."

60.    Upon information and belief, the claims of DASNY and/or TDX as set forth in their Third-Party Complaint and/or DASNY's Counterclaims relate to allegations of purported defects in the Project's epoxy terrazzo flooring system that have allegedly caused and/or allegedly will cause physical damage to, and/or impair the use of, the Project including but not limited to alleged physical damage and/or impairment to work performed and/or installed by separate co-prime contractors other than Trataros.

61.    Upon information and belief, the claims alleged against Travelers and/or Trataros by DASNY and/or TDX relate to and/or implicate allegations that certain materials purportedly incorporated into the epoxy terrazzo flooring system allegedly are and/or will become failing, defective and/or improperly suited for use on the Project.

*First Count*
*(Contractual Indemnification & Exoneration against Bartec)*

62.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though set forth at length herein.

63.    Upon information and belief, DASNY and/or TDX are asserting claims against Travelers and/or Trataros which allege, among other things, breaches of Contract No. 15 and/or Contract No. 16, including allegations of defective construction, inadequate manpower, ineffective administration/scheduling/coordination/management, and/or failure(s) to meet relevant standards of workmanship (including but not limited to requirements of technical specifications and/or contract documents, professional standards of care, industry standards, and manufacturers' recommended practices).

64.    Pursuant to the terms of Bartec's subcontract with Trataros, Bartec is required to indemnify and hold harmless Trataros from any claims, damages, losses and expenses arising out

11

of and/or relating to the performance of said subcontract.

65.    If the trier of fact determines that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss thereby as a result of Bartec's alleged negligence in performing its contractual obligations, and/or its alleged breach(es) of contract, then Bartec will be required to indemnify Travelers and/or Trataros for any damages they incur as a result of any such negligence and/or contractual breach(es).

66.    In the event that DASNY and/or TDX succeed in prosecuting their claims against Travelers and/or Trataros, then Bartec shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent that Bartec proximately caused the loss to Travelers and/or Trataros.

67.    The loss that Travelers and/or Trataros may suffer and for which Bartec would be liable could take the form of, but would not be limited to, the following:  a judgment against Travelers and/or Trataros in favor of DASNY and/or TDX, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of Bartec's failure to meet its obligations under its subcontract and/or the applicable standard(s) of care.

68.    In the event that Bartec is liable to Travelers and/or Trataros, then Travelers and/or Trataros are also entitled to exoneration, in which case Bartec would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY and/or TDX to the extent that such liability to DASNY and/or TDX was proximately caused by Bartec.

69.    Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against Bartec by way of equitable subrogation and/or legal assignment from Trataros.

70.    Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE**, Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against Fourth-Party Defendant, Bartec for contractual indemnification, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

*Second Count*
*(Breach of Subcontract, Common-Law Indemnification,*
*Contribution & Exoneration against Bartec)*

71.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though set forth at length herein.

72.    If the trier of fact determines that DASNY's and/or TDX's allegations have merit, and Travelers and/or Trataros suffer a loss thereby as a result of the acts and/or omissions of Bartec, then Bartec breached its subcontract with Trataros.

73.    In the event that DASNY and/or TDX succeed in prosecuting their claims against Travelers and/or Trataros, then Bartec shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent that Bartec's alleged breach(es) of its contractual obligations proximately caused the loss to Travelers and/or Trataros.

74.    The loss that Travelers and/or Trataros may suffer and for which Bartec would be liable could take the form of, but would not be limited to, the following: a judgment against Travelers and/or Trataros in favor of DASNY and/or TDX, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of Bartec's failure to meet its contractual obligations.

75.    In the event that Bartec is liable to Travelers and/or Trataros, then Travelers and/or Trataros are also entitled to exoneration, in which case Bartec would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY and/or TDX to the extent that such liability to DASNY and/or TDX was proximately caused by Bartec.

76.    Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against Bartec by way of equitable subrogation and/or legal assignment from Trataros.

77.    Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE**, Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against Fourth-Party Defendant, Bartec on the grounds of breach of contract, for complete indemnification, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

<div align="center">

*Third Count*
*(Professional Negligence, Simple Negligence, Common-Law*
*Indemnification, Contribution, & Exoneration against Bartec)*

</div>

78.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

79.    If the trier of fact determines that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss thereby as a result of Bartec's alleged culpable conduct (including but not limited to Bartec's professional negligence and/or simple negligence), then Bartec will have breached its duty of care owed to Trataros.

80.    In the event that DASNY and/or TDX succeed in prosecuting their claims against Travelers and/or Trataros, Bartec shall be liable to Travelers and/or Trataros for any loss that

Travelers and/or Trataros may suffer as a result, to the extent that Bartec's culpable conduct proximately caused the loss to Travelers and/or Trataros.

81.     The loss that Travelers and/or Trataros may suffer and for which Bartec could be liable could take the form of, but would not be limited to, the following:  a judgment against Travelers and/or Trataros in favor of DASNY and/or TDX, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of Bartec's negligence.

82.     In the event that Bartec is liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case Bartec would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY and/or TDX to the extent that such liability to DASNY and/or TDX was proximately caused by Bartec.

83.     Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against Bartec by way of equitable subrogation and/or legal assignment from Trataros.

84.     Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE**, Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against Fourth-Party Defendant, Bartec on the grounds of professional negligence, or in the alternative simple negligence, for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

### Fourth Count
*(Performance Bond Claim against Carolina Casualty by Trataros)*

85.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

86.    One of the subcontract bonds issued by Carolina Casualty to Crocetti, entitled "Subcontract Performance Bond Form A, Bond No. 075641" (the "Subcontract Performance Bond") gives Trataros the right to make a claim against said bond if Crocetti fails to promptly and faithfully perform its subcontract with Trataros.

87.    If the trier of fact determines that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss thereby as a result of Crocetti's purported negligence and/or breach(es) of contractual obligations, then Crocetti failed to promptly and faithfully perform its subcontract with Trataros.

88.    In that event, Trataros will have a valid claim against Carolina Casualty jointly and severally under the Subcontract Performance Bond for any damages to Trataros proximately caused by Crocetti's alleged failure to faithfully perform its subcontract, and will be entitled to judgment against Carolina Casualty to the full extent of such damages.

**WHEREFORE**, Fourth-Party Plaintiff, Trataros Construction, Inc. demands judgment against Fourth-Party Defendant, Carolina Casualty under the Subcontract Performance Bond for all damages incurred by Trataros as a result of any failure on the part of Crocetti to promptly and faithfully perform its subcontract with Trataros as may be determined by the trier of fact, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

### Fifth Count
*(Performance Bond Claim against Carolina Casualty by Travelers)*

89.    Travelers and Trataros repeat and reallege each and every allegation set forth

16

above in this Fourth-Party Complaint as though same were set forth at length herein.

90.    Travelers, as surety for Trataros, has and/or may suffer losses in connection with this litigation that were proximately caused by Crocetti and/or Bartec.

91.    Travelers is equitably subrogated to the rights of Trataros, and is entitled to exercise those rights that Trataros had or may have to pursue Carolina Casualty under the Subcontract Performance Bond.

92.    Furthermore, Trataros has assigned or presently will assign to Travelers its legal rights to maintain an action against Carolina Casualty, among other things.

93.    On the basis of assignment and equitable subrogation, Travelers has and/or presently will have equitable and/or legal rights to maintain an action against Carolina Casualty under the Subcontract Performance Bond.

94.    Upon information and belief, DASNY and/or TDX are asserting claims against Travelers and/or Trataros which allege, among other things, breaches of Contract No. 15 and/or Contract No. 16, including allegations of defective construction, inadequate manpower, ineffective administration/scheduling/coordination/management, and/or failure(s) to meet relevant standards of workmanship (including but not limited to requirements of technical specifications and/or contract documents, professional standards of care, industry standards, and manufacturers' recommended practices).

95.    If the trier of fact determines that the allegations of DASNY and/or TDX have merit, and Travelers suffers a loss thereby as a result of Crocetti's negligence and/or breach(es) of contractual obligations, then Crocetti failed to promptly and faithfully perform its subcontract with Trataros.

96.    In that event, Travelers will have a valid claim against Carolina Casualty under

the Subcontract Performance Bond to the extent of any loss suffered by Travelers proximately caused by Crocetti's failure to faithfully perform its subcontract with Trataros, and will be entitled to judgment against Carolina Casualty to the full extent of such damages.

**WHEREFORE**, Fourth-Party Plaintiff, Travelers Casualty and Surety Company demands judgment against Fourth-Party Defendant, Carolina Casualty under the Subcontract Performance Bond for all damages incurred by Travelers as a result of any failure on the part of Crocetti to promptly and faithfully perform its subcontract with Trataros as may be determined by the trier of fact, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

<div align="center">

*Sixth Count*
*(Negligence, Breach of Contract, Breach of Warranty - Indemnification, Contribution &*
*Exoneration against Dayton Superior)*

</div>

97.     Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

98.     If the trier of fact determines that that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss thereby as a result of purported culpable conduct on the part of Dayton Superior (including but not limited to alleged simple negligence, negligent manufacture, and/or negligent misrepresentation), then Dayton Superior shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer, to the extent that Dayton Superior proximately caused the loss to Travelers and/or Trataros.

99.     If the trier of fact determines that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss thereby as a result of purported breach(es) of contract and/or warranty (express or implied) on the part of Dayton Superior, then Dayton Superior shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer, to the extent that Dayton Superior proximately caused the loss to Travelers and/or

Trataros.

100.    In the event that DASNY and/or TDX succeed in prosecuting their claims against Travelers and/or Trataros, then Dayton Superior shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent that Dayton Superior proximately caused the loss to Travelers and/or Trataros.

101.    The loss that Travelers and/or Trataros may suffer and for which Dayton Superior would be liable could take the form of, but would not be limited to, the following: a judgment against Travelers and/or Trataros in favor of DASNY and/or TDX, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of Dayton Superior's alleged breach or negligence.

102.    In the event that Dayton Superior is liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case Dayton Superior would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY and/or TDX to the extent that such liability to DASNY and/or TDX was proximately caused by Dayton Superior.

103.    Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against Dayton Superior by way of equitable subrogation and/or legal assignment from Trataros.

104.    Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE**, Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against Dayton Superior on the grounds of

negligence, breach of contract and/or breach of warranty, for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

<u>Seventh Count</u>
*(Negligence, Breach of Contract, Breach of Warranty - Indemnification, Contribution & Exoneration against TEC)*

105.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

106.    If the trier of fact determines that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss thereby as a result of purported culpable conduct on the part of TEC (including but not limited to alleged simple negligence, negligent manufacture, and/or negligent misrepresentation), then TEC shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer, to the extent that TEC proximately caused the loss to Travelers and/or Trataros.

107.    If the trier of fact determines that that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss thereby as a result of purported breach(es) of contract and/or warranty (express or implied) on the part of TEC, then TEC shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer, to the extent that TEC proximately caused the loss to Travelers and/or Trataros.

108.    In the event that DASNY and/or TDX succeed in prosecuting their claims against Travelers and/or Trataros, then TEC shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent that TEC proximately caused the loss to Travelers and/or Trataros.

109.    The loss that Travelers and/or Trataros may suffer and for which TEC would be

20

liable could take the form of, but would not be limited to, the following:  a judgment against Travelers and/or Trataros in favor of DASNY and/or TDX, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of TEC's alleged breach or negligence.

110.    In the event that TEC is liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case TEC would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY and/or TDX to the extent that such liability to DASNY and/or TDX was proximately caused by TEC.

111.    Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against TEC by way of equitable subrogation and/or legal assignment from Trataros.

112.    Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE,** Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against TEC on the grounds of negligence, breach of contract and/or breach of warranty, for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable

*Eighth Count*
*(Breach of Contract(s), Professional Negligence and/or Simple Negligence—Indemnification, Contribution & Exoneration against John Does 1-20 and XYZ Corps. 1-20)*

113.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

114.    Upon information and belief, John Does 1-20 and XYZ Corps. 1-20 were, without limitation, subcontractors to Trataros, suppliers to Trataros, subcontractors to subcontractors of

Trataros, suppliers to subcontractors of Trataros, separate co-prime contractors, subcontractors to separate co-prime contractors, suppliers to separate co-prime contractors, consultants to DASNY, consultants to TDX, consultants to KPF, and/or other persons or entities involved with the Project.

115.    Given that discovery has not been completed in this action, and that the allegations of DASNY and/or TDX relate to unspecified "other" construction defects, separate and apart from the purported defects in the epoxy terrazzo flooring system, as well as to unspecified purported failures to provide sufficient labor, to effectively administer/schedule/coordinate/manage the work of Contract No. 15 and Contract No. 16; and additional, alleged failures to satisfy unspecified contractual obligations under Contract No. 15 and Contract No. 16, Travelers and Trataros are not able to ascertain at this time the identity of John Does 1-20 and XYZ Corps. 1-20 who are potentially responsible in whole or in part for such alleged construction defects, failures and/or breaches of contractual obligations.

116.    If the trier of fact determines that the allegations of DASNY and/or TDX have merit, and Travelers and/or Trataros suffer a loss as a result of the alleged breaches of contract, culpable conduct and/or negligence of John Does 1-20 and/or XYZ Corps. 1-20, thereby, then John Does 1-20 and/or XYZ Corps. 1-20 breached their respective standards of care, prime contracts, subcontracts and/or other agreements that they entered into in connection with the Project.

117.    In the event that DASNY and/or TDX succeed in prosecuting their claims against Travelers and/or Trataros for the alleged failures, construction defects, and/or breaches of contractual obligations, John Does 1-20 and/or XYZ Corps. 1-20 shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent

that John Does 1-20 and/or XYZ Corps. 1-20 proximately caused the loss to Travelers and/or Trataros.

118.    The loss that Travelers and/or Trataros may suffer and for which John Does 1-20 and/or XYZ Corps. 1-20 would be liable could take the form of, but would not be limited to, the following: a judgment against Travelers and/or Trataros in favor of DASNY and/or TDX, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of John Does 1-20's and/or XYZ Corps. 1-20's culpable conduct, negligence or breach(es) of contractual obligations.

119.    In the event that John Does 1-20 and/or XYZ Corps. 1-20 are liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case John Does 1-20 and/or XYZ Corps. 1-20 would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY to the extent that the liability to DASNY was proximately caused by John Does 1-20 and/or XYZ Corps. 1-20.

120.    Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against John Does 1-20 and/or XYZ Corps. 1-20 by way of equitable subrogation and/or legal assignment from Trataros.

121.    Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE**, Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against the Fourth-Party Defendants, John Does 1-20, and XYZ Corps. 1-20 on the grounds of breach of contract, professional negligence and/or simple negligence, for indemnification, contribution, and exoneration for all damages,

23

including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

<u>Ninth Count</u>
*(Insurance Coverage - Declaratory Judgment, Indemnification, Contribution & Exoneration against Kemper, Great American, National Union, US Fire, Allied World, Zurich, Ohio Casualty, Harleysville, and XYZ Corps. 1-20)*

122.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

123.    Upon information and belief, Kemper is/are insurance companies organized and existing under the laws of the State of Illinois and duly licensed by the Insurance Department of the State of New York to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

124.    Upon information and belief, Great American is/are insurance companies organized and existing under the laws of the State of Ohio and duly licensed by the Insurance Department of the State of New York to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

125.    Upon information and belief, National Union is/are insurance companies organized and existing under the laws of the Commonwealth of Pennsylvania and duly licensed by the Insurance Department of the State of New York to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

126.    Upon information and belief, US Fire is/are insurance companies organized and existing under the laws of the State of Delaware and duly licensed by the Insurance Department of the State of New York to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

127.    Upon information and belief, Allied World is/are insurance companies organized

24

and existing under the laws of the State of Delaware and duly licensed by the Insurance Department of the State of New York to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

128.    Upon information and belief, Zurich is/are insurance companies organized and existing under the laws of the State of New York and duly licensed by the Insurance Department of the State of New York and/or the Department of Banking and Insurance of the State of New Jersey to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

129.    Upon information and belief, Ohio Casualty is/are insurance companies organized and existing under the laws of the State of Ohio and duly licensed by the Insurance Department of the State of New York and/or the Department of Banking and Insurance of the State of New Jersey to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

130.    Upon information and belief, Harleysville is/are insurance companies organized and existing under the laws of the Commonwealth of Pennsylvania and duly licensed by the Insurance Department of the State of New York and/or the Department of Banking and Insurance of the State of New Jersey to conduct the business of issuing, inter alia, various policies of insurance including the risks and types of insurance involved herein.

131.    Pursuant to the terms of the subcontract entered into by and between Bartec, Bartec was obligated to obtain insurance coverage naming Trataros and DASNY, inter alia, as "additional insureds."

132.    Pursuant to the terms of the subcontract entered into by and between Crocetti and Trataros, Crocetti was required to obtain insurance coverage naming Trataros and DASNY, inter

alia, as "additional insureds."

133. Upon information and belief, pursuant to the terms of the subcontract(s) entered into by and between Trataros and its subcontractors/suppliers XYZ Corps. 1-20, said subcontractors/suppliers were required to obtain insurance policy/ies naming Trataros and DASNY, inter alia, as "additional insureds."

134. Because discovery has not been completed, and because all relevant policies and/or certificates of insurance relating to the Project, and/or under the terms of which Trataros, Crocetti, Bartec, DASNY, and/or relevant others qualify as "insured(s)" and/or "additional insured(s)," have not been identified to date, Travelers and Trataros are unable to determine the identity of every insurance carrier that may be implicated by the claims asserted to date in this action. Hence, Travelers and Trataros refer to the unidentified insurance carriers, among others, as XYZ Corps. 1-20 until their identity is discovered.

135. Upon information and belief, Kemper, Great American, National Union, US Fire, Allied World, Zurich, Ohio Casualty, Harleysville, and/or XYZ Corps. 1-20 (hereinafter, collectively, the "carriers") issued certain insurance policy/ies on behalf of (and/or at the request of) Trataros, Crocetti and/or Bartec, and/or under the terms of which Trataros, Crocetti, Bartec and/or DASNY qualify as "insured(s)" and/or "additional insured(s)."

136. Upon information and belief, Kemper, US Fire, Great American, Ohio Casualty, and/or XYZ Corps. 1-20 issued, without limitation, certain insurance policy/ies to Crocetti and/or at Crocetti's request (hereinafter, the "Crocetti Policies").

137. Upon information and belief, under the terms of the Crocetti Policies, Trataros and/or DASNY qualify as "additional insured(s)."

138. Upon information and belief, Zurich, Ohio Casualty, Harleysville, and/or XYZ

Corps. 1-20 issued, without limitation, certain insurance policy/ies to Bartec and/or at Bartec's request (hereinafter, the "Bartec Policies").

139.    Upon information and belief, under the terms of the Bartec Policies, Trataros, Bartec and/or DASNY qualify as "insured(s)" and/or "additional insured(s)."

140.    Upon information and belief, US Fire, Allied World, National Union, Great American, Zurich and/or XYZ Corps. 1-20 issued, without limitation, certain insurance policy/ies to Trataros and/or at Trataros' request (hereinafter, the "Trataros Policies").

141.    Upon information and belief, under the terms of the Trataros Policies, Trataros, and/or DASNY qualify as "insured(s)" and/or "additional insured(s)."

142.    Upon information and belief, the claims asserted by DASNY and/or TDX against Travelers and/or Trataros, allege and/or imply that certain property has and/or will allegedly sustain physical damage, and/or that such property has been and/or will be impaired, and that such alleged damage and/or impairment was, and/or will be, caused by and/or sustained by, work purportedly performed by Trataros and/or its subcontractors/suppliers.

143.    Upon information and belief, the claims asserted by DASNY and/or TDX against Travelers and/or Trataros, allege and/or imply that the purported property damage and/or impairment was, and/or will be, allegedly sustained by portions of the construction work allegedly installed by entities other than Trataros, Crocetti and/or Bartec.

144.    Upon information and belief, the claims asserted by DASNY and/or TDX against Travelers and/or Trataros, allege and/or imply that the purported property damage and/or impairment was, will be, and/or will continue to be caused by one or more discrete and/or continuing unintended occurrences.

145.    If the trier of fact determines that the allegations of DASNY and/or TDX have

27

merit, and the trier of fact holds Trataros and/or Travelers liable for damages to DASNY and/or TDX, then in such event, the damages, including but not limited to the cost associated with the repair, replacement, and/or loss of use of the allegedly damaged and/or impaired property, and the cost of repairing or replacing alleged occurrence(s) and/or any damages caused by the alleged occurrence(s), may be covered in whole or in part by any one or all of the insurance policies written by the carriers.

146. If and to the extent that any one or all of the insurance policies written by the carriers cover part or all of the referenced damages, those carriers shall be jointly and severally liable to reimburse, indemnify, and/or exonerate Trataros and/or Travelers for the covered damages either because Trataros qualifies as an "insured" and/or "additional insured", or because Travelers shall acquire by equitable subrogation or legal assignment the right of Trataros, Bartec and/or DASNY to make a claim against the insurance policies.

147. If and to the extent that any one or all of the insurance policies written by the carriers cover part or all of the alleged damages, those carriers shall be subject to a duty to defend and/or indemnify Travelers and/or Trataros in connection with the within action, either because Trataros qualifies as an "insured" and/or "additional insured", or because Travelers shall acquire by equitable subrogation or legal assignment the right of Trataros, Bartec and/or DASNY to make a claim against the insurance policies.

148. Trataros and Travelers are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

149. Trataros and Travelers request declaratory relief that coverage exists as to the claims in question as well as for complete indemnification and/or compensatory damages, to the full extent of such coverage, together with counsel fees and costs.

**WHEREFORE**, Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against the Fourth-Party Defendants, Carolina Casualty, Bartec, Dayton Superior, TEC, Kemper, Great American, National Union, US Fire, Allied World, Zurich, Ohio Casualty, Harleysville, John Does 1-20, and XYZ Corps. 1-20 for the following relief:

    a.    On the First Count, against Bartec for contractual indemnification, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

    b.    On the Second Count, against Bartec on the grounds of breach of contract, for complete indemnification, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

    c.    On the Third Count, against Bartec on the grounds of professional negligence, or in the alternative simple negligence, for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

    d.    On the Fourth Count, against Carolina Casualty and in favor of Trataros, under the Subcontract Performance Bond for all damages incurred by Trataros as a result of any failure on the part of Crocetti to promptly and faithfully perform its subcontract with Trataros as may be determined by the trier of fact, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

    e.    On the Fifth Count, against Carolina Casualty and in favor of Travelers, under the Subcontract Performance Bond for all damages incurred by Travelers as a result of any failure on

the part of Crocetti to promptly and faithfully perform its subcontract with Trataros as may be determined by the trier of fact, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

      f.      On the Sixth Count, against Dayton Superior on the grounds of negligence, breach of contract and/or breach of warranty, for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

      g.      On the Seventh Count, against TEC on the grounds of negligence, breach of contract and/or breach of warranty, for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

      h.      On the Eighth Count, against John Does 1-20 and XYZ Corps. 1-20 on the grounds of breach of contract, professional negligence and/or simple negligence, for indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

      i.      On the Ninth Count, against Kemper, Great American, National Union, US Fire, Allied World, Zurich, Ohio Casualty, Harleysville, and XYZ Corps. 1-20 for a declaration of the carriers' duty/ies to defend and/or indemnify Trataros and/or Travelers under the applicable policies, together with judgment granting indemnification, contribution, exoneration and/or compensatory damages for all damages to the full extent of coverage under any and all applicable policies, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

Dated: Florham Park, New Jersey
      November 13, 2007

<div style="margin-left:40%">

**DREIFUSS BONACCI & PARKER, LLP**
*Attorneys for Fourth-Party Plaintiffs,*
*Trataros Construction, Inc. and*
*Travelers Casualty and Surety Company*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
(973) 514-1414

By: _____
    JoAnne Bonacci (JB:1354)

</div>

TO:    Timothy B. Froessel, Esq.
        Holland & Knight, LLP
        195 Broadway
        New York, New York 10007
        *Attorneys for Defendants/Third-Party Plaintiffs,*
        *Dormitory Authority - State of New York*
        *and TDX Construction Corp.*

        David Abramovitz, Esq.
        Zetlin & DeChiara, LLP
        801 Second Avenue
        New York, New York 10017
        *Attorneys for Defendant,*
        *Kohn, Pederson, Fox & Associates, P.C.*

# EXHIBIT F

Electronic Filing
ECF 1:07-cv-06915

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

TRAVELERS CASUALTY AND SURETY COMPANY,
etc.,                                                                                07-CV-6915-DLC

                                    Plaintiffs,

- - against - -

DORMITORY AUTHORITY - STATE OF NEW YORK,                    **ANSWER**
et al.,                                                                                  **to**
                                    Defendants.                                **Fourth-Party**
                                                                                       **Complaint**
-----------------------------------------------------------------------X

DORMITORY AUTHORITY OF THE STATE OF
NEW YORK, et ano.,

                        Third-Party Plaintiffs,

- - against - -

TRATAROS CONSTRUCTION, INC.,

                        Third-Party Defendant.
-----------------------------------------------------------------------X

TRATAROS CONSTRUCTION INC. and TRAVELERS
CASUALTY AND SURETY COMPANY,

                        Fourth-Party Plaintiffs,

- - against - -

CAROLINA CASUALTY INSURANCE COMPANY,
et al.,

                        Fourth-Party Defendants.
-----------------------------------------------------------------------X

**Carolina Casualty Insurance Company** answers the Fourth-Party Complaint in this action

as set forth below.  For brevity, the parties involved will be referred to simply as Travelers,

DASNY, Trataros, Crocetti, Carolina, etc.

## Denials/Admissions

**First**    Carolina denies that it has knowledge or information sufficient to form a belief as to any of the allegations made in the paragraphs of the Fourth-Party Complaint numbered 1, 2, 4 through 14, 17 (except Carolina believes Crocetti is a New York corporation), 35, 36, 37, or 45 through 51.

**Second**    Carolina denies the allegations made in paragraph 3 of the Fourth-Party Complaint, except Carolina admits that Carolina is incorporated (in Iowa) and has its principal place of business in Florida, as is alleged.

**Third**    Carolina denies it has knowledge or information sufficient to form a belief as to any of the allegations made in paragraphs 15 or 16 of the Fourth-Party Complaint, except Carolina admits that a substantial part of the transactions and occurrences referred to in the pleadings in this case took place within this judicial district.

**Fourth**    Carolina admits the allegations made in the paragraph of the Fourth-Party Complaint numbered 18; admits 30 through 34 (except lacks sufficient information as to legal title to the property); and admits 38 through 44 (but refers to the actual writings for their contents).

**Fifth**    Carolina admits that the various pleadings referred to in paragraphs 19 through 29 of the Fourth-Party Complaint were filed as alleged, but otherwise begs leave to refer to the actual texts of those pleadings for their contents; Carolina responds likewise to paragraphs 52 through 61 and 94 (except denies Crocetti's work was defective as is alleged or is implied in the pleadings referred to in such paragraphs).

2

**Sixth**   Carolina does not respond to the allegations of paragraphs 62 through 84 of the Fourth-Party Complaint, for the reason that such allegations are explicitly directed to parties other than Carolina; similarly, no response from Carolina is called for by paragraphs 97 through 149 of the Fourth-Party Complaint.

**Seventh**    Carolina reiterates its responses to the allegations repeated or re-alleged by the paragraphs of the Fourth-Party Complaint numbered 85 and 89.

**Eighth**    Carolina denies the allegations of paragraph 86 of the Fourth-Party Complaint, and respectfully refers to the full text of the Crocetti subcontract-performance bond for an accurate and complete statement of all its terms and conditions.

**Ninth** Carolina denies each and every allegation made in, or adopted by, the paragraphs of the Fourth-Party Complaint numbered 87 and 95, which refer to Crocetti's alleged "failure faithfully and promptly perform" Crocetti's subcontract with Trataros; Carolina specifically denies Trataros complied with all the expressed and implied terms and conditions of that subcontract in that, among other things - -

- Trataros prevented Crocetti from performing the subcontract work any differently from the way in which Crocetti actually did perform such work; and,

- Even assuming (without conceding) there were any failure on Crocetti's part, Trataros never followed any of the subcontract's protocols concerning the subcontractor's supposed "failure to perform."

**Tenth** Carolina denies each and every allegation made in the paragraphs of the Fourth-Party Complaint numbered 88, 90, 91, 92, 93, and 96; Carolina specifically denies

due and timely compliance with all the terms and conditions of Carolina's performance

bond for Crocetti, including in each of the following respects:

- The performance bond given by Carolina as surety for Crocetti names Trataros as the obligee, not Travelers. Nor is Travelers Trataros' "successor". Nor is the bond assignable. Travelers therefore lacks standing to sue Carolina as an obligee, successor, or assignee.

- If Trataros nevertheless did assign the bond to Travelers, as is alleged, then Trataros divested itself of its own rights to sue under the bond.

- Suit on the surety bond was required to be commenced within the time prescribed in the bond, to wit, before the expiration of two years from the date on which final payment was due under Crocetti's contract with Trataros.

- Pursuant to the terms of the bond, the bond-claimant must establish that Crocetti failed promptly and faithfully to perform its subcontract (which assertion Crocetti has denied, and which seems belied by the complaints about Crocetti's finished product.)

- The alleged deficiencies in Crocetti's finished product do not add up to a material breach of contract by Crocetti sufficient to constitute a "default" within the meaning of the performance bond Carolina issued as surety for Crocetti.

- Crocetti was never *declared* in "default" under its subcontract. Such a declaration of "default" is an expressed condition precedent for invoking the said performance bond.

- The surety bond is also conditioned on the bond-obligee's having fulfilled its own obligations under the subcontract. Crocetti maintains that the bond-obligee (namely, Trataros) failed to live up to its own obligations, in particular, failed to make required payments, and failed properly to manage the work or allow Crocetti to perform the work as Crocetti maintained it should have been performed.

- The bond also explicitly requires giving credit to the surety for the unpaid balance (with all proper adjustments) of the contract price, but the Fourth-Party Plaintiffs have not given Carolina credit for such

4

amounts.

## First Affirmative Defense

**Eleventh**    If the Court deems any of the points set forth above, as specific denials, to be more appropriately pleaded as affirmative defenses, then Carolina reiterates them as affirmative defenses.

## Second Affirmative Defense

**Twelfth**    Carolina adopts Travelers' and Trataros' defenses to DASNY's claims, especially the defenses of contributory fault, waiver, and failure to mitigate damages, including, more particularly, in the following respects:

- The conditions complained of at the Baruch building resulted at least in part from the work-product of DASNY's own architects or engineers.

- The conditions complained of resulted to a great extent from decisions made by DASNY itself and from the acts, errors, or omissions, of DASNY's construction manager, including directives as to how and when the flooring work in the building was to be done, in some instances deviating from good practice and even deviating from the original plans and specifications.

- The conditions complained of may have been worsened by things done or not done by DASNY or by the building-user or occupant, including as to repairs to the flooring and as to cleaning and maintenance of the flooring.

## Third Affirmative Defense

**Thirteenth**    Carolina reserves the right to invoke any provisions that may

5

be contained in applicable contract documents imposing time-limitations or limitations-of-liability for claims that work or materials have not stood up to desired quality after being installed and to put to use.

### Fourth Affirmative Defense

**Fourteenth**     Crocetti's work at the Baruch project was performed under the immediate supervision, direction, and control of Trataros. Trataros in fact gave or relayed to Crocetti instructions concerning the very work now alleged to be defective. Trataros therefore caused or contributed to the damages now complained of.

### Fifth Affirmative Defense

**Fifteenth**     If Trataros caused or permitted defective work by Crocetti, then Trataros' own acts or omissions resulted in prejudice to Carolina as Crocetti's surety, making it inequitable for Trataros to look to Crocetti's surety to pay Trataros for Trataros' own failings, and thus discharging in whole or in part any obligation Carolina might otherwise have had to Trataros (or anyone purporting to claim by or in the right of Trataros, like Travelers).

### Sixth Affirmative Defense

**Sixteenth**     Even assuming (without conceding) that Crocetti was in any way responsible for any of the damages complained of, in no event could Crocetti (or

6

Crocetti's surety Carolina) be liable to the Fourth-Party Plaintiffs for more than the *net amount*, if any, by which such Crocetti-caused damages exceeds amounts owed to Crocetti by the Fourth-Party Plaintiffs.

