**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>G.M. CROCETTI, INC.,<br><br>                     Debtor. | Chapter 11 Case<br>Case No. 07-10319<br>(BRL) |
| G.M. CROCETTI, INC.,<br><br>                     Plaintiff,<br><br>   - against -<br><br>TRATAROS CONSTRUCTION, INC. and<br>TRAVELERS CASUALTY SURETY<br>COMPANY,<br><br>                    Defendant. | Adversary No.<br>(BRL) |

## DEBTOR'S OPPOSITION TO MOTION TO WITHDRAW THE REFERENCE

Plaintiff/Debtor G.M. Crocetti, Inc. ("Debtor"), by and through its attorneys, Harold Salant Strassfield & Spielberg, as and for its Opposition to the Defendants' motion to withdraw the reference in this Adversary proceeding states as follows:

## NATURE OF THE PROCEEDING

This is an adversary proceeding brought by the Debtor concerning funds due and owing to Debtor under a contract (the "Contract") between the Debtor and Defendant, Trataros Construction, Inc. for inter alia, furnishing and installing pre-cast terrazzo, epoxy terrazzo, interior stonework and related work at a project known as "Baruch College, Site B " (the "Project"). This is also an Objection

and Counterclaim to the claims filed by TRAVELERS CASUALTY SURETY

COMPANY ("Traveler's") and Trataros Construction, Inc. in this case.

This is a core proceeding arising in the Debtor's chapter 11 case.

Traveler's and Trataros each filed a 'contingent' claim in the amount of $20,000,000

arising from the Project. The Debtor's objection to those claims, incorporated in this

adversary proceeding is clearly core.

Debtor's claim, asserted herein, is Debtor's single largest asset.

Debtor's difficulty and ultimately their inability in collecting over $900,000 due

Debtor on the Project was one of the paramount causes of Debtor's bankruptcy.

Resolution of the claims that are the subject of this proceeding will significantly

affect the administration of the Estate and will involve the allowance or

disallowance of claims and/or liens against the Estate, and proceedings affecting the

liquidation of assets of the Estate and the adjustment of the debtor-creditor

relationships. All such matters are core proceedings under 28 U.S.C. §

157(b)(2)(A), (B), (C), (E) and (O). In the event that any claim or cause of action in

this proceeding is determined to be noncore, the Debtor has consented to the entry of

final orders or judgment by the Bankruptcy Judge with respect to all such claims and

causes of action.

The issue presented in this adversary proceeding is really a neatly

circumscribed, delineated issue as between debtor and defendants, namely, whether

the Debtor substantially performed the work in accordance with the Contract at the

Project. If Debtor did substantially perform, but with some minor defect, then the

question is what the value should be of any defect in the work for which defendants

are entitled to credit. That is the issue, the sole issue for decision by the Court. If debtor did perform as required by the Contract then debtor is entitled to be paid the sum demanded in the complaint by Trataros, the General Contractor or Travelers, its surety; except perhaps less some credit for minor defects..

It is true that there is litigation pending in District Court arising from the Project. It is an enormous lawsuit, involving perhaps two dozen litigants. That litigation is scheduled to and will, in all likelihood be pending well into 2010 and perhpas beyond. DASNY, the "Owner" on the Project has its issues with Trataros, over numerous aspects of the Project, not just the epoxy terrazzo floors. DASNY and defendants have or may have claims against several other parties who supplied "underlayment" for those floors which Crocetti's contract required Crocetti to install. Crocetti will prove that the problems with the underlayment was the cause of whatever failure of those floors was detected. Notwithstanding, if Debtor did its work as it should, debtor is not an insurer of materials for which Debtor had no responsibility. Trataros, DASNY and / or their professionals specified materials which may have caused a problem, but that is not debtor's problem. Debtor is entitled to a prompt resolution of this very neatly circumscribed claim. The law does not require that debtor and, more importantly, its creditors, wait the several years until all of the claims arising from the Baruch project are resolved in the District Court. An analysis of the factors to be considered on a motion for withdrawal of the reference will demonstrate that the reference should not be withdrawn if such withdrawal results in debtor's claim being tossed into the proceeding in District Court.

## THIS ACTION IS LIMITED TO A NARROW ISSUE

Defendants describe the proceedings in district Court in their motion. Their Fourth-Party Complaint in that action, impleads Debtor's surety and others. The "others" include Bartec Industries, Inc., a subcontractor on the epoxy terrazzo floors and Dayton Superior Corp., Bartec's supplier. It is Crocetti's belief that they are the parties who are responsible for the alleged defects arising from the underlayment. Debtor has had the defects studied by experts and is prepared to prove that it did nothing wrong, that its work on the floors was in accordance with the Contract. Debtor has been in the stone and Terrazzo business for over 70 years; it knows its job.

In the trial of this adversary proceeding, the issue at bar will be Crocetti's work, not anything else pending in the District Court. Crocetti will prove that it performed its Contract and is entitled to payment. If Defendants' defense is that the floors are defective and/ or deteriorating, the burden of proof will be on them to prove that such defects and/ or deterioration is attributable to Crocetti. That's the case, the whole case. Defendants' arguments about District Court's "…superior familiarity with the facts underlying the Adversary Proceeding…" is a red herring. Neither the District Court nor the bankruptcy Court can know the relevant facts until the proof is adduced as to whether or not Crocetti performed its contract.

Defendants' argument that DASNY must first issue payment against a claim to Trataros before Trataros becomes obligated to pay Crocetti is also a red herring. As more fully set forth in the Memorandum of Law, the New York law

prohibits enforcement of a "pay when paid" provision such as this one.