**Seventeenth** According to Crocetti, the Fourth-Party Plaintiffs failed to pay amounts earned by Crocetti totaling not less than $901,091 - - for the unpaid balance of the subcontract price, for extra or additional work, and for damages caused to Crocetti.

**Eighteenth**  The amounts earned by Crocetti, but never paid, must be applied to recoup any losses caused by Crocetti before Fourth-Party Plaintiffs can properly look to impose any liability on Crocetti (or Carolina as Crocetti's surety).

### Seventh Affirmative Defense

**Nineteenth** Carolina reserves the right to adopt any other defenses and set-offs that were, or in good faith could have been, asserted by Crocetti itself if Crocetti were participating in this case as a named party in its own right.

### Cross-Claims against various Co-Defendants

Carolina hereby asserts the following cross-claims against those parties alleged by Fourth-Party Plaintiffs to be liable in whole or in part for the same damages claimed against Crocetti - - namely, Fourth-Party Defendants Bartec, Dayton, and TEC, and their respective insurers.

**Twentieth**  For purposes of these cross-claims only, and purely

7

hypothetically, Carolina adopts the allegations made against those other Fourth-Party Defendants by the Fourth-Party Plaintiffs.

**Twenty-First**     To the extent any of those allegations prove true, Carolina will be entitled to indemnity or contribution from those Fourth-Party Defendants found to be liable in whole or in part for the damages complained of.

### Cross-Claim against Co-Defendant TEC

**Twenty-Second**     TEC (a trade name for fourth-party defendant Specialty Construction Brands, Inc.) furnished materials to Crocetti, pursuant to purchase orders or sales contracts, which materials were used by Crocetti at the Baruch project.

**Twenty-Third**     TEC expressly or impliedly warranted that such materials conformed to project specifications and were suitable for their intended purposes.

**Twenty-Fourth**     Crocetti found no fault with TEC's materials, and is still not aware of any fault with TEC's materials; others, however, allege otherwise.

**Twenty-Fifth**     If TEC's materials were in fact faulty (as others allege), then TEC is obligated to indemnify Crocetti and Crocetti's surety Carolina for any resulting damage to Crocetti's work and for liabilities consequently imposed on Crocetti and Crocetti's surety Carolina.

### Carolina's Counterclaims against Travelers and Trataros

Carolina reserves the right to prosecute the following counterclaims - - subject however to

8

any approvals that may be or that may become necessary by reason of Crocetti's having

filed for protection under the federal Bankruptcy Code, which Crocetti did on or about

February 8, 2007.

**Twenty-Sixth**        In addition to supplemental jurisdiction, under 28 USC

1367, this court has independent jurisdiction over these counterclaims, under 28 USC 1332,

in that there is diversity between Carolina (an Iowa corporation headquartered in Florida)

and Trataros and Travelers (neither of which is incorporated or headquartered in Iowa or

Florida).

**Twenty-Seventh**        Carolina is an Iowa corporation, headquartered in

Florida.

**Twenty-Eighth**        Trataros Construction, Inc. ("Trataros") was and still is

a foreign or domestic corporation actually doing business in the City and State of New

York with its principal office for the transaction of business located at 664 64th Street,

Brooklyn, New York 11220.

**Twenty-Ninth**        Travelers Casualty and Surety Company ("Travelers")

was and still is a domestic or foreign corporation actually doing business as a licensed

Surety Company in the State of New York, with an office for the transaction of business

located at One Tower Square, 14C, Hartford, Connecticut 06183.

### Carolina's First Counterclaim, against Trataros

**Thirtieth**        On or about August 27, 1998, Trataros as a "general", or

9

"prime", contractor entered into a contract with the Dormitory Authority of the State of New York ("DASNY") for certain construction work at Baruch College, 55 Lexington Avenue, New York, New York for Site B, Package No. 2 - - General Construction Work, Contract No. 16 (Contract No. DA. No. 6500-1802-2178.JDE No. 61505) hereinafter referred to as the "Project" and/or the "Prime Contract".

**Thirty-First**  Thereafter, Trataros, on or about September 18, 1998 entered into a subcontract agreement with Crocetti to perform certain base-subcontract work including furnishing and installing pre-cast terrazzo, epoxy terrazzo, interior stonework and related work at and for the improvement of the Project.

**Thirty-Second**    The agreed upon price and fair and reasonable value of the base contract work referred to in paragraph "Thirty-First" hereof was the sum of $3,008,000.00.

**Thirty-Third**    During the performance of Crocetti's subcontract work at the Project, at the special instance and request of Trataros and/or others acting on behalf of Trataros, Crocetti performed certain extra and/or additional change order work at the Project.

**Thirty-Fourth**    The fair and reasonable value of the extra and/or additional work referred to in paragraph "Thirty-Third" hereof was the agreed upon sum and fair and reasonable value of $990,352.51.

**Thirty-Fifth**  On or about and between September 30, 2000 and February 12, 2003, Crocetti performed all of its labor and furnished all of the materials it was required

10

to perform and/or furnish in connection with the Project. Crocetti was substantially completed with its subcontract work on or about October 31, 2002.

**Thirty-Sixth** Crocetti duly complied with all of the terms and conditions of the subcontract by and between Crocetti and Trataros, except to the extent Crocetti was prevented from doing so by Trataros.

**Thirty-Seventh** As a result of the foregoing, there became due and owing to Crocetti from Trataros the sum of $3,998,352.51.

**Thirty-Eighth** That no part of said sum of $3,998,352.51 has been paid or credit deductions given, despite demand having been made therefore, except the sum of $3,097,260.86, leaving a balance due and owing to Crocetti from Trataros in the sum of $901,091.65, plus interest thereon from October 31, 2002.

**Thirty-Ninth** Money Trataros owes Crocetti is supposed to go to Carolina, under agreements made between Crocetti and Carolina.

### Carolina's Second Counterclaim, against Travelers

**Fortieth** Trataros was required by DASNY to execute and deliver and did execute and deliver, with a licensed surety thereon, a labor and material payment bond in connection with Trataros' general contract with DASNY for the Baruch project.

**Forty-First** Trataros had originally furnished a labor and material payment bond from Reliance Insurance Company.

**Forty-Second** At the time Crocetti had entered into the contract with

11

Trataros, Reliance was authorized to issue and deliver the labor and material payment bond required for the Baruch project.

**Forty-Third** Upon information and belief, Travelers either assumed all of the obligations of Reliance under the aforementioned bond, or in the alternative, executed, furnished and delivered a separate and distinct labor and material payment bond.

**Forty-Fourth** Travelers was and still is the surety responsible for the payment of just claims under the labor and material payment bond(s) upon which this counterclaim is based.

**Forty-Fifth** Trataros and Travelers are jointly and severally liable to Crocetti for the sum of $901,091.65, plus interest thereon from October 31, 2002, for the labor performed, costs incurred and materials furnished in connection with the construction of the Project under and pursuant to the provisions of the said labor and material payment bond(s).

**Forty-Sixth** Money Trataros' surety owes Crocetti is supposed to go to Carolina, under agreements made between Crocetti and Carolina.

### Request for Judgment

Wherefore, Fourth-Party Defendant Carolina Casualty Insurance Company respectfully requests judgment dismissing the Fourth-Party Complaint against it and (subject to any necessary bankruptcy-court approvals) awarding Carolina judgment on its counterclaims. Alternatively, if any liability is imposed on Carolina, then Carolina requests judgment-over

on its cross-claims for indemnity or contribution. Carolina also requests judgment for costs and disbursements, and for such further or different relief as may be just and equitable.

### Demand for Jury

At this time, Fourth-Party Defendant Carolina Casualty Insurance Company respectfully reserves its rights to a trial by jury.

Dated: New York, NY
       December 14, 2007

                  For Fourth-Party Defendant Carolina Casualty
                  <u>Insurance Company</u>

                  ZICHELLO & McINTYRE, LLP

               By: <u>/s/</u>
                    Vincent J. Zichello (VZ-3487)
                  Office & P.O. Address
                  420 Lexington Avenue
                  New York, New York 10170
                  Tel. 212-972-5560
                  E-mail <u>zimc@msn.com</u>

                      - - and - -

                  TORRE, LENTZ, GAMELL, GARY
                  & RITTMASTER, LLP

               By: <u>/s/</u>
                    Robert Mark Wasko (RW-7811)
                    226 West 26th Street
                  New York, NY 10001
                  Tel. 516-240-8900
                  E-mail <u>rwasko@tlggr.com</u>

13

# EXHIBIT G

Official Form 1 (10/06)

| United States Bankruptcy Court<br>Southern District of New York | Voluntary Petition |
| --- | --- |

| Name of Debtor (if individual, enter Last, First, Middle):<br>**G.M. Crocetti, Inc.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| --- | --- |
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>**13-1769857** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**3960 Merritt Avenue**<br>**Bronx, NY**<br>ZIP Code **10466** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Bronx** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |

Location of Principal Assets of Business Debtor
(if different from street address above):    **White Plains and Rye, Westchester County**
**White Plains, NY 10601**

---

**Type of Debtor**
(Form of Organization)
(Check one box)

☐ Individual (includes Joint Debtors)
*See Exhibit D on page 2 of this form.*
■ Corporation (includes LLC and LLP)
☐ Partnership
☐ Other (If debtor is not one of the above entities,
check this box and state type of entity below.)

**Nature of Business**
(Check one box)

☐ Health Care Business
☐ Single Asset Real Estate as defined
in 11 U.S.C. § 101 (51B)
☐ Railroad
☐ Stockbroker
☐ Commodity Broker
☐ Clearing Bank
■ Other

**Tax-Exempt Entity**
(Check box, if applicable)

☐ Debtor is a tax-exempt organization
under Title 26 of the United States
Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which**
**the Petition is Filed (Check one box)**

☐ Chapter 7        ☐ Chapter 15 Petition for Recognition
☐ Chapter 9            of a Foreign Main Proceeding
■ Chapter 11      ☐ Chapter 15 Petition for Recognition
☐ Chapter 12          of a Foreign Nonmain Proceeding
☐ Chapter 13

**Nature of Debts**
(Check one box)

☐ Debts are primarily consumer debts,       ■ Debts are primarily
defined in 11 U.S.C. § 101(8) as              business debts.
"incurred by an individual primarily for
a personal, family, or household purpose."

---

**Filing Fee** (Check one box)

■ Full Filing Fee attached

☐ Filing Fee to be paid in installments (applicable to individuals only). Must
attach signed application for the court's consideration certifying that the debtor
is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.

☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must
attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:
☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).
Check if:
☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed
to insiders or affiliates) are less than $2 million.
Check all applicable boxes:
☐ A plan is being filed with this petition.
☐ Acceptances of the plan were solicited prepetition from one or more
classes of creditors, in accordance with 11 U.S.C. § 1126(b).

---

**Statistical/Administrative Information**

☐ Debtor estimates that funds will be available for distribution to unsecured creditors.

■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,
there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1000-<br>5,000 | 5001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 100,001-<br>100,000 | OVER<br>100,000 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| ■ $0 to<br>$10,000 | ☐ $10,001 to<br>$100,000 | ☐ $100,001 to<br>$1 million | ☐ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
| --- | --- | --- | --- | --- |

Estimated Liabilities

| ☐ $0 to<br>$50,000 | ☐ $50,001 to<br>$100,000 | ☐ $100,001 to<br>$1 million | ■ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
| --- | --- | --- | --- | --- |

Official Form 1 (10/06)

FORM B1, Page 2

| **Voluntary Petition** *(This page must be completed and filed in every case)* | Name of Debtor(s): **G.M. Crocetti, Inc.** |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location Where Filed: **- None -** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: **See Attachment** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) <br><br> ☐ Exhibit A is attached and made a part of this petition. | **Exhibit B** (To be completed if debtor is an individual whose debts are primarily consumer debts.) <br> I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). <br><br> X _____ <br> Signature of Attorney for Debtor(s)　　　　　(Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**

(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

■ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Statement by a Debtor Who Resides as a Tenant of Residential Property**

(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____

(Name of landlord that obtained judgment)

_____

(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

Official Form 1 (10/06)

FORM B1, Page 3

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **G.M. Crocetti, Inc.** |

<div align="center">Signatures</div>

<table>
<tr>
<td colspan="2" align="center"><b>Signature(s) of Debtor(s) (Individual/Joint)</b></td>
</tr>
<tr>
<td>
I declare under penalty of perjury that the information provided in this petition is true and correct.<br>
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).<br><br>
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>
X _____<br>
   Signature of Debtor<br><br>
X _____<br>
   Signature of Joint Debtor<br><br>
_____<br>
   Telephone Number (If not represented by attorney)<br><br>
_____<br>
   Date
</td>
<td>
<b>Signature of a Foreign Representative</b><br><br>
I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br>
(Check only one box.)<br>
☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.<br>
☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>
X _____<br><br>
_____<br>
   Signature of Foreign Representative<br><br>
_____<br>
   Printed Name of Foreign Representative<br><br>
_____<br>
   Date
</td>
</tr>
</table>

**Signature of Attorney**

X  /s/ Leonard I. Spielberg
_____
Signature of Attorney for Debtor(s)

**Leonard I. Spielberg LS2506**
Printed Name of Attorney for Debtor(s)

**Harold, Salant, Strassfield & Spielberg**
Firm Name

**81 Main Street**
**Suite 205**
**White Plains, NY 10601**

Address


**(914) 683-2500  Fax: (914) 683-1279**
Telephone Number

**February  8, 2007**
Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:


If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  /s/ Arthur Cavazzi
Signature of Authorized Individual

**Arthur Cavazzi**
Printed Name of Authorized Individual

**President**
Title of Authorized Individual

**February  8, 2007**
Date

In re    **G.M. Crocetti, Inc.**                                              Case No. _____

_____,
                                    Debtor

# FORM 1. VOLUNTARY PETITION
## <u>Pending Bankruptcy Cases Filed Attachment</u>

| <u>Name of Debtor / District</u> | <u>Case No. / Relationship</u> | <u>Date Filed / Judge</u> |
|---|---|---|
| **G.M. Crocetti Flooring, Inc.**<br>**Southern District of New York - Manhattan** | **06-12946**<br>**shareholders are the same** | **12/06/06**<br>**Burton R. Lifland** |
| **G.M. Crocetti Realty LLC**<br>**Southern District of New York - Manhattan** | **07-10166**<br>**shareholders are the same** | **01/24/07**<br>**Robert D. Drain** |

# EXHIBIT H

Form 4
(10/05)

# United States Bankruptcy Court
## Southern District of New York

In re    G.M. Crocetti, Inc.                            Case No.    07-10319

                                Debtor(s)            Chapter    11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or chapter 9*] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| American Express Corporate<br>PO Box 2855<br>New York, NY 10116 | American Express Corporate<br>PO Box 2855<br>New York, NY 10116 | Credit card charges | | 34,140.20 |
| AXE, S.R.L.<br>Via Opifici, 1<br>55045 Pietrassabta<br>(LU) Italy | AXE, S.R.L.<br>Via Opifici, 1<br>55045 Pietrassabta<br>(LU) Italy | Materials | | 39,567.66 |
| Cassiere Marble & Stone, Inc.<br>15 Cranberry Lane<br>Plainview, NY 11803 | Cassiere Marble & Stone, Inc.<br>15 Cranberry Lane<br>Plainview, NY 11803 | Subcontract | | 55,417.52 |
| Ciot Montreal Inc. & John Does<br>9151 Boulevard St. Laurent<br>Montreal, Quebec<br>Canada H2N 1N2 | Ciot Montreal Inc. & John Does<br>9151 Boulevard St. Laurent<br>Montreal, Quebec<br>Canada H2N 1N2 | Materials | | 128,732.57 |
| G.M. Crocetti Realty LLC<br>3960 Merritt Ave<br>Bronx, NY 10466 | G.M. Crocetti Realty LLC<br>3960 Merritt Ave<br>Bronx, NY 10466 | Rent | | 648,000.00 |
| IGM Corporation<br>PO Box 3<br>2038 83rd Street<br>North Bergen, NJ 07047 | IGM Corporation<br>PO Box 3<br>2038 83rd Street<br>North Bergen, NJ 07047 | Material | | 246,821.94 |
| Internal Revenue Service<br>1200 Waters Place<br>Suite 108<br>Bronx, NY 10461 | Internal Revenue Service<br>1200 Waters Place<br>Suite 108<br>Bronx, NY 10461 | Withholdig tax,<br>FUTA, Social<br>Security, Medicare | | 1,801,274.29 |
| Leonardo<br>unknowm | Leonardo<br>unknowm | | | 54,575.84 |
| Local 210 Teamsters<br>345 West 44th Street<br>New York, NY 10036 | Local 210 Teamsters<br>345 West 44th Street<br>New York, NY 10036 | Judgment for<br>benefits | | 96,313.60 |
| Local 52 & Local 88<br>Tile Setters & Tile Finishers<br>45-34 Court Square<br>Long Island City, NY 11101 | Local 52 & Local 88<br>Tile Setters & Tile Finishers<br>45-34 Court Square<br>Long Island City, NY 11101 | Benefits | | 1,085,402.28 |
| Marble System, Inc.<br>2737 Dorr Ave.<br>Fairfax, VA 22031 | Marble System, Inc.<br>2737 Dorr Ave.<br>Fairfax, VA 22031 | Materials, Judgment | | 37,498.88 |

In re    G.M. Crocetti, Inc.                    Case No.    07-10319

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| MAREX Srl<br>Via Danzia, 9<br>37010 AFFI<br>Verona Italia | MAREX Srl<br>Via Danzia, 9<br>37010 AFFI<br>Verona Italia | Materials | | 80,741.00 |
| NYC District Council<br>Carpenters FBF<br>395 Hudson Street<br>New York, NY 10014 | NYC District Council<br>Carpenters FBF<br>395 Hudson Street<br>New York, NY 10014 | Benefits | | 380,846.88 |
| NYS Dept. of Taxation & Financ<br>TSRD-Business Corp. Tax<br>WA Harriman Campus<br>Albany, NY 12227-0001 | NYS Dept. of Taxation & Financ<br>TSRD-Business Corp. Tax<br>WA Harriman Campus<br>Albany, NY 12227-0001 | Unemployment insurance, NYS Withholdig, NYC, Yonkers | | 817,406.53 |
| Pro Stone Distributors, Inc.<br>230 E. 7th Street<br>Mount Vernon, NY 10550 | Pro Stone Distributors, Inc.<br>230 E. 7th Street<br>Mount Vernon, NY 10550 | Material | | 124,113.47 |
| Pro Stone Distributors, Inc.<br>789 Pelham Parkway<br>Pelham, NY 10803 | Pro Stone Distributors, Inc.<br>789 Pelham Parkway<br>Pelham, NY 10803 | Material | | 82,366.47 |
| Pro Tile Distributors, Inc.<br>230 E. 7th Street<br>Mount Vernon, NY 10550 | Pro Tile Distributors, Inc.<br>230 E. 7th Street<br>Mount Vernon, NY 10550 | Material | | 119,907.07 |
| Torre, Lentz, Gamell, Gary & R<br>100 Jericho Quadrangle<br>Suite 309<br>Jericho, NY 11753-2702 | Torre, Lentz, Gamell, Gary & R<br>100 Jericho Quadrangle<br>Suite 309<br>Jericho, NY 11753-2702 | Legal fees | | 175,768.51 |
| Tureks, Inc.<br>Organize Sanayi Bolgesi<br>PK 144<br>Afyon Turkey | Tureks, Inc.<br>Organize Sanayi Bolgesi<br>PK 144<br>Afyon Turkey | Materials, Judgment | | 242,576.64 |
| Virginia Surety Company<br>1000 Milwaukee Ave.<br>Glenview, IL 60025 | Virginia Surety Company<br>1000 Milwaukee Ave.<br>Glenview, IL 60025 | Workers comp. policy 2CW50086402; worker's comp policy 2CW50086502; commercial general liability policy 2CG50086202, commercial automotive policy 2CA5 | | 44,636.77 |

In re   G.M. Crocetti, Inc._____    Case No.   07-10319_____
                        Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

     I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date   Febaruary 28, 2007_____     Signature   /s/ Arthur Cavazzi_____
                                                          Arthur Cavazzi
                                                          President

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Form 6-Summary (10/06)

# United States Bankruptcy Court
## Southern District of New York

In re    **G.M. Crocetti, Inc.**
_____ ,
Debtor

Case No. _____**07-10319**_____

Chapter _____**11**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 7 | 6,726,047.32 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 2,681,538.60 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 2,618,680.82 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 26 | | 4,213,510.20 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 39 | | | |
| Total Assets | | | 6,726,047.32 | | |
| Total Liabilities | | | | 9,513,729.62 | |

Official Form 6 - Statistical Summary (10/06)

# United States Bankruptcy Court
## Southern District of New York

In re     **G.M. Crocetti, Inc.**                                 Case No.      **07-10319**

                                         Debtor            Chapter                      **11**

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) (whether disputed or undisputed) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

State the following:

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | |
| Average Expenses (from Schedule J, Line 18) | |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | |

State the following:

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | |
| 4. Total from Schedule F | | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | |

Form B6A
(10/05)

In re    **G.M. Crocetti, Inc.**                                                           Case No.    **07-10319**
                                                                        ,
                                            Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **None** | | | | |

|  |  |  |
|---|---|---|
| Sub-Total > | **0.00** | (Total of this page) |
| Total > | **0.00** | |

__0__ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                      Best Case Bankruptcy

Form B6B
(10/05)

In re    **G.M. Crocetti, Inc.**                                        Case No. ____**07-10319**_____
_____,
Debtor

## SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the property is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Ridgefield Bank** | - | **234,189.81** |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | | **Con Edison** | - | **13,650.00** |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | X | | | |
| 7. | Furs and jewelry. | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. | Annuities. Itemize and name each issuer. | X | | | |

|  |  |
|---|---|
| Sub-Total > | **247,839.81** |
| (Total of this page) | |

__2__  continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                Best Case Bankruptcy

Form B6B
(10/05)

In re    **G.M. Crocetti, Inc.** _____,    Case No. ____**07-10319**____
                                        Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | Accounts receivable - See attached itemized list | - | 4,466,658.91 |
| | | Advances to affiliated business, GM Crocetti Flooring, Inc. (likely uncollectible) See Chapter 11 Case No. 06-12946 | - | 1,992,675.47 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | | New Jersey Corporate Tax refund | - | 3,361.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >    **6,462,695.38**
(Total of this page)

Sheet __**1**__ of __**2**__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6B
(10/05)

In re   **G.M. Crocetti, Inc.** _____ ,   Case No. ____**07-10319**____
                              Debtor

# SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **Office equipment** | - | 15,512.13 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sub-Total >    **15,512.13**
(Total of this page)
Total >    **6,726,047.32**

Sheet __**2**__ of __**2**__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

# G.M. Crocetti, Inc.

Accounts Receivable

As of 02/09/07

| Job No. | Description of Job | Net Balance |
|---|---|---|
| **(Miscellaneous)** | | |
| 07-639 | Port Morris | $24,000.00 |
| 07-632 | Port Morris - #7632-PO#38174 | $42,556.40 |
| 07-353 | 255 Hudson St (Miller Druck) | $253.42 |
| 07-352 | 255 Hudson St - S1367 | $1,013.70 |
| 07-349 | 205 E 59th St- Apt 19B | $825.00 |
| 07-345 | 119 E 23rd St - 4 New Apts | $13,500.00 |
| 07-342 | 181 East 90th st- 15C,23C,29B | $8,000.00 |
| 07-336 | 499 Greenwich St - Extra | $750.00 |
| 07-329 | 2 South End Ave- KBF | $1,008.08 |
| 07-326 | City Center ST- PO#PRTS0635 | $7,485.95 |
| 07-324 | Playwright's Horizonz-532 42nd | $10,320.00 |
| 07-322 | Jeffries Residence | $3,007.42 |
| 07-303 | Jeffries -31st Floor St Moritz | $1,742.40 |
| 07-285 | Dalton School - Sanding Floor | $3,434.00 |
| 07-266 | Levenberg Residence | $2,444.06 |
| 07-247 | Sands Residence | $484.50 |
| 07-242 | Borders Book Store - AOL | $2,330.00 |
| 07-199 | 200 East 65th St- Apt. 4H | $647.71 |
| 07-188 | HSBC Bank | $1,925.00 |
| 07-175 | David Messer-Hampton House | $211.75 |
| 07-159 | Best Buy - (Revised 7149) | $638.25 |
| 07-148 | Best Buy | $64.69 |
| 05-151 | Ogden - 1 Lincoln Plaza | $5,360.00 |
| | | $132,002.33 |
| | | |
| **Barney** | **Skanska (02002)** | |
| 99-074 | Fairfield | $312.00 |
| 99-028 | BMCC - Exterior Granite | $556.90 |
| 05-031 | School of Architecture | $49,504.11 |
| 03-038 | Fairfield - Exterior Pavers | $4,389.68 |
| 02-023 | Bleier Residence | $5,140.00 |
| 02-008 | PA Bus Terminal - WO#5 | $9,222.90 |
| | | $69,125.59 |

# G.M. Crocetti, Inc.

Accounts Receivable
As of 02/09/07

| Job No. | Description of Job | Net Balance |
|---|---|---|
| **Bovis** | **Lend Lease (02014)** | |
| 05-018 | Tower 31 - 9 West 31st Street | $66,066.00 |
| 04-052 | Weill Cornell Medical Center | $485,440.20 |
| 04-048 | Apt. Bldg @ 57th & 3rd Ave | $48,491.92 |
| 04-035 | Residence Inn by Marriott Time | $65,908.97 |
| 03-005 | 455 Central Park West, NYC | $900.00 |
| | | $666,807.09 |
| | | |
| **DeMatt** | **eis Construction (04002)** | |
| 05-045 | Bathgate High School | $34,541.10 |
| | | $34,541.10 |
| | | |
| **E.W. H** | **owell Co., Inc. (05002)** | |
| 05-001 | Suffolk County Civil Court | $101,928.09 |
| 04-010 | Bayshore High School | $42,942.08 |
| | | $144,870.17 |
| | | |
| **Gotham Construction (07005)** | | |
| 05-033 | Battery Park City - Site 2A | $172,517.26 |
| 05-028 | The Octagon | $271,531.24 |
| 04-043 | 210 Lafayette Street NYC | $95,874.29 |
| 03-064 | Columbia Residence | $8,262.33 |
| | | $548,185.12 |
| | | |
| **HRH Co** | **nstruction LLC (08008)** | |
| 05-008 | City Center - Loft Bldg (Tile) | $14,716.36 |
| 04-044 | City Center - South Tower | $514,305.83 |
| 04-040 | Residences @ Jefferson Place | $29,822.33 |
| 04-007 | Residences @ Jefferson Place | $308,961.04 |
| 03-043 | 200 West 24th Street | $61,402.22 |
| 03-015 | City Center - North Tower | $17,041.38 |
| | | $946,249.16 |
| | | |
| **Kreisl** | **er Borg Florman (11006)** | |
| 02-058 | 181 East 90th St Condos | $7,676.54 |
| 01-046 | Chelsea Gardens | $209,067.10 |
| 00-040 | The Osborn, Sterling Pk - PH2 | $137,735.51 |
| | | $354,479.15 |

# G.M. Crocetti, Inc.

Accounts Receivable

As of 02/09/07

| Job No. | Description of Job | Net Balance |
|---|---|---|
| **J.E. L** | **evine Builders (12010)** | |
| 05-037 | 325 Fifth Avenue | $101,909.20 |
| 04-026 | 90 West Street | $124,342.33 |
| | | $226,251.53 |
| | | |
| **Yod LL** | **C, c/o Mnhttn Sky (13001)** | |
| 04-015 | 205 E. 59th St @ 3rd Ave. | $129,364.67 |
| | | $129,364.67 |
| | | |
| **M & M** | **Construction (13015)** | |
| 05-013 | Middlesex Co Utilities Authori | $38,250.00 |
| | | $38,250.00 |
| | | |
| **The Om** | **ara Organization (15005)** | |
| 02-040 | DEP -Flushing Bay | $5,513.50 |
| | | $5,513.50 |
| | | |
| **Ogden** | **Cap Properts LLC (15012)** | |
| 04-014 | 155 East 31st Street | $3,624.49 |
| 04-001 | 201 East 28th Street NYC | $7,155.53 |
| 03-046 | 160 East 38th Street | $5,567.63 |
| 03-044 | 155 East 29th Street | $40,910.37 |
| 03-040 | The Dorchester | $28,299.77 |
| 03-034 | 1 Lincoln Plaza (Ogden Mgmt) | $2,123.01 |
| | | $87,680.80 |
| | | |
| **Pav-La** | **k Industries (16003)** | |
| 03-061 | Commack High School | $17,491.92 |
| 02-013 | East Islip High School | $5,010.00 |
| | | $22,501.92 |
| | | |
| **Plaza** | **Construction (16008)** | |
| 05-039 | Fisher Residence | $19,550.11 |
| 04-032 | Apt House @ 26 Astor Place | $3,754.90 |
| | | $23,305.01 |

**Confidential**    2/23/2007

# G.M. Crocetti, Inc.

Accounts Receivable
As of 02/09/07

| Job No. | Description of Job | Net Balance |
|---|---|---|
| **Gottli** | **eb/Skanska Inc. (18001)** | |
| 02-057 | MTA-Roosevelt Ave/74th St. Sta | $80,724.58 |
| | | $80,724.58 |
| | | |
| **RC Dol** | **ner Inc (18002)** | |
| 03-065 | 50 Madison Ave (Wood Flooring) | $145,365.35 |
| 03-056 | Liberty Lofts -Fl. 2-7 & Lobby | $14,743.01 |
| 03-033 | 50 Madison Avenue | $113,054.59 |
| | | $273,162.95 |
| | | |
| **Ritz C** | **arlton (18016)** | |
| 07-272 | Ritz Carlton CPS | $2,425.00 |
| | | $2,425.00 |
| | | |
| **S. Di** | **Giacom & Sn, Inc. (19002)** | |
| 02-004 | Ukrainian Museum | $9,483.24 |
| | | $9,483.24 |
| | | |
| **S.N. T** | **annor, Inc. (19021)** | |
| 05-050 | P.S. 100 - Brooklyn | $3,900.00 |
| 05-012 | Locust Tower Condos -Sales Off | $11,697.00 |
| | | $15,597.00 |
| | | |
| **Tratar** | **os Construction (20009)** | |
| 98-106 | Baruch College, Site B | $511,225.48 |
| | | $511,225.48 |
| | | |
| **Turner** | **Interiors (20011)** | |
| 05-030 | 1600 Broadway | $76,303.31 |
| | | $76,303.31 |
| | | |
| **Tully** | **Construction (20013)** | |
| 01-047 | Staten Island Transfer Station | $2,350.01 |
| | | $2,350.01 |
| | | |
| **U.W. M** | **arx (20015)** | |
| 04-031 | Pelham High School | $23,501.87 |
| | | $23,501.87 |
| | | |
| **Velez** | **Organization (22004)** | |
| 02-027 | Third Ave Yard - Con Edison | $42,758.33 |
| | | $42,758.33 |
| | | |
| | **GRAND TOTALS** | $4,466,658.91 |

Official Form 6D (10/06)

In re    **G.M. Crocetti, Inc.**                                          Case No. _____**07-10319**_____
                                    Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W J | | C | | | | | | |
| Account No. **2183465** | | | | | **2/28/06** | | | | | |
| **Bank of America** c/o Levi Lubarksi & Feigenbaum **1185 Avenue of the Americas New York, NY 10036** | X | - | | | **Non-Purchase Money Security** **Accounts receivable - See attached itemized list** | | | | | |
| | | | | | Value $            **4,466,658.91** | | | | **2,681,538.60** | **0.00** |
| Account No. | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |

__**0**__  continuation sheets attached

|  | Subtotal (Total of this page) | **2,681,538.60** | **0.00** |
|---|---|---|---|
|  | Total (Report on Summary of Schedules) | **2,681,538.60** | **0.00** |

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Official Form 6E (10/06)

In re    **G.M. Crocetti, Inc.**                           ,        Case No.    **07-10319**

<center>Debtor</center>

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 or 13 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**  (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trust or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

---

\* Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

<center>**1**    continuation sheets attached</center>

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037               Best Case Bankruptcy

Official Form 6E (10/06) - Cont.