It is understandable that Defendants would like to have debtor in the courtroom with them when the trial finally takes place in District Court. Every defendant always wants more pockets available to share the pain. In this situation, debtor has suffered enough, it is time to end the pain.

WHEREFORE, it is respectfully submitted that the instant motion should be denied, together with such other, further and different relief as to the Court may seem proper.

Dated:  White Plains, New York
August 7, 2008
Harold, Salant, Strassfield & Spielberg
Attorneys for Debtor
By:


_____/S/_____
Leonard I. Spielberg (LIS2506)
81 Main Street
White Plains, New York 10601
(914) 683-2500

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>G.M. CROCETTI, INC.,<br><br>       Debtor. | Bankruptcy Case No. 07-10319 (BRL) |
| G.M. CROCETTI, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>TRATAROS CONSTRUCTION, INC. and<br>TRAVELERS CASUALTY AND SURETY<br>COMPANY,<br><br>       Defendants. | **Adversary No. 08-01234 (BRL)**<br>**Civil Action No. 08-CV-** _____ |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER WITHDRAWING**
**THE REFERENCE FOR ADVERSARY PROCEEDING NO. 08-01234**

---

**Of Counsel**
JoAnne M. Bonacci

**On the Brief,**
Eli J. Rogers
Derek A. Popeil
DREIFUSS BONACCI & PARKER, LLP
*Attorneys for Defendants, Trataros Construction, Inc.*
*and Travelers Casualty and Surety Company*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
Tel. No. (973) 514-1414

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................III

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ......................................................................................................3

    A. DISTRICT COURT ACTIONS AND MEDIATION PROCEEDINGS ...........................4

    B. CROCETTI'S BANKRUPTCY PROCEEDINGS .............................................................6

LEGAL ARGUMENT ............................................................................................................8

    THIS COURT SHOULD WITHDRAW THE REFERENCE .................................................8

    FOR THE CROCETTI ADVERSARY PROCEEDING ........................................................8

    A.    The Standard for Permissive Withdrawal of the Reference. .......................................9

    B.    Reference Should Be Withdrawn and the Adversary ProceedingConsolidated into the 2007 Action. ...............................................................................................................11

        1.    Adversary Proceeding Involves Non-Core Claims ...............................................11

        2.    Considerations of Judicial Efficiency Require Withdrawal .....................................15

        3.    Withdrawal Is Necessary to Combat Debtor's Forum Shopping .............................17

CONCLUSION ......................................................................................................................19

# TABLE OF AUTHORITIES

## Cases

Abondolo v. GGR Holbrook Medford, Inc., 285 B.R. 101, 112 (E.D.N.Y. 2002) ...........10, 11, 17

Allard v. Benjamin .................................................................................................................15

Burger Boys, Inc., 183 B.R. at 687...........................................................................................13

In re Dana Corp., 379 B.R. 449, 454 (S.D.N.Y. 2007) ................................................................10

In re DeLorean Motor Co.), 49 B.R. 900, 912 (Bankr.E.D.Mich.1985) .......................................15

In re Lawrence Group, 285 B.R. 784, 789 (N.D.N.Y. 2002) ........................................................17

In re Nanodata Computer Corp., 52 B.R. 334, 341 (Bankr. W.D.N.Y. 1985) .............................14

In re Northwest Airlines Corp., 384 B.R. 51, 56 (S.D.N.Y. 2008................................................10

In re PanAm Corp .....................................................................................................................15

In re Parmalat Finanziaria S.p.A., 320 B.R. 46, 50 (S.D.N.Y. 2005)............................................15

In re United States Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999) ...........................................12,15

Interconnect Telephone Services, Inc. v. Farren, 59 B.R. 397, 400 (S.D.N.Y.1986) ...................13

Nanodata ...........................................................................................................................14, 15

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 59 (1982).................9,14

Orion Pictures Corp. v. Showtime Networks ( In re Orion Pictures Corp.) 4 F.3d 1095,
    1101 (2d Cir.1993) .......................................................................................9,11,12,13,17

Private Capital Partners, Inc. v. RVI Guaranty Co. (In re Private Capital Partners, Inc.), 139 B.R.
    120, 127 (Bankr.S.D.N.Y.1992)........................................................................................13

South St. Seaport Ltd. P'ship v. Burger Boys (In re Burger Boys), 94 F.3d 755, 762 (2d
    Cir.1996)........................................................................................................................11

Weschler v. Squadron, Plesent & Sheinfeld LLP, 201 B.R. 635, 639 (S.D.N.Y.1996)................12

## Statutes

28 U.S.C. § 157(b)(1)(A), (C), (E), (H), (K), (O) ........................................................................12

28 U.S.C.A. § 157(a) ................................................................................................. 9

28 U.S.C.A. § 157(d) ............................................................................................... 10

## PRELIMINARY STATEMENT

Trataros Construction, Inc ("Trataros") and Travelers Casualty and Surety Company ("Travelers") submit this memorandum of law in support of their Motion for an Order pursuant to 28 U.S.C. § 157(d) Withdrawing the Reference for the Adversary Proceeding entitled <u>G.M. Crocetti, Inc. v. Trataros Construction Inc., et al.</u>, Adversary No. 08-01234 (the "Adversary Proceeding"). Considerations of judicial economy, consistency of verdicts, and complete resolution of the disputes between the parties, all weigh in favor of withdrawing the Adversary Proceeding into the United States District Court for the Southern District of New York (the "District Court"). Where a related matter is already pending. In addition, the claims advanced by Debtor, G.M. Crocetti, Inc. ("Crocetti") relate to alleged breaches of contract arising pre-petition, and do not implicate Federal bankruptcy law. To the contrary, Crocetti's state law-based claims were filed by Crocetti in a prior diversity action before the Honorable Harold Baer, U.S.D.J., and were subsequently the subject of confidential mediation in which Crocetti actively participated before and after filing its Chapter 11 petition. Crocetti's bankruptcy petition was filed without notice to Travelers and Trataros, and upon information and belief, without notice to the other parties to the mediation (with the possible exception of Crocetti's surety, Carolina Casualty Insurance Company, hereinafter referred to as "Carolina").