In re   **G.M. Crocetti, Inc.**                                                                     ,          Case No. ___**07-10319**___
                                               Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community H / W / J / C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY / AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. **13-1769857** <br><br> **Internal Revenue Service** <br> **1200 Waters Place** <br> **Suite 108** <br> **Bronx, NY 10461** | | - | **2005-2007** <br><br> **Withholdig tax, FUTA, Social Security, Medicare** | | | | <br><br><br> **1,801,274.29** | **0.00** <br><br> **1,801,274.29** |
| Account No. <br><br> **NYS Dept. of Taxation & Financ** <br> **TSRD-Business Corp. Tax** <br> **WA Harriman Campus** <br> **Albany, NY 12227-0001** | | - | **2005 - 2007** <br><br> **Unemployment insurance, NYS Withholdig, NYC, Yonkers** | | | | <br><br><br> **817,406.53** | **0.00** <br><br> **817,406.53** |
| Account No. <br><br><br><br> | | | | | | | | |
| Account No. <br><br><br><br> | | | | | | | | |
| Account No. <br><br><br><br> | | | | | | | | |

Sheet __**1**__ of __**1**__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal | **2,618,680.82** | **0.00** <br> **2,618,680.82** |
| (Total of this page) | | |
| Total | **2,618,680.82** | **0.00** <br> **2,618,680.82** |
| (Report on Summary of Schedules) | | |

Official Form 6F (10/06)

In re    **G.M. Crocetti, Inc.**
_____,    Case No. _____**07-10319**_____
                              Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts filing a case under chapter 7, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. | | | | | | | | |
| **A&N Precision Industries** **65 First Street** **New Rochelle, NY 10801** | | - | | | | | | 1,055.30 |
| Account No. | | | | Services | | | | |
| **ADP Totalpay Autopay** **c/o Meyer Saxon & Cole** **3620 Guentin Road** **Brooklyn, NY 11234** | | - | | | | | X | 18,873.28 |
| Account No. | | | | Supplies | | | | |
| **Air Power House** **PO BOX  V** **Neelytown road** **Maybrook, NY 12543-0320** | | - | | | | | | 545.29 |
| Account No. | | | | freight movers | | | | |
| **Airbill Safety Products** **12912 South Chadron Ave** **Hawthorne, CA 90250** | | - | | | | | | 817.81 |
| __25__  continuation sheets attached | | | | Subtotal (Total of this page) | | | | 21,291.68 |

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                                S/N:26392-070205    Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                                    Case No.____**07-10319**____
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| **Account No.** | | | | Supplies | | | | |
| **Airweld, Inc.**<br>**94 Marine Street**<br>**Farmingdale, NY 11735** | | - | | | | | | 1,247.70 |
| **Account No.** | | | | Supplies | | | | |
| **American Compressed Gases Inc**<br>**PO Box 715**<br>**Westwood, NJ 07675-0715** | | - | | | | | | 1,279.57 |
| **Account No.** | | | | Credit card charges | | | | |
| **American Express Corporate**<br>**PO Box 2855**<br>**New York, NY 10116** | | - | | | | | | 34,140.20 |
| **Account No.** | | | | Lease | | | | |
| **American Honda Finance**<br>**PO Box 7829**<br>**Philadelphia, PA 19101-7829** | | - | | | | | | 13,039.32 |
| **Account No.** | | | | Services | | | | |
| **American Internat'l Co.**<br>**22427 Network Place**<br>**Chicago, IL 60673-1224** | | - | | | | | | 13,887.00 |

Sheet no. __**1**__ of __**25**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                              63,593.79

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                              Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re  **G.M. Crocetti, Inc.**                                                                Case No. _____**07-10319**_____
_____,
                            Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Materials | | | | |
| **American Olean Tile Company** **PO Box 13038** **Newark, NJ 07188-0038** | - | | | | | | | 7,898.37 |
| Account No. | | | | Materials | | | | |
| **Ann Sacks** **37 East 18th Street** **New York, NY 10003** | - | | | | | | | 835.33 |
| Account No. | | | | MAterials | | | | |
| **Art In Stone** **30 Bermondsey Rd.** **Toronto, Ont.** **Canada  M4B1Z5** | - | | | | | | | 1,775.94 |
| Account No. | | | | Materials | | | | |
| **Artistic Tile, Inc.** **79 Fifth Avenue** **New York, NY 10003** | - | | | | | | | 13,565.35 |
| Account No. | | | | Materials | | | | |
| **AXE, S.R.L.** **Via Opifici, 1** **55045 Pietrassabta** **(LU) Italy** | - | | | | | | | 39,567.66 |

Sheet no. __2__ of __25__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                                     63,642.65

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                          Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                          ,    Case No. _____**07-10319**_____
                                              Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Materials | | | | |
| Barclay Brand Ferdon P.O. Box 341 South Plainfield, NJ 07080 | | - | | | | | | | 1,031.97 |
| Account No. | | | | | Materials | | | | |
| Barton Mines com P.O. Box 643305 Pittsburgh, PA 15264-3305 | | - | | | | | | | 2,474.20 |
| Account No. 07370 | | | | | Bond claim filed by Hoboken Floors | | | | |
| Berkley Surety Group, Inc. 325 Columbia Turnpike Suite 203 Florham Park, NJ 07932 | | - | | | | | | | Unknown |
| Account No. | | | | | Materials | | | | |
| BOIARDI Lock Box P.O. BOX 31370 Hartford, CT 06150-1370 | | - | | | | | | | 4,655.00 |
| Account No. | | | | | Equipment | | | | |
| Boston Road Equipment Rental 3211 Boston Road Bronx, NY 10469 | | - | | | | | | | 1,010.06 |

Sheet no. __3___ of __25__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                                 9,171.23

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.** ,         Case No. _____**07-10319**_____

                                              Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | J C | | | | | |
| **Account No.** | | | | | Materials | | | | |
| **Broadview Networks P.O. Box 26021 New York, NY 10087-6021** | - | | | | | | | | |
| | | | | | | | | | 1,304.04 |
| **Account No.** | | | | | Services | | | | |
| **Bronx Welding Supply, Inc. 94 Marine St Farmingdale, NY 11735** | - | | | | | | | | |
| | | | | | | | | | 534.38 |
| **Account No.** | | | | | Services | | | | |
| **C-Air Customhouse Brokers 181 S. Franklin Avenue 5th Floor Valley Stream, NY 11581** | - | | | | | | | | |
| | | | | | | | | | 1,790.21 |
| **Account No.** | | | | | Services | | | | |
| **Cablevision NYC PO Box 9202 Uniondale, NY 11555-9202** | - | | | | | | | | |
| | | | | | | | | | 389.70 |
| **Account No.** | | | | | Materials | | | | |
| **Cananwill, Inc. PO BOX 19639 Newark, NJ 07195-0639** | - | | | | | | | | |
| | | | | | | | | | 3,760.23 |

Sheet no. __**4**__ of __**25**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)     **7,778.56**

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                         ,    Case No. _____**07-10319**_____
                                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Materials | | | | |
| Capital Hardware Supply Inc. 300 Murry Hill Pkwy. East Rutherford, NJ 07073 | | - | | | | | 374.20 |
| Account No. | | | Subcontract | | | | |
| Cassiere Marble & Stone, Inc. 15 Cranberry Lane Plainview, NY 11803 | | - | | | | | 55,417.52 |
| Account No. | | | Materials | | | | |
| Castel Tile 82 Temple Avenue Hackensack, NJ 07601 | | - | | | | | 1,900.00 |
| Account No. | | | Materials | | | | |
| Catco Marble 200 Markley Street Port Reading, NJ 07064 | | - | | | | | 2,847.50 |
| Account No. | | | Benefits | | | | |
| Cement Masons Local 780 150-42 12th Avenue Whitestone, NY 11357 | | - | | | | | 5,000.00 |

Sheet no. _5_ of _25_ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)    65,539.22

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                                    Case No. ___**07-10319**___
                                                                    ,
                                          Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Charette**<br>**21 Penn Plaza**<br>**New York, NY 10001** | - | | **Supplies** | | | | 285.21 |
| Account No.<br><br>**Chase Automotive Finance**<br>**P.O. Box 830211**<br>**Baltimore, MD 21283-0211** | - | | **Auto loan** | | | | 1,430.16 |
| Account No.<br><br>**Ciot Montreal Inc. & John Does**<br>**9151 Boulevard St. Laurent**<br>**Montreal, Quebec**<br>**Canada H2N 1N2** | - | | **6/12/06**<br>**Materials** | | | | 128,732.57 |
| Account No.<br><br>**CIT Group** | - | | **Assignee of claim of Atlas Carpet, Judgment entered** | | | | 10,309.78 |
| Account No.<br><br>**CNA Insurance**<br>**PO BOX 382033**<br>**Pittsburgh, PA 15250-8033** | - | | **Insurance** | | | | 3,400.14 |

Sheet no. __**6**__ of __**25**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

144,157.86

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                                      Case No. ___**07-10319**___
                                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Services | | | | |
| Cordaro Shipping Co., Inc. 80 River Street 3rd Floor Hoboken, NJ 07030 | | - | | | | | | 1,387.14 |
| Account No. | | | | Materials | | | | |
| Corsi & Nicolai S.R.L. Via Brigate Partigiane, 13 PO Box 40 - Carrara Italy | | - | | | | | | 5,536.45 |
| Account No. | | | | Materials | | | | |
| Cosa Marble Company, Inc. 86 - 110 Orchard Street Hackensack, NJ 07601 | | - | | | | | | 9,702.84 |
| Account No. | | | | Material | | | | |
| Dal-Tile Corporation PO Box 13038 Newark, NJ 07188 | | - | | | | | | 15,123.86 |
| Account No. | | | | Computer server and laptop | | | | |
| Dell Financial Services P.O Box 5292 Carol Stream, IL 60197-5292 | | - | | | | | | 3,736.65 |

Sheet no. __7__ of __25__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)     35,486.94

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                    Case No. _____**07-10319**_____
_____ ,
                              Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | |
| Account No. | | | | | Material | | | | |
| Dente Trading Company, Inc. 30 Cranford Road Industrial Dr. Cedar Grove, NJ 07009 | | - | | | | | | | 32,923.09 |
| Account No. | | | | | Services | | | | |
| DERINGER P.O. BOX 1324 Williston, VT 05495 | | - | | | | | | | 3,050.61 |
| Account No. | | | | | Supplies | | | | |
| Doyle Gerlach Inc. 4 Enterprise Court Sewell, NJ 08080 | | - | | | | | | | 3,409.46 |
| Account No. | | | | | Supplies | | | | |
| Dyre Avenue Supply Co., Inc. 3832 Dyre Avenue Bronx, NY 10466 | | - | | | | | | | 119.33 |
| Account No. | | | | | Services | | | | |
| East End Sanitation P.O Box 155 Woodlawn Station Bronx, NY 10470 | | - | | | | | | | 3,167.82 |

Sheet no. __8__ of __25__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)                    42,670.31

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                               ,    Case No.   **07-10319**

                                                 Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Materials | | | | |
| Eastern Marble & Granite<br>PO Box 392<br>Scotch Plains, NJ 07076 | | - | | | | | 1,915.23 |
| Account No. | | | Services | | | | |
| Estes Express Lines<br>PO BOX 25612<br>Richmond, VA 23260-5612 | | - | | | | | 1,914.83 |
| Account No. | | | Services | | | | |
| ExxonMobil/GECC<br>PO Box 530964<br>Atlanta, GA 30353-0964 | | - | | | | | 7,481.59 |
| Account No. | | | Services | | | | |
| FEDEX<br>P.O. BOX 360353<br>Pittsburgh, PA 15250-6353 | | - | | | | | 2,284.74 |
| Account No. | | | Services | | | | |
| Fleetcor Technologies<br>P.O. Box 105080<br>Atlanta, GA 30348-5080 | | - | | | | | 6,535.68 |

Sheet no. __9__ of __25__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

                        Subtotal
                  (Total of this page)        20,132.07

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                                    Case No. _____**07-10319**_____
                                                    ,
                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Water jet machine | | | | |
| **Flow Financial Services** **P.O. Box 4130** **Hopkins, MN 55343-4130** | | - | | | | | | | 9,810.00 |
| Account No. **39002234** | | | | | Lease | | | | |
| **Ford Motor Credit** **P.O. Box 220564** **Pittsburgh, PA 15237-2564** | | - | | | | | | | 410.42 |
| Account No. | | | | | Supplies | | | | |
| **Frank Siviglia & Co Inc** **520 Casanova Street** **Bronx, NY 10474** | | - | | | | | | | 1,588.78 |
| Account No. | | | | | Services | | | | |
| **Frank's Tire Service** **3890 Boston Post Road** **Bronx, NY 10475** | | - | | | | | | | 1,029.77 |
| Account No. | | | | | Rent | | | | |
| **G.M. Crocetti Realty LLC** **3960 Merritt Ave** **Bronx, NY 10466** | | - | | | | | | | 648,000.00 |

Sheet no. __**10**__ of __**25**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

660,838.97

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                    ,    Case No. ____**07-10319**____
                                        Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Services | | | | |
| **General Reproduction Products** <br> **23 McKee Drive** <br> **Mahwah, NJ 07430** | - | | | | | | **264.61** |
| Account No. | | | Lease | | | | |
| **GMAC** <br> **P.O Box 830069** <br> **Baltimore, MD 21283-0069** | - | | | | | | **15,602.08** |
| Account No. | | | Materials | | | | |
| **Haran Incorporated** <br> **280 Madison Avenue** <br> **New York, NY 10016** | - | | | | | | **2,081.33** |
| Account No. | | | Materials | | | | |
| **Hindustan Granites Inc.** <br> **65 Davids Drive** <br> **Hauppauge, NY 11788** | - | | | | | | **1,000.00** |
| Account No. | | | Material | | | | |
| **Hoboken Floors** <br> **70 Demarest Dr.** <br> **Wayne, NJ 07470** | - | | | | | | **Unknown** |

Sheet no. __11__ of __25__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    **18,948.02**

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                              , Case No. ___**07-10319**___
                                        Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Material | | | | |
| **IGM Corporation**<br>**PO Box 3**<br>**2038 83rd Street**<br>**North Bergen, NJ 07047** | | - | | | | | | | 246,821.94 |
| Account No. | | | | | Supplies | | | | |
| **Imagistics**<br>**Pitney Bowes Inc.**<br>**PO Box 856210**<br>**Louisville, KY 40285-6210** | | - | | | | | | | 2,179.24 |
| Account No. | | | | | Services | | | | |
| **Island Laser**<br>**2064 Winding Brook Way**<br>**Scotch Plains, NJ 07076** | | - | | | | | | | 1,744.88 |
| Account No. | | | | | Materials | | | | |
| **Jaeger & Condino Inc**<br>**35-44 61st Street**<br>**Woodside, NY 11377-0592** | | - | | | | | | | 4,901.96 |
| Account No. | | | | | Supplies | | | | |
| **Kass Industrial Supply Corp.**<br>**1715 Washington Ave**<br>**Bronx, NY 10457** | | - | | | | | | | 1,797.07 |

Sheet no. __12__ of __25__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          257,445.09

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Official Form 6F (10/06) - Cont.

In re   **G.M. Crocetti, Inc.**                                   ,      Case No.    **07-10319**

<div align="center">Debtor</div>

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. <br><br>**Legno Veneto**<br>**3291 Walden Ave**<br>**Depew, NY 14043** | | - | | **11/8/05**<br>**Materials** | | | | **34,021.24** |
| Account No. <br><br>**Leonardo**<br>**unknowm** | | - | | | | | | **54,575.84** |
| Account No. <br><br>**Liberta & Milo, LLP**<br>**188-06 Northern Boulevard**<br>**Flushing, NY 11358** | | - | | **Services** | | | | **19,000.00** |
| Account No. **015-023-309**<br><br>**Liberty Mutual Surety**<br>**450 Plymouth Road**<br>**Suite 400**<br>**Plymouth Meeting, PA 19462-1644** | | - | | **11/8/05**<br>**Bond claim filed by Legno Veneto, Inc.** | | | | **34,021.24** |
| Account No. <br><br>**Local 210 Teamsters**<br>**345 West 44th Street**<br>**New York, NY 10036** | | - | | **Judgment for benefits** | | | | **96,313.60** |
| Sheet no. __13__ of __25__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | | | | | Subtotal<br>(Total of this page) | | | **237,931.92** |

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                           Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                            Case No. ___**07-10319**___
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | |
| Account No. | | | | Benefits | | | | |
| **Local 52 & Local 88 Tile Setters & Tile Finishers 45-34 Court Square Long Island City, NY 11101** | | - | | | | | | 1,085,402.28 |
| Account No. | | | | Judgment for benefits | | | | |
| **Local 7 Marble Setters, Finishers 45-34 Court Square Long Island City, NY 11101** | | - | | | | | | 15,903.95 |
| Account No. | | | | Supplies | | | | |
| **Lomar Sales & Distributors Inc 161 Dikeman Street Brooklyn, NY 11231** | | - | | | | | | 2,250.00 |
| Account No. | | | | Material | | | | |
| **Marble Modes 125-25 130th Street College Point, NY 11356** | | - | | | | | | 8,305.57 |
| Account No. | | | | Materials, Judgment | | | | |
| **Marble System, Inc. 2737 Dorr Ave. Fairfax, VA 22031** | | - | | | | | | 37,498.88 |

Sheet no. __14__ of __25__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)        1,149,360.68

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re   **G.M. Crocetti, Inc.**                                              ,     Case No. ____**07-10319**____
                                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Materials | | | | |
| **MAREX Srl** **Via Danzia, 9** **37010 AFFI** **Verona Italia** | | - | | | | | 80,741.00 |
| Account No. | | | Materials | | | | |
| **Marino Lumber & Trim Company** **4064 Boston Post Road** **Bronx, NY 10475** | | - | | | | | 69.36 |
| Account No. | | | Subcontract | | | | |
| **Marmaro Group LLC.** **26-34 3rd Street** **Astoria, NY 11102** | | - | | | | | 5,200.00 |
| Account No. | | | Materials | | | | |
| **McNeilly Wood Products** **120 Neelytown Rd.** **Campbell Hall, NY 10916** | | - | | | | | 3,022.66 |
| Account No. | | | Supplies | | | | |
| **Mill Wiping Rags** **1656 EAST 233 ST.** **Bronx, NY 10466** | | - | | | | | 400.98 |

Sheet no. __**15**__ of __**25**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          **89,434.00**

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                    Case No. ____**07-10319**____
                                                              ,
                          Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H W | J | C | | | | | |
| Account No. | | | | | Services | | | | |
| **Mollica, Donna** **address unknown** | - | | | | | | | | 600.00 |
| Account No. | | | | | Rental | | | | |
| **Moneys Worth Car/Truck Rental** **200 E. Sandford Blvd.** **Mount Vernon, NY 10550** | - | | | | | | | | 4,400.08 |
| Account No. | | | | | Supplies | | | | |
| **MSC Industrial Supply Co** **P.O. BOX 9072** **Melville, NY 11747** | - | | | | | | | | 942.90 |
| Account No. | | | | | Supplies | | | | |
| **National Diamond** **4010 Oak Circle** **Boca Raton, FL 33431** | - | | | | | | | | 1,517.22 |
| Account No. | | | | | Materials, Judgment | | | | |
| **NE Stone Supplies, Inc.** **10 Fringe Ct.** **New City, NY 10956** | - | | | | | | | | 24,047.19 |

Sheet no. __**16**__ of __**25**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          31,507.39

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                              Case No. ____**07-10319**____
                                                    ,
                                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Supplies | | | | |
| **New Jersey Diamond Products 108 Kentucky Avenue Paterson, NJ 07503-2508** | - | | | | | | 308.00 |
| Account No. | | | Material | | | | |
| **New York Builders Supply Co. 545 West 28th Street New York, NY 10001** | - | | | | | | 3,277.26 |
| Account No. | | | Services | | | | |
| **New York State Thruway Auth. P.O. Box 149003 Staten Island, NY 10314-9003** | - | | | | | | 262.50 |
| Account No. | | | Materials | | | | |
| **New York Stone Trading LLC 31-45 Howell St Jersey City, NJ 07306** | - | | | | | | 11,404.57 |
| Account No. | | | Services | | | | |
| **NYC Department of Finance Red Light Monitoring Program P.O Box 3674 New York, NY 10008-3674** | - | | | | | | 375.00 |

Sheet no. __17__ of __25__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          15,627.33

Official Form 6F (10/06) - Cont.

In re     **G.M. Crocetti, Inc.**                                                   ,          Case No. ___**07-10319**___
                                        Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | | Benefits | | | | |
| NYC District Council Carpenters FBF 395 Hudson Street New York, NY 10014 | | - | | | | | | 380,846.88 |
| Account No. | | | | Services | | | | |
| NYC Fire Dept. Church Street Station P.O. Box 9033 New York, NY 10256 | | - | | | | | | 315.00 |
| Account No. | | | | Water | | | | |
| NYC Water Board PO Box 410 Church Street Station New York, NY 10008 | | - | | | | | | 15,294.52 |
| Account No. | | | | Supplies | | | | |
| Office Equipment & Supply Co. 3192 Ampere Avenue Bronx, NY 10465 | | - | | | | | | 877.63 |
| Account No. | | | | Supplies | | | | |
| Panacol 95 Hopper Street Westbury, NY 11590 | | - | | | | | | 8,900.00 |

Sheet no. __18__ of __25__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                          406,234.03

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                                     Case No. ____**07-10319**____
                                                    ,
                                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Paul's Welding & Spring Works,**<br>**1660  East 233rd Street**<br>**Bronx, NY 10466** | | - | **Services** | | | | 122.77 |
| Account No.<br><br>**PET-MAL Inc.**<br>**689 Main Street**<br>**Westbury, NY 11590** | | - | **Supplies** | | | | 6,782.00 |
| Account No.<br><br>**Pro Stone Distributors, Inc.**<br>**230 E. 7th Street**<br>**Mount Vernon, NY 10550** | | - | **Material** | | | | 124,113.47 |
| Account No.<br><br>**Pro Stone Distributors, Inc.**<br>**789 Pelham Parkway**<br>**Pelham, NY 10803** | | - | **Material** | | | | 82,366.47 |
| Account No.<br><br>**Pro Tile Distributors, Inc.**<br>**230 E. 7th Street**<br>**Mount Vernon, NY 10550** | | - | **Material** | | | | 119,907.07 |

Sheet no. __**19**__ of __**25**__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    333,291.78

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                                Case No. _____07-10319_____
_____ ,
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Remida Hoist & Crane**<br>**39 Long Avenue**<br>**Hillside, NJ 07205** | - | | **Services** | | | | 593.40 |
| Account No.<br><br>**Royal Wood Floors**<br>**One Boyle Avenue**<br>**Totowa, NJ 07512** | - | | **Materials** | | | | 5,500.00 |
| Account No.<br><br>**Screws and More, LLC**<br>**47 North lawn Ave**<br>**Elmsford, NY 10523** | - | | **Supplies** | | | | 494.19 |
| Account No.<br><br>**Sexton Dai-Tools, Inc.**<br>**127-17  20th AVE**<br>**Fresh Meadows, NY 11365** | - | | **Supplies** | | | | 346.80 |
| Account No.<br><br>**Silver Building Products, Inc.**<br>**PO Box 126**<br>**Hewlett, NY 11557** | - | | **Supplies** | | | | 886.75 |

Sheet no. __20__ of __25__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    7,821.14

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                    Case No. _____**07-10319**_____
_____ ,
                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**South Hampton Brick & Tile**<br>**303 Winding Road**<br>**Old Bethpage, NY 11804** | | - | **Material** | | | | 16,076.46 |
| Account No.<br><br>**SPRINT**<br>**PO Box 4181**<br>**Carol Stream, IL 60197-4181** | | - | **Services** | | | | 4,456.01 |
| Account No.<br><br>**Staples Business Advantage**<br>**Dept. NY 85106**<br>**PO Box 30851**<br>**Hartford, CT 06150-0851** | | - | **Supplies** | | | | 1,912.55 |
| Account No.<br><br>**Stevens Stone & Brick**<br>**2009 Route 112**<br>**Coram, NY 11727** | | - | **Materials** | | | | 2,291.99 |
| Account No.<br><br>**Stone Design & Engineering**<br>**Panama Republic de Panama**<br>**Villa Guadalupe, San Miguelito**<br>**Via Circunvalacion, CASA 21A** | | - | **Services** | | | | 5,100.00 |

Sheet no. __**21**__ of __**25**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                29,837.01

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                            Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                              Case No. _____**07-10319**_____
                                                        ,
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Supplies | | | | |
| **Superior Sales & Service** **758 South Third Avenue** **Mount Vernon, NY 10550** | - | | | | | | | | 268.81 |
| Account No. | | | | | Materials | | | | |
| **Superior Selected Stone** **33-53 10th St** **Astoria, NY 11106** | - | | | | | | | | 964.97 |
| Account No. | | | | | Services | | | | |
| **Texaco/Shell** **PO Box 9010** **Des Moines, IA 50368-9010** | - | | | | | | | | 4,261.87 |
| Account No. | | | | | Material | | | | |
| **Tile and Stone Sales, Inc.** **16 Herbert Street** **Newark, NJ 07105** | - | | | | | | | | 18,408.00 |
| Account No. | | | | | 2/11/05 Legal fees | | | | |
| **Torre, Lentz, Gamell, Gary & R** **100 Jericho Quadrangle** **Suite 309** **Jericho, NY 11753-2702** | - | | | | | | | | 175,768.51 |

| Sheet no. __**22**__ of __**25**__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | Subtotal (Total of this page) | 199,672.16 |
|---|---|---|

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                      ,        Case No. ___**07-10319**___
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Supplies | | | | |
| Tri Star Label Inc. P.O. Box 3550 Mount Vernon, NY 10553 | | - | | | | | | | 480.00 |
| Account No. | | | | | Services | | | | |
| Tuckahoe Florist 10 Depot Square Tuckahoe, NY 10707 | | - | | | | | | | 168.75 |
| Account No. | | | | | Supplies | | | | |
| Tuckahoe Paint And Glass 29 Columbus Ave P.O. Box 206 Tuckahoe, NY 10707 | | - | | | | | | | 641.12 |
| Account No. | | | | | Materials, Judgment | | | | |
| Tureks, Inc. Organize Sanayi Bolgesi PK 144 Afyon Turkey | | - | | | | | | | 242,576.64 |
| Account No. | | | | | Services | | | | |
| U.S. Bank P.O. Box 790408 Saint Louis, MO 63179-0429 | | - | | | | | | | 12,125.95 |

Sheet no. __23__ of __25__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)        255,992.46

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                 ,    Case No.    **07-10319**

                                      Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**United Ceramic Tile Corp.**<br>**923 Motor Parkway**<br>**P.O. Box 13054**<br>**Hauppauge, NY 11788-0540** | | - | **Materials** | | | | 35.00 |
| Account No.<br><br>**United Parcel Service**<br>**PO Box 7247-0244**<br>**Philadelphia, PA 19170-0001** | | - | **Services** | | | | 238.94 |
| Account No.<br><br>**Urban Computing Inc.**<br>**18 Quaspeak Road**<br>**Congers, NY 10920** | | - | **Services** | | | | 120.00 |
| Account No.<br><br>**Verizon**<br>**P.O. Box 1100**<br>**Albany, NY 12250** | | - | **Services** | | | | 910.22 |
| Account No.<br><br>**Virginia Surety Company**<br>**1000 Milwaukee Ave.**<br>**Glenview, IL 60025** | | | **3/31/05**<br>**Workers comp. policy 2CW50086402; worker's comp policy 2CW50086502; commercial general liability policy 2CG50086202, commercial automotive policy 2CA50086302** | | | | 44,636.77 |

Sheet no.  **24**  of  **25**  sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal<br>(Total of this page)     **45,940.93**

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037            Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **G.M. Crocetti, Inc.**                                              Case No. _____ **07-10319** _____
                                                                    ,
                                        Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Services | | | | |
| **ZACEK EQUIP. CORP.** **149-15 Cherry Avenue** **Flushing, NY 11355** | - | | | | | | | **162.98** |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet no. __25__ of __25__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal (Total of this page) | **162.98** |
|---|---|---|
|  | Total (Report on Summary of Schedules) | **4,213,510.20** |

Form B6G
(10/05)

In re    **G.M. Crocetti, Inc.**                                        ,        Case No.    **07-10319**
                                                 Debtor

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **G.M. Crocetti Realty LLC**<br>**3960 Merritt Ave**<br>**Bronx, NY 10466** | **month-to-month commercial premises lease** |

   **0**   continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                      Best Case Bankruptcy

Form B6H
(10/05)

In re      **G.M. Crocetti, Inc.**                                                          Case No. _____**07-10319**_____
                                                                        ,
                                      Debtor

# SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. Bankr. P. 1007(m).

☐   Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Arthur Cavazzi**<br>**60 Country Club Road**<br>**Ridgefield, CT 06877** | **Bank of America**<br>**c/o Levi Lubarksi & Feigenbaum**<br>**1185 Avenue of the Americas**<br>**New York, NY 10036** |
| **G.M. Crocetti Flooring, Inc.**<br>**3960 Merritt Avenue**<br>**Bronx, NY 10466** | **Bank of America**<br>**c/o Levi Lubarksi & Feigenbaum**<br>**1185 Avenue of the Americas**<br>**New York, NY 10036** |
| **G.M. Crocetti Realty, LLC**<br>**3960 Merritt Avenue**<br>**Bronx, NY 10466** | **Bank of America**<br>**c/o Levi Lubarksi & Feigenbaum**<br>**1185 Avenue of the Americas**<br>**New York, NY 10036** |
| **Vincent Anastasi**<br>**250 Ringwood Drive**<br>**Wantagh, NY 11793** | **Bank of America**<br>**c/o Levi Lubarksi & Feigenbaum**<br>**1185 Avenue of the Americas**<br>**New York, NY 10036** |

__**0**__   continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Official Form 6-Declaration. (10/06)

# United States Bankruptcy Court
## Southern District of New York

In re    G.M. Crocetti, Inc.

_____
Debtor(s)

Case No.    07-10319
Chapter    11

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the President of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___41___ sheets *[total shown on summary page plus 1]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date    Febaruary 28, 2007            Signature    /s/ Arthur Cavazzi
                                                    Arthur Cavazzi
                                                    President

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Official Form 7
(10/05)

# United States Bankruptcy Court
## Southern District of New York

In re   G.M. Crocetti, Inc.