The same claims filed by Crocetti in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") are already pleaded by other parties in a civil action pending before the Honorable Denise L. Cote, U.S.D.J., entitled <u>Travelers Casualty and Surety Company et al. v. Dormitory Authority – State of New York, et al.</u>, Case No. 07-CV-6915 (the "2007 Action"). Carolina, a fourth-party defendant in the 2007 Action, has alleged that it is entitled to receive payments due to Crocetti, and has alleged the claims pleaded in the

1

Adversary Proceeding as an affirmative defense of set-off and as a counterclaim. In addition, Travelers has asserted a number of delay claims on behalf of Trataros' subcontractors, including Crocetti, against DASNY, TDX Construction Corp. ("TDX") and Kohn Pedersen Fox Associates ("KPF"). Further, in the 2007 action, the performance of Crocetti's work underlying its adversary claims is disputed by Defendant/Third-Party Plaintiff, Dormitory Authority of the State of New York ("DASNY"). DASNY has alleged, *inter alia*, that the construction work performed by Crocetti pursuant to its subcontract with Trataros was defective and/or deteriorating. To the extent that Crocetti alleges in the Adversary Proceeding that it is owed payment from Trataros and Travelers for the same allegedly defective work, the claims in the 2007 Action have direct bearing upon the Adversary Proceeding.

Further, the 2007 Action offers an opportunity for a more complete resolution of the disputes between Crocetti, Trataros, and Travelers, to the extent that a number of necessary parties potentially liable for the allegedly defective work complained of by DASNY are already present in the 2007 Action. The complaint in the Adversary Proceeding does not allege any claim or fact that is not already before the District Court. If the Adversary Proceeding is not withdrawn into the District Court, Trataros and Travelers will be exposed to a risk of inconsistent verdicts and/or "double payment", once to DASNY and/or Carolina in the 2007 Action, and once to Crocetti in the Adversary Proceeding. In light of the foregoing, Travelers and Trataros respectfully submit that their motion to withdraw the reference for the Adversary Proceeding should be granted.

## STATEMENT OF FACTS

Movants, Travelers and Trataros seek an Order withdrawing the reference for an Adversary Proceeding pending before the Bankruptcy Court and commenced by Debtor, Crocetti. In the Adversary Proceeding, Crocetti has pleaded separate causes of action, alleging a breach of contract claim against Trataros and a breach of payment bond claim against Travelers. (Declaration of Eli J. Rogers the "Rogers Dec." ¶¶ 31-33) Under both causes of action, Crocetti seeks money damages in the amount of $901,091.65.(Id.) The same claims have been asserted against Travelers and Trataros in the 2007 Action by Carolina, Crocetti's surety for the Project.[1] (Id. ¶¶9-21.) Further, Travelers itself has asserted Crocetti's claim, on Crocetti's behalf, as one of a number of pass-through claims alleged against DASNY, TDX, and KPF, in the complaint which initiated the 2007 Action. (Id. ¶¶9-13.)

Both the Adversary Proceeding and the 2007 Action arise from a construction project known as Baruch College, Site B (the "Project"). (Id. ¶¶6,8,16-18,31-32.) Likewise, a related action (the "2004 Action"), voluntarily dismissed without prejudice in order to pursue mediation and involving Crocetti, Trataros, Travelers, DASNY, Carolina, and most of the other parties present in the 2007 Action, also arose from the same Project. (Id. ¶¶34-42.)

By way of background, Trataros was awarded a certain prime contract for the Project known as Contract No. 16 by DASNY. (Id. Exh. A ¶19.) Trataros subcontracted a portion of its work under Contract No. 16 to Crocetti, including but not limited to installation of the Project's epoxy terrazzo floors. Crocetti's subcontract with Trataros was bonded by Carolina. (Id. ¶15.) Upon information and belief, Crocetti utilized materials manufactured by Specialty Construction

---

[1] Carolina alleges that it is entitled to receive any funds allegedly due and owing to Crocetti from Trataros and/or Travelers, and specifically asserts that it is entitled to set-off the $901,091 allegedly due to Crocetti against any liability that Carolina may have to Travelers and Trataros. In addition, Carolina has alleged affirmative counterclaims seeking to recover from Travelers and Trataros damages in the amount of $901,091 allegedly due to Crocetti for its work on the Project. (Id. ¶¶20-21.)

Brands, Inc. t/a TEC ("TEC") in its work on the Project. (Id., Exh. E ¶¶41-43.) Further, significant portions of Crocetti's work were installed over the work of another Trataros subcontractor, Bartec Industries, Inc. ("Bartec"). (Id., Exh. E ¶¶46-49.)

Crocetti alleges in its Adversary Proceeding that it is due $901,091.65 for work performed on the Project, and admits that its work on the Project included installation of the Project's epoxy terrazzo. (Id. ¶¶32-33.) However, the issue of whether Crocetti performed its subcontract requirements is in dispute in the 2007 Action as a result of DASNY's claims that the work allegedly installed by Crocetti on the Project is allegedly defective and/or deteriorating. (Id. ¶¶16-17.)