Debtor(s)

Case No.   07-10319

Chapter   11

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $32,745,946.00 | 2005 income |
| $26,546,794.00 | 2006 income |
| $0.00 | 2007 income YTD |

**2. Income other than from employment or operation of business**

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT           SOURCE

2

**3. Payments to creditors**

None
■    *Complete a. or b., as appropriate, and c.*

    a.    *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☐    b.    *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,000.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| ADP Totalpay Autopay c/o Meyer Saxon & Cole 3620 Guentin Road Brooklyn, NY 11234 | 1/23/07 | $11,234.63 | $18,873.28 |
| Dell Financial Services P.O Box 5292 Carol Stream, IL 60197-5292 | 12/29/06 | $5,379.81 | $3,736.65 |
| East End Sanitation P.O Box 155 Woodlawn Station Bronx, NY 10470 | 1/18/07 | $6,191.24 | $3,167.82 |
| Liberta & Milo, LLP 188-06 Northern Boulevard Flushing, NY 11358 | 1/15/07 | $5,078.13 | $19,000.00 |

None
☐    c.    *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| G.M. Crocetti Realty LLC 3960 Merritt Ave Bronx, NY 10466 Affiliated business - owns premises rented by debtor | 12/5/06 | $30,000.00 | $648,000.00 |

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
☐    a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Bank of America NA v. G.M. Crocetti, Inc., et al, Index No. 15877/06 | Collection | Supreme Court, Bronx County | Summary judgment motion denied on 1/26/07, parties directed to file for arbitration |

3

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Ciot Montreal, Inc. et al v. GM Crocetti, Inc. et al, Index No. 117244/06 | Collection | Supreme Court, New York County | Summons and Complaint filed 11/17/06 |
| Local 210 Health and Insurance Fund, et al v. G.M. Crocetti, Inc., Docket No. 06-CV-7163 | ERISA | U.S. District Court, SDNY | Judgment entered 1/4/07 |
| Virginia Surety Co., Inc. v. G.M. Crocetti, Inc.; Index No. 115722/06 | Collection of insurance premiums | Supreme Court, New York County | Summons and Complaint filed 10/20/06 |
| N.E. Stone Supplies, Inc. v. G.M. Crocetti, Inc.; Index No. 15798/06 | Collection | Supreme Court, Bronx County | Judgment entered, case disposed on 1/18/07 |
| Marble Systems, Inc. v. G.M. Crocetti, Inc.; Index No. 28321/06 | Collection | Supreme Court, Kings County | Judgment entered 10/31/06 |
| Tuerks, Inc. v. G.M. Crocetti, Inc.; Index No. 28322/06 | Collection | Supreme Court, Kings County | Judgment entered 11/13/06 |
| CIT Group Commercial Services, assignee of Atlas Carpet v. G.M. Crocetti, Inc.; Index No. 123603/06 | Collection | New York City Civil Court, Kings County | Judgment entered |
| ADP Totalpay Autopay v. G.M. Crocetti, Inc. | Collection | New York City Civil Court, Kings County | Summons and Complaint filed 2/13/07 |

None
■    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None
☐    List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Chase Automotive Finance P.O. Box 830211 Baltimore, MD 21283-0211 | 2006 | BMW 745 |
| American Honda Finance PO Box 7829 Philadelphia, PA 19101-7829 | 2006 | Honda Pilot lease |
| Flow Financial Services P.O. Box 4130 Hopkins, MN 55343-4130 | about 12/06 | Water jet machine |

4

**6. Assignments and receiverships**

None ■    a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■    b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

None ■    List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

None ■    List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None ■    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**10. Other transfers**

None ☐    a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| GM Crocetti Flooring, Inc. 3960 Merritt Ave Bronx, NY 10466    Affiliated business | various | Advances to fund affiliated business, GM Crocetti Flooring, Inc. (likely uncollectible) See Chapter 11 Case No. 06-12946 |

5

None ■     b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

### 11. Closed financial accounts

None ☐     List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| Bank of America | | |

### 12. Safe deposit boxes

None ■     List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

### 13. Setoffs

None ■     List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

### 14. Property held for another person

None ■     List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

### 15. Prior address of debtor

None ■     If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

6

**16. Spouses and Former Spouses**

None ■    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■    a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■    b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■    c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

7

**18 . Nature, location and name of business**

None    a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and
■      ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a
       partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years**
       immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities
       within **six years** immediately preceding the commencement of this case.

       *If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and
       ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six
       years** immediately preceding the commencement of this case.

       *If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and
       ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six
       years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|---------------------------------------------------------------------------|---------|--------------------|----------------------------|

None    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.
■

| NAME | ADDRESS |
|------|---------|

   The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has
been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or
owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole
proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

   *(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above,
within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go
directly to the signature page.)*

**19. Books, records and financial statements**

None    a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or
☐      supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|------------------|-------------------------|
| Justin Bock 3960 Merritt Avenue Bronx, NY 10466 | 12/1/03-12/31/05 |
| Joseph Rullo 3960 Merritt Avenue Bronx, NY 10466 | 10/27/04-8/9/05 |
| Joseph Cantatore 3960 Merritt Avenue Bronx, NY 10466 | 7/17/00-4/3/04 |

None    b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books
☐      of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|-------------------------|
| Liberta & Milo LLP | 1044 Northern Blvd. Roslyn, NY 11576 | 2000 forward |

8

None ☐   c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|---------|
| Joseph Cantatore | 3960 Merritt Avenue<br>Bronx, NY 10466 |

None ☐   d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|------------------|-------------|
| Bank of America<br>Legal Order Processing Dept.<br>5701 Horatio Street<br>Mail Code NY7-501-02-07<br>Utica, NY 13502 | Annually |

### 20. Inventories

None ■   a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY<br>(Specify cost, market or other basis) |
|-------------------|----------------------|-------------------------------|

None ■   b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY<br>RECORDS |
|-------------------|---------------------------------------------------------|

### 21 . Current Partners, Officers, Directors and Shareholders

None ■   a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|------------------|--------------------|-----------------------|

None ☐   b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE<br>OF STOCK OWNERSHIP |
|------------------|-------|---------------------------------------------|
| Arthur Cavazzi<br>3960 Merritt Avenue<br>Bronx, NY 10466 | President | 76.67% |
| Vincent Anastasi<br>3960 Merritt Avenue<br>Bronx, NY 10466 | Vice President | 23.33% |

### 22 . Former partners, officers, directors and shareholders

None ■   a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|------|---------|--------------------|

None ■   b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|------------------|-------|---------------------|

9

**23 . Withdrawals from a partnership or distributions by a corporation**

None
■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**24. Tax Consolidation Group.**

None
■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |

**25. Pension Funds.**

None
☐    If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |
| G.M. Crocetti, Inc. Profit Sharing Pan | 13-1769857 |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date   Febaruary 28, 2007                              Signature   /s/ Arthur Cavazzi
                                                                    Arthur Cavazzi
                                                                    President

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

# United States Bankruptcy Court
## Southern District of New York

In re    **G.M. Crocetti, Inc.**

_____,
                                    Debtor

Case No. _____**07-10319**_____

Chapter _____**11**_____

# LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **Arthur C. Cavazzi<br>3960 Merritt Ave<br>Bronx, NY 10466** | **Preffered** | | **76.67%** |
| **Vincent Anastasi<br>3960 Merritt Ave<br>Bronx, NY 10466** | **Common** | | **23.33%** |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date___**Febaruary 28, 2007**_____    Signature **/s/ Arthur Cavazzi**_____

                                          **Arthur Cavazzi**
                                          **President**

_Penalty for making a false statement or concealing property_:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§  152 and 3571.

**0**___ continuation sheets attached to List of Equity Security Holders

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

# United States Bankruptcy Court
## Southern District of New York

In re   G.M. Crocetti, Inc.                                      Case No.   07-10319

                                            Debtor(s)         Chapter   11

# VERIFICATION OF CREDITOR MATRIX

I, the President of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:   Febaruary 28, 2007                /s/ Arthur Cavazzi

                                                 Arthur Cavazzi/President
                                                 Signer/Title

# United States Bankruptcy Court
## Southern District of New York

| In re | G.M. Crocetti, Inc. | | Case No. | 07-10319 |
|---|---|---|---|---|
| | | Debtor(s) | Chapter | 11 |

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for ___G.M. Crocetti, Inc.___ in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

| Febaruary 28, 2007 | /s/ Leonard I. Spielberg |
|---|---|
| Date | Leonard I. Spielberg |
| | Signature of Attorney or Litigant |
| | Counsel for   G.M. Crocetti, Inc. |
| | Harold, Salant, Strassfield & Spielberg |
| | 81 Main Street |
| | Suite 205 |
| | White Plains, NY 10601 |
| | (914) 683-2500 Fax:(914) 683-1279 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
In re

                                                                Case No.: 07-10319

G.M. Crocetti, Inc.                                             Chapter 11

                            Debtor(s)
-----------------------------------------------------------X


## DECLARATION RE: ELECTRONIC FILING

### PART I - - DECLARATION OF PETITIONER[S]:

    I [We] _____ Arthur Cavazzi _____ [and _____] the undersigned debtor[s],
hereby declare under penalty of perjury, that the information I [we] have given my [our] attorney and the
information provided in the electronically filed petition is true and correct. I [We] consent to my [our]
attorney sending my [our] petition, and the accompanying statements and schedules to the United States
Bankruptcy Court, the trustee appointed in my [our] case and the United States Trustee. I [We] understand
that failure to provide the trustee with the signed original of this Declaration Re: Electronic Filing within 15
days following the date the petition was electronically filed will cause my [our] case to be dismissed
pursuant to 11 U.S.C § 707(a)(3) without further notice.


Dated:    Febaruary 28, 2007 _____


                                Signed:    /s/ Arthur Cavazzi _____


### PART II - - DECLARATION OF ATTORNEY:

    I declare under penalty of perjury that I have reviewed the above debtor's(s') petition, schedules
and statements, and to the best of my knowledge and belief, they are true, correct, and complete. The
debtor(s) will have signed this form before I file the petition, schedules and statements. I will give the
debtor(s) a copy of all forms and information to be filed with the United States Bankruptcy Court, and I
will send copies of this declaration, the petition, schedules and statements to the trustee appointed in this
case and to the United States Trustee. This declaration is based upon all information of which I have
knowledge.


Dated:    Febaruary 28, 2007 _____


                     Signed:   /s/ Leonard I. Spielberg _____
                             Leonard I. Spielberg
                             Attorney for Debtor[s]
Harold, Salant, Strassfield & Spielberg
81 Main Street
Suite 205
White Plains, NY 10601
(914) 683-2500

# EXHIBIT I

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
In re:

G.M. Crocetti, Inc.                          CHAPTER 11
                    Debtor.                   CASE NO. 07-10319

### MONTHLY OPERATING STATEMENT FOR
### THE PERIOD November 1, 2007 to November 30, 2007
DEBTOR'S ADDRESS:
            G.M. Crocetti, Inc.
            PO Box 423
            Hopewell Junction, NY 12533
DEBTOR'S ATTORNEY:
            Harold, Salant. Strassfield & Spielberg
            81 Main Street
            White Plains, NY 10601

     MONTHLY DISBURSEMENTS:          $ 7,970.64

     MONTHLY OPERATING PROFIT (LOSS): ($ 38,120.78)
REPORT PREPARER:
            Joseph A. Cantatore
            58 Cranberry Drive
            Hopewell Junction, NY 12533

THIS OPERATING STATEMENT MUST BE SIGNED BY A REPRESENTATIVE OF
THE DEBTOR

The undersigned, having reviewed the attached report and being familiar
with the Debtor's financial affairs, verifies under the penalty of perjury,
that the information contained therein is complete, accurate and truthful
to the best of my knowledge.

DATE: 1/18/2008                                    President
            SIGNATURE: Arthur Cavazzi              TITLE:

Indicate if this is an amended statement by checking here:

            AMENDED STATEMENT: ____

## G.M. Crocetti, Inc.
# BALANCE SHEET
### November 30, 2007

#### ASSETS

| | | | | |
|---|---|---:|---|---:|
| **CURRENT ASSETS** | | | | |
| Signature Bk.- Operating a/c | $ | 150,831.72 | | |
| Signature Bk.-Payroll a/c | | 1,905.58 | | |
| Hudson Valley Natl. Bk - Escrow | | 42,288.33 | | |
| Accounts Receivable | | 4,179,361.42 | | |
| Payroll Tax Overpayment | | 4,193.30 | | |
| NJ Corporate Tax | | 3,361.00 | | |
| Due from G.M. Crocetti Flooring | | 1,992,675.47 | | |
| **Total Current Assets** | | | $ | 6,374,616.82 |
| **PROPERTY AND EQUIPMENT** | | | | |
| Office Furniture & Equipment | $ | 12,212.13 | | |
| **Total Property and Equipment** | | | $ | 12,212.13 |
| **OTHER ASSETS** | | | | |
| **Total Other Assets** | | | | |
| **TOTAL ASSETS** | | | $ | 6,386,828.95 |

See Accountants' Compilation Report

3

## G.M. Crocetti, Inc.
# BALANCE SHEET
### November 30, 2007

LIABILITIES AND STOCKHOLDERS' EQUITY

| | | |
|---|---:|---:|
| **CURRENT LIABILITIES** | | |
| Accounts Payable | $ 1,786,256.48 | |
| Sales Tax Payable | 171,124.36 | |
| Due to G.M. Crocetti Realty L | 493,001.98 | |
| **Total Current Liabilities** | | $ 2,450,382.82 |
| **LONG-TERM LIABILITIES** | | |
| Union Funds | $ 1,560,504.15 | |
| NYS Payroll Taxes. | 809,871.05 | |
| Internal Revenue Service | 1,782,606.96 | |
| Bank of America | 3,025,493.26 | |
| **Total Long-Term Liabilities** | | $ 7,178,475.42 |
| **Total Liabilities** | | $ 9,628,858.24 |
| **STOCKHOLDERS' EQUITY** | | |
| Retained Earnings | -2,798,892.44 | |
| Net Income (Loss) | $ -443,136.85 | |
| **Total Stockholders' Equity** | | $ -3,242,029.29 |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | | $ 6,386,828.95 |

### G.M. Crocetti, Inc.
# INCOME STATEMENT
#### One Month Ended November 30, 2007

| | 1 Month Ended Nov. 30, 2007 | 10 Months Ended Nov. 30, 2007 |
|---|---|---|
| **Revenue** | | |
| Construction | 0.00 | 95,029.54 |
| **Total Revenue** | $ 0.00 | $ 95,029.54 |
| **Cost of Goods Sold** | | |
| Sales Tax | $ 0.00 | $ 171,124.36 |
| Union Benefits | 0.00 | 23,389.86 |
| Equipment Rental/Lease | 0.00 | 25,342.50 |
| Material | 0.00 | -255,715.22 |
| **Total Cost of Goods Sold** | $ 0.00 | $ -35,858.50 |
| **Gross Profit** | $ 0.00 | $ 130,888.04 |
| **Operating Expenses** | | |
| Leins | $ 0.00 | $ 400.00 |
| Travel | 0.00 | 95.00 |
| Bankruptcy Fee | 0.00 | 1,250.00 |
| Automobile Expense | 0.00 | 3,323.89 |
| Fuel | 0.00 | 2,801.00 |
| Insurance | 0.00 | 104,824.52 |
| Interest Expense | 30,210.83 | 352,137.43 |
| Licenses and Permits | 0.00 | 1,750.00 |
| Miscellaneous | 0.00 | -4.40 |
| Office Supplies | 36.59 | 7,286.30 |
| Payroll Expenses | 0.00 | 121,506.18 |
| Postage and Delivery | 199.83 | 399.24 |
| Professional Fees | 7,084.00 | 113,396.38 |
| Rent | 600.00 | 1,800.00 |
| Repairs | 0.00 | -8,398.02 |
| Sanitation | 0.00 | 1,600.00 |
| Telephone | 50.22 | 455.80 |
| Utilities | 0.00 | 16,060.86 |
| **Total Operating Expenses** | $ 38,181.47 | $ 720,683.98 |
| **Operating Income (Loss)** | $ -38,181.47 | $ -589,795.94 |
| **Other Income** | | |
| Interest Income | $ 60.69 | $ 159.09 |
| Other Income | 0.00 | 146,500.00 |
| **Total Other Income** | $ 60.69 | $ 146,659.09 |
| **Other Expenses** | | |
| **Total Other Expenses** | $ 0.00 | $ 0.00 |
| **Income (Loss) Before Income Taxes** | $ -38,120.78 | $ -443,136.85 |
| **Net Income (Loss)** | $ -38,120.78 | $ -443,136.85 |

**G.M. Crocetti, Inc.**
# STATEMENT OF CASH FLOWS
**One Month Ended November 30, 2007**

| | 1 Month Ended November 30, 2007 | 10 Months Ended November 30, 2007 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES** | | |
| Net Income (Loss) | $ -38,120.78 | $ -443,138.85 |
| Adjustments to reconcile Net Income (Loss) to net Cash: | | |
| (Increase) Decrease in: | | |
| Accounts Receivable | $ 0.00 | $ 294,837.46 |
| Payroll Tax Overpayment | 0.00 | -4,193.30 |
| NJ Corporate Tax | 0.00 | -3,361.00 |
| Due from G.M. Crocetti Flooring | 0.00 | -1,992,675.47 |
| Increase (Decrease) in: | | |
| Accounts Payable | $ 0.00 | $ 1,771,972.54 |
| Sales Tax Payable | 0.00 | 171,124.36 |
| Due to G.M. Crocetti Realty L | 0.00 | 493,001.98 |
| **Total Adjustments** | $ 0.00 | $ 730,706.57 |
| **Net Cash Provided By (Used In) Operating Activities** | $ -38,120.78 | $ 287,589.72 |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | | |
| Office Furniture & Equipment | $ 0.00 | $ -12,212.13 |
| **Net Cash Provided By (Used In) Investing Activities** | $ 0.00 | $ -12,212.13 |
| **CASH FLOWS FROM FINANCING ACTIVITIES** | | |
| Union Funds | $ 0.00 | $ 1,560,504.15 |
| NYS Payroll Taxes. | 0.00 | 809,871.05 |
| Internal Revenue Service | 0.00 | 1,782,606.96 |
| Bank of America | 30,210.83 | 3,025,493.26 |
| Opening Bal Equity | 0.00 | -4,474,198.68 |
| Retained Earnings | 0.00 | -2,784,608.50 |
| **Net Cash Provided By (Used In) Financing Activities** | $ 30,210.83 | $ -80,331.96 |
| **NET INCREASE (DECREASE) IN CASH** | $ -7,909.95 | $ 195,025.63 |
| **CASH AT BEGINNING OF PERIOD** | $ 202,935.58 | $ 0.00 |
| **CASH AT END OF PERIOD** | $ 195,025.63 | $ 195,025.63 |

11:45 AM
12/14/07

# G.M. Crocetti, Inc.
## Reconciliation Summary
### Signature Bk.- Operating a/c, Period Ending 11/30/2007

|  | Nov 30, 07 |
|---|---|
| Beginning Balance | 159,041.67 |
| Cleared Transactions |  |
| Checks and Payments - 5 Items | -7,970.64 |
| Deposits and Credits - 1 Item | 60.69 |
| Total Cleared Transactions | -7,909.95 |
|  |  |
| Cleared Balance | 151,131.72 |
| Uncleared Transactions |  |
| Checks and Payments - 1 Item | -300.00 |
| Total Uncleared Transactions | -300.00 |
|  |  |
| Register Balance as of 11/30/2007 | 150,831.72 |
| Ending Balance | 150,831.72 |

Page 1

11:45 AM
12/14/07

## G.M. Crocetti, Inc.
## Reconciliation Detail
### Signature Bk.- Operating a/c, Period Ending 11/30/2007

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| Beginning Balance | | | | | | 159,041.67 |
| Cleared Transactions | | | | | | |
| Checks and Payments - 5 items | | | | | | |
| Check | 10/9/2007 | 1058 | 130 Salt Point LLC | X | -300.00 | -300.00 |
| Check | 11/5/2007 | 1050 | Accounting Service... | X | -5,664.42 | -5,964.42 |
| Check | 11/5/2007 | 1061 | 130 Salt Point LLC | X | -300.00 | -6,264.42 |
| Check | 11/8/2007 | | Vonage | X | -50.22 | -6,314.64 |
| Check | 11/26/2007 | 1063 | Accounting Service... | X | -1,656.00 | -7,970.64 |
| Total Checks and Payments | | | | | -7,970.64 | -7,970.64 |
| Deposits and Credits - 1 item | | | | | | |
| Deposit | 11/28/2007 | | Con Edison - 0111-1 | X | 60.69 | 60.69 |
| Total Deposits and Credits | | | | | 60.69 | 60.69 |
| Total Cleared Transactions | | | | | -7,909.95 | -7,909.95 |
| Cleared Balance | | | | | -7,909.95 | 151,131.72 |
| Uncleared Transactions | | | | | | |
| Checks and Payments - 1 item | | | | | | |
| Check | 11/26/2007 | 1062 | 130 Salt Point LLC | | -300.00 | -300.00 |
| Total Checks and Payments | | | | | -300.00 | -300.00 |
| Total Uncleared Transactions | | | | | -300.00 | -300.00 |
| Register Balance as of 11/30/2007 | | | | | -8,209.95 | 150,831.72 |
| Ending Balance | | | | | -8,209.95 | 150,831.72 |

*Signature*

Statement Period
From November  01, 2007
To    November  30, 2007
Page        2 of    3

PRIVATE CLIENT GROUP 143
360 HAMILTON AVENUE 6TH FLOO
WHITE PLAINS, NY 10601

G.M. CROCETTI, INC TRUSTEE FOR          9-143
OPERATING ACCOUNT - DEBTOR IN POSSESSION
3960 MERRITT AVE                For info call our toll-free Signature Line
BRONX NY  10466                 1-866-sigline or visit signatureny.com

Primary Account: 1500759670        4

BANKRUPTCY CHECKING          1500759670

Summary
  Previous Balance as of November  01, 2007                         159,041.67
       1 Credits                                                         60.69
       5 Debits                                                       7,970.64
  Ending Balance as of   November  30, 2007                         151,131.72

Deposits and Other Credits
  Nov 28  DEPOSIT                                                         60.69

Withdrawals and Other Debits
  Nov 09  AUTOMATED PAYMENT      ck/ref no.    8653809                    50.22
          VONAGE AMERICA         VONAGE        5882411

  Checks by Serial Number
  Nov 15    1058          300.00    Nov 15    1061          300.00
  Nov 08    1060 *      5,664.42    Nov 30    1063 *      1,656.00

          * Indicates break in check sequence

  Daily Balances
  Oct 31     159,041.67              Nov 15     152,727.03
  Nov 08     153,377.25              Nov 28     152,787.72
  Nov 08     153,327.03              Nov 30     151,131.72

IA1 121100

11:48 AM
12/14/07

# G.M. Crocetti, Inc.
## Reconciliation Summary
### Signature Bk.-Payroll a/c, Period Ending 11/30/2007

|  | Nov 30, 07 |
|---|---|
| Beginning Balance | 1,905.58 |
| Cleared Balance | 1,905.58 |
| Register Balance as of 11/30/2007 | 1,905.58 |
| Ending Balance | 1,905.58 |

11:48 AM
12/14/07

# G.M. Crocetti, Inc.
## Reconciliation Detail
### Signature Bk.-Payroll a/c, Period Ending 11/30/2007

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| Beginning Balance | | | | | | 1,905.58 |
| Cleared Balance | | | | | | 1,905.58 |
| Register Balance as of 11/30/2007 | | | | | | 1,905.58 |
| Ending Balance | | | | | | 1,905.58 |



Statement Period
From November  01, 2007
To   November  30, 2007
Page        1 of    2

PRIVATE CLIENT GROUP 143
360 HAMILTON AVENUE 6TH FLOO
WHITE PLAINS, NY 10601

G.M. CROCETTI, INC TRUSTEE FOR          8-143
PAYROLL ACCOUNT - DEBTOR IN POSSESSION
3960 MERRITT AVE                        For info call our toll-free Signature Line
BRONX NY  10466                         1-866-sigline or visit signatureny.com

Primary Account: 1500759689          0

SIGNATURE BANK HAS ENHANCED ITS ARRAY OF COMMERCIAL CREDIT
PRODUCTS BY OFFERING COMMERCIAL LEASE FINANCING WITH FAST
(TYPICALLY SAME DAY) APPROVAL FOR LINES UNDER  150,000 AND
TWO TO THREE DAY APPROVAL FOR LARGER LINES. CALL YOUR PRIVATE
CLIENT GROUP DIRECTOR TO INQUIRE ABOUT FINANCING YOUR NEXT
CAPITAL INVESTMENT.

| Signature Relationship Summary | | Opening Bal. | Closing Bal. |
|---|---|---|---|
| BANK DEPOSIT ACCOUNTS | | | |
| 1500759689 | BANKRUPTCY CHECKING | 1,905.58 | 1,905.58 |
| | RELATIONSHIP       TOTAL | | 1,905.58 |

---

**\* IMPORTANT INFORMATION  FOR HOLDERS OF SECURITIES PRODUCTS**

Monogram Money Market Funds Program shares are purchased, sold, and dividends reinvested through Signature
Bank.  Other securities and investment products are offered by Signature Securities Group Corporation (SSG),
a registered broker dealer, registered investment advisor, licensed insurance agency and member NASD/SIPC.
SSG is a wholly owned, non-bank subsidiary of Signature Bank.

These investments are not bank deposits or FDIC insured, are not obligations of or guaranteed by Signature Bank
or SSG and are subject to investment risks, including possible loss of the principal amount invested.
See reverse side for more information regarding the Monogram Money Market Funds Program and SSG.

12:01 PM

12/14/07

Accrual Basis

# G.M. Crocetti, Inc.
## Transactions by Account
### As of November 30, 2007

| Type | Date | Num | Name | Memo | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|
| **Signature Bk.- Operating a/c** | | | | | | | | 158,741.67 |
| Check | 11/5/2007 | 1060 | Accounting Services ... | 476 | -SPLIT- | | 5,664.42 | 153,077.25 |
| Check | 11/5/2007 | 1061 | 130 Salt Point LLC | 10/27/07 - 09/26/07 | Rent | | 300.00 | 152,777.25 |
| Check | 11/8/2007 | | Vonage | | Telephone | | 50.22 | 152,727.03 |
| Check | 11/28/2007 | 1062 | 130 Salt Point LLC | 11/27/07 - 12/26/07 | Rent | | 300.00 | 152,427.03 |
| Check | 11/28/2007 | 1063 | Accounting Services ... | | -SPLIT- | | 1,656.00 | 150,771.03 |
| Deposit | 11/28/2007 | | Con Edison - 0111-1 | Deposit | Interest Income | 60.69 | | 150,831.72 |
| Total Signature Bk.- Operating a/c | | | | | | 60.69 | 7,970.64 | 150,831.72 |
| **Signature Bk.-Payroll a/c** | | | | | | | | 1,905.58 |
| Total Signature Bk.-Payroll a/c | | | | | | | | 1,905.58 |
| **Hudson Valley Natl. Bk - Escrow** | | | | | | | | 42,288.33 |
| Total Hudson Valley Natl. Bk - Escrow | | | | | | | | 42,288.33 |
| **Clearing a/c-2 party checks** | | | | | | | | 0.00 |
| Total Clearing a/c-2 party checks | | | | | | | | 0.00 |
| **TOTAL** | | | | | | 60.69 | 7,970.64 | 195,025.63 |

1:08 PM
01/18/08

**G.M. Crocetti, Inc.**
**A/R Aging Summary**
As of November 30, 2007

| | Current | 1 - 90 | > 90 | TOTAL |
|---|---|---|---|---|
| **Miscellaneous** | | | | |
| Port Morris PO#38174 | 0.00 | 0.00 | 42,556.40 | 42,556.40 |
| 265 Hudson St (51367) | 0.00 | 0.00 | 1,267.12 | 1,267.12 |
| 206 E 69th St (Apt 19B) | 0.00 | 0.00 | 825.00 | 825.00 |
| 119 E 23rd St (9A, 19A, 20A, PHB) | 0.00 | 0.00 | 13,500.00 | 13,500.00 |
| 181 East 90th St. (15C, 23C 29B) | 0.00 | 0.00 | 8,000.00 | 8,000.00 |
| 499 Greenwich Street | 0.00 | 0.00 | 750.00 | 750.00 |
| 2 South End Ave. (KBF) | 0.00 | 0.00 | 1,008.08 | 1,008.08 |
| City Center St.-PO#PRTS0535 | 0.00 | 0.00 | 7,485.95 | 7,485.95 |
| Playwright's Horizons | 0.00 | 0.00 | 10,320.00 | 10,320.00 |
| Jeffries -61 E 99th St. | 0.00 | 0.00 | 3,007.42 | 3,007.42 |
| Jeffries-31st Fl, St. Moritz | 0.00 | 0.00 | 1,742.40 | 1,742.40 |
| Dalton School | 0.00 | 0.00 | 3,434.00 | 3,434.00 |
| Levenberg Residence | 0.00 | 0.00 | 2,444.06 | 2,444.06 |
| Sands Residence | 0.00 | 0.00 | 484.50 | 484.50 |
| Borders Book Store-AOL | 0.00 | 0.00 | 2,330.00 | 2,330.00 |
| 200 East 66th St-Apt 4H | 0.00 | 0.00 | 647.71 | 647.71 |
| HSBC Bank | 0.00 | 0.00 | 1,925.00 | 1,925.00 |
| David Messer-Hampton House | 0.00 | 0.00 | 211.75 | 211.75 |
| Ogden - 1 Lincoln Plaza | 0.00 | 0.00 | 5,360.00 | 5,360.00 |
| Best Buy (revised #07-149) | 0.00 | 0.00 | 638.25 | 638.25 |
| Best Buy | 0.00 | 0.00 | 64.69 | 64.69 |
| **Total Miscellaneous** | 0.00 | 0.00 | 108,002.33 | 108,002.33 |
| **Barney Skanska** | | | | |
| Bieler Residence | 0.00 | 0.00 | 5,140.00 | 5,140.00 |
| BMCC - Exterior Granite | 0.00 | 0.00 | 556.90 | 556.90 |
| Fairfield - Exterior Pavers | 0.00 | 0.00 | 4,389.68 | 4,389.68 |
| Fairfield - Stone Cladding | 0.00 | 0.00 | 312.00 | 312.00 |
| Port Authority Bus Terminal | 0.00 | 0.00 | 9,222.90 | 9,222.90 |
| School of Architecture | 0.00 | 0.00 | 49,504.11 | 49,504.11 |
| **Total Barney Skanska** | 0.00 | 0.00 | 69,125.59 | 69,125.59 |
| **Bovis Lend Lease** | | | | |
| Tower 31 - 9 W 31st Street | 0.00 | 0.00 | 66,066.00 | 66,066.00 |
| Weill Cornell Medical Center | 0.00 | 0.00 | 424,577.49 | 424,577.49 |
| Apt. Building @ 67th & 3rd Ave. | 0.00 | 0.00 | 70,842.00 | 70,842.00 |
| Residence Inn by Marriott | 0.00 | 0.00 | 65,908.97 | 65,908.97 |
| 455 Central Park West | 0.00 | 0.00 | 900.00 | 900.00 |
| **Total Bovis Lend Lease** | 0.00 | 0.00 | 628,094.46 | 628,094.46 |
| **E.W. Howell Co., Inc.** | | | | |
| Suffolk County Civil Court | 0.00 | 0.00 | 61,607.09 | 61,607.09 |
| Bayshore H.S. | 0.00 | 0.00 | 42,942.08 | 42,942.08 |
| **Total E.W. Howell Co., Inc.** | 0.00 | 0.00 | 104,549.17 | 104,549.17 |
| **Gotham Construction** | | | | |
| Battery Park City - Site 2A | 0.00 | 0.00 | 172,517.26 | 172,517.26 |
| Columbia Residence | 0.00 | 0.00 | 8,262.33 | 8,262.33 |
| **Total Gotham Construction** | 0.00 | 0.00 | 180,779.59 | 180,779.59 |
| **HRH Construction Corp.** | | | | |
| City Center-Loft | 0.00 | 0.00 | 14,716.36 | 14,716.36 |
| City Center-South Tower | 0.00 | 0.00 | 514,305.63 | 514,305.63 |
| Residences @ Jefferson Place (Granite) | 0.00 | 0.00 | 29,822.33 | 29,822.33 |
| Residences @ Jefferson Place | 0.00 | 0.00 | 308,961.04 | 308,961.04 |
| 200 West 24th Street | 0.00 | 0.00 | 61,402.22 | 61,402.22 |
| City Center | 0.00 | 0.00 | 17,041.38 | 17,041.38 |
| **Total HRH Construction Corp.** | 0.00 | 0.00 | 946,249.16 | 946,249.16 |
| **Kreisler Borg Florman** | | | | |
| The Osborn, Sterling Park (PH2) | 0.00 | 0.00 | 145,585.42 | 145,585.42 |
| Chelsea Gardens | 0.00 | 0.00 | 209,067.10 | 209,067.10 |
| 161 E 90th St. - Condos | 0.00 | 0.00 | 7,676.54 | 7,676.54 |
| **Total Kreisler Borg Florman** | 0.00 | 0.00 | 362,329.06 | 362,329.06 |
| **J.E. Levine Builders** | | | | |
| 90 West Street | 0.00 | 0.00 | 124,342.33 | 124,342.33 |
| 325 Fifth Ave. | 0.00 | 0.00 | 101,909.20 | 101,909.20 |
| **Total J.E. Levine Builders** | 0.00 | 0.00 | 226,251.53 | 226,251.53 |
| **M & M Construction** | | | | |
| Middlesex Cty. Utilities Authority | 0.00 | 0.00 | 38,250.00 | 38,250.00 |
| **Total M & M Construction** | 0.00 | 0.00 | 38,250.00 | 38,250.00 |
| **Ogden Cap Properties LLC** | | | | |
| 1 Lincoln Plaza | 0.00 | 0.00 | 2,123.01 | 2,123.01 |
| The Dorchester | 0.00 | 0.00 | 28,299.77 | 28,299.77 |
| 165 E 29th Street | 0.00 | 0.00 | 40,910.37 | 40,910.37 |
| 160 E 38th Street | 0.00 | 0.00 | 5,567.63 | 5,567.63 |
| 201 E 28th Street | 0.00 | 0.00 | 7,155.53 | 7,155.53 |
| 155 E 31st Street | 0.00 | 0.00 | 3,624.49 | 3,624.49 |
| **Total Ogden Cap Propertise LLC** | 0.00 | 0.00 | 87,680.80 | 87,680.80 |
| **Pav-Lak Industries** | | | | |
| East Islip High School | 0.00 | 0.00 | 5,010.00 | 5,010.00 |
| **Total Pav-Lak Industires** | 0.00 | 0.00 | 5,010.00 | 5,010.00 |