## A.    DISTRICT COURT ACTIONS AND MEDIATION PROCEEDINGS

On or about June 28, 2004, Travelers commenced a civil action in the District Court, alleging *inter alia*, claims for delay, lost productivity, and/or impact damages against DASNY, TDX, and KPF on behalf of Trataros and several of its subcontractors, including Crocetti (the "2004 Action"). (Id., ¶35.)  Subsequently, DASNY filed a Third-Party Complaint in the 2004 Action against Travelers and Trataros, alleging, *inter alia*, that the epoxy terrazzo floors at the Project were defective and/or deteriorating, that the work was part of Trataros' contracts, and that Trataros subcontracted the epoxy terrazzo work to Crocetti. (Id. ¶¶36-37.)

In response, Travelers and Trataros filed a Fourth-Party Complaint in the 2004 Action, impleading Crocetti, Carolina, and others, on causes of action seeking indemnification and contribution for DASNY's third-party claims, among other causes of action. (Id. ¶38 Exh. L.) On or about February 28, 2005, Crocetti and Carolina filed their Answer, Affirmative Defenses, Counterclaims and Cross-Claims to Fourth-Party Complaint in the 2004 Action (the "Crocetti Answer").  The Crocetti Answer asserted claims against Travelers and Trataros substantially

similar to those set forth in Crocetti's adversary complaint, and sought judgment against Travelers and Trataros, jointly and severally, in the amount of $901,091.65, plus interest, for allegedly uncompensated work performed by Crocetti on the Project. (Id. ¶¶39-40.)

The 2004 Action was voluntarily dismissed pursuant to a Stipulation of Dismissal Without Prejudice, executed between the parties and "so ordered" by Judge Baer on October 5, 2005. The claims alleged in the 2004 Action were tolled upon unanimous consent, so that the parties could pursue resolution of said claims in confidential mediation. (Id. ¶¶41-42.) Travelers, Trataros, Crocetti and Carolina, among others, actively participated in the mediation proceedings. (Id. ¶44&n.2.) On or about February 8, 2007, during the mediation proceedings and while the claims alleged in the 2004 Action were tolled, Crocetti filed its petition for Chapter 11 bankruptcy protection with the Bankruptcy Court. (Id. ¶¶23&24.) Travelers and Trataros were not advised of the bankruptcy filing. Upon information and belief, the other participants in the mediation were likewise not advised of the bankruptcy filing, with the possible exception of Carolina.[2] (Id. ¶44&n.2) Crocetti's bankruptcy petition did not include any mention of the 2004 Action, the tolled claims of DASNY, Travelers and/or Trataros, nor the continuing mediation proceedings.(Id. ¶¶23-25 & Exhs. G and H.) After filing its bankruptcy petition, Crocetti continued to participate in the mediation until its termination date. (Id. ¶45.)

Consistent with the procedures established between the parties for re-filing the prior civil action, Travelers commenced the 2007 Action by filing its Complaint and Jury Demand in the District Court on August 1, 2007. (Id. ¶¶5&43.) As before, Travelers alleged a number of pass-through claims on behalf of Trataros' subcontractors on the Project, including Crocetti's claims which are the subject of the Adversary Proceeding. (Id. ¶¶9-10.)

---

[2] The same counsel represented both Carolina and Crocetti in the 2004 Action. (See Id. Exh. M.)

On or about October 2, 2007, DASNY and TDX filed their Third-Party Complaint, again alleging claims against Trataros for purported construction defects in the epoxy terrazzo floors, among other things.[3] (Id. ¶¶16-17.) As before, DASNY and TDX's Third-Party Complaint specifically alleges that the purportedly defective epoxy terrazzo work was subcontracted to Crocetti by Trataros, and that the epoxy terrazzo is defective and/or deteriorating. (Id. ¶17 & Exh. C. ¶¶ 30-31.)

In response, Travelers and Trataros filed their Fourth-Party Complaint in the 2007 Action, impleading Carolina, and a number of other parties, including Crocetti's insurance carriers and TEC. The Fourth-Party Complaint alleged claims seeking indemnification and/or contribution for the third-party claims alleged by DASNY and/or TDX. (Id. ¶18 & Exh. E ¶¶ 6,136.) Additionally, Travelers and Trataros impleaded, among others, Bartec Industries Inc. ("Bartec"), a subcontractor who performed work on the Project related to Crocetti's epoxy terrazzo flooring, and Dayton Superior Corp. f/k/a Dayton Superior Specialty Chemical Corp. ("Dayton"), Bartec's supplier on the Project. (Id. Exh. E, ¶¶ 4,5,&46-51.) Crocetti was not impleaded into the 2007 Action as, shortly before the Fourth-Party Complaint was filed, Crocetti's former counsel advised Travelers and Trataros that Crocetti had filed for Chapter 11 bankruptcy protection. (Id. ¶46.)