1:08 PM
01/18/08

**G.M. Crocetti, Inc.**
**A/R Aging Summary**
As of November 30, 2007

| | Current | 1 - 90 | > 90 | TOTAL |
|---|---|---|---|---|
| **Plaza Construction** | | | | |
| Apt. House @ 26 Astor Place | 0.00 | 0.00 | 3,754.90 | 3,754.90 |
| Fisher Residence | 0.00 | 0.00 | 19,550.11 | 19,550.11 |
| **Total Plaza Construction** | 0.00 | 0.00 | 23,305.01 | 23,305.01 |
| **R.C. Dolner, Inc.** | | | | |
| Liberty Lofts (2-7 Fl & Lobby) | 0.00 | 0.00 | 14,743.01 | 14,743.01 |
| 50 Madison Ave. | | | | |
| Tile | 0.00 | 0.00 | 113,054.59 | 113,054.59 |
| Wood Flooring | 0.00 | 0.00 | 145,365.35 | 145,365.35 |
| **Total 50 Madison Ave.** | 0.00 | 0.00 | 258,419.94 | 258,419.94 |
| **Total R.C. Dolner, Inc.** | 0.00 | 0.00 | 273,162.95 | 273,162.95 |
| **Ritz Carlton** | | | | |
| Ritz Carlton CPS | 0.00 | 0.00 | 2,425.00 | 2,425.00 |
| **Total Ritz Carlton** | 0.00 | 0.00 | 2,425.00 | 2,425.00 |
| **S. Di Giacom & Son, Inc.** | | | | |
| Ukrainian Museum | 0.00 | 0.00 | 9,483.24 | 9,483.24 |
| **Total S. Di Giacom & Son, Inc.** | 0.00 | 0.00 | 9,483.24 | 9,483.24 |
| **S.N. Tannor, Inc.** | | | | |
| P.S. 109 Brooklyn | 0.00 | 0.00 | 3,900.00 | 3,900.00 |
| **Total S.N. Tannor, Inc.** | 0.00 | 0.00 | 3,900.00 | 3,900.00 |
| **Shoemaker Construction** | | | | |
| Locust Tower Condos (Sales Office) | 0.00 | 0.00 | 11,697.00 | 11,697.00 |
| **Total Shoemaker Construction** | 0.00 | 0.00 | 11,697.00 | 11,697.00 |
| **Trataros Construction** | | | | |
| Baruch College, Site B | 0.00 | 0.00 | 901,091.65 | 901,091.65 |
| **Total Trataros Construction** | 0.00 | 0.00 | 901,091.65 | 901,091.65 |
| **Tully Construction** | | | | |
| Staten Island Transfer Station | 0.00 | 0.00 | 2,350.01 | 2,350.01 |
| **Total Tully Construction** | 0.00 | 0.00 | 2,350.01 | 2,350.01 |
| **Turner Interiors** | | | | |
| 1600 Broadway (#05-030) | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Turner Interiors** | 0.00 | 0.00 | 0.00 | 0.00 |
| **U.W. Marx** | | | | |
| Pelham High School | 0.00 | 0.00 | 23,501.87 | 23,501.87 |
| **Total U.W. Marx** | 0.00 | 0.00 | 23,501.87 | 23,501.87 |
| **Valex Organization** | | | | |
| 3rd Ave.-Con Edison | 0.00 | 0.00 | 42,758.33 | 42,758.33 |
| **Total Valex Organization** | 0.00 | 0.00 | 42,758.33 | 42,758.33 |
| **Yoda LLC (Manhattan Skyline)** | | | | |
| 205 E 59th Street @ 3rd Ave | 0.00 | 0.00 | 129,364.67 | 129,364.67 |
| **Total Yoda LLC (Manhattan Skyline)** | 0.00 | 0.00 | 129,364.67 | 129,364.67 |
| **TOTAL** | 0.00 | 0.00 | 4,179,361.42 | 4,179,361.42 |

**G.M. Crocetti, Inc.**

**There is no inventory as of:**

**11/30/07**

1:10 PM

01/18/08

# G.M. Crocetti, Inc.
## A/P Aging Summary
### As of November 30, 2007

| | Current | 1 - 90 | > 90 | TOTAL |
|---|---|---|---|---|
| A & N Precision Industries, LTD | 0.00 | 0.00 | 1,055.30 | 1,055.30 |
| ADP Totalpay Autopay | 0.00 | 0.00 | 18,873.28 | 18,873.28 |
| Air Power House | 0.00 | 0.00 | 545.29 | 545.29 |
| Airweld Inc. | 0.00 | 0.00 | 1,247.70 | 1,247.70 |
| American Compressed Gases, Inc. | 0.00 | 0.00 | 682.94 | 682.94 |
| American Express Corporate | 0.00 | 0.00 | 36,862.15 | 36,862.15 |
| American Honda (Accord) | 0.00 | 0.00 | 3,354.16 | 3,354.16 |
| American Honda (Pilot) | 0.00 | 0.00 | 13,039.32 | 13,039.32 |
| American International Co. | 0.00 | 0.00 | 13,887.00 | 13,887.00 |
| American Olean Tile Co. | 0.00 | 0.00 | 7,898.37 | 7,898.37 |
| Ann Sacks | 0.00 | 0.00 | 835.33 | 835.33 |
| Arbill Safety Products | 0.00 | 0.00 | 817.81 | 817.81 |
| Art In Stone | 0.00 | 0.00 | 1,775.94 | 1,775.94 |
| Artistic Tile, Inc. | 0.00 | 0.00 | 31,010.15 | 31,010.15 |
| AXE, Inc. | 0.00 | 0.00 | 39,567.66 | 39,567.66 |
| Barclay Brand Ferdon | 0.00 | 0.00 | 1,031.97 | 1,031.97 |
| Barton Mines.com | 0.00 | 0.00 | 2,474.20 | 2,474.20 |
| Boiardi | 0.00 | 0.00 | 4,655.00 | 4,655.00 |
| Boston Road Equipment Rental | 0.00 | 0.00 | 1,010.06 | 1,010.06 |
| Bronx Welding Supply, Inc. | 0.00 | 0.00 | 534.38 | 534.38 |
| C-Air Customhouse Brokers | 0.00 | 0.00 | 1,790.21 | 1,790.21 |
| Cablevision | 0.00 | 0.00 | 348.71 | 348.71 |
| Canaelli, Inc. | 0.00 | 0.00 | 3,760.23 | 3,760.23 |
| Capital Hardware Supply, Inc. | 0.00 | 0.00 | 374.20 | 374.20 |
| Cassiere Marble & Stone, Inc. | 0.00 | 0.00 | 35,266.81 | 35,266.81 |
| Castel Tile | 0.00 | 0.00 | 1,900.00 | 1,900.00 |
| Catco Marble | 0.00 | 0.00 | 2,847.50 | 2,847.50 |
| Charrette | 0.00 | 0.00 | 285.21 | 285.21 |
| Chase Automotive Finance | 0.00 | 0.00 | 1,430.16 | 1,430.16 |
| Ciot Montreal Inc. | 0.00 | 0.00 | 128,732.57 | 128,732.57 |
| CIT Group | 0.00 | 0.00 | 10,309.78 | 10,309.78 |
| CNA Insurance | 0.00 | 0.00 | 3,400.14 | 3,400.14 |
| Con Edison - 0111-1 | 0.00 | 0.00 | -1,642.07 | -1,642.07 |
| Con Edison - 0306-9 | 0.00 | 0.00 | 264.89 | 264.89 |
| Con Edison - 0402-4 | 0.00 | 0.00 | -60.85 | -60.85 |
| Cordaro Shipping Co., Inc. | 0.00 | 0.00 | 1,387.34 | 1,387.34 |
| Corsi & Nicolai SRL | 0.00 | 0.00 | 7,237.94 | 7,237.94 |
| Cosa Marble Co., Inc. | 0.00 | 0.00 | 9,702.84 | 9,702.84 |
| Dal Tile Corp. | 0.00 | 0.00 | 15,123.86 | 15,123.86 |
| Dell Financial Services | 0.00 | 0.00 | 9,646.50 | 9,646.50 |
| Dente Trading Company, Inc. | 0.00 | 0.00 | 34,274.42 | 34,274.42 |
| Deringer | 0.00 | 0.00 | 3,050.61 | 3,050.61 |
| Doyle Gerlach, Inc. | 0.00 | 0.00 | 3,409.46 | 3,409.46 |
| Dyre Avenue Supply Co., Inc. | 0.00 | 0.00 | 119.33 | 119.33 |
| East End Sanitation | 0.00 | 0.00 | 3,167.82 | 3,167.82 |
| Eastern Marble & Granite | 0.00 | 0.00 | 1,915.23 | 1,915.23 |
| Estes Express Lines | 0.00 | 0.00 | 1,914.83 | 1,914.83 |
| Exxon/Mobile GECC | 0.00 | 0.00 | 7,481.59 | 7,481.59 |
| Federal Express | 0.00 | 0.00 | 2,284.74 | 2,284.74 |
| Fleetcor Technologies | 0.00 | 0.00 | 9,336.68 | 9,336.68 |
| Flow Financial Services | 0.00 | 0.00 | 35,152.50 | 35,152.50 |
| Ford Credit | 0.00 | 0.00 | 410.42 | 410.42 |
| Frank's Tire Service | 0.00 | 0.00 | 999.50 | 999.50 |
| Frank Siviglia & Co., Inc. | 0.00 | 0.00 | 1,588.78 | 1,588.78 |
| General Reproduction Products | 0.00 | 0.00 | 1,013.82 | 1,013.82 |
| GMAC | 0.00 | 0.00 | 15,602.08 | 15,602.08 |
| Haran Incorporated | 0.00 | 0.00 | 2,081.33 | 2,081.33 |
| Harold, Salant, Strassfield & Spielberg | 0.00 | 0.00 | 58,857.68 | 58,857.68 |
| Hindustan Granites, Inc. | 0.00 | 0.00 | 1,000.00 | 1,000.00 |
| IGM Corporation | 0.00 | 0.00 | 16,794.08 | 16,794.08 |
| Imagistics | 0.00 | 0.00 | 2,179.24 | 2,179.24 |
| Island Laser | 0.00 | 0.00 | 1,744.88 | 1,744.88 |
| Jaeger & Condino, Inc. | 0.00 | 0.00 | 4,901.96 | 4,901.96 |
| Kass Industrial Supply Corp. | 0.00 | 0.00 | 1,797.07 | 1,797.07 |
| LANline Communications | 0.00 | 0.00 | 98.00 | 98.00 |
| Legno Veneto | 0.00 | 0.00 | 34,021.24 | 34,021.24 |

1:10 PM
01/18/08

# G.M. Crocetti, Inc.
## A/P Aging Summary
### As of November 30, 2007

| | Current | 1 - 90 | > 90 | TOTAL |
|---|---|---|---|---|
| Leonardo | 0.00 | 0.00 | 54,575.84 | 54,575.84 |
| Liberta & Milo | 0.00 | 0.00 | 19,000.00 | 19,000.00 |
| Liberty Mutual | 0.00 | 0.00 | 34,021.24 | 34,021.24 |
| Local 7 | 0.00 | 0.00 | -53,832.38 | -53,832.38 |
| Lomar Sales & Distributors, Inc. | 0.00 | 0.00 | 2,250.00 | 2,250.00 |
| Lovell | 0.00 | 0.00 | 7,096.39 | 7,096.39 |
| Marble Modes, Inc. | 0.00 | 0.00 | 8,305.57 | 8,305.57 |
| Marble System, Inc. | 0.00 | 0.00 | 37,498.88 | 37,498.88 |
| Marex Sri | 0.00 | 0.00 | 80,741.00 | 80,741.00 |
| Marino Lumber & Trim Co. | 0.00 | 0.00 | 69.36 | 69.36 |
| Marmaro Group, LLC | 0.00 | 0.00 | 5,200.00 | 5,200.00 |
| Mc Neilly Wood Products | 0.00 | 0.00 | 3,022.66 | 3,022.66 |
| Mill Wiping Rags | 0.00 | 0.00 | 400.98 | 400.98 |
| Mollica, Donna | 0.00 | 0.00 | 600.00 | 600.00 |
| Moneys Worth Car/Truck Rental | 0.00 | 0.00 | 4,400.08 | 4,400.08 |
| MSC Industrial Supply Co. | 0.00 | 0.00 | 942.90 | 942.90 |
| National Diamond | 0.00 | 0.00 | 1,517.22 | 1,517.22 |
| New Jersey Diamond Producuts | 0.00 | 0.00 | 308.00 | 308.00 |
| New York Builders Supply Co. | 0.00 | 0.00 | 3,277.26 | 3,277.26 |
| New York State Thruway Authority | 0.00 | 0.00 | 262.50 | 262.50 |
| New York Stone Trading, LLC | 0.00 | 0.00 | 11,404.57 | 11,404.57 |
| North East Stone Supplies, Inc. | 0.00 | 0.00 | 22,654.19 | 22,654.19 |
| NYC Department of Finance | 0.00 | 0.00 | 375.00 | 375.00 |
| NYC Fire Department | 0.00 | 0.00 | 315.00 | 315.00 |
| NYC Water Board - 18066-001 | 0.00 | 0.00 | 27,949.06 | 27,949.06 |
| NYC Water Board - 18067-001 | 0.00 | 0.00 | 416.23 | 416.23 |
| NYS Insurance Fund | 0.00 | 0.00 | 81,459.44 | 81,459.44 |
| Office Equipment & Supply Co. | 0.00 | 0.00 | 877.63 | 877.63 |
| Panacol | 0.00 | 0.00 | 8,900.00 | 8,900.00 |
| Paul's Welding & Spring Works | 0.00 | 0.00 | 122.77 | 122.77 |
| Pet-Mai, Inc. | 0.00 | 0.00 | 6,782.00 | 6,782.00 |
| Pro Stone Systems, LLC | 0.00 | 0.00 | 0.00 | 0.00 |
| Pro Stone Systems, LLC. | 0.00 | 0.00 | 62,750.36 | 62,750.36 |
| Pro Tile Distributors, Inc. | 0.00 | 0.00 | 131,661.16 | 131,661.16 |
| Remida Hoist & Crane Repair | 0.00 | 0.00 | 593.40 | 593.40 |
| Royal Wood Floors | 0.00 | 0.00 | 5,500.00 | 5,500.00 |
| Screws & More, LLC | 0.00 | 0.00 | 494.19 | 494.19 |
| Seneca Insurance | 0.00 | 0.00 | 3,662.16 | 3,662.16 |
| Sexton Dai-Tools, Inc. | 0.00 | 0.00 | 346.80 | 346.80 |
| Silver Building Products, Inc. | 0.00 | 0.00 | 886.75 | 886.75 |
| Southampton Brick & Tile | 0.00 | 0.00 | 16,076.46 | 16,076.46 |
| Sprint | 0.00 | 0.00 | 4,456.01 | 4,456.01 |
| Staples Business Advantage | 0.00 | 0.00 | 1,912.55 | 1,912.55 |
| Steven's Stone & Brick | 0.00 | 0.00 | 2,498.38 | 2,498.38 |
| Stillwell Supply Corp | 0.00 | 0.00 | 13,780.95 | 13,780.95 |
| Stone Design & Engineering | 0.00 | 0.00 | 5,100.00 | 5,100.00 |
| Superior Sales & Service, Inc. | 0.00 | 0.00 | 268.81 | 268.81 |
| Superior Selected Stone | 0.00 | 0.00 | 964.97 | 964.97 |
| Texaco / Shell | 0.00 | 0.00 | 4,261.67 | 4,261.67 |
| Tile & Stone Sales, Inc. | 0.00 | 0.00 | 18,408.00 | 18,408.00 |
| Torre Lentz Gamell Gary et al | 0.00 | 0.00 | 175,768.51 | 175,768.51 |
| Tri Star Label, Inc. | 0.00 | 0.00 | 480.00 | 480.00 |
| Tuckahoe Florist | 0.00 | 0.00 | 168.75 | 168.75 |
| Tuckahoe Paint & Glass | 0.00 | 0.00 | 641.12 | 641.12 |
| Tureks, Inc. | 0.00 | 0.00 | 242,576.64 | 242,576.64 |
| U.S. Bank | 0.00 | 0.00 | 12,125.95 | 12,125.95 |
| U.S. Bankruptcy Trustee | 0.00 | 0.00 | 1,250.00 | 1,250.00 |
| United Ceramic Tile Corp. | 0.00 | 0.00 | 35.00 | 35.00 |
| United Parcel Service | 0.00 | 0.00 | 238.94 | 238.94 |
| Urban Computing, Inc. | 0.00 | 0.00 | 120.00 | 120.00 |
| Verizon | 0.00 | 0.00 | 910.22 | 910.22 |
| Virginia Surety Co. | 0.00 | 0.00 | 48,103.76 | 48,103.76 |
| WausauTile | 0.00 | 0.00 | 677.33 | 677.33 |
| Zacek Equipment Corp. | 0.00 | 0.00 | 162.98 | 162.98 |
| TOTAL | 0.00 | 0.00 | 1,786,256.48 | 1,786,256.48 |

**There are no Payroll Expenses and no Payroll Taxes as of:**

**11/30/07**

# EXHIBIT J

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>G.M. CROCETTI, INC.,<br><br>                    Debtor. | Chapter 11 Case<br>Case No. 07-10319 (BRL) |
| G.M. CROCETTI, INC.,<br><br>                    Plaintiff,<br>  - against -<br><br>TRATAROS CONSTRUCTION, INC. and TRAVELERS<br>CASUALTY SURETY COMPANY,<br><br>                    Defendant. | Adversary No. (BRL) |

**OBJECTION TO CLAIM AND COUNTERLCLAIM**
**AND**
**COMPLAINT IN ADVERSARY PROCEEDING**

Plaintiff/Debtor G.M. Crocetti, Inc. ("Debtor"), by and through its attorneys, Harold

Salant Strassfield & Spielberg, as and for its Complaint against the Defendants, as well as an

Objection to, and Counterclaim to, the Claim of TRAVELERS CASUALTY SURETY

COMPANY, alleges as follows:

**NATURE OF THE PROCEEDING**

1.      This is an adversary proceeding brought by the Debtor concerning funds due and

owning to Debtor under a contract (the "Contract") between the Debtor and Defendant, Trataros

Construction, Inc. for <u>inter alia</u>, furnishing and installing pre-cast terrazzo, epoxy terrazzo,

interior stonework and related work at a project known as "Baruch College, Site B " (the

"Project").

2.       This is also an Objection and Counterclaim to the claim no. 81 dated April 7,

2008 filed by TRAVELERS CASUALTY SURETY COMPANY.

## JURISDICTION

3.       This is a core proceeding arising in the Debtor's chapter 11 case.  The Bankruptcy

Court presiding over the chapter 11 case, pursuant to the general reference with respect to title 11

cases in effect in the Southern District of New York, and pursuant to 11 U.S.C. § 105, 11 U.S.C.

§ 542 and 28 U.S.C. § 157(a), has jurisdiction over each and every cause of action asserted in the

proceeding under 28 U.S.C. § 1334.

4.       Resolution of the claims that are the subject of this proceeding will significantly

affect the administration of the Estate and will involve the allowance or disallowance of claims

and/or liens against the Estate, and proceedings affecting the liquidation of assets of the Estate

and the adjustment of the debtor-creditor relationships.  All such matters are core proceedings

under 28 U.S.C. § 157(b)(2)(A), (B), (C), (E) and (O).  In the event that any claim or cause of

action in this proceeding is determined to be noncore, the Debtor consents to the entry of final

orders or judgment by the Bankruptcy Judge with respect to all such claims and causes of action.

## THE PARTIES

5.       G. M. Crocetti, Inc. ("Crocetti") was and still is a domestic corporation authorized

and to do business in the City and State of New York with its principal office for the transaction

of business located at P.O. Box 423, Hopewell Junction, New York 12533.

6.       On February 8, 2007 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code. The Debtor continues in the possession of its

assets as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2

7.    That defendant Trataros Construction, Inc. ("Trataros") was and still is a foreign or domestic corporation actually doing business in the City and State of New York with its principal office for the transaction of business located at 664 – 64th Street, Brooklyn, New York 11220.

8.    That defendant Travelers Casualty & Surety Company ("Travelers") was and still is a domestic or foreign corporation actually doing business as a licensed Surety Company in the State of New York, with an office for the transaction of business located at One Tower Square – 14C, Hartford, Connecticut 06183.

## OBJECTION TO CLAIM

9.    Debtor hereby objects to claim number 81 of Travelers Casualty and Surety Company in the amount of $20,001,091.65 on the grounds that the work performed by Debtor was not defective; that the work was not performed negligently, and that the debtor did not breach its contract with Trataros.

## FIRST CAUSE OF ACTION AGAINST TRATAROS

### (Breach of Contract)

10.    The Debtor repeats and realleges Paragraphs 1 through 6 hereof as if set forth at length herein.

11.    That on or about August 27, 1998, Trataros as the general contractor entered into a contract with the Dormitory Authority of the State of New York ("DASNY") for certain construction work at Baruch College, 55 Lexington Avenue, New York, New York for Site B, Package No. 2 – General Construction Work, Contract No. 16 (Contract No. DA. No. 6500-1802-2178. JDE No. 61505) hereinafter referred to as the "Project" and/or the "Prime Contract".

12.    Thereafter, Trataros, on or about September 18, 1998 entered into a subcontract

3

agreement with Crocetti to perform certain base subcontract for furnishing and installing pre-cast terrazzo, epoxy terrazzo, interior stonework and related work at and for the improvement of the Project.

13.    That the agreed upon price and fair and reasonable value of the base contract work referred to in paragraph "9" hereof was the sum of $3,008,000.00.

14.    During the performance of Crocetti's subcontract work at the Project, at the special instance and request of Trataros and/or others acting on behalf of Trataros, Crocetti performed certain extra and/or additional change order work at the Project.

15.    That the fair and reasonable value of the extra and/or additional change order work referred to in paragraph "11" hereof was the agreed upon sum and fair and reasonable value of $990,352.51.

16.    That on or about and between September 30, 2000 and February 12, 2003, Crocetti performed all of its labor and furnished all of the materials it was required to perform and/or furnish in connection with the Project.  Crocetti was substantially completed with its subcontract work on or about October 31, 2002.

17.    Crocetti complied with all of the terms and conditions of the subcontract by and between Crocetti and Trataros.

18.    That as a result of the foregoing, there resulted in an adjusted contract price of $3,998,352.51.

19.    As a result of the foregoing, there became due and owing to Crocetti from Trataros the sum of $3,998,352.51.

20.    That no part of said sum of $3,998,352.51 has been paid or credit deductions given, despite demand having been made therefore, except the sum of $3,097,260.86, leaving a

balance due and owing to Crocetti from Trataros in the sum of $901,091.65, plus interest thereon from October 31, 2002.

21.    As a result of the foregoing, Crocetti has been damaged by Trataros for which Trataros is liable therefore, for the sum of $901,091.65, plus interest thereon from October 31, 2002.

## COUNTERCLAIM AGAINST TRAVELERS
## AND
## SECOND CAUSE OF ACTION AGAINST TRATAROS
(Claim against the bond)

22.    Defendant Crocetti repeats and realleges each and every allegation set forth in paragraphs "1" through "18" hereof with the same force and effect as if set forth at length herein.

23.    That Trataros was required by DASNY and did execute and deliver with a licensed Surety thereon a labor and material payment bond in connection with Trataros' general contract with DASNY for the Project.

24.    Trataros had originally furnished a labor and material payment bond from the Reliance Insurance Company ("Reliance").

25.    That at the time Crocetti had entered into the contract with Trataros, Reliance was authorized to issue and deliver the labor and material payment bond required for the Project.

26.    That thereafter, Crocetti was advised that the defendant Travelers had either assumed all of the rights and obligations of Reliance, or in the alternative, had executed, furnished and delivered a separate and distinct labor and material payment bond.

27.    That Travelers was and still is the surety responsible for the payment of just claims under the labor and material payment bond(s) upon which this suit is based.

28.    That defendants Trataros and Travelers are jointly and severally liable to Crocetti for the sum of $901,091.65, plus interest thereon from October 31, 2002 for the labor performed,

costs incurred and materials furnished in connection with the construction of the Project under and pursuant to the provisions of the labor and material payment bond(s)

29.     That Crocetti has been damaged for which the defendants Trataros, Reliance and Travelers are liable therefore, jointly and severally, liable to Crocetti, in the sum of $901,091.65, plus interest thereon, from October 31, 2002.

WHEREFORE, the Debtor respectfully demands judgment:

ON THE FIRST CAUSE OF ACTION against defendant Trataros Construction, Inc., in the sum of $901,091.65, plus interest thereon from October 31, 2002;

ON THE COUNTERCLAIM AND SECOND CAUSE OF ACTION against Trataros Construction, Inc., and Travelers Casualty Surety Company of America, jointly and severally, in the sum of $901,091.65, plus interest thereon from October 31, 2002.

and for such other and further relief as the Court deem just and equitable.

Dated:  White Plains, New York
        May 19, 2008

                                Harold, Salant, Strassfield & Spielberg
                                Attorneys for Debtor
                                By:


                                _____/S/_____
                                Leonard I. Spielberg (LIS2506)
                                81 Main Street
                                White Plains, New York 10601
                                (914) 683-2500

6

# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
AUG 0 4 2004
U.S.D.C. S.D. N.Y.
CASHIERS

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>  - against -<br><br>THE DORMITORY AUTHORITY OF THE STATE OF NEW YORK, TDX CONSTRUCTION CORP., and KOHN, PEDERSON, FOX & ASSOCIATES, P.C.,<br><br>        Defendants. | Case No. 04 Civ. 5101 (HB)<br><br><br>**THIRD-PARTY<br>COMPLAINT** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK,<br><br>        Third-Party Plaintiff,<br><br>  - against -<br><br>TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>        Third-Party Defendants. | |

Third-party plaintiff Dormitory Authority of the State of New York, by its attorneys, Holland & Knight LLP, as and for its complaint against the third-party defendants alleges:

*Parties, Jurisdiction and Venue*

1.    Third-party plaintiff Dormitory Authority of the State of New York ("DASNY") is a public benefit corporation organized and existing under the Public

Authorities Law of the State of New York, with its principal place of business located at 515 Broadway, Albany, New York.

2.      Upon information and belief, third-party defendant Trataros Construction, Inc. ("Trataros") is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 664 64th Street, Brooklyn, New York.

3.      Upon information and belief, third-party defendant Travelers Casualty and Surety Company ("Travelers") is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business located at One Tower Square, Hartford, Connecticut.

4.      This Court has jurisdiction over this third-party action pursuant to 28 U.S.C. § 1367(a).

5.      This District is the proper venue for this third-party action under 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the cross-claims asserted herein occurred within this District.

*Facts*

6.      This case arises from the construction of a 785,000 gross square foot, 14 story structure located on Lexington Avenue between 24th and 25th Streets in the borough of Manhattan (the "Project"), which was designed to house Baruch College's School of Liberal Arts and Sciences, Business School, Executive Program Division, recreational and performance facilities, and various student activity areas.  The Project is commonly known as the Baruch Academic Complex, Site B.

- 2 -

7. The Project was designed by Kohn Pederson, Fox & Associates, P.C. ("KPF") and built in accordance with the Wicks Law, N.Y. State Finance Law § 135, using multiple trade construction contractors (the "Prime Trade Contractors"). TDX Construction Corp. ("TDX") served as DASNY 's construction manager.

8. On or about April 22, 1998, DASNY, as owner, and Trataros Construction, Inc. ("Trataros"), as contractor, entered into Agreement No. 6500 1802 2176 ("Contract No. 15"). Contract No. 15 required Trataros to provide all labor and material necessary to perform specified general construction work on the Project for the fixed sum of $50,222,000.00. Contract No. 15 included plans, specifications, general conditions and other terms, conditions, obligations, duties, and requirements that Trataros agreed to assume and comply with.

9. On or about April 22, 1998, Trataros, as principal, and Reliance Insurance Company ("Reliance"), as surety, executed and delivered a labor and material payment bond and a performance bond for Contract No. 15, each having the penal sum of $50,222,000.00 and naming DASNY as obligee.

10. On or about August 27, 1998, DASNY, as owner, and Trataros, as contractor, entered into Agreement No. 6500 1802 2178 ("Contract No. 16"). Contract No. 16 required Trataros to provide all labor and material necessary to perform specified general construction work at the Project for the fixed sum of $24,140,000.00. Contract No. 16 included plans, specifications, general conditions, and other terms, conditions, duties, and requirements that Trataros agreed to assume and comply with.

11.    On or about August 27, 1998, Trataros, as principal, and Reliance, as surety, executed and delivered a labor and material payment bond and a performance bond for Contract No. 16, each having the penal sum of $24,140,000.00 and naming DASNY as obligee.

12.    Upon information and belief, on or about May 31, 2000, Travelers acquired the surety and fidelity business written by Reliance Group Holdings, Inc., including bonds written by Reliance. All duties, rights, and obligations of Reliance under the labor and material payment and performance bonds for Contract No. 15 and Contract No. 16 were assumed by Travelers by virtue of that transaction.

13.    Trataros entered into various subcontract agreements and purchase orders with trade contractors and material suppliers ("Trataros' Subcontractors and Suppliers") that obligated those subcontractors and suppliers to fulfill certain of Trataros' obligations and under Contract No. 15 and Contract No. 16.

I. *Project Delays*

14.    Contract No. 15 and Contract No. 16 required Trataros to complete its work in accordance with schedules that were developed with input from Trataros and its subcontractors. By entering into Contract No. 15 and Contract No. 16, Trataros agreed to complete the work in accordance with the sequences, milestones and completion dates in those schedules and any updates thereto.

15.    Time was of the essence under Contract No. 15 and Contract No. 16.

16.    Contract No. 15 and Contract No. 16 each contained a provision requiring Trataros to pay DASNY liquidated damages in the amount of $500.00 per

- 4 -

day for each and every day that Trataros was in default after the specified time of completion.

17.    Trataros failed to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16.

18.    Trataros' failure to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16 delayed, disrupted and impacted work performed on the Project by other Prime Trade Contractors and Trataros' Subcontractors and Suppliers.  Trataros also is responsible for a delay to the overall completion of the Project.

19.    The delays, disruptions and impacts to work performed by other Prime Trade Contractors and Trataros' Subcontractors and Suppliers is attributable to, *inter alia*, Trataros' failure to properly plan, schedule, coordinate or manage the work and Trataros' failure to provide adequate labor, material and equipment to effectively phase and complete their work.

20.    Certain Prime Trade Contractors have submitted claims to DASNY seeking additional compensation and extensions of time due to alleged delays, disruptions, impacts and inefficiencies.  To the extent that DASNY has any responsibility for these claims, that responsibility is at least partially attributable to Trataros' failure to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16 and Trataros' failure to properly administer and execute its work.

21.    Some of Trataros' Subcontractors and Suppliers have submitted claims to Trataros seeking additional compensation and extensions of time due to alleged delays, disruptions, impacts and inefficiencies. Trataros has attempted to pass these claims through to DASNY for payment. To the extent that DASNY has any responsibility for these claims, that responsibility is at least partially attributable to Trataros' failure to complete its work in accordance with the sequences, milestones and completion dates required by the schedules for Contract No. 15 and Contract No. 16 and Trataros' failure to properly administer and execute its work.

22.    The City University of New York ("CUNY") for whom DASNY oversaw and administered the construction of the Project, suffered substantial damages due to Trataros' delays in completing its work under Contract No. 15 and Contract No. 16. DASNY also suffered substantial damages as a result of Trataros' delays. Trataros is at least partially responsible for those additional costs.

II.    *Construction Defects*

23.    Contract No. 15 and Contract No. 16 included plans and specifications that set forth the technical requirements for both the performance and quality of the work.