## B.    CROCETTI'S BANKRUPTCY PROCEEDINGS

Crocetti filed its petition for Chapter 11 bankruptcy protection on or about February 8, 2007. (Id. ¶23.) On or about March 3, 2008, the Bankruptcy Court set a deadline of April 7, 2008 for the filing of Proofs of Claims. (Id. ¶26.) Insofar as materials filed by Crocetti with the Bankruptcy Court represented that Crocetti's accounts receivable included $901,091.65

---

[3]   The Third-Party Complaint filed in the 2007 action only impleaded Trataros. DASNY and TDX alleged counterclaims against Travelers in the "Answer of DASNY and TDX with Affirmative Defenses, Counterclaims, and Cross-Claims." (See Id. Exhs C&D.)

allegedly owing from Trataros, and in light of the third-party construction defect claims alleged by DASNY and/or TDX in the 2007 Action, Travelers and Trataros filed separate Proofs of Claim with the Bankruptcy Court on or about April 7, 2008. (Id. ¶¶27-30.)  The Proofs of Claim filed by Travelers and Trataros assert contingent claims arising from DASNY's allegations of damages in excess of $20,000,000 associated with the alleged epoxy terrazzo defects. [4] (Id. ¶¶29-30.)  Trataros' and Travelers' Proofs of Claim are partially secured by a right of set-off against the alleged $901,091.65 in accounts receivable allegedly owing from Trataros to Crocetti. (Id. ¶¶28-30.)

On or about May 19, 2008, Crocetti filed its Adversary Proceeding against Travelers and Trataros. (Id. ¶31.) The allegations of Crocetti's adversary complaint are substantially identical to Crocetti's counter-claims alleged against Travelers and Trataros in the 2004 Action. (cf. Id., ¶32 & Exh J ¶¶ 11-29 with Exh. M ¶¶66-86.)  Crocetti seeks judgment against Travelers and Trataros, jointly and severally, in the amount of $901,091.65 arising from an alleged breach of Crocetti's pre-petition subcontract. (Id. ¶33 & Exh. J ¶¶ 21,28 &29.)   In addition, Crocetti objects to Travelers' Proof of Claim, alleging that "the work performed by Debtor was not defective; ... was not performed negligently, and ... [D]ebtor did not breach its" subcontract.

Thus, the issues in the Adversary Proceeding are exactly the same as those in the 2007 Action relevant to the epoxy terrazzo flooring: namely, whether and to what extent the work is in fact defective/deteriorating; whether pre-petition contractual arrangements were breached with respect to said work; whether the work was performed negligently; what party or parties, if any,

---

[4] The affirmative claims originally brought against Travelers and Trataros by DASNY in the 2004 Action sought an alleged $6 Million in damages associated with construction defects in the epoxy terrazzo floors installed by Crocetti. (Id. Exh. K pp.12-12.)  When the matter was re-filed in 2007, DASNY's claims were revised, and the amounts sought against Travelers and Trataros for the same alleged defects are now alleged to exceed $20 Million. (Id. ¶¶16-17 & Exh. C, pp 11-12.)  The Proofs of Claim filed by Travelers and Trataros are for this amount; said amount is now contested by Crocetti in the Adversary Proceeding. (Id. ¶¶29-30.)

may be ultimately liable for the alleged defects; the amount of set-off, if any, against the alleged damages associated with the purported construction defects. Given that these are largely non-core bankruptcy matters, withdrawal of the reference is appropriate, and will foster efficiency and uniformity. The Adversary Proceeding is simply a mirror image of significant portions of the 2007 Action, yet it is divorced from the full range of necessary, interested parties and relevant issues afforded by the 2007 Action. Only in the 2007 Action can the competing claims at issue in the Adversary Proceeding receive full and complete disposition.

## **LEGAL ARGUMENT**

### **THIS COURT SHOULD WITHDRAW THE REFERENCE FOR THE CROCETTI ADVERSARY PROCEEDING**

Travelers and Trataros respectfully submit that, as a result of approximately 11 months of litigation in the 2007 Action, the District Court possesses greater familiarity with the claims and issues presented by Crocetti's adversary complaint than the Bankruptcy Court. Issues identical to those raised in the Adversary Complaint have been litigated in the District Court since 2004, and parties to the 2007 Action have asserted the same claim and underlying rights as Crocetti now raises in its Adversary Proceeding.

In addition, policy interests that favor judicial economy, full and complete resolution of claims, and which disfavor inconsistent verdicts, all weigh in favor of withdrawal. If the reference for the Adversary Proceeding is not withdrawn, Travelers and Trataros risk exposure to inconsistent verdicts as between the two actions. Further, a full and complete resolution of the disputes between Trataros, Travelers, and Crocetti could not be obtained in the Adversary Proceeding, due to the absence of numerous necessary and interested parties from that action. These parties include, but are not limited to the project owner, DASNY, which has alleged the existence of construction defects in Crocetti's work on the Project; Crocetti's Surety, Carolina,

which has alleged an entitlement to assert Crocetti's claims on its own behalf; and other parties potentially liable for part or all of the damages associated with the Project's allegedly defective flooring, including KPF, TDX Dayton Superior, Bartec, the various insurance carriers, and TEC.[5]

Finally, Crocetti's Subcontract provides that DASNY must first issue payment against a claim to Trataros, before Trataros becomes obligated to pay the claim over to Crocetti. Therefore, a decision in the Adversary Proceeding would be inappropriate before resolving the following: DASNY's affirmative claims for alleged defects in the Project's floors; comparative liabilities as between all potentially liable parties are settled for the alleged defects; Travelers' affirmative pass-through claim on behalf of Crocetti; and, Carolina's alleged entitlement to assert set-offs and counterclaims arising from Crocetti's claim. In light of the foregoing, it is respectfully submitted that the issues raised by the Adversary Proceeding do not belong in the Bankruptcy Court, and that Travelers' and Trataros' motion should be granted.