24.    Trataros agreed to perform its work in accordance with the technical and quality requirements set forth in Contract No. 15 and Contract No. 16. Trataros also agreed to comply with applicable industry standards and state and local building codes and regulations.

- 6 -

25.    The work performed by Trataros and its subcontractors failed to satisfy the technical and quality requirements in Contract No. 15 and Contract No. 16 or accepted industry practices.

26.    As a result of Trataros and subcontractors' failure to satisfy the technical and quality control requirements in Contract No. 15 and Contract No. 16 and accepted industry standards, significant portions of Trataros' work were defective, substandard or otherwise unacceptable.  This nonconforming work had to be repaired or replaced at significant expense to DASNY.

27.    In addition to the construction defects described above, Trataros also failed to install flooring material in the Project in accordance with the requirements of Contract No. 15 and Contract No. 16 and accepted industry standards.

28.    The construction documents for the Project specified epoxy terrazzo as the interior finished flooring material for thousands of square feet of public space in the Project.

29.    The epoxy terrazzo installation was part of the scope of work assigned to Trataros under Contract No. 16.  Trataros subcontracted the epoxy terrazzo work to G.M. Crocetti, Inc. ("Crocetti").

30.    The epoxy terrazzo that Trataros and Crocetti installed in the Project has begun to deteriorate and is otherwise defective.  Among other things, the epoxy terrazzo began to crack and crumble at the perimeter of the poured area at the zinc divider strips over a substantial area of the epoxy terrazzo installation.  The epoxy terrazzo also began to delaminate and "blister" in increasingly larger areas.

31.    The failure of the epoxy terrazzo was caused by defective workmanship by Trataros and its subcontractors, who, among other things, failed to properly prepare and install the material according to either the contract documents or the manufacturer's prescribed procedures.

32.    The remediation of the defective epoxy terrazzo will cause major disruptions to CUNY's operation in the building and will cost an estimated six million dollars or more to accomplish.

33.    Trataros is contractually responsible for the defective epoxy terrazzo installation on the Project in addition to being responsible for all of the costs arising out of its satisfactory remediation.

## FIRST CAUSE OF ACTION
(Contractual Indemnification)

34.    DASNY repeats and realleges each and every allegation contained in paragraphs 1 through 33 above, as if the same were set forth at length herein.

35.    Contract No. 15 and Contract No. 16 require Trataros to indemnify and hold harmless DASNY and DASNY's clients against all claims by third persons on account of loss or damage of any kind whatsoever arising or alleged to arise out of or as a result of or in connection with Trataros' performance of the work. Contract No. 15 and Contract No. 16 also require Trataros to bear the risk for all losses sustained or alleged to have been sustained resulting from Trataros' negligence or alleged negligence.

36.    In the Third Count of the complaint filed in this action by Travelers, Travelers alleges that subcontractors of Trataros have suffered damages as a result

of delays and other matters allegedly beyond their control, and seeks damages from DASNY on behalf of such subcontractors.

37.    To the extent that DASNY is held liable to Travelers on account of any damages suffered by Trataros' subcontractors as a result of Trataros' negligence, Trataros is required to indemnify DASNY and hold DASNY harmless.

38.    To the extent that DASNY is liable or responsible for any claims for additional compensation by other Prime Trade Contactors as a result of Trataros' negligence, Trataros is required to indemnify DASNY and hold DASNY harmless.

39.    To the extent that DASNY is liable or responsible for any claims for additional compensation by any other third-party as a result of Trataros' negligence, Trataros is required to indemnify DASNY and hold DASNY harmless.

## SECOND CAUSE OF ACTION
(Common Law Indemnification)

40.    DASNY repeats and realleges each and every allegation contained in paragraphs 1 through 39 above, as if the same were set forth at length herein.

41.    In the event that Travelers recovers a judgment against DASNY in this action by reason of the allegations set forth in the Third Count of Travelers' complaint, such liability on the part of DASNY, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of Trataros, and will not have been caused by any culpable conduct on the part of DASNY.

42.    In the event that any other third-party recovers a judgment against DASNY or DASNY otherwise becomes obligated to pay claims to a third-party, such liability on the part of DASNY, by operation of law or otherwise, will have been

caused and brought about by the culpable conduct of Trataros, and will not have been caused by any culpable conduct on the part of DASNY.

43. Accordingly, Trataros as the actual tortfeasor is liable to DASNY for any amounts recoverable upon the claims made against DASNY in this action by Travelers on behalf of Trataros' subcontractors, or by any other third-party.

## THIRD CAUSE OF ACTION
(Contribution)

44. DASNY repeats and realleges each and every allegation contained in paragraphs 1 through 43 above, as if the same were set forth at length herein.

45. If the damages alleged by Travelers on behalf of Trataros' subcontractors in this action were caused by culpable conduct other than that of its principal Trataros, such culpable conduct was that of Trataros, by reason of its aforementioned negligence.

46. In the event that Travelers recovers a judgment against DASNY in this action by reason of the allegations set forth in the Third Count of Travelers' complaint, such liability on the part of DASNY, by operation of law or otherwise, will have been caused and brought about by the culpable conduct of Trataros, and will not have been caused by any culpable conduct on the part of DASNY.

47. Accordingly, pursuant to Article 14 of the New York Civil Practice Law and Rules, DASNY is entitled to recover damages in the amount of any judgment recovered by plaintiff Travelers against DASNY on the Third Count of Travelers' complaint as determined in accordance with their relative culpability, and DASNY

- 10 -

further demands judgment against Trataros in an amount equal to any excess paid by DASNY over and above DASNY's equitable share, with interest.

## FOURTH CAUSE OF ACTION
(Breach of Contract Against Trataros and Travelers –
Delays, Disruptions and Impacts )

48.    DASNY repeats and realleges each and every allegation contained in paragraphs 1 through 47 above, as if the same were set forth at length herein.

49.    DASNY entered into two valid, binding, and enforceable written prime contracts with Trataros for the construction of certain work on the Project under Contract No. 15 and Contract No. 16.

50.    Under Contract No. 15 and Contract No. 16, Trataros was obligated to perform all of the items in the contractual scope of work in accordance with the sequences, milestones and the time periods provided for in the schedules for the work.

51.    Trataros materially breached Contract No. 15 and Contract No. 16 by failing to perform its work in accordance with the sequences, milestones and time periods in the schedules for the work.

52.    Under the terms of the performance bond for Contract No. 15 and Contract No. 16 and the law of surety, Travelers is jointly and severally liable to DASNY for Trataros' breach of Contract.

53.    As a direct and proximate result of Trataros' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the

principal sum of Ten Million Dollars ($10,000,000) plus interest, costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
(Breach of Contract Against Trataros and Travelers – Construction Defects)

54.     DASNY repeats and realleges each and every allegation contained in paragraphs 1 through 53 above, as if the same were set forth at length herein.

55.     DASNY entered into two valid, binding, and enforceable written prime contracts with Trataros for the construction of certain work on the Project under Contract No. 15 and Contract No. 16.

56.     Under Contract No. 15 and Contract No. 16, Trataros was obligated to perform all of the items in the contractual scope of work in a workmanlike manner and in accordance with contractually mandated technical and quality requirements, applicable industry standards and governing building codes and regulations. Trataros also was obligated to complete its work in a manner that assured that the final work product was free of unacceptable defects.

57.     Trataros materially breached Contract No. 15 and Contract No. 16 by failing to perform all of the items in the contractual scope of work in a workmanlike manner or in accordance with contractually mandated technical and quality requirements, applicable industry standards and governing building codes and regulations.  Trataros also materially breached Contract No. 15 and Contract No. 16 by failing to complete its work in a manner that assured that the final work product was free of unacceptable defects.

58.    Trataros materially breached Contract No. 16 by installing epoxy terrazzo that is failing in significant quantities due to construction errors by Trataros and its subcontractors.

59.    Under the terms of the performance bond for Contract No. 15 and Contract No. 16 and the law of surety, Travelers is jointly and severally liable to DASNY for Trataros' breach of Contract.

60.    As a direct and proximate result of Trataros' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the principal sum of Six Million Dollars ($6,000,000) plus interest, costs and attorneys' fees.

### SIXTH CAUSE OF ACTION
(Breach of Contract by Travelers)

61.    DASNY repeats and realleges each and every allegation contained in paragraphs 1 through 60 above, as if the same were set forth at length herein.

62.    DASNY, as obligee, made due demand upon Travelers to perform its obligations under the performance and payment bonds for Contract No. 15 and Contract No. 16.

63.    DASNY's demand upon Travelers was wrongfully rejected by Travelers.

64.    Travelers' wrongful rejection of DASNY's demand constitutes a breach of its obligations under the performance and payment bonds for Contract No. 15 and Contract No. 16.

65.    As a direct and proximate result of Travelers' breach, DASNY has suffered damages in an amount to be determined at trial, but exceeding the principal sum of Six Million Dollars ($6,000,000) plus interest, costs and attorneys' fees.

**WHEREFORE**, third-party plaintiff the Dormitory Authority of the State of New York demands judgment:

I.    on its First Cause of Action against Trataros, awarding damages to DASNY in the amount of any judgment rendered against DASNY in favor of Travelers on behalf of Trataros' subcontractors and/or any liability DASNY incurs to any other third-party as a result of Trataros' negligence;

II.    on its Second Cause of Action against Trataros, awarding damages to DASNY in the amount of any judgment rendered against DASNY in favor of Travelers on behalf of Trataros' subcontractors and/or any liability DASNY incurs to any other third-party as a result of Trataros' negligence;

III.    on its Third Cause of Action against Trataros, awarding damages to DASNY in the amount of any judgment recovered by Travelers against DASNY on the Third Count of Travelers' complaint as determined in accordance with their relative culpability, and DASNY further demands judgment against Trataros in an amount equal to any excess paid by DASNY over and above DASNY's equitable share, with interest;

IV.     on its Fourth Cause of Action against Trataros and Travelers, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Ten Million Dollars ($10,000,000);

V.     on its Fifth Cause of Action against Trataros and Travelers, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Six Million Dollars ($6,000,000);

VI.     on its Sixth Cause of Action against Travelers, awarding damages to DASNY in an amount to be determined at trial, but exceeding the principal sum of Six Million Dollars ($6,000,000); and

VII.     awarding DASNY the costs and disbursements of this action, interest, attorneys' fees, and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       August 3, 2004

                           HOLLAND & KNIGHT LLP
                           *Attorneys for Defendant*
                           *Dormitory Authority of*
                           *the State of New York*

                    By: _Timothy B. Froessel_
                      Stephen B. Shapiro (SS 6400)
                      Timothy B. Froessel (TF 2848)
                      Francesca Morris (FM 1662)
                195 Broadway
                New York, New York  10007
                (212) 513-3200

# 2151361_v1

- 15 -

# CERTIFICATE OF SERVICE

TIMOTHY B. FROESSEL hereby declares the following to be true under penalty of perjury:

On August 3, 2004, I caused the foregoing Third-Party Complaint to be served upon:

David C. Dreifuss, Esq.
Dreifuss, Bonacci & Parker, LLP
26 Columbia Turnpike
North Entrance
Florham Park, NJ  07932

Gary L. Rubin, Esq.
Mazur Carp & Rubin, P.C.
2 Park Avenue
New York, NY  10016

Thomas V. Giordano, Esq.
Zetlin & DeChiara LLP
801 Second Avenue
New York, NY  10017

the addresses designated for service, via first-class mail, postage pre-paid, enclosed in a properly addressed wrapper.

Dated: New York, New York
        August 3, 2004

_____
TIMOTHY B. FROESSEL

# 2153451_v1

# EXHIBIT L

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>     vs<br><br>THE DORMITORY AUTHORITY OF THE STATE OF NEW YORK, TDX CONSTRUCTION CORP. and KOHN, PEDERSON, FOX & ASSOCIATES, P.C.,<br><br>              Defendants. | Civil Action No.: 04 Civ. 5101 (HB)<br>**ECF CASE**<br><br><br><br><br><br><br>**FOURTH-PARTY COMPLAINT**<br><br>**and**<br><br>**CROSS-CLAIM AGAINST KPF** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK,<br><br>           Third-Party Plaintiff,<br><br>     vs<br><br>TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>          Third-Party Defendants | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>          Fourth-Party Plaintiffs,<br><br>     vs<br><br>G.M. CROCETTI, INC., CAROLINA CASUALTY INSURANCE COMPANY, BARTEC INDUSTRIES INC., DAYTON SUPERIOR SPECIALTY CHEMICAL CORP., SPECIALTY CONSTRUCTION BRANDS, INC. t/a TEC, JOHN DOES 1-20, and XYZ CORPS. 1-20,<br><br>          Fourth-Party Defendants. | |

## FOURTH-PARTY COMPLAINT

Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company, by their attorneys, Dreifuss Bonacci & Parker, LLP, as and for their Fourth-Party Complaint against Fourth-Party Defendants, G.M. Crocetti, Inc., Carolina Casualty Insurance Company, Bartec Industries Inc., Dayton Superior Specialty Chemical Corp., Specialty Construction Brands, Inc. t/a TEC, John Does 1-20, and XYZ Corps. 1-20 alleges:

### *Parties, Jurisdiction, and Venue*

1.      Travelers Casualty and Surety Company (hereinafter "Travelers") is incorporated in the State of Connecticut and its principal place of business is situated at One Tower Square, 4PB, Hartford, Connecticut.

2.      Trataros Construction, Inc. (hereinafter "Trataros") was a corporation organized and existing under the laws of the State of New York. At all times relevant to this Fourth-Party Complaint, Trataros' principal place of business was located at 664 64th Street, Brooklyn, New York.

3.      Upon information and belief, G.M. Crocetti, Inc. (hereinafter "Crocetti") is incorporated in the State of New York with its principal place of business located at 3960 Merritt Avenue, Bronx, New York, 10466.

4.      Upon information and belief, Carolina Casualty Insurance Company (hereinafter "Carolina Casualty") is incorporated in the State of Florida with its principal place of business located at 4600 Touchton Road East, Building 100, Suite 400, Jacksonville, Florida, 32246.

5.      Upon information and belief, Bartec Industries Inc. (hereinafter "Bartec") is incorporated in the State of New Jersey with its principal place of business located at 453 Main Street, Little Falls, New Jersey, 07424.

6.      Upon information and belief, Dayton Superior Specialty Chemical Corp.

2

(hereinafter "Dayton") is incorporated in the State of Kansas with its principal place of business located at 7777 Washington Village Drive, Suite 130, Dayton, Ohio 45459 and was formerly known as Conspec Marketing & Manufacturing Co., Inc.

7.      Upon information and belief, Specialty Construction Brands, Inc. t/a TEC (hereinafter "TEC") is incorporated in the State of Minnesota with its principal place of business located at 601 Campus Drive, No. C-7, Arlington Heights, Illinois 60006.

8.      The Court has jurisdiction over this Fourth-Party action pursuant to 28 U.S.C. § 1367(a).

9.      This Court is the proper venue for this Fourth-Party action under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

*Procedural Background Antecedent to this Fourth-Party Complaint*

10.     On or about June 28, 2004, Plaintiff, Travelers Casualty & Surety Company as Administrator for Reliance Insurance Company brought an action in this Court against Defendants, The Dormitory Authority of the State of New York (hereinafter, "DASNY"), TDX Construction Corp. and Kohn, Pederson, Fox & Associates, P.C., which included claims for Trataros' entire contract balance and retainage, excessive costs caused by unreasonable delays and disruptions on the project, and professional negligence in connection with the preparation for and management of the project.

11.     On or about August 4, 2004, DASNY filed a Third-Party action against Travelers and Trataros seeking among other things, damages allegedly suffered as a result of delays or disruptions caused in whole or in part by Trataros and/or its subcontractors on the project, as well as for alleged construction defects surrounding the installation of epoxy terrazzo.

12.     DASNY alleges in this litigation that "[t]he work performed by Trataros and its

3

subcontractors failed to satisfy the technical and quality requirements in Contract No. 15 and Contract No. 16 or accepted industry practices".

13.     DASNY further alleges that "[a]s a result of Trataros and subcontractors' failure to satisfy the technical and quality control requirements in Contract No. 15 and Contract No. 16 and accepted industry standards, significant portions of Trataros' work were defective, substandard, or otherwise unacceptable.  This nonconforming work had to be repaired or replaced at significant expense to DASNY".

14.     Specifically, DASNY singles out the epoxy terrazzo as having "begun to deteriorate and is otherwise defective".

15.     DASNY further alleges that "[t]he failure of the epoxy terrazzo was caused by defective workmanship by Trataros and its subcontractors, who, among other things, failed to properly prepare and install the material according to either the contract documents or the manufacturer's prescribed procedures".

16.     As a result, DASNY is seeking between $6,000,000.00 and $10,000,000.00 in damages against Travelers and Trataros.

### *Facts Common to All Counts of this Fourth-Party Complaint*

17.     On or about September 18, 1998, Crocetti entered into a subcontract with Trataros in the amount of $3,008,000.00 for that portion of Trataros' Contract No. 16 relating to, among other things, interior stonework, precast terrazzo, and epoxy terrazzo.

18.     Carolina Casualty issued a Subcontract Performance Bond and Subcontract Labor Bond Material Payment Bond (No.: 075641) on Crocetti's behalf and in favor of Trataros relating to the subcontract in the amount of $3,008,000.00.

19.     Crocetti delivered the Carolina Casualty bonds to Trataros as a condition to entering into the subcontract.

4

20.    On or about May 12, 2000, Bartec entered into a subcontract with Trataros for that portion of Trataros' contract with DASNY relating to floor leveling including the furnishing and installation of underlayment material upon which epoxy terrazzo would be installed.

21.    Upon information and belief, Bartec used an underlayment material known as "Conflow", manufactured and supplied to Bartec by Dayton.

22.    Upon information and belief, "Conflow" was used by Bartec in preparing the areas designated to receive epoxy terrazzo flooring.

23.    Upon information and belief, Crocetti installed an epoxy terrazzo system manufactured by TEC consisting of, among other things, an epoxy membrane called "FlexGuard" and a flooring material called "Tuff-Lite 5".

<div align="center">

*First Count*
*(Breach of Subcontracts—Indemnification & Exoneration against Crocetti and Bartec)*

</div>

24.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though set forth at length herein.

25.    Crocetti installed the epoxy terrazzo flooring system.

26.    Bartec prepared the concrete and underlayment upon which the epoxy terrazzo flooring would rest.

27.    If the trier of fact determines that DASNY's allegations (set forth more fully above concerning allegedly substandard work by Trataros' subcontractors, particularly work relating to the epoxy terrazzo) have merit, and Travelers and/or Trataros suffer a loss thereby, then Crocetti and/or Bartec breached their respective subcontracts to Trataros.

28.    In the event that DASNY succeeds in prosecuting its claim against Travelers and/or Trataros for the alleged defective workmanship involving the epoxy terrazzo and/or any other defective workmanship complained of by DASNY in this litigation, then Crocetti and/or

<div align="center">5</div>

Bartec shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent that Crocetti and/or Bartec proximately caused the loss to Travelers and/or Trataros.

29.     The loss that Travelers and/or Trataros may suffer and for which Crocetti and/or Bartec would be liable could take the form of, but would not be limited to, the following:  a judgment against Travelers and/or Trataros in favor of DASNY, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of Crocetti's and/or Bartec's failure to perform properly under their respective subcontracts.

30.     In the event that Crocetti and/or Bartec are liable to Travelers and/or Trataros, then Travelers and/or Trataros are also entitled to exoneration, in which case Crocetti and/or Bartec would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY to the extent that the liability to DASNY was proximately caused by Crocetti and/or Bartec.

31.     Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against Crocetti and/or Bartec by way of equitable subrogation and/or legal assignment from Trataros.

32.     Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

### *Second Count*
*(Performance Bond Claim against Crocetti and Carolina Casualty by Trataros alone)*

33.     Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

34.     One of the Carolina Casualty bonds, called the Subcontract Performance Bond Form A, entitles Trataros to make a claim against the bond if Crocetti fails to promptly and faithfully perform its subcontract with Trataros.

35.     If the trier of fact determines that DASNY's allegations (set forth more fully above concerning substandard work by Trataros' subcontractors, particularly work relating to the epoxy terrazzo) have merit, and Travelers and/or Trataros suffer a loss thereby, then Crocetti failed to promptly and faithfully perform its subcontract with Trataros.

36.     In that event, Trataros will have a valid claim against Crocetti and Carolina Casualty jointly and severally under the Subcontract Performance Bond for any damages to Trataros proximately caused by Crocetti's failure to faithfully perform its subcontract with Trataros.

<div align="center">

### Third Count
#### (Performance Bond Claim against Crocetti and Carolina Casualty
by Travelers)

</div>

37.     Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

38.     Travelers, as surety for Trataros, has and/or may suffer losses in connection with this litigation that were proximately caused by Crocetti and/or Bartec.

39.     Travelers is equitably subrogated to the rights of Trataros, and is entitled to exercise those rights that Trataros had or may have had to pursue Crocetti and/or Carolina Casualty under the Subcontract Performance Bond.

40.     Furthermore, Travelers has or will receive an assignment from Trataros that will give Travelers legal rights to maintain an action against Crocetti and/or Carolina Casualty either in Trataros' name or in Travelers' own name.

41.     On the basis of equitable subrogation, Travelers has the equitable right to

7

maintain an action against Crocetti and Carolina Casualty under the Subcontract Performance Bond.    Travelers currently has, or presently will have, legal rights against Crocetti and/or Carolina Casualty as a result of the assignment from Trataros.

42.    If the trier of fact determines that DASNY's allegations (set forth more fully above concerning substandard work by Trataros' subcontractors, particularly work relating to the epoxy terrazzo) have merit, and Travelers suffers a loss thereby, then Crocetti failed to promptly and faithfully perform its subcontract with Trataros.

43.    In that event, Travelers will have a valid claim against Crocetti and Carolina Casualty jointly and severally under the Subcontract Performance Bond for any loss suffered by Travelers proximately caused by Crocetti's failure to faithfully perform its subcontract with Trataros.

<div align="center">

*Fourth Count*
*(Professional Negligence—Indemnification, Contribution, & Exoneration*
*against Crocetti and Bartec)*

</div>

44.    Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

45.    In the alternative to a breach of contract, if the trier of fact determines that DASNY's allegations (set forth more fully above concerning substandard work by Trataros' subcontractors) have merit, and Travelers and/or Trataros suffer a loss thereby, then it will have occurred as a result of the acts or omissions of Crocetti including but not limited to the following:    (a) negligently choosing inappropriate materials for use on the project; (b) negligently failing to inspect the materials used on the project; and/or (c) negligently applying/installing the materials used on the project.

46.    If the trier of fact determines that DASNY's allegations (set forth more fully above concerning substandard work by Trataros' subcontractors) have merit, and Travelers

<div align="center">8</div>

and/or Trataros suffer a loss thereby, then it will have occurred as a result of the acts or omissions of Bartec including but not limited to the following:   (a) negligently choosing inappropriate materials for use on the project; (b) negligently failing to inspect the materials used on the project; and (c) negligently applying/installing the materials used on the project.

47.     In the event that DASNY succeeds in prosecuting its claims against Travelers and/or Trataros for the alleged defective workmanship involving the epoxy terrazzo and/or any other defective workmanship complained of by DASNY in this litigation, then Crocetti and/or Bartec shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent that Crocetti and/or Bartec proximately caused the loss to Travelers and/or Trataros.

48.     The loss that Travelers and/or Trataros may suffer and for which Crocetti and/or Bartec could be liable could take the form of, but would not be limited to, the following:   a judgment against Travelers and/or Trataros in favor of DASNY, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of Crocetti's and/or Bartec's negligence.

49.     In the event that Crocetti and/or Bartec are liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case Crocetti and/or Bartec would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY to the extent that the liability to DASNY was proximately caused by Crocetti and/or Bartec.

50.     Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against Crocetti and/or Bartec by way of equitable subrogation and/or legal assignment from Trataros.

51.     Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

*Fifth Count*
*(Negligence, Breach of Contract, Breach of Warranty - Indemnification, Contribution &*
*Exoneration against Dayton and TEC)*

52.     Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

53.     If the trier of fact determines that DASNY's allegations (set forth more fully above concerning substandard work by Trataros' subcontractors) have merit, and Travelers and/or Trataros suffer a loss thereby, then it will have occurred as a result of the acts or omissions of Dayton including but not limited to the following:  (a) negligently manufacturing and supplying materials used in the installation of epoxy terrazzo on the project such that the materials were defective and/or not proper for their intended use which was known or should have been known to Dayton; (b) negligently failing to inspect the materials for defects prior to their shipment for use on the project; and/or (c) breaching its contract with Bartec and/or any applicable warranties, express or implied, to supply a material that was suitable for use on this project.

54.     If the trier of fact determines that DASNY's allegations (set forth more fully above concerning substandard work by Trataros' subcontractors) have merit, and Travelers and/or Trataros suffer a loss thereby, then it will have occurred as a result of the acts or omissions of TEC including but not limited to the following:  (a) negligently manufacturing the epoxy terrazzo system for incorporation into the project given that the system was defective and/or not proper for its intended use which was known or should have been known to TEC; (b) negligently failing to inspect the epoxy terrazzo system for defects prior to their shipment for use on the project; and/or (c) breaching any applicable warranties, express or implied, to supply a

10

material that was suitable for its intended use or suitable for use on this project.

55.     In the event that DASNY succeeds in prosecuting its claims against Travelers and/or Trataros for the alleged defective workmanship involving the epoxy terrazzo and/or any other defective workmanship complained of by DASNY in this litigation, then Dayton and/or TEC shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result, to the extent that Dayton and/or TEC proximately caused the loss to Travelers and/or Trataros.

56.     The loss that Travelers and/or Trataros may suffer and for which Dayton and/or TEC would be liable could take the form of, but would not be limited to, the following:  a judgment against Travelers and/or Trataros in favor of DASNY, a set-off in favor of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of Dayton and/or TEC's breach or negligence.

57.     In the event that Dayton and/or TEC are liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case Dayton and/or TEC would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY to the extent that the liability to DASNY was proximately caused by Dayton and/or TEC.

58.     Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against Dayton and/or TEC by way of equitable subrogation and/or legal assignment from Trataros.

59.     Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

*Sixth Count*
*(Breach of Subcontracts, Professional Negligence, and/or Simple Negligence—Indemnification,*

11

*Contribution & Exoneration against John Does 1-20 and XYZ Corps. 1-20)*

60.     Travelers and Trataros repeat and reallege each and every allegation set forth above in this Fourth-Party Complaint as though same were set forth at length herein.

61.     John Does 1-20 and XYZ Corps. 1-20 were subcontractors to Trataros, suppliers to Trataros, subcontractors to subcontractors of Trataros, suppliers to subcontractors of Trataros, or some other person or entity who were at the project at issue in this litigation.

62.     Given that DASNY did not identify all of the subcontractors of Trataros it alleges performed work that did not conform to the project contracts, specifications, plans, construction industry standards of good workmanship, and/or government codes/regulations, Travelers and Trataros are not able to ascertain at this time the identity of John Does 1-20 and XYZ Corps. 1-20.

63.     If the trier of fact determines that DASNY's allegations (set forth more fully above concerning substandard work by Trataros' subcontractors) have merit, and Travelers and/or Trataros suffer a loss thereby, then John Does 1-20 and/or XYZ Corps. 1-20 breached their respective subcontracts or other agreements that they entered into in connection with the project at issue in this litigation.

64.     In the event that DASNY succeeds in prosecuting its claim against Travelers and/or Trataros for the alleged defective workmanship and/or materials, John Does 1-20 and/or XYZ Corps. 1-20 shall be liable to Travelers and/or Trataros for any loss that Travelers and/or Trataros may suffer as a result to the extent that John Does 1-20 and/or XYZ Corps. 1-20 proximately caused the loss to Travelers and/or Trataros.

65.     The loss that Travelers and/or Trataros may suffer and for which John Does 1-20 and/or XYZ Corps. 1-20 would be liable could take the form of, but would not be limited to, the following:  a judgment against Travelers and/or Trataros in favor of DASNY, a set-off in favor

of DASNY with respect to money owed to Travelers and/or Trataros, or some diminution in the value of Travelers' and/or Trataros' claims against any party to this litigation or defenses thereto as a result of John Does 1-20's and/or XYZ Corps. 1-20's negligence or breach.

66.     In the event that John Does 1-20 and/or XYZ Corps. 1-20 are liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case John Does 1-20 and/or XYZ Corps. 1-20 would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY to the extent that the liability to DASNY was proximately caused by John Does 1-20 and/or XYZ Corps. 1-20.

67.     Travelers, as surety for Trataros, has the right to maintain the claims set forth in this Count against John Does 1-20 and/or XYZ Corps. 1-20 by way of equitable subrogation and/or legal assignment from Trataros.

68.     Travelers and Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE,** Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against the Fourth-Party Defendants, G.M. Crocetti, Inc., Carolina Casualty Insurance Company, Bartec Industries Inc., Dayton Superior Specialty Chemical Corp., Specialty Construction Brands, Inc. t/a TEC, John Does 1-20, and XYZ Corps. 1-20 with the following relief:

a.     On the First Count, against Crocetti and Bartec for breach of contract, complete indemnification, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

b.     On the Second Count, against Crocetti and Carolina Casualty under the

13

Subcontract Performance Bond for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

       c.      On the Third Count, against Crocetti and Carolina Casualty under the Subcontract Performance Bond for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

       d.      On the Fourth Count, against Crocetti and Bartec on the grounds of professional negligence, or in the alternative simple negligence, for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

       e.      On the Fifth Count, against Dayton and TEC for complete indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable;

       f.      On the Sixth Count, against John Does 1-20 and XYZ Corps. 1-20 for breach of contract, professional negligence and/or simple negligence, indemnification, contribution, and exoneration for all damages, including consequential damages, in an amount to be determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

14

## CROSSCLAIM AGAINST DEFENDANT KPF

Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company, by its attorneys, Dreifuss Bonacci & Parker, LLP, as and for their Crossclaim against Defendant, Kohn Pederson Fox Associates, P.C. allege:

### *Parties, Jurisdiction, and Venue*

1.      Travelers Casualty and Surety Company (hereinafter "Travelers") is incorporated in the State of Connecticut and its principal place of business is situated at One Tower Square, 4PB, Hartford Connecticut.

2.      Trataros Construction, Inc. (hereinafter "Trataros") was at all relevant times a corporation organized and existing under the laws of the State of New York with its principal place of business located at 664 64th Street, Brooklyn, New York.

3.      Upon information and belief, Defendant Kohn Pederson Fox Associates, P.C. (hereinafter "KPF") is a professional corporation organized and existing under the laws of the State of New York, with its principal place of business located at 111 East 57th Street, New York, New York.

4.      The Court has jurisdiction over this Fourth-Party action pursuant to 28 U.S.C. § 1367(a).

5.      This Court is the proper venue for this Fourth-Party action under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### *First Count*
*(Indemnification and Exoneration)*

15

6.      Travelers and Trataros repeat and reallege each and every allegation set forth above in this Crossclaim, as well as Paragraphs 1 through 16 of the Fourth-Party Complaint, as though same were set forth at length herein.

7.      On or about August 2, 2004, DASNY answered the Complaint and filed a crossclaim against KPF alleging breach of contract and professional negligence in connection with KPF's work as the project architect.

8.      If the trier of fact determines that DASNY's allegations against KPF have merit, and Travelers suffers a loss thereby, then KPF shall be liable to Travelers and/or Trataros to the extent that Travelers' and/or Trataros' loss was proximately caused by KPF.

9.      Travelers is or may be equitably subrogated to the rights of DASNY and/or Trataros such that Travelers would have the right to maintain this crossclaim against KPF in its own name.

10.     In the event that KPF is liable to Travelers and/or Trataros, then Travelers and/or Trataros are entitled to exoneration, in which case KPF would be required to relieve Travelers and/or Trataros from any burden of liability to DASNY to the extent that the liability to DASNY was proximately caused by KPF.

11.     Travelers and/or Trataros are entitled to assert the claims set forth in this Count even if those claims are contingent on certain events and/or are not ripe.

**WHEREFORE**, Fourth-Party Plaintiffs/Crossclaimants, Trataros Construction, Inc. and Travelers Casualty and Surety Company demand judgment against the Crossclaim Defendant, Kohn Pederson Fox Associates, P.C. with the following relief:

a.      For breach of contract and/or professional negligence, complete indemnification, contribution, and exoneration for all damages, including consequential, in an amount to be

determined together with attorneys fees, costs, and any other relief that the Court deems just and equitable.