## A.     The Standard for Permissive Withdrawal of the Reference.

Bankruptcy matters must be "referred" by a United States District Court to a Bankruptcy Court, due to the Constitutional requirement that the "judicial power of the United States must be exercised" only by Article III courts,. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 59 (1982); In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993). 28 U.S.C.A. § 157 authorizes a district court to refer such proceedings "arising under, … arising in or related to" a Chapter 11 case to that district's Bankruptcy Court. 28 U.S.C.A. § 157(a). Such matters arising within the Southern District of New York, including the instant Adversary Proceeding, are referred to the Bankruptcy Court by means of a Standing Order of the District

---

[5]  Although the Amended Fourth-Party Complaint filed in the 2007 Action has been dismissed as against TEC, Carolina has not released its cross-claim against that party.

Court.  Orion, 4 F.3d at, 1101; "Standing Order of Referral of Cases to Bankruptcy Judges,"
issued by the Honorable Robert J. Ward, Acting Chief Judge for the Southern District of New
York, dated July 10, 1984.

The District Court retains the right to withdraw, in whole or in part, the reference for **any**
case or proceeding referred to the Bankruptcy Court "for cause shown." 28 U.S.C.A. § 157(d).
The decision to withdraw a reference can be made sua sponte by the District Court, or upon
timely motion of any party. Id.  The factors considered by the District Court to

> determine if cause for withdrawing bankruptcy references exist are:
> (1) whether the claim is core or non-core, (2) what is the most
> efficient use of judicial resources, (3) what is the delay and what
> are the costs to the parties, (4) what will promote uniformity of
> bankruptcy administration, (5) what will prevent forum shopping,
> and (6) other related factors.

Abondolo v. GGR Holbrook Medford, Inc., 285 B.R. 101, 112 (E.D.N.Y. 2002) (internal
citations omitted).  None of these factors is dispositive in and of itself, however, each one could
have "substantial importance in a given case" in the District Court's analysis as to whether
withdrawal of the reference is appropriate.  In re Northwest Airlines Corp., 384 B.R. 51, 56
(S.D.N.Y. 2008).  And see, In re Dana Corp., 379 B.R. 449, 454 (S.D.N.Y. 2007) (Although
determination of whether a proceeding is core is often central to the analysis, it is not a
dispositive factor.)

Here, these factors weigh heavily in favor of withdrawal of the reference for the
Adversary Proceeding, particularly in light of the considerations of judicial economy, efficiency,
the District Court's greater familiarity with the claims and parties involved, the potential delay
and duplicate costs to the parties if the Adversary Proceeding is permitted to continue.  Further,
since the Adversary Proceeding filed by Crocetti primarily implicates an alleged pre-petition

breach of contract, the claims at issue arise under New York state law, and do not implicate any specialized bankruptcy issues peculiarly within the knowledge of the Bankruptcy Court.

**B.      Reference Should Be Withdrawn and the Adversary Proceeding Consolidated into the 2007 Action.**

**1.      Adversary Proceeding Involves Non-Core Claims**

The overarching considerations in determining a motion to withdraw the reference are judicial efficiency, uniformity of case administration, and related considerations of conservation of judicial resources, and the integrity of the judicial process.  Even the issue of whether a claim is considered core or non-core is considered significant primarily because "that factor drives the efficiency and uniformity determinations." South St. Seaport Ltd. P'ship v. Burger Boys *(In re Burger Boys)*, 94 F.3d 755, 762 (2d Cir.1996).  "For example, it may be more efficient and may promote uniformity for district courts to decide non-core matters, because bankruptcy courts are only empowered to submit proposed factual findings and legal conclusions to district courts for de novo review in non-core matters." Abondolo, 285 B.R. at 112, *citing* Orion Pictures Corp. 4 F.3d at 1101.  Conversely, because of the Bankruptcy Court's familiarity with substantive bankruptcy law and the facts surrounding a particular bankruptcy matter, it may be promote efficiency and uniformity for the Bankruptcy Court to determine core matters. Pictures Corp., 4 F.3d at 1101.

Unlike a typical adversary proceeding before the Bankruptcy Court, here, the District Court possesses superior familiarity with the facts underlying the claims in the Adversary Proceeding, due to the proceedings which have transpired in the District Court since the 2007 Action was commenced on August 1, 2007.  The District Court's familiarity with the issues and parties arises not only from the multiple court conferences and conference calls which have

occurred to date, but also from various submittals to the District Court by Travelers, Trataros and various other parties, as well as the District Court's disposition of five fully-briefed motions, excluding the present motion to withdraw the reference.  In addition, at least 16 necessary parties that are involved in the flooring claims are present in the 2007 Action, most of whom the Bankruptcy Court has no familiarity with in the context of the Adversary Proceeding.

Core matters are those which pertain to functions peculiar to or the affecting bankruptcy (In re U.S. Lines, Inc., 197 F.3d 631,637 (2d Cir. 1999)), such as "matters concerning the administration of the estate," "counterclaims by the estate against persons filing claims against the estate," "orders to turn over property of the estate," "proceedings to determine, avoid, or recover fraudulent conveyances," "determinations of the validity, extent, or priority of liens," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."  28 U.S.C. § 157(b)(1)(A), (C), (E), (H), (K), (O); Orion, 4 F.3d at 1101-02; U.S. Lines, 197 F.3d at 637.

The Adversary Proceeding concerns a non-core dispute.  Unlike core proceedings, non-core proceedings involve disputes over rights that are unrelated to the federal bankruptcy laws and could proceed in a court that lacks federal bankruptcy jurisdiction. Weschler v. Squadron, Plesent & Sheinfeld LLP, 201 B.R. 635, 639 (S.D.N.Y.1996).  "A core proceeding must invoke a substantive right provided by" Chapter 11 of the Bankruptcy Code. Id.