Respectfully submitted,

**DREIFUSS BONACCI & PARKER, LLP**

By: _____ /S/ _____

Guido Weber (GW:1692)
*Attorneys for Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company*
One Penn Plaza, 38th Floor
New York, New York  10119
*and*
26 Columbia Turnpike
North Entrance
Florham Park, New Jersey  07932
973-514-1414
***Please respond to New Jersey office***

Dated: November 30, 2004

TO:    Thomas V. Giordano, Esq.
Zetlin & DeChiara, LLP
801 Second Avenue
New York, New York 10017
*Attorneys for Defendant,*
  *Kohn, Pederson, Fox & Associates, P.C.*

Stephen B. Shapiro, Esq.
Holland & Knight, LLP
195 Broadway
New York, New York 10007
*Attorneys for Defendant,*
  *Dormitory Authority of the State of New York*

Gary L. Rubin, Esq.
Mazur, Carp & Rubin, P.C.
1250 Broadway, 38th Floor
New York, New York 10001
*Attorneys for Defendant,*
  *TDX Construction Corp.*

17

# EXHIBIT M

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

TRAVELERS CASUALTY AND SURETY
COMPANY as Administrator for RELIANCE
INSURANCE COMPANY,

                Plaintiffs,

            - vs -

THE DORMITORY AUTHORITY OF THE STATE
OF NEW YORK, TDX CONSTRUCTION CORP. and
KOHN, PEDERSON, FOX & ASSOCIATES, P.C.

                Defendants.
------------------------------------------------------------------ X
DORMITORY AUTHORITY OF THE STATE OF
NEW YORK,

            Third-Party Plaintiff,

            - vs -

TRATAROS CONSTRUCTION, INC. and
TRAVELERS CASUALTY AND SURETY
COMPANY,

            Third-Party Defendants

------------------------------------------------------------------ X
TRATAROS CONSTRUCTION, INC. and
TRAVELERS CASUALTY AND SURETY
COMPANY,

            Fourth-Party Plaintiffs,

            - vs -

G.M. CROCETTI, INC., CAROLINA CASUALTY
INSURANCE COMPANY, BARTEC INDUSTRIES
INC., DAYTON SUPERIOR SPECIALTY
CHEMICAL CORP., SPECIALTY CONSTRUCTION
BRANDS, INC. t/a TEC, JOHN DOES 1-20 and XYZ
CORPS. 1-20,

            Fourth-Party Defendants.
------------------------------------------------------------------ X

Civ. Action No.:
04 Civ. 5101 (HB)

G.M. CROCETTI, INC.
AND CAROLINA
CASUALTY
INSURANCE
COMPANY'S
ANSWER,
AFFIRMATIVE
DEFENSES,
COUNTERCLAIMS AND
CROSS-CLAIMS TO
FOURTH-PARTY
COMPLAINT OF
TRATAROS
CONSTRUCTION, INC.
AND TRAVELERS
CASUALTY AND
SURETY COMPANY

Fourth-Party Defendants G.M. CROCETTI, INC. ("Crocetti") and

CAROLINA CASUALTY INSURANCE COMPANY ("Carolina"), by their attorneys,

Torre, Lentz, Gamell, Gary & Rittmaster, LLP, as and for their answer to the fourth-party

complaint of third-party defendants/fourth-party plaintiffs TRATAROS

CONSTRUCTION, INC. ("Trataros") and TRAVELERS CASUALTY AND SURETY

COMPANY ("Travelers"), state as follows:

     1.    Deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraphs "1" and "2" of the fourth-party complaint.

     2.    Admit the allegations contained in paragraphs "3" and "4" of the

fourth-party complaint.

     3.    Deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraphs "5", "6" and "7" of the fourth-party

complaint.

     4.    The allegations contained in paragraph "8" of the fourth-party

complaint state a legal conclusion to which no response is required.  To the extent that a

response is required, Crocetti and Carolina deny knowledge or information sufficient to

form a belief as to the truth of said allegations.

     5.    The allegations contained in paragraph "9" of the fourth-party

complaint state a legal conclusion to which no response is required.  To the extent that a

93538v2

2

response is required, the allegations contained in paragraph "9" are denied as stated. Crocetti and Carolina admit only that certain events or omissions that are alleged to give rise to the claims asserted in the fourth-party complaint occurred within the County of New York. Crocetti and Carolina deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph "9".

6.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs "10" and "11" of the fourth-party complaint.

7.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the fourth-party complaint, except admit that DASNY made such an allegation in paragraph "25" of its third-party complaint.

8.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the fourth-party complaint, except admit that DASNY made such an allegation in paragraph "26" of its third-party complaint.

9.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the fourth-party complaint, except admit that DASNY refers to epoxy terrazzo in, among others, paragraphs "29", "30", "31", "32" and "33" of its third-party complaint.

10.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the fourth-party complaint, except admit that DASNY made such an allegation in paragraph "31" of its third-party complaint.

11.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the fourth-party complaint, except admit that DASNY has demanded, in its third-party complaint, damages against Travelers and Trataros in an amount exceeding $6,000,000 in its Fifth and Sixth Causes of Action and in an amount exceeding $10,000,000 in its Fourth Cause of Action.

12.     Deny the allegations contained in paragraph "17" of the fourth-party complaint, except admit that Crocetti entered into a subcontract with Trataros on or about September 28, 1998 and beg leave to refer to the original thereof at the trial of this action for its true terms and conditions.

13.     Admit the allegations contained in paragraphs "18" and "19" of the fourth-party complaint, and beg leave to refer to the original thereof at the trial of this action for its true terms and conditions.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs "20" of the fourth-party complaint.

15.     Crocetti and Carolina deny knowledge or information sufficient to form a belief as to the truth of said allegations contained in paragraphs "21" and "22" of

the fourth-party complaint.

16.    Crocetti admits the allegations contained in paragraph "23" and states affirmatively that said materials were submitted by Crocetti and approved by other parties in this action for use at the Baruch College Project.  Carolina denies knowledge or information sufficient to form a belief as to the truth of said allegations.

17.    Crocetti and Carolina each repeat and reallege their respective responses to paragraphs "1" through and including "23" of the fourth-party complaint as repeated and realleged in paragraph "24" of the fourth-party complaint.

18.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "25" of the fourth-party complaint, except that Crocetti admits it installed certain epoxy terrazzo flooring at portions of the Baruch College Project.

19.    Crocetti denies each and every allegation set forth in paragraph "26" of the fourth-party complaint, except admits, upon information and belief, that Bartec prepared certain of the concrete and underlayment upon which the epoxy terrazzo flooring would rest.  Carolina denies knowledge or information sufficient to form a belief as to the truth of said allegations.

20.    The allegations contained in paragraphs "27", "28", "29", "30", "31" and "32" of the fourth-party complaint state legal conclusions to which no response is required.  To the extent that said paragraphs contain factual allegations to which a

response is required, the allegations contained in said paragraphs are denied by both
Crocetti and Carolina.

21.    Crocetti and Carolina each repeat and reallege their respective
responses to paragraphs "1" through and including "32" of the fourth-party complaint as
repeated and realleged in paragraph "33" of the fourth-party complaint.

22.    Deny the allegations contained in paragraph "34" of the fourth-party
complaint, except admit that Carolina furnished a "Subcontract Performance Bond Form
A" and beg leave to refer to the original thereof at the trial of this action for its true terms
and conditions.

23.    The allegations contained in paragraphs "35" and "36" of the fourth-
party complaint state legal conclusions to which no response is required.  To the extent
that said paragraphs contain factual allegations to which a response is required, the
allegations contained in said paragraphs are denied by both Crocetti and Carolina.

24.    Crocetti and Carolina each repeat and reallege their respective
responses to paragraphs "1" through and including "36" of the fourth-party complaint as
repeated and realleged in paragraph "37" of the fourth-party complaint.

25.    Deny each and every allegation contained in paragraph "38" as they
relate to Crocetti and deny knowledge or information sufficient to form a belief as to the
truth of said allegations as they relate to Bartec.

26.    The allegations contained in paragraph "39" of the fourth-party complaint state legal conclusions to which no response is required.  To the extent that said paragraphs contain factual allegations to which a response is required, Crocetti and Carolina deny knowledge or information sufficient to form a belief as to the truth of said allegations.

27.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "40" of the fourth-party complaint.

28.    The allegations contained in paragraphs "41", "42" and "43" of the fourth-party complaint state legal conclusions to which no response is required.  To the extent that said paragraphs contain factual allegations to which a response is required, the allegations contained in said paragraphs are denied by both Crocetti and Carolina.

29.    Crocetti and Carolina each repeat and reallege their respective responses to paragraphs "1" through and including "43" of the fourth-party complaint as repeated and realleged in paragraph "44" of the fourth-party complaint.

30.    The allegations contained in paragraph "45" of the fourth-party complaint state legal conclusions to which no response is required.  To the extent that said paragraph contains factual allegations to which a response is required, the allegations contained in said paragraph are denied by both Crocetti and Carolina.

31.    The allegations contained in paragraphs "46", "47", "48", "49", "50" and "51" of the fourth-party complaint state legal conclusions to which no response is

required. To the extent that said paragraphs contains factual allegations to which a response is required, Crocetti and Carolina deny the allegations contained in said paragraphs to the extent they relate to Crocetti and deny knowledge or information sufficient to form a belief as to the truth of said allegations to the extent they relate to Bartec.

32. Crocetti and Carolina each repeat and reallege their respective responses to paragraphs "1" through and including "51" of the fourth-party complaint as repeated and realleged in paragraph "52" of the fourth-party complaint.

33. The allegations contained in paragraphs "53", "54", "55", "56", "57", "58" and "59" of the fourth-party complaint state legal conclusions to which no response is required and said allegations are not addressed to either Crocetti or Carolina, so that no response is required. To the extent that said paragraphs contains factual allegations to which a response is required, Crocetti and Carolina deny the allegations contained in said paragraphs to the extent they relate to Crocetti and deny knowledge or information sufficient to form a belief as to the truth of said allegations to the extent they relate to any other party.

34. Crocetti and Carolina each repeat and reallege their respective responses to paragraphs "1" through and including "59" of the fourth-party complaint as repeated and realleged in paragraph "60" of the fourth-party complaint.

35. Deny knowledge or information sufficient to form a belief as to the

93538v2                                     8

truth of the allegations contained in paragraphs "61" and "62" of the fourth-party complaint.

36.     The allegations contained in paragraphs "63", "64", "65", "66", "67", and "68" of the fourth-party complaint state legal conclusions to which no response is required and said allegations are not addressed to either Crocetti or Carolina, so that no response is required. To the extent that said paragraphs contains factual allegations to which a response is required, Crocetti and Carolina deny the allegations contained in said paragraphs to the extent they relate to Crocetti and deny knowledge or information sufficient to form a belief as to the truth of said allegations to the extent they relate to any other party.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

37.     The fourth-party complaint fails to state a cause of action against Crocetti and Carolina.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

38.     The claims asserted by fourth-party plaintiffs Trataros and Travelers against fourth-party defendants Crocetti and Carolina are barred by the doctrine of laches.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

39.     The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the applicable Statute of Limitations.

93538v2

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

40.    The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by limitations contained in the terms of the bond issued by Carolina on behalf of Crocetti as well as by applicable surety law.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

41.    The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the doctrine of estoppel.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

42.    The claims asserted by fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina in the fourth-party complaint are off-set by said fourth-party defendants' respective rights of set off.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

43.    Any damages allegedly sustained by fourth-party plaintiffs were caused in whole or in part by the culpable conduct of Trataros and/or Travelers, the result of which is that the claims of Trataros and Travelers are barred or diminished in the proportion that such conduct caused their alleged damages.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

44.    The claims of the fourth-party plaintiffs are barred by the failure to

93538v2

10

abide by the terms and conditions of the applicable performance bond by virtue of the wording of the bond, including but not limited to notice provisions.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

45.     The claims of the fourth-party plaintiffs are barred by the absence of conditions precedent to such claims, including but not limited to the absence of a default by Crocetti under the subcontract, the absence of a declaration by Trataros of a default by Crocetti under the subcontract, and the absence of the performance by Trataros of its obligations under the subcontract, including but not limited to its payment obligations.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

46.     The liability, if any, of the fourth-party defendants Crocetti and Carolina is discharged by the doctrine of "cardinal change".

### AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

47.     The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the failure by third-party plaintiffs to abide by the terms and conditions of the applicable subcontract.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

48.     Jurisdiction in this Court is inappropriate due to the existence of a

93538v2                           11

prior pending action in the Supreme Court of the State of New York, County of New York.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

49.     If fourth-party plaintiffs sustained the damages set forth in the fourth-party complaint, then such damages were sustained, in whole or part, by the conduct of person(s) and/or entity(ies) other than the fourth-party defendants Crocetti and Carolina for whose conduct the said fourth-party defendants were not responsible.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

50.     Fourth-party defendants Crocetti and Carolina reserve the right to rely upon any and all additional defenses available to all co-defendants, third-party defendants, fourth-party defendants and other parties to the above-captioned litigation.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

51.     Fourth-party defendants Crocetti and Carolina reserve the right to rely upon any and all additional defenses which are disclosed during discovery in the within litigation.

## AS AND FOR A  SIXTEENTH AFFIRMATIVE DEFENSE

52.     The fourth-party plaintiffs are not proper claimants under the Crocetti/Carolina bond.

93538v2

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

53.    The fourth-party plaintiffs are not proper beneficiaries under the Crocetti/Carolina bond.

## AS AND FOR AN EIGHTEENTH AFFIRMATIVE DEFENSE

54.    Trataros mismanaged and/or was negligent in the coordination of the work at the Project.

## AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

55.    Trataros authorized and directed Crocetti to proceed with Crocetti's subcontract work at the Project.

## AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

56.    Trataros, acting through others such as, but not necessarily limited to, TDX, authorized and directed Crocetti to proceed with its subcontract work at the Project.

## AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE

57.    Trataros and/or others delayed Crocetti at the Project and then caused Crocetti to accelerate its work knowing that problems in connection therewith could arise.

### AS AND FOR A TWENTY-SECOND AFFIRMATIVE DEFENSE

58.    The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the doctrine of unclean hands.

### AS AND FOR A TWENTY-THIRD AFFIRMATIVE DEFENSE

59.    The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the doctrine of avoidable consequence.

### AS AND FOR A TWENTY-FOURTH AFFIRMATIVE DEFENSE

60.    The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the doctrine of mitigation of damages.

### AS AND FOR A TWENTY-FIFTH AFFIRMATIVE DEFENSE

61.    The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the doctrine of election of remedies.

### AS AND FOR A TWENTY-SIXTH AFFIRMATIVE DEFENSE

62.    The claims of the fourth-party plaintiffs against fourth-party defendants Crocetti and Carolina are barred by the doctrine of public policy.

### AS AND FOR A TWENTY-SEVENTH AFFIRMATIVE DEFENSE

63.    The claims of the fourth-party plaintiffs against fourth-party

93538v2

14

defendants Crocetti and Carolina are barred by the doctrine of waiver.

<div align="center">

AS AND FOR A FIRST COUNTERCLAIM BY
FOURTH-PARTY DEFENDANT G.M. CROCETTI, INC. AGAINST
<u>FOURTH-PARTY PLAINTIFF TRATAROS CONSTRUCTION, INC.</u>

</div>

64.    G. M. Crocetti, Inc. ("Crocetti") was and still is a domestic

corporation authorized and actually doing business in the City and State of New York

with its principal office for the transaction of business located at 3960 Merritt Avenue,

Bronx, New York 10466.

65.    That defendant Trataros Construction, Inc. ("Trataros") was and still

is a foreign or domestic corporation actually doing business in the City and State of New

York with its principal office for the transaction of business located at 664 – 64th Street,

Brooklyn, New York 11220.

66.    That on or about August 27, 1998, Trataros as the general contractor

entered into a contract with the Dormitory Authority of the State of New York

("DASNY") for certain construction work at Baruch College, 55 Lexington Avenue, New

York, New York for Site B, Package No. 2 – General Construction Work, Contract No.

16 (Contract No. DA. No. 6500-1802-2178. JDE No. 61505) hereinafter referred to as the

"Project" and/or the "Prime Contract".

67.    Thereafter, Trataros, on or about September 18, 1998 entered into a

subcontract agreement with Crocetti to perform certain base subcontract for furnishing

and installing pre-cast terrazzo, epoxy terrazzo, interior stonework and related work at

93538v2                                                   15

and for the improvement of the Project.

68.     That the agreed upon price and fair and reasonable value of the base contract work referred to in paragraph "67" hereof was the sum of $3,008,000.00.

69.     During the performance of Crocetti's subcontract work at the Project, at the special instance and request of Trataros and/or others acting on behalf of Trataros, Crocetti performed certain extra and/or additional change order work at the Project.

70.     That the fair and reasonable value of the extra and/or additional work referred to in paragraph "69" hereof was the agreed upon sum and fair and reasonable value of $990,352.51.

71.     That on or about and between September 30, 2000 and February 12, 2003, Crocetti performed all of its labor and furnished all of the materials it was required to perform and/or furnish in connection with the Project.  Crocetti was substantially completed with its subcontract work on or about October 31, 2002.

72.     Crocetti complied with all of the terms and conditions of the subcontract by and between Crocetti and Trataros.

73.     That as a result of the foregoing, there resulted in an adjusted contract price of $3,998,352.51.

74.     As a result of the foregoing, there became due and owing to Crocetti

93538v2

16

from Trataros the sum of $3,998,352.51.

75.     That no part of said sum of $3,998,352.51 has been paid or credit

deductions given, despite demand having been made therefore, except the sum of

$3,097,260.86, leaving a balance due and owing to Crocetti from Trataros in the sum of

$901,091.65, plus interest thereon from October 31, 2002.

76.     As a result of the foregoing, Crocetti has been damaged by Trataros

for which Trataros is liable therefore, for the sum of $901,091.65, plus interest thereon

from October 31, 2002.

<div align="center">

AS AND FOR A SECOND SEPARATE AND DISTINCT
COUNTERCLAIM BY FOURTH-PARTY DEFENDANT
G.M. CROCETTI, INC. AGAINST FOURTH-PARTY PLAINTIFF
TRATAROS CONSTRUCTION, INC. AND A FIRST
COUNTERCLAIM AGAINST FOURTH-PARTY PLAINTIFF
TRAVELERS CASUALTY AND SURETY COMPANY

</div>

77.     Fourth-Party Defendant Crocetti repeats and realleges each and

every allegation set forth in paragraphs "64" through "76" hereof with the same force and

effect as if set forth at length herein.

78.     That fourth-party plaintiff Travelers Casualty and Surety Company

("Travelers") was and still is a domestic or foreign corporation actually doing business as

a licensed Surety Company in the State of New York, with an office for the transaction of

business located at One Tower Square – 14C, Hartford, Connecticut 06183.

79.     That fourth-party plaintiff Travelers has assumed, taken on, adopted

93538v2                                17

or otherwise become responsible for certain obligations of Reliance Insurance Company

("Reliance"), a foreign or domestic corporation which actually conducted business as a

licensed surety company with an office for the transaction of business located at 6

Campus Drive, Parsippany, New Jersey 07054.

80.     That Trataros was required by DASNY and did execute and deliver

with a licensed Surety thereon a labor and material payment bond in connection with

Trataros' general contract with DASNY for the Project referred to in paragraph "66"

hereof.

81.     Trataros had originally furnished a labor and material payment bond

from Reliance.

82.     That at the time Crocetti had entered into the contract with Trataros,

Reliance was authorized to issue and deliver the labor and material payment bond

required for the Project.

83.     Upon information and belief, the fourth-party plaintiff Travelers

either assumed all of the rights and obligations of Reliance under the aforementioned

bond, or in the alternative, executed, furnished and delivered a separate and distinct labor

and material payment bond.

84.     That fourth-party plaintiff Travelers was and still is the surety

responsible for the payment of just claims under the labor and material payment bond(s)

upon which this suit is based.

93538v2                                                           18

85.     That fourth-party plaintiffs Trataros and Travelers are jointly and severally liable to Crocetti for the sum of $901,091.65, plus interest thereon from October 31, 2002 for the labor performed, costs incurred and materials furnished in connection with the construction of the Project under and pursuant to the provisions of the labor and material payment bond(s) referred to in paragraphs "81", "83" and "84" hereof.

86.     That Crocetti has been damaged for which the fourth-party plaintiffs Trataros and Travelers are liable therefore, jointly and severally, to Crocetti, in the sum of $901,091.65, plus interest thereon, from October 31, 2002.

AS AND FOR A FIRST CROSS-CLAIM AGAINST
FOURTH-PARTY DEFENDANTS BARTEC INDUSTRIES,
INC., DAYTON SUPERIOR SPECIALTY CHEMICAL CORP.,
SPECIALTY CONSTRUCTION BRANDS, INC. T/A TEC AND
JOHN DOES 1-20 AND XYZ CORPS 1-20, JOINTLY AND
SEVERALLY, AND AGAINST DEFENDANTS TDX CONSTRUCTION
CORP. AND KOHN, PEDERSON, FOX & ASSOCIATES, P.C.
(Common Law Indemnification)

87.     In the event that fourth-party plaintiffs Trataros and Travelers recover a judgment against fourth-party defendants Crocetti and Carolina in this action by reason of the allegations contained in the fourth-party complaint, such liability on the part of Crocetti and/or Carolina, by operation of law or otherwise, will have been caused and brought about by the culpable conduct on the part of the fourth-party defendants BARTEC INDUSTRIES, INC. ("Bartec"), DAYTON SUPERIOR SPECIALTY CHEMICAL CORP. ("Dayton") and/or SPECIALTY CONSTRUCTION BRANDS, INC. t/a TEC ("TEC"), JOHN DOES 1-20 and XYZ CORPS 1-20 and/or defendants

93538v2                                      19

TDX Construction Corp. ("TDX") and Kohn, Pederson, Fox & Associates, P.C. ("KPF"),

and will not have been caused by any culpable conduct on the part of Crocetti and/or

Carolina.

### AS AND FOR A SECOND CROSS-CLAIM AGAINST FOURTH-PARTY DEFENDANTS BARTEC INDUSTRIES, INC., DAYTON SUPERIOR SPECIALTY CHEMICAL CORP., SPECIALTY CONSTRUCTION BRANDS, INC. T/A TEC AND JOHN DOES 1-20 AND XYZ CORPS 1-20, JOINTLY AND SEVERALLY AND AGAINST DEFENDANTS TDX CONSTRUCTION CORP. AND KOHN, PEDERSON, FOX & ASSOCIATES, P.C.
(Contribution)

88.    If the damages alleged by fourth-party plaintiffs Trataros and

Travelers in this action were caused by culpable conduct other than by such fourth-party

plaintiffs, such culpable conduct was that of fourth-party defendants Bartec, Dayton,

TEC, TDX and/or KPF, and will not have been caused by any culpable conduct on the

part of Crocetti and/or Carolina.

89.    In the event that fourth-party plaintiffs recover a judgment against

Crocetti and/or Carolina in this action by reason of the allegations contained in the

fourth-party complaint, such liability on the part of Crocetti and/or Carolina, by operation

of law or otherwise, will have been caused and brought about by the culpable conduct of

fourth-party defendants Bartec, Dayton, TEC, John Does 1-20 and XYZ Corps 1-20

and/or defendants TDX and/or KPF, and will not have been caused by any culpable

conduct on the part of Crocetti and/or Carolina, and will not have been caused by any

culpable conduct on the part of Crocetti and/or Carolina.

93538v2

20

90.     Accordingly, pursuant to Article 14 of the New York Civil Practice Law and Rules, Crocetti and Carolina are entitled to recover damages in the amount of any judgment recovered by fourth-party plaintiffs Trataros and Travelers against Crocetti and Carolina as determined in accordance with the relative culpability of fourth-party defendants Bartec, Dayton, TEC, John Does 1-20, XYZ Corps 1-20 and/or defendants TDX and/or KPF and Crocetti and Carolina demand judgment, jointly and severally, against fourth-party defendants Bartec, Dayton, TEC, John Does 1-20, XYZ Corps 1-20 and/or defendants, TDX and/or KPF, in an amount equal to any excess paid by Crocetti and/or Carolina over and above Crocetti and/or Carolina's equitable share or shares, with interest.

<div align="center">

AS AND FOR A THIRD CROSS-CLAIM
AGAINST FOURTH-PARTY DEFENDANT
<u>SPECIALTY CONSTRUCTION BRANDS, INC. T/A TEC</u>
(Contractual Indemnification)

</div>

91.     Fourth-party defendant TEC provided materials to Crocetti for use on the project pursuant to purchase orders and or contracts.

92.     Said purchase orders and/or contracts provided, expressly or impliedly, that TEC would indemnify and hold Crocetti harmless for claims brought against Crocetti.

93.     In the fourth-party complaint, the fourth-party plaintiff has asserted claims against Crocetti arising, in part, out of the materials used by Crocetti with respect to the project.

94.     Any damages sustained by fourth-party plaintiff as alleged in the fourth-party complaint are embraced within the express or implied indemnification agreement contained in the purchase orders and or contracts between Crocetti and TEC.

95.     Pursuant to the terms of the express or implied indemnification agreement, if fourth-party defendant recovers money damages against Crocetti, Crocetti is entitled to recover the entire amount of said judgment, plus the costs, expenses and attorney's fees incurred in the defense of the action, from TEC.

96.     By reason of the foregoing, Crocetti has been damaged in an amount to be determined at trial, including but not limited to the costs, expenses and attorney's fees of defending the fourth-party complaint.

<div style="text-align:center">

ANSWER WITH RESPECT TO CROSSCLAIM BY
FOURTH-PARTY PLAINITIFFS AGAINST
DEFEDANT KOHN PEDERSON FOX ASSOCIATES, P.C.

</div>

97.     The crossclaim by fourth-party plaintiffs against defendant KPF, annexed to the fourth-party complaint is not addressed to fourth-party defendants Crocetti and Carolina and no response by them is necessary.  To the extent that paragraphs "1" through "11" of said crossclaim contains factual allegations to which a response is required, Crocetti and Carolina deny knowledge or information sufficient to form a belief as to the truth of said allegations., except admit, upon information and belief, the allegations set forth in paragraphs "1", "2" and "3" of said crossclaim.

WHEREFORE fourth-party defendants G.M. CROCETTI, INC. and

CAROLINA CASUALTY INSURANCE COMPANY demand judgment against fourth-party plaintiffs TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY dismissing the fourth-party complaint in its entirety as against CROCETTI and CAROLINA and in favor of CROCETTI on its counterclaims and cross-claims as follows:

(a)    on its First Counterclaim against TRATAROS in the sum of $901,091.65, plus interest from October 31, 2002;

(b)    on its Second Counterclaim against TRATAROS and First Counterclaim against TRAVELERS, jointly and severally, in the sum of $901,091.65, plus interest from October 31, 2002;

(c)    on its First Cross-Claim against BARTEC, DAYTON, TEC, John Does 1-20, XYZ Corps 1-20, TDX and KPF, jointly and severally, as determined by the trier of fact;

(d)    on its Second Cross-Claim against BARTEC, DAYTON, TEC, John Does 1-20, XYZ Corps 1-20, TDX and KPF, jointly and severally, as determined by the trier of fact;

(e)    on its Third Cross-Claim against TEC as determined by the trier of fact; and

(f)    for such other and further relief as this Court deems just and proper.

Dated: Jericho, New York
       February 28, 2005

                           TORRE, LENTZ, GAMELL, GARY
                           & RITTMASTER, LLP
                           Attorneys for Fourth-Party Defendants
                           G.M. Crocetti, Inc. and Carolina Casualty Insurance
                           Company

                           By:_____
                                Gary Wirth  (GW 4426)
                           100 Jericho Quadrangle, Suite 309
                           Jericho NY 11753-2702
                           (516) 240-8900

TO:     DREIFUSS BONACCI & PARKER, LLP
        Attorneys for Plaintiff, Third-party Defendants and Fourth-Party Plaintiffs
        Trataros Construction, Inc. and Travelers Casualty and Surety Company
        26 Columbia Turnpike
        North Entrance
        Florham Park, New Jersey 07932

        HOLLAND & KNIGHT, LLP
        Attorneys for Defendant and Third-Party Plaintiff
        Dormitory Authority of the State of New York
        195 Broadway
        New York, New York 10007

        MAZUR CARP & RUBIN, P.C.
        Attorneys for Defendant TDX Construction Corp.
        1250 Broadway, 38th Floor
        New York, New York 10001

        ZETLIN & De CHIARA, LLP
        Attorneys for Defendant
        Kohn, Pederson, Fox & Associates, P.C.
        801 Second Avenue
        New York, New York 10017

O'CONNOR REDD GOLLIHUE & SKLARIN, LLP
Attorneys for Fourth-Party Defendant
Bartec Industries Inc.
200 Mamaroneck Avenue
White Plains, New York 10601

GOLDBERG SEGALLA LLP
Attorneys for Fourth-Party Defendant
Dayton Superior Specialty Chemical Corp.
170 Hamilton Avenue, Suite 203
White Plains, New York 10601
(914) 798-5400

SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.
Attorneys for Fourth-Party Defendant
Specialty Construction Brands, Inc., t/a TEC
805 Third Avenue, 19th Floor
New York, New York 10022

## CERTIFICATE OF SERVICE

Gary Wirth, being duly sworn, says: (1) I am not a party to this action and am over 18 years of age and (2) on February 28, 2005, I filed electronically and served the within **G.M. CROCETTI, INC. AND CAROLINA CASUALTY INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND CROSS-CLAIMS TO FOURTH-PARTY COMPLAINT OF TRATAROS CONSTRUCTION, INC. AND TRAVELERS CASUALTY AND SURETY COMPANY** on each of the parties listed below at the address set forth after said party's name, that being the address designated by said attorney (or party) for that purpose, by depositing a true copy of same enclosed in postage-paid, properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York at 100 Jericho Quadrangle, Jericho, New York:

DREIFUSS BONACCI & PARKER, LLP
Attorneys for Plaintiff, Third-party
Defendants and Fourth-Party Plaintiffs
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932

HOLLAND & KNIGHT, LLP
Attorneys for Defendant and Third-Party
Plaintiff Dormitory Authority of the
State of New York
195 Broadway
New York, New York 10007

MAZUR CARP & RUBIN, P.C.
Attorneys for Defendant TDX
Construction Corp.
1250 Broadway, 38th Floor
New York, New York 10001

ZETLIN & De CHIARA, LLP
Attorneys for Defendant Kohn,
Pederson, Fox & Associates, P.C.
801 Second Avenue
New York, New York 10017

O'CONNOR REDD GOLLIHUE &
SKLARIN, LLP
Attorneys for Fourth-Party Defendant
Bartec Industries Inc.
200 Mamaroneck Avenue
White Plains, New York 10601

GOLDBERG SEGALLA LLP
Attorneys for Fourth-Party Defendant
Dayton Superior Specialty Chemical
Corp.
170 Hamilton Avenue, Suite 203
White Plains, New York 10601

SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD.
Attorneys for Fourth-Party Defendant
Specialty Construction Brands, Inc., t/a
TEC
805 Third Avenue, 19th Floor
New York, New York 10022

_____
Gary Wirth

# EXHIBIT N

USDC SDNY  *BAEKS.*
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 10-7-05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

TRAVELERS CASUALTY & SURETY COMPANY as
Administrator for RELIANCE INSURANCE
COMPANY,

                        Plaintiff,

        - against -                                    Civil Action No.
                                                       04 CV 5101 (HB)(RLE)
THE DORMITORY AUTHORITY OF THE STATE OF
NEW YORK, TDX CONSTRUCTION CORP. and KOHN,
PEDERSON, FOX & ASSOCIATES, P.C.