While a Bankruptcy Judge may preside over a non-core proceeding, the court may not render final determination of the matter; rather, the Bankruptcy Court is "only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review." Orion, 4 F.3d at 1101.  Since non-core matters are subject to de novo review by the district court, permitting a non-core matter to proceed in the Bankruptcy Court could cause the parties to incur

"unnecessary costs [which] could [otherwise] be avoided by a single proceeding in district court." Orion, 4 F.3d at 1101.

As demonstrated by the fact that Crocetti's claims presently advanced in the Adversary Proceeding were previously alleged by Crocetti in the 2004 Action, there is no doubt that this case could exist independent of the bankruptcy case. The subject claims sound in state law, and have already been placed in dispute in the 2007 Action by DASNY, Carolina, Travelers, and Trataros. *See,* Interconnect Telephone Services, Inc. v. Farren, 59 B.R. 397, 400 (S.D.N.Y.1986) ("Noncore proceedings consist of those 'claims arising under traditional state law which must be determined by state law.' ... They are 'those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court.' ").

Here, the claims were in fact brought in the District Court first. Crocetti's claims in the Adversary Proceeding are for pre-petition breach of contract against Trataros and a second count against both Travelers and Trataros arising out of a payment bond administered by Travelers. A "breach-of-contract action by a debtor against a party to a pre-petition contract ... is non-core." Orion, 4 F.3d at 1102; Burger Boys, Inc., 183 B.R. at 687 (holding that a matter involving a pre-petition contract and pre-petition breach of contract is a non-core proceeding); Private Capital Partners, Inc. v. RVI Guaranty Co. (In re Private Capital Partners, Inc.), 139 B.R. 120, 127 (Bankr.S.D.N.Y.1992) ("it is settled law in this court that a garden variety prepetition breach of contract case invokes no substantive principles of bankruptcy law and is a non-core proceeding.").

Although the adversary complaint alleges a counterclaim against parties who have filed proofs of claim in Crocetti's Chapter 11 proceeding, that is not necessarily dispositive of whether the Adversary Proceeding is core, nor whether the reference for said action can be

13

permissively withdrawn.  Section 157(b) of Title 28 sets forth a non-exclusive list of 15 types of core proceedings, including in "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).  In fact, Travelers and Trataros filed Proofs of Claim and that the second count of the Adversary Proceeding is styled as a counterclaim.  However, the district courts of New York have previously held that claims arising from state law do not meet the threshold requirement of "aris[ing] under or aris[ing] in a case under title 11."  In re Nanodata Computer Corp., 52 B.R. 334, 341 (Bankr. W.D.N.Y. 1985).

In Nanodata, the debtor brought an adversary proceeding against a creditor, Kollmorgen, which had filed a proof of claim with the bankruptcy court.  Nanodata's adversary complaint alleged counterclaims against Kollmorgen, and subsequently filed objections to Kollmorgen's proof of claim.  Nanodata then moved the bankruptcy court for a determination that the adversary proceeding was a core proceeding under 28 U.S.C. 157(b).  Id., 336-337.  Nanodata's causes of action alleged against Kollmorgen were for breach of warranty, breach of contract, intentional misrepresentation, negligent misrepresentation, and negligent supervision.  Id., 337.

The Western District found that since Nanodata's causes of action against Kollmorgen arose from state law rather than Chapter 11 of the Bankruptcy Code, the adversary proceeding was not core.  Id., 342-43.  Relying upon the U.S. Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), the Nanodata Court reasoned that "the linchpin to deciding whether a cause of action arises under Title 11 or ... in a case under Title 11 is the underlying nature of the cause of action itself[,] and not merely the importance of the cause of action to the debtor or its creditors."  Id.  Thus, even though the debtor had asserted a counterclaim against Kollmorgen's proof of claim, that counterclaim could not be considered a core proceeding.  Id., 341-42.  Under Nanodata, if the causes of action in an

14

adversary proceeding arise from state law rather than Federal bankruptcy law, the action is not considered to be a core proceeding "simply because it is technically or arguably within a given [28 USC 157](b)(2) description." Id., 341.  And see, Marathon, 458 U.S. at 71 (ruling that Bankruptcy Courts could not be granted the authority to adjudicate a state law-based breach of contract action, arising from a pre-petition contract where the defendant had not filed a claim with the Bankruptcy Court).

Here, Crocetti's claims in the Adversary Proceeding do not arise under Chapter 11 of the Bankruptcy Code within the meaning of Nanodata.  Rather, Crocetti purports to allege causes of action for breach of contract and a payment bond claim, both rooted in traditional state law.  As such, the Adversary Proceeding should not be considered to be "core."  As noted by the Second Circuit, a "general rule that … proceedings are core because they involve the property of the estate would 'create[] an exception to Marathon that would swallow the rule.'" United States Lines, 197 F.3d at, 637.

### 2.    Considerations of Judicial Efficiency Require Withdrawal

In addition, despite the recognized "presumption against the withdrawal of core bankruptcy proceedings from Bankruptcy Court, that presumption can be overcome based on a finding by the Court that the withdrawal of reference is essential to preserve a higher interest." Allard v. Benjamin ( In re DeLorean Motor Co.), 49 B.R. 900, 912 (Bankr.E.D.Mich.1985). In this instance, the higher interest to be served is that of promoting judicial efficiency. In re PanAm Corp., 163 B.R. 41, 44 (S.D.N.Y. 1993) (granting withdrawal of core proceeding identical to district court proceeding). And see, In re Parmalat Finanziaria S.p.A., 320 B.R. 46, 50 (S.D.N.Y. 2005) (Holding that the "overriding consideration of judicial efficiency" is a "higher interest" justifying withdrawal of the reference for a core proceeding.)