                        Defendants.
------------------------------------------------------------ X

DORMITORY AUTHORITY OF THE STATE OF
NEW YORK,

                Third-Party Plaintiff,                 STIPULATION
                                                       OF DISMISSAL
        -   against –                                  WITHOUT PREJUDICE

TRATAROS CONSTRUCTION, INC. and
TRAVELERS CASUALTY AND SURETY
COMPANY,

                Third-Party Defendants.
------------------------------------------------------------ X

TRATAROS CONSTRUCTION, INC., and
TRAVELERS CASUALTY AND SURETY
COMPANY,

                Fourth-Party Plaintiffs,

G.M. CROCETTI, INC., CAROLINA CASUALTY
INSURANCE COMPANY, BARTEC INDUSTRIES INC.,
DAYTON SUPERIOR SPECIALTY CHEMICAL
CORP., SPECIALTY CONSTRUCTION BRANDS,
INC. t/a TEC, KEMPER CASUALTY INSURANCFE
COMPANY d/b/a KEMPER INSURANCE COMPANY,
GREAT AMERICAN INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA., UNITED STATES FIRE
INSURANCE COMPNAY, ALLIED WORLD
ASSURANCE COMPANY (U.S.) INC. f/k/a
COMMERCIALUNDERWRITERS INSURANCE
COMPANY, ZURICH AMERICAN INSURANCE

COMPANY d/b/a ZURICH INSURANCE COMPANY,
OHIO CASUALTY INSURANCECOMPANY d/b/a OHIO
CASUALTY GROUP, HARLEYSVILLE MUTUAL
INSURANCE COMPANY (a/k/a HARLEYSVILLE
INSURANCE COMPANY, an insurer for BARTEC
INDUSTRIES INC.), JOHN DOES 1-20, and XYZCORPS.
1-12,

                    Fourth-Party Defendants.
                                                        X
------------------------------------------------------
KOHN PEDERSON FOX ASSOCIATES, P.C.,

                    Third-Party Plaintiff,

  - against -

WEIDLINGER ASSOCIATES CONSULTING
ENGINEERS, P.C., ANTHONY BLACKETT &
ASSOCIATES, POULIN + MORRIS, INC., SHEN
MILSOM & WILKE, INC., AMIS, INC., HOPKINS FOOD
SERVICE SPECIALISTS, INC., CASTRO- BLANCO
PISCIONERI AND ASSOCIATES, ARCHITECTS, P.C.
n/k/a ARQUITECTONICA NEW YORK P.C.,
COSENTINI ASSOCIATES, INC., VOLLMER
ASSOCIATES, LLP, TESTWELL CRAIG
LABORATORIES, INC., JOHN A. VAN DEUSEN &
ASSOCIATES, INC., JEROME S. GILLMAN
CONSULTING ARCHITECT, P.C., SYSTEMS DESIGN
ASSOCIATES, SYSTEMS DESIGN ASSOCIATES INC.,
WARFEL SHRAGER ARCHITECTURAL LIGHTING,
LLC, COUNSILMAN/HUNSAKER & ASSOCIATES,
ENTEK ENGINEERING PLLC, THEATRE PROJECTS
CONSULTANTS, JORDAN PANEL SYSTEMS CORP.,
TRATAROS CONSTRUCTION, INC. and LBL
SKYSYSTEMS (U.S.A.), INC.

                    Third-Party Defendants.
                                                        X
------------------------------------------------------

        IT IS HEREBY STIPULATED AND AGREED that this action and

all claims, counterclaims, cross-claims, third-party complaints and fourth-party

                              2

complaints asserted therein be and hereby are voluntarily dismissed without

prejudice and without costs to any party; and it is

        FURTHER STIPULATED AND AGREED that this Stipulation may

be executed in counterparts, and that for purposes of this Stipulation facsimile

signatures shall be treated as original signatures.

Dated:  New York, New York
         September 23, 2005


**DREIFUSS BONACCI & PARKER, LLP**
**Attorneys for Plaintiff/Third-Party Defendant/**
**Fourth/Party Plaintiff, Travelers Casualty**
**& Surety Company and Third-Party**
**Defendant/Fourth-Party Plaintiff,**
**Trataros Construction, Inc.**
One Penn Plaza, 36th Floor
New York, New York 10119

   -and-
26 Columbia Turnpike
**North Entrance**
Florham Park, NJ 07932
Tel. (973) 514-1414


By: _____
     JoAnne M. Bonacci, Esq. (JMB 1354)


**HOLLAND & KNIGHT, LLP**
**Attorneys for Defendants**
**Dormitory Authority of the State of New York**
**and TDX Construction Corporation**
195 Broadway
New York, New York 10007
Tel. (212) 513-3200


By: _____
     Stephen B. Shapiro, Esq. (SS 6400)


3

complaints asserted therein be and hereby are voluntarily dismissed without

prejudice and without costs to any party; and it is

        FURTHER STIPULATED AND AGREED that this Stipulation may

be executed in counterparts, and that for purposes of this Stipulation facsimile

signatures shall be treated as original signatures.

Dated:  New York, New York
          September 23, 2005


DREIFUSS BONACCI & PARKER, LLP
Attorneys for Plaintiff/Third-Party Defendant/
Fourth/Party Plaintiff, Travelers Casualty
& Surety Company and Third-Party
Defendant/Fourth-Party Plaintiff,
Trataros Construction, Inc.
One Penn Plaza, 36th Floor
New York, New York 10119

   -and-
26 Columbia Turnpike
North Entrance
Florham Park, NJ 07932
Tel. (973) 514-1414


By: _____
      JoAnne M. Bonacci, Esq. (JMB 1354)


HOLLAND & KNIGHT, LLP
Attorneys for Defendants
Dormitory Authority of the State of New York
and TDX Construction Corporation
195 Broadway
New York, New York 10007
Tel. (212) 513-3200

By: _____
      Stephen B. Shapiro, Esq. (SS 6400)

SEP. 23. 2005  4:53PM    MAZUR CARP RUBIN                NO. 9908   P. 11

MAZUR CARP & RUBIN, P.C.
Co-Counsel for Defendant
TDX Construction Corporation
1250 Broadway
New York, New York 10001
Tel. (212) 686-7700

By: _____
    Gary L. Rubin, Esq. (GR 5056)


ZETLIN & DECHIARA, LLP
Attorneys for Defendant/Third-Party Plaintiff
Kohn Pedersen Fox Associates, P.C.
801 Second Avenue
New York, New York 10017
Tel. (212) 682-6800


By: _____
    David Abramovitz, Esq. (DA 8214)


GOGICK, BYRNE & O'NEILL, LLP
Attorneys for Third-Party Defendant
Weidlinger Associates Consulting Engineers, P.C.
11 Broadway, Suite 1560
New York, New York 10004


By: _____
    Stephen P. Schreckinger, Esq. (SS 4448)


TORRE, LENTZ, GAMELL, GARY
& RITTMASTER, LLPF
Attorneys for Fourth-Party
Defendants, G.M. Crocetti, Inc.
and Carolina Casualty
Insurance Company
100 Jericho Quadrangle, Suite 309
Jericho, New York 11753-2702
Tel. (516) 240-8900


By: _____
    Gary Wirth, Esq. (GW 4426)

4

MAZUR CARP & RUBIN, P.C.
Co-Counsel for Defendant
TDX Construction Corporation
1250 Broadway
New York, New York 10001
Tel. (212) 686-7700


By: _____
      Gary L. Rubin, Esq. (GR 5056)


ZETLIN & DECHIARA, LLP
Attorneys for Defendant/Third-Party Plaintiff
Kohn Pedersen Fox Associates, P.C.
801 Second Avenue
New York, New York 10017
Tel. (212) 682-6800

By: _____
      David Abramovitz, Esq. (DA 6214)

GOGICK, BYRNE & O'NEILL, LLP
Attorneys for Third-Party Defendant
Weidlinger Associates Consulting Engineers, P.C.
11 Broadway, Suite 1560
New York, New York 10004


By: _____
      Stephen P. Schreckinger, Esq. (SS 4448)


TORRE, LENTZ, GAMELL, GARY
& RITTMASTER, LLPF
Attorneys for Fourth-Party
Defendants, G.M. Crocetti, Inc.
and Carolina Casualty
Insurance Company
100 Jericho Quadrangle, Suite 309
Jericho, New York 11753-2702
Tel. (516) 240-8900


By: _____
      Gary Wirth, Esq. (GW 4426)

4

MAZUR CARP & RUBIN, P.C.
Co-Counsel for Defendant
TDX Construction Corporation
1250 Broadway
New York, New York 10001
Tel. (212) 686-7700


By: _____
        Gary L. Rubin, Esq. (GR 5056)


ZETLIN & DECHIARA, LLP
Attorneys for Defendant/Third-Party Plaintiff
Kohn Pedersen Fox Associates, P.C.
801 Second Avenue
New York, New York 10017
Tel. (212) 682-6800


By: _____
        David Abramovitz, Esq. (DA 8214)


GOGICK, BYRNE & O'NEILL, LLP
Attorneys for Third-Party Defendant
Weidlinger Associates Consulting Engineers, P.C. AND Arquitectonica
11 Broadway, Suite 1560
New York, New York 10004


By: _____
        Stephen P. Schreckinger, Esq. (SS 4448)


TORRE, LENTZ, GAMELL, GARY
& RITTMASTER, LLPF
Attorneys for Fourth-Party
Defendants, G.M. Crocetti, Inc.
and Carolina Casualty
Insurance Company
100 Jericho Quadrangle, Suite 309
Jericho, New York 11753-2702
Tel. (516) 240-8900


By: _____
        Gary Wirth, Esq. (GW 4426)

4

MAZUR CARP & RUBIN, P.C.
Co-Counsel for Defendant
TDX Construction Corporation
1250 Broadway
New York, New York 10001
Tel. (212) 686-7700


By: _____
        Gary L. Rubin, Esq. (GR 5056)


ZETLIN & DECHIARA, LLP
Attorneys for Defendant/Third-Party Plaintiff
Kohn Pedersen Fox Associates, P.C.
801 Second Avenue
New York, New York 10017
Tel. (212) 682-6800


By: _____
        David Abramovitz, Esq. (DA 8214)


GOGICK, BYRNE & O'NEILL, LLP
Attorneys for Third-Party Defendant
Weidlinger Associates Consulting Engineers, P.C.
11 Broadway, Suite 1560
New York, New York 10004


By: _____
        Stephen P. Schreckinger, Esq. (SS 4448)


TORRE, LENTZ, GAMELL, GARY
& RITTMASTER, LLPF
Attorneys for Fourth-Party
Defendants, G.M. Crocetti, Inc.
and Carolina Casualty
Insurance Company
100 Jericho Quadrangle, Suite 309
Jericho, New York 11753-2702
Tel. (516) 240-8900


By: _____
        Gary Wirth, Esq. (GW 4426)

4

O'CONNOR, REDD, GOLLIHUE
& SKLARIN, LLP
Attorneys for Fourth-Party
Defendant Bartec Industries, Inc.
200 Mamaroneck Avenue
White Plains, New York 10601
Tel. (914) 686-1700

By: _____
          Jeremy Platek, Esq. (JDP 9153)


GOLDBERG SEGALLA LLP
Attorneys for Fourth-Party
Defendant Dayton Superior
Chemical Corp.
170 Hamilton Avenue, Suite 203
White Plains, New York 10601


By: _____
          Thomas M. DeSimone, Esq. (TMD 0756)


SEGAL MCCAMBRIDGE SINGER
& MAHONEY, LTD.
Attorneys for Fourth-Party Defendant
Specialty Construction Brands, Inc.,
t/a TEC
830 Third Avenue, Suite 400
New York, New York 10022
Tel. (212) 651-7500


By: _____
          Christian H. Gannon, Esq. (CG 1621)


5

O'CONNOR, REDD, GOLLIHUE
& SKLARIN, LLP
Attorneys for Fourth-Party
Defendant Bartec Industries, Inc.
200 Mamaroneck Avenue
White Plains, New York 10601
Tel. (914) 686-1700


By: _____
       Jeremy Platek, Esq. (JDP 9153)


GOLDBERG SEGALLA LLP
Attorneys for Fourth-Party
Defendant Dayton Superior
Chemical Corp.
170 Hamilton Avenue, Suite 203
White Plains, New York 10601

By: _____
       Thomas M. DeSimone, Esq. (TMD 0756)
       WILLIAM G. KELLY Esq. (WGK 2982)


SEGAL MCCAMBRIDGE SINGER
& MAHONEY, LTD.
Attorneys for Fourth-Party Defendant
Specialty Construction Brands, Inc.,
t/a TEC
830 Third Avenue, Suite 400
New York, New York 10022
Tel. (212) 651-7500


By: _____
       Christian H. Gannon, Esq. (CG 1621)


5

O'CONNOR, REDD, GOLLIHUE
& SKLARIN, LLP
Attorneys for Fourth-Party
Defendant Bartec Industries, Inc.
200 Mamaroneck Avenue
White Plains, New York 10601
Tel. (914) 686-1700


By: _____
     Jeremy Platek, Esq. (JDP 9153)


GOLDBERG SEGALLA LLP
Attorneys for Fourth-Party
Defendant Dayton Superior
Chemical Corp.
170 Hamilton Avenue, Suite 203
White Plains, New York 10601


By: _____
     Thomas M. DeSimone, Esq. (TMD 0756)


SEGAL MCCAMBRIDGE SINGER
& MAHONEY, LTD.
Attorneys for Fourth-Party Defendant
Specialty Construction Brands, Inc.,
t/a TEC
830 Third Avenue, Suite 400
New York, New York 10022
Tel. (212) 651-7500

By: _____
     Christian H. Gannon, Esq. (CG 1621)

5

STEINBERG & CAVALIERE, LLP
Attorney for Third-Party Defendant
Kemper Casualty Ins. Co., d/b/a Kemper Ins. Co.,
appearing as American Motorist Ins. Co.
50 Main Street
White Plains, New York 10606
Tel. (914) 761-4200

By: _____
        Steven Coploff, Esq. (SC 0506)

GENNET, KALLMAN, ANTIN, & ROBINSON, PC
Attorneys for Great American Ins.
Co., National Fire Insurance Co., and
Great American Ins. Co. of New York
6 Campus Drive
Parsippany, New Jersey 07054
Tel. (973) 285-1919

By: _____
        Donald Sweetman, Esq. (DS 2716)

LAW OFFICES OF MARTIN P. LAVELLE
Attorneys for Fourth-Party Defendant
National Union Fire Insurance Company
Of Pittsburgh, PA
110 William Street, 18th Floor
New York, New York 10038

By: _____
        Martin Lavelle, Esq. (ML)

CARROLL, MCNULTY & KULL
Attorneys for Fourth-Party Defendant
United States Fire Insurance Company
270 Madison Avenue
New York, New York 10016

By: _____
        Ann Odelson, Esq. (AO 9681)

6

09/23/2005 14:03 FAX  973 285 1177          GENNET KALLMANN                                    ☑013/017

STEINBERG & CAVALIERE, LLP
Attorney for Third-Party Defendant
Kemper Casualty Ins. Co., d/b/a Kemper Ins. Co.,
appearing as American Motorist Ins. Co.
50 Main Street
White Plains, New York 10606
Tel. (914) 761-4200


By: _____
         Steven Coploff, Esq. (SC 0506)

GENNET, KALLMAN, ANTIN, & ROBINSON, PC
Attorneys for Great American Ins.
Co., National Fire Insurance Co., and
Great American Ins. Co. of New York
6 Campus Drive
Parsippany, New Jersey 07054
Tel. (973) 285-1919


By: _____
         Donald Sweetman, Esq. (DS 2716)


LAW OFFICES OF MARTIN P. LAVELLE
Attorneys for Fourth-Party Defendant
National Union Fire Insurance Company
Of Pittsburgh, PA
110 William Street, 18th Floor
New York, New York 10038


By: _____
         Martin Lavelle, Esq. (ML)


CARROLL, MCNULTY & KULL
Attorneys for Fourth-Party Defendant
United States Fire Insurance Company
270 Madison Avenue
New York, New York 10016


By: _____
         Ann Odelson, Esq. (AO 9681)


6

STEINBERG & CAVALIERE, LLP
Attorney for Third-Party Defendant
Kemper Casualty Ins. Co., d/b/a Kemper Ins. Co.,
appearing as American Motorist Ins. Co.
50 Main Street
White Plains, New York 10606
Tel. (914) 761-4200


By: _____
        Steven Coploff, Esq. (SC 0506)

GENNET, KALLMAN, ANTIN, & ROBINSON, PC
Attorneys for Great American Ins.
Co., National Fire Insurance Co., and
Great American Ins. Co. of New York
6 Campus Drive
Parsippany, New Jersey 07054
Tel. (973) 285-1919


By: _____
        Donald Sweetman, Esq. (DS 2716)


LAW OFFICES OF MARTIN P. LAVELLE
Attorneys for Fourth-Party Defendant
National Union Fire Insurance Company
Of Pittsburgh, PA
110 William Street, 18th Floor
New York, New York 10038


By: _____
        Martin Lavelle, Esq. (ML)


CARROLL, MCNULTY & KULL
Attorneys for Fourth-Party Defendant
United States Fire Insurance Company
270 Madison Avenue
New York, New York 10016


By: _____
        Ann Odelson, Esq. (AO 9681)


6

STEINBERG & CAVALIERE, LLP
Attorney for Third-Party Defendant
Kemper Casualty Ins. Co., d/b/a Kemper Ins. Co.,
appearing as American Motorist Ins. Co.
50 Main Street
White Plains, New York 10606
Tel. (914) 761-4200


By: _____
        Steven Coploff, Esq. (SC 0506)

GENNET, KALLMAN, ANTIN, & ROBINSON, PC
Attorneys for Great American Ins.
Co., National Fire Insurance Co., and
Great American Ins. Co. of New York
6 Campus Drive
Parsippany, New Jersey 07054
Tel. (973) 285-1919


By: _____
        Donald Sweetman, Esq. (DS 2716)


LAW OFFICES OF MARTIN P. LAVELLE
Attorneys for Fourth-Party Defendant
National Union Fire Insurance Company
Of Pittsburgh, PA
110 William Street, 18th Floor
New York, New York 10038


By: _____
        Martin Lavelle, Esq. (ML)


CARROLL, MCNULTY & KULL
Attorneys for Fourth-Party Defendant
United States Fire Insurance Company
270 Madison Avenue
New York, New York 10016


By: _____
        Ann Odelson, Esq. (AO 9681)

6

**MOUND COTTON WOLLAN & GREENGRASS**
Attorneys for Fourth-Party Defendant
Allied World Assurance Company
One Battery Park Plaza, 9th Floor
New York, New York 10004

By: _____
        Diana E. Goldberg, Esq. (DG 3283)


**MELITO & ADOLFSEN, P.C.**
Attorneys for Fourth-Party Defendant
Zurich American Insurance Company
233 Broadway
New York, New York 10279


By: _____
        S. Dwight Stephens, Esq. (SS 2161)


**JACOBSON & SCHWARTZ**
Attorneys for Fourth-Party Defendant
Harleysville Mutual Ins. Co.
510 Merrick Road
P.O. Box 46
Rockville Centre, New York 11571


By: _____
        Henry J. Cernitz, Esq. (9382)



**MENAKER, HERRMANN, LLP**
Attorneys for Third-Party Defendants
Shen Milson & Wilke, Inc. and
Anthony Blackett & Associates
10 East 40th Street, 43rd Street
New York, New York 10006
Tel. (212) 545-1900


By: _____
        Cheryl L. Davis, Esq. (CD 4778)


7

MOUND COTTON WOLLAN & GREENGRASS
Attorneys for Fourth-Party Defendant
Allied World Assurance Company
One Battery Park Plaza, 9th Floor
New York, New York 10004


By: _____
        Diana E. Goldberg, Esq. (DG 3283)


MELITO & ADOLFSEN, P.C.
Attorneys for Fourth-Party Defendant
Zurich American Insurance Company
233 Broadway
New York, New York 10279


By: _____
        S. Dwight Stephens, Esq. (SS 2161)


JACOBSON & SCHWARTZ
Attorneys for Fourth-Party Defendant
Harleysville Mutual Ins. Co.
510 Merrick Road
P.O. Box 46
Rockville Centre, New York 11571


By: _____
        Henry J. Cernitz, Esq. (9382)


MENAKER, HERRMANN, LLP
Attorneys for Third-Party Defendants
Shen Milson & Wilke, Inc. and
Anthony Blackett & Associates
10 East 40th Street, 43rd Street
New York, New York 10006
Tel. (212) 545-1900


By: _____
        Cheryl L. Davis, Esq. (CD 4778)


7

Sep 26 05 12:11p

MOUND COTTON WOLLAN & GREENGRASS
Attorneys for Fourth-Party Defendant
Allied World Assurance Company
One Battery Park Plaza, 9th Floor
New York, New York 10004

By: _____
Diana E. Goldberg, Esq. (DG 3283)


MELITO & ADOLFSEN, P.C.
Attorneys for Fourth-Party Defendant
Zurich American Insurance Company
233 Broadway
New York, New York 10279

By: _____
S. Dwight Stephens, Esq. (SS 2161)


JACOBSON & SCHWARTZ
Attorneys for Fourth-Party Defendant
Harleysville Mutual Ins. Co.
510 Merrick Road
P.O. Box 46
Rockville Centre, New York 11571

By: _Henry J. Cernitz Esq._
Henry J. Cernitz, Esq. (9382)


MENAKER, HERRMANN, LLP
Attorneys for Third-Party Defendants
Shen Milson & Wilke, Inc. and
Anthony Blackett & Associates
10 East 40th Street, 43rd Street
New York, New York 10006
Tel. (212) 545-1900

By: _____
Cheryl L. Davis, Esq. (CD 4778)


7

Sep. 26, 2005  2:21PM   MENAKER & HERRMANN     No. 4042   P. 13/14
SEP. 23. 2005  5:39PM   MAZUR CARP RUBIN     NO. 9908   P. 14/17

MOUND COTTON WOLLAN & GREENGRASS
Attorneys for Fourth-Party Defendant
Allied World Assurance Company
One Battery Park Plaza, 9th Floor
New York, New York 10004


By: _____
     Diana E. Goldberg, Esq. (DG 3283)



MELITO & ADOLFSEN, P.C.
Attorneys for Fourth-Party Defendant
Zurich American Insurance Company
233 Broadway
New York, New York 10279


By: _____
     S. Dwight Stephens, Esq. (SS 2161)



JACOBSON & SCHWARTZ
Attorneys for Fourth-Party Defendant
Harleysville Mutual Ins. Co.
510 Merrick Road
P.O. Box 46
Rockville Centre, New York 11571


By: _____
     Henry J. Cernitz, Esq. (9382)



MENAKER, HERRMANN, LLP
Attorneys for Third-Party Defendants
Shen Milson & Wilke, Inc. and
Anthony Blackett & Associates
10 East 40th Street, 43rd Street
New York, New York 10006
Tel. (212) 545-1900


By: _____
     Cheryl L. Davis, Esq. (CD 4778)

L'ABBATE, BALKAN, COLAVITA
& CONTINI, LLP
Attorneys for Third-Party Defendant
Cosentini Associates, Inc.
1050 Franklin Avenue
Garden City, New York 11530

By: _Martin A. Schwartzberg_ /MS 6764/
    Martin Schwartzberg, Esq.

MILBER, MAKRIS, PLOUSADIS & SEIDEN, LLP
Attorneys for Third-Party Defendant
Vollmer Associates, LLP
3 Barker Avenue, 6th Floor
White Plains, New York 10601

By: _____
    Christopher A. Albanese, Esq. (CAA 0145)

ABRAMS, GORELICK, FRIEDMAN
& JACOBSON, P.C.
Attorneys for Third-Party Defendant
Warfel Schrager Architectural Lighting, LLC
115 Broadway, 11th Floor
New York, New York 10006

By: _____
    Barry Jacobs, Esq. (0216)

KRIEG & ASSOCIATES, P.C.
Attorneys for Third-Party Defendants,
Counsilman/Hunsaker & Associates and
Entek Engineering, PLLC
5 Heather Court
Dix Hills, New York 11746

By: _____
    Mark S. Krieg, Esq. (MSK 3745)

THELEN REID & PRIEST, LLP

8

L'ABBATE, BALKAN, COLAVITA
& CONTINI, LLP
Attorneys for Third-Party Defendant
Cosentini Associates, Inc.
1050 Franklin Avenue
Garden City, New York 11530


By: _____
      Martin Schwartzberg, Esq. (MS        )


MILBER, MAKRIS, PLOUSADIS & SEIDEN, LLP
Attorneys for Third-Party Defendant
Vollmer Associates, LLP
3 Barker Avenue, 6th Floor
White Plains, New York 10601

By: *Christopher A. Albanese*
      _____
      Christopher A. Albanese, Esq. (CAA 0145)


ABRAMS, GORELICK, FRIEDMAN
& JACOBSON, P.C.
Attorneys for Third-Party Defendant
Warfel Schrager Architectural Lighting, LLC
115 Broadway, 11th Floor
New York, New York 10006


By: _____
      Barry Jacobs, Esq. (0216)


KRIEG & ASSOCIATES, P.C.
Attorneys for Third-Party Defendants,
Counsilman/Hunsaker & Associates and
Entek Engineering, PLLC
5 Heather Court
Dix Hills, New York 11746


By: _____
      Mark S. Krieg, Esq. (MSK 3745)


THELEN REID & PRIEST, LLP

8

09-23-05    15:32    From-Abrams, Gorelick, Friedman & Jacobson    212-968-7573    T-131  P.009/016  F-724

L'ABBATE, BALKAN, COLAVITA
& CONTINI, LLP
Attorneys for Third-Party Defendant
Cosentini Associates, Inc.
1050 Franklin Avenue
Garden City, New York 11530


By: _____
        Martin Schwartzberg, Esq. (MS        )


MILBER, MAKRIS, PLOUSADIS & SEIDEN, LLP
Attorneys for Third-Party Defendant
Vollmer Associates, LLP
3 Barker Avenue, 6th Floor
White Plains, New York 10601


By: _____
        Christopher A. Albanese, Esq. (CAA 0145)


ABRAMS, GORELICK, FRIEDMAN
& JACOBSON, P.C.
Attorneys for Third-Party Defendant
Warfel Schrager Architectural Lighting, LLC
115 Broadway, 11th Floor
New York, New York 10006

By: _____
        Barry Jacobs, Esq. (0216)


KRIEG & ASSOCIATES, P.C.
Attorneys for Third-Party Defendants,
Counsilman/Hunsaker & Associates and
Entek Engineering, PLLC
5 Heather Court
Dix Hills, New York 11746


By: _____
        Mark S. Krieg, Esq. (MSK 3745)


THELEN REID & PRIEST, LLP

8

L'ABBATE, BALKAN, COLAVITA
& CONTINI, LLP
Attorneys for Third-Party Defendant
Cosentini Associates, Inc.
1050 Franklin Avenue
Garden City, New York 11530


By: _____
    Martin Schwartzberg, Esq. (MS        )


MILBER, MAKRIS, PLOUSADIS & SEIDEN, LLP
Attorneys for Third-Party Defendant
Vollmer Associates, LLP
3 Barker Avenue, 6th Floor
White Plains, New York 10601


By: _____
    Christopher A. Albanese, Esq. (CAA 0145)


ABRAMS, GORELICK, FRIEDMAN
& JACOBSON, P.C.
Attorneys for Third-Party Defendant
Warfel Schrager Architectural Lighting, LLC
115 Broadway, 11th Floor
New York, New York 10006


By: _____
    Barry Jacobs, Esq. (0216)


KRIEG & ASSOCIATES, P.C.
Attorneys for Third-Party Defendants,
Counsilman/Hunsaker & Associates and
Entek Engineering, PLLC
5 Heather Court
Dix Hills, New York 11746

By: _____
    Marc S. Krieg, Esq. (MSK 3745)


THELEN REID & PRIEST, LLP

8

09/23/2005 10:07 FAX 212 603 2001     THELEN REID&PRIEST LLP     ☒005

Attorneys for Third-Party Defendant,
LBL Skysystems (U.S.A.), Inc.
875 Third Avenue
New York, New York 10022

By: _____
     Richard P. Dyer, Esq. (RPD 5259)

**SINNREICH SAFAR & KOSAKOFF LLP**
Attorneys for Third-Party Defendant,
John A. Van Deusen & Associates, Inc.
320 Carleton Avenue, Suite 3200
Central Islip, New York 11722
Tel. (631) 650-1200


By: _____
     Annalee Cataldo-Barile, Esq. (AC 5250)


**O'CONNOR & GOLDER**
Attorneys for Third-Party Defendant,
Jordan Panel Systems Corp.
24 North Washington
Port Washington, New York 11050


By: _____
     Terrence J. O'Connor, Esq. (TO)


**LAW OFFICES OF VINCENT P. CRISCI, ESQ.**
Attorneys for Third-Party Defendant
Poulin & Morris, Inc.
17 State Street, 8th Floor
New York, New York 10004
Tel. (212) 943-8940


By: _____
     Caroline Papadatos, Esq. (CP)


9

09/27/05  TUE 14:48 FAX 6316501207 _ _____   SS&K                    NO. 270   P. 10/10      @010

Attorneys for Third-Party Defendant,
LBL Skysystems (U.S.A.), Inc.
875 Third Avenue
New York, New York 10022


By: _____
       Richard P. Dyer, Esq. (RPD 5259)


SINNREICH SAFAR & KOSAKOFF LLP
Attorneys for Third-Party Defendant,
John A. Van Deusen & Associates, Inc.
320 Carleton Avenue, Suite 3200
Central Islip, New York 11722
Tel. (631) 650-1200

By: _____
       Annalee Cataldo-Barile, Esq. (AC 5250)


O'CONNOR & GOLDER
Attorneys for Third-Party Defendant,
Jordan Panel Systems Corp.
24 North Washington
Port Washington, New York 11050


By: _____
       Terrence J. O'Connor, Esq. (TO)


LAW OFFICES OF VINCENT P. CRISCI, ESQ.
Attorneys for Third-Party Defendant
Poulin & Morris, Inc.
17 State Street, 8th Floor
New York, New York 10004
Tel. (212) 943-8940


By: _____
       Caroline Papadatos, Esq. (CP)


9

09/25/2005  13:50   5706196007                OCONNOR AND GOLDER                    PAGE  10

Attorneys for Third-Party Defendant,
LBL Skysystems (U.S.A.), Inc.
875 Third Avenue
New York, New York 10022


By: _____
    Richard P. Dyer, Esq. (RPD 5259)


SINNREICH SAFAR & KOSAKOFF LLP
Attorneys for Third-Party Defendant,
John A. Van Deusen & Associates, Inc.
320 Carleton Avenue, Suite 3200
Central Islip, New York 11722
Tel. (631) 650-1200


By: _____
    Annalee Cataldo-Barile, Esq. (AC 5250)


O'CONNOR & GOLDER
Attorneys for Third-Party Defendant,
Jordan Panel Systems Corp.
24 North Washington
Port Washington, New York 11050


By: _Terrence J. O'Connor_
    Terrence J. O'Connor, Esq. (TO)


LAW OFFICES OF VINCENT P. CRISCI, ESQ.
Attorneys for Third-Party Defendant
Poulin & Morris, Inc.
17 State Street, 8th Floor
New York, New York 10004
Tel. (212) 943-8940


By: _____
    Caroline Papadatos, Esq. (CP)


9

Attorneys for Third-Party Defendant,
LBL Skysystems (U.S.A.), Inc.
875 Third Avenue
New York, New York 10022


By: _____
        Richard P. Dyer, Esq. (RPD 5259)


SINNREICH SAFAR & KOSAKOFF LLP
Attorneys for Third-Party Defendant,
John A. Van Deusen & Associates, Inc.
320 Carleton Avenue, Suite 3200
Central Islip, New York 11722
Tel. (631) 650-1200


By: _____
        Annalee Cataldo-Barile, Esq. (AC 5250)


O'CONNOR & GOLDER
Attorneys for Third-Party Defendant,
Jordan Panel Systems Corp.
24 North Washington
Port Washington, New York 11050


By: _____
        Terrence J. O'Connor, Esq. (TO)


LAW OFFICES OF VINCENT P. CRISCI, ESQ.
Attorneys for Third-Party Defendant
Poulin & Morris, Inc.
17 State Street, 8th Floor
New York, New York 10004
Tel. (212) 943-8940


By: _____
    for   Caroline Papadatos, Esq. (CP)


9

**MORGAN, MELHUISH, MONAGHAN**
**ARVIDSON, ABRUTYN & LISOWSKI**
Attorneys for Fourth-Party Defendant,
Ohio Casualty Insurance Company
39 Broadway-35th Floor
New York, New York 10006


By: _____
        Joseph DeDonato, Esq. (JDD7319)


**SO ORDERED:**


_____
          UNITED STATES DISTRICT JUDGE


10