In this case, as in <u>Parmalat</u> and <u>PanAm</u>, the interest of judicial efficiency is an overriding concern justifying the withdrawal of the reference for the Adversary Proceeding. The same set of facts underlies the Adversary Proceeding, the 2004 Action (since dismissed), and the 2007 Action. Beyond the common facts, the Adversary Proceeding alleges state law-based claims seeking compensation allegedly due and owing under Crocetti's subcontract, the performance of which has given rise, at least in part, to DASNY's and TDX's $20 Million claim for purportedly defective construction work in the 2007 Action. Further, Travelers has asserted Crocetti's claims as a pass-through claim against DASNY, TDX and KPF in the 2007 Action, and Carolina has asserted Crocetti's claims as a set-off against the fourth-party claims and as affirmative counterclaims. Finally, there are at least thirteen parties interested in the flooring claims present in the 2007 Action who are not parties to the Adversary Proceeding.

There is clearly an identity of issues between the Adversary Proceeding and the District Court action. Thus, there can be no full and complete resolution of the Adversary Proceeding unless it is either stayed pending the resolution of the 2007 Action, or the reference is withdrawn and the Adversary Proceeding consolidated into the 2007 Action. Travelers and Trataros respectfully submit that withdrawing the reference works less prejudice upon Crocetti and prevents unnecessary delays in the resolution of the claims at issue in the Adversary Proceeding. The need for efficiency is paramount here because of the extraordinary amount of upcoming depositions and discovery that has and will continue to take place. If the matters are not consolidated, Travelers and Trataros will be forced to duplicate their efforts in two different forums on the same issues. Further, prolonged litigation in two forums exposes Travelers and Trataros to a risk of inconsistent verdicts with potentially adverse results.

16

Such a result is clearly contrary to the interests of judicial efficiency, finality and conservation of judicial resources. See, e.g., Weschler 201 B.R. at, 640-41 (withdrawing the reference based on overlap with district court case). In light of the significant overlap between the issues alleged in the Adversary Proceeding and in the 2007 Action, Travelers and Trataros respectfully submit that the present motion to withdraw the reference should be granted.

### 3.    Withdrawal Is Necessary to Combat Debtor's Forum Shopping

Crocetti's commencement of the Adversary Proceeding approximately nine months after the 2007 Action was commenced, after DASNY and TDX have alleged over $20 Million in purported damages associated, at least partially, with the very work which underlies Crocetti's affirmative claims, and after Carolina has already asserted its entitlement to the same funds sought by Crocetti herein, clearly smacks of forum shopping. Such conduct is a significant factor weighing in favor of withdrawing the reference for the Adversary Complaint. See, Burger Boys, 94 F.3d at 762 (forum shopping is ground for permissive withdrawal); Orion, 4 F.3d at 1101 (same). A party is not permitted to avoid an adverse ruling on the merits of suit pending in the District Court by seeking to place the same matter before the bankruptcy court. In Wechsler, the court withdrew the reference with respect to an adversary proceeding brought by the Trustee because the court found that the Trustee filed the action "in order to avoid the outcome" of a magistrate judge's unfavorable report and recommendation. Wechsler, 201 B.R. at 641. See also, In re Lawrence Group, 285 B.R. 784, 789 (N.D.N.Y. 2002) (withdrawing reference based, in part, on preventing forum shopping).

The courts in this Circuit are reluctant to permit the use of bankruptcy proceedings as a means to interfere with non-bankruptcy matters already pending in the District Courts. For example, in Abondolo v. GGR HolbrookMedford, 285 B.R. 101 (E.D.N.Y. 2002), the district

17

court withdrew the reference from the bankruptcy court over two "core" motions concerning who had standing to litigate a fraudulent conveyance action already pending in the district court, finding that the trustee otherwise "would be allowed to forum shop if he were permitted to argue before another court which party may litigate the [action] before this Court". Id. at 114.

As discussed above, the 2004 Action and the mediation proceedings both predated Crocetti's bankruptcy petition. In the 2004 Action, Crocetti asserted claims in the District Court identical to those it presently alleges in the Adversary Proceeding. During the pendency of the 2004 Action, Crocetti had notice of DASNY's allegations of purported defects in the Project's epoxy terrazzo floors. Further, when the entirety of the claims in the 2004 action were voluntarily dismissed, Crocetti's claims became a subject of the mediation proceedings, together with all other claims formerly alleged in the 2004 Action by and between the mediating parties.

Crocetti filed for Chapter 11 bankruptcy protection during the pendency of the mediation and without notice to DASNY, Travelers, Trataros, TDX, Bartec, or Dayton Superior. As a party to the mediation, Crocetti had knowledge of the pending re-filing of Travelers' Complaint, and was subsequently advised of the commencement of the 2007 Action. In light of all this, Travelers and Trataros respectfully submit that Crocetti's recent attempt to collect on its purported subcontract and payment bond claims by filing the Adversary Proceeding should not be countenanced by the District Court, and that the motion to withdraw the reference should be granted.

## CONCLUSION

For the foregoing reasons, and those adduced in the opposing declaration submitted herewith, Travelers and Trataros respectfully request that their Motion to Withdraw the Reference for the Adversary Proceeding be granted.

Dated:     Florham Park, New Jersey          Respectfully submitted,
           July 3, 2008                       **DREIFUSS BONACCI & PARKER, LLP**


                                              By:     _____/S/_____
                                                      Eli J. Rogers (ER:6564)

19