UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re:<br><br>G.M. CROCETTI, INC.,<br><br>        Debtor. | Bankruptcy Case No. 07-10319 (BRL) |
| G.M. CROCETTI, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>        Defendants. | **Adversary No. 08-01234 (BRL)**<br>Civil Action No. 08-CV- 6239 (DLC) |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION FOR ORDER WITHDRAWING THE REFERENCE
FOR ADVERSARY PROCEEDING NO. 08-01234**

---

**Of Counsel**
JoAnne M. Bonacci

**On the Brief**
JoAnne M. Bonacci
Eli J. Rogers
DREIFUSS BONACCI & PARKER, LLP
*Attorneys for Defendants, Trataros Construction, Inc.
and Travelers Casualty and Surety Company*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
Tel. No. (973) 514-1414

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... II

PRELIMINARY STATEMENT .............................................................................................. 1

LEGAL ARGUMENT .............................................................................................................. 2

    I.   DEBTOR'S CLAIMS CANNOT BE SEPARATED FROM THOSE
        PENDING BEFORE THIS COURT IN THE 2007 ACTION ........................................ 2

    II.  QUESTION OF CORE/NON-CORE PROCEEDING IS NOT SUFFICIENT
        TO JUSTIFY DENIAL OF MOTION .......................................................................... 6

    III. SUBCONTRACT AND CASE LAW BAR PAYMENT OF
        CROCETTI'S CLAIM .................................................................................................. 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

Complete Mgmt., Inc. v. Arthur Andersen, LLP (In re Complete Mgmt., Inc.),
   2002 WL 31163878, at *3 (S.D.N.Y. Sept.27, 2002) .................................................................. 9

Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.,
   414 F.3d 325, 335 (2d Cir. 2005) ............................................................................................... 5

In re Agway, Inc., 313 B.R. 31, 41 (N.D.N.Y. 2004) ..................................................................... 5

In re Enron Power Marketing, 2003 WL 68036 at *7 (S.D.N.Y. Jan 8, 2003) ............................... 6

In re Iridium Operating, LLC, 285 B.R. 822 (S.D.N.Y. 2002) ....................................................... 8

In re Northwest Airlines Corp., 384 B.R. 51, 56 (S.D.N.Y. 2008) ............................................ 6, 9

In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993) ....................................................... 8

In re Pan Am Corp., 163 B.R.41, 44 (S.D.N.Y. 1993) ................................................................... 7

In re Parmalat Finanziaria S.p.A., 320 B.R. 46, 50 (S.D.N.Y. 2005) ............................................ 7

In re Petrie Retail, Inc., 304 F.3d 223 (2d Cir. 2002) ..................................................................... 7

Triangle Sheet Metal Works, Inc. v. James H. Merritt and Co., 79 N.Y. 2d 801 (1991) ............. 10

## PRELIMINARY STATEMENT

Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") respectfully submit that the claim which G.M. Crocetti, Inc. ("Crocetti") purports to describe in its conclusory, unsupported, and unsworn opposition papers, is in reality substantially different from Crocetti's actual claim. Crocetti's actual claim is not a claim for undisputed subcontract balance but instead, as set forth in its own contemporaneous claim correspondence to DASNY, has two components- subcontract balance and delay/impact damages. DASNY disputes Crocetti's (and therefore, Trataros') entitlement to both aspects of the claim.

Despite Crocetti's claim to the contrary, it is impossible to untangle its involvement from the construction defect claims alleged by DASNY in the action entitled <u>Travelers Casualty and Surety Company, et al. v. Dormitory Authority – State of New York, et al.</u>, Case No. 07-CV-6915, (the "2007 Action") pending before the Honorable Denise L. Cote, U.S.D.J. Crocetti was an integral part of a "terrazzo system" installed at Baruch College and its claims and any entitlement thereto is absolutely tied into adjudication of the 2007 Action and cannot be resolved without DASNY (the only one making a floor failure claim) and the other integral flooring parties.

Crocetti's own papers indicate that its claims and defenses are inextricably bound up with the flooring parties, Dayton Superior Corp., Carolina Casualty Insurance Company, Bartec Industries, Inc., TDX Construction Corp., and Kohn Pedersen Fox Associates, P.C., among others. Simply put, the only way Crocetti could recover any payment on its two-part claim is if: 1) with respect to the delay aspect, it is adjudicated that DASNY owes the money for delay to Trataros which then passes through to Crocetti, due to the subcontract provisions; and 2) with respect to subcontract balance, if it is adjudicated that there is no floor failure for which DASNY is entitled to compensation. Either scenario requires litigation with DASNY and the remaining flooring parties involved in the 2007 Action, as the very same issues raised by Crocetti's Adversary Complaint are at issue therein.

1

## LEGAL ARGUMENT

### I.  DEBTOR'S CLAIMS CANNOT BE SEPARATED FROM THOSE PENDING BEFORE THIS COURT IN THE 2007 ACTION

Despite Crocetti's attempts to convince itself and this Court that their Adversary Proceeding is limited to the narrow issue of its performance of its subcontract for terrazzo installation at the Project, facts developed through recent deposition testimony do not permit Crocetti to extricate itself from DASNY's general allegations of purportedly significant defects in the Project's floors. Further, a review of Crocetti's own claim detail indicates that a majority of the claim is actually for delay/impact damages, and not merely, as they allude for a balance of moneys undisputed as having been earned under the subcontract. (Supplemental Declaration of Eli J. Rogers, the "Supp. Rogers Dec.," at Exh. A.) Given that the Project's owner, DASNY, alleges that the terrazzo floors are subject to "catastrophic failure … all over the building," (a characterization that Travelers and Trataros adamantly deny), the question of Crocetti's entitlement cannot be segregated from the owner's allegations of purportedly significant construction defects in the Project's floors. (Supp. Rogers Dec., Exh. C, 544:11-18. And id., Exh. B, 149:7-12.)

Through discovery and depositions conducted to date, the following facts are relevant to Crocetti's position. First, any place where terrazzo was installed, that installation was performed by Crocetti. (Declaration of Eli J. Rogers submitted with moving papers, the "Rogers Dec.," at Exh. B.) Second, DASNY alleges that the epoxy terrazzo installed at the Project covers 88,000 square feet and is currently demanding that the entire terrazzo flooring be replaced (a position which Travelers, Trataros, and the other flooring defendants vigorously dispute). Third, Crocetti installed its terrazzo over concrete substrate and/or underlayment, depending on the area of the Project where the installation occurred. (Rogers Dec., Exh. E at ¶¶ 40-51, 60-61). Fourth, while Crocetti alleges that the flooring problems were caused by the underlayment installer, Bartec (Debtor's Opposition to Motion to Withdraw the Reference, the "Opp. Statement", p. 4), in fact, Crocetti installed some of the

2

underlayment itself[1], in addition to the installation of all of the Project's epoxy terrazzo. (Supp. Rogers Dec. at ¶45). Fifth, Trataros did not perform any of the terrazzo or underlayment installation through its own employees or laborers. In the event the owner prevails on any portion of its alleged entitlement, that liability will fall to those parties who actually performed the labor, supplied and/or manufactured the materials used, or those parties who are ultimately answerable for the debts and obligations of those parties. Those parties include TDX, Crocetti, Bartec, and Dayton.

Contrary to Crocetti's assertion, there is no "neatly circumscribed, delineated issue" with respect to the performance of its work on the Project's terrazzo floors. While Plaintiff attempts to argue that its claim is based solely on whether they performed their subcontract with Trataros, the details of Crocetti's claim reveal that in fact a majority of the claim is for delay/impact damages, and not simply for their alleged subcontract balance. In fact, as set forth in Crocetti's own claim letter to DASNY, dated March 11, 2003, the claim relates to both "approved" work and/or "extras, and "pending extras," that is unapproved items. (Supp. Rogers Dec at ¶2) These "pending" items include a $369,000 claim for lost productivity, a $26,000 claim for "balance due on escalation claim", and various claims for additional overhead costs, "premium time," and "extra work." (Supp. Rogers Dec. ¶2). Thus, it is clear that at least $567,834.64 of 600,000 of the claim relates to what can only be termed as delay/impact claims. As this court is well aware, Travelers is prosecuting delay and impact claims against the Project's owner, DASNY, and others in the 2007 Action, including claims on behalf of Trataros and a number of its subcontractors, including Crocetti.

Debtor's claim has one more factor which further complicates the scenario for its payment, which is the affirmative claims alleged by DASNY in the 2007 Action asserting more than $20,000,000 in purported damages arising from alleged defects in the Project's epoxy terrazzo floors. (Supp Rogers Dec. at ¶ 9). In response to these claims, Trataros and Travelers have filed a Fourth-Party Complaint, impleading a number of potentially liable parties. (Rogers Dec. at Exhibit E)

---

[1] TDX also installed some of the underlayment at the project (Supp. Rogers Dec. at pg. 10)

3

One such fourth-party defendant is Carolina, Crocetti's surety for the Project, which is defending itself in connection with a $3,000,000 bond issued in connection with Crocetti's terrazzo work on the Project. (Rogers Dec. at Exhibit F, pgs. 8-12)Carolina has asserted entitlement to the same $901,100 claim alleged by Crocetti in the Adversary Proceeding. Id. If it should be shown that Crocetti is entitled to any money on its claim, then under subrogation rights Carolina may be entitled to use some or all of such an award to offset any damages that it has incurred as a result of Crocetti's purported defective performance.

While Crocetti maintains that "the issue presented in this adversary proceeding is limited and discrete," this is only accurate to the extent that, at the present stage of pleading, Crocetti has endeavored to artificially divorce its delay claim from DASNY's allegations of massive defects in the work for which Crocetti seeks compensation, and the related morass of factual matters and additional parties. (Opposition Brief, 2nd page.) However, Crocetti's own opposition papers demonstrate that any such artificial boundary is not workable.

For example, Crocetti's unsubstantiated and unsworn assertion that the claims presented by the Adversary Proceeding are "neatly circumscribed, [and] delineated" is belied by its subsequent attempt to shift potential liability for DASNY's claims from itself to Bartec and Dayton Superior. (Opp. Statement, pp. 2 & 4.) Both these parties are present in the 2007 Action, but absent (to date) from the Adversary Proceeding. Yet, Crocetti blithely asserts in unsworn, conclusory fashion that "[i]t is Crocetti's belief that [Bartec and Dayton] ... are the parties responsible for the alleged defects" in the Project's epoxy terrazzo floors. (Opp. Statement, p. 4.)

Crocetti's unsupported assurances of the purportedly cut-and-dried nature of the issues surrounding its delay claim are further undercut by Crocetti's unsworn "admission" to having retained expert witnesses to analyze the cause of the alleged flooring defects, and its claim that "Trataros, DASNY and/or their professionals specified materials which may have caused a problem" with the Project's epoxy terrazzo floors. Given that Trataros, as a prime contractor, did not "specify" materials

4

for the Project, this sentence presumably refers to, at minimum, the two professional entities engaged by DASNY to design and manage the Project: KPF, the Project's architect, and TDX, the Project's construction manager. (Opp. Statement, p. 3.) Thus, these several conclusory allegations serve to expand the scope of potentially liable parties involved in the Adversary Proceeding to include Trataros, DASNY, KPF, TDX, Bartec, and Dayton. One glance at the caption shows that the majority of these parties are not present in the Adversary Proceeding.[2] However, all of these parties, with the exception of Crocetti, are present in the 2007 Action. Respectfully, it would be the height of absurdity for all these parties, and likely others such as Carolina and Weidlinger, to be compelled to litigate identical issues in two forums, merely to accommodate Crocetti's whims. This is particularly so given that the proofs of claim to which Crocetti objects in its adversary complaint are contingent in nature, and seek indemnification from Crocetti to the extent that DASNY may recover against Travelers and/or Trataros in the 2007 Action. ("Rogers Dec.," ¶¶ 30-31.) It is simply a fallacy that Crocetti's delay claims can somehow be resolved "quicker" in the Bankruptcy Court, simply because the amount of Travelers' and Trataros' claims against the estate will not be liquidated until DASNY's affirmative claims in the 2007 Action are resolved. In re Agway, Inc., 313 B.R. 31, 41 (N.D.N.Y. 2004) (It is well established that a claim is allowable in a bankruptcy proceeding even if it is a cause of action that has not yet accrued.) Thus, no matter whether Crocetti's adversary complaint proceeds forward in the Bankruptcy Court or the District Court, it will have to wait just as long for a determination as to the extent of Trataros' and/or Travelers' right of recoupment/set-off. Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 335 (2d Cir. 2005) (Unlike a right of set-off, a right of recoupment against a claim arises out of the same transaction.) In that regard, the relative "speed" of the 2007 Action versus any proceedings in the Bankruptcy Court is a complete non-issue.

---

[2] During the pendency of this motion to withdraw the reference, Travelers and Trataros impleaded DASNY into the Adversary Proceeding as a Third-Party Defendant, in order to protect their potential entitlement to a contractual mark-up for overhead and profit upon any amount found to be due and owing to Crocetti in connection with its delay claim.

Conversely, issues that are truly crucial to resolution of this motion are questions of judicial economy, consistency between verdicts, and complete resolution of the disputes between the parties. For example, Travelers is already prosecuting the claim alleged in the adversary complaint as a pass-through claim against DASNY on Crocetti's own behalf. Carolina asserts that it is entitled to the funds Crocetti is attempting to recover in the Adversary Proceeding; likewise, Carolina alleges claims nearly identical to those contained in the adversary complaint for its own benefit. Finally, Crocetti apparently intends to defend against Travelers' and Trataros' proofs of claim by alleging that the purported defects are the fault of Dayton, Bartec, KPF, TDX, DASNY, and/or Trataros. To the extent that the proof of claim will not even liquidate until after the conclusion of the 2007 Action, Crocetti quite evidently intends to re-open the issues of comparative liability, causation, et cetera, which would necessarily have been litigated in the 2007 Action. Thus, Crocetti's opposition papers all but promise the precise problems of judicial inefficiency, inconsistent verdicts, and unnecessary, duplicative litigation.

## II. QUESTION OF CORE/NON-CORE PROCEEDING IS NOT SUFFICIENT TO JUSTIFY DENIAL OF MOTION

Although "[d]ecisions in the Second Circuit are not uniform on the question of whether the district court should, in the absence of an initial determination by the bankruptcy court, decide whether a proceeding is core or non-core," the majority trend in this Circuit is that "the district court can determine, in the first instance, whether a proceeding is core or non-core." In re Northwest Airlines Corp., 384 B.R. 51, 56 (S.D.N.Y. 2008).

Crocetti acknowledges that the District Court has broad discretion to withdraw the reference for the Adversary Proceeding for cause shown. (Opposition Brief, p. 3.) Crocetti further acknowledges that "[t]he party seeking to withdraw the reference must demonstrate that withdrawal is in the interests of judicial economy and that ...[movant] will be prejudiced by having the bankruptcy court oversee pretrial matters." In re Enron Power Marketing, 2003 WL 68036 at *7 (S.D.N.Y. Jan 8, 2003).

Respectfully, Travelers and Trataros submit that their moving papers have satisfied this burden of proof. Moreover, Crocetti's discussion of whether the Adversary Proceeding is core or non-core, is ultimately not dispositive. In re Parmalat Finanziaria S.p.A., 320 B.R. 46, 50 (S.D.N.Y. 2005); In re Pan Am Corp., 163 B.R. 41, 44 (S.D.N.Y. 1993).

The authorities relied upon by Crocetti to argue that the within action is a core bankruptcy proceeding are factually distinguishable from the circumstances presented here. For example, Crocetti characterizes In re Petrie Retail, Inc., 304 F.3d 223 (2d Cir. 2002) as a "garden variety landlord/tenant contract dispute" (Opposition Brief, p. 5), hoping to create the impression that standard contract actions are considered to be core proceedings. However, the facts of Petrie make clear that the Bankruptcy Court was far more involved with the subject matter of the dispute and the course of dealings between the parties than is the case here.

First, Petrie does not even involve a motion to withdraw the reference for an adversary proceeding, but rather a challenge to the Bankruptcy Court's jurisdiction in connection with the disposition of estate property pursuant to a series of court orders and a confirmed reorganization plan. Petrie, 304 F.3d at 225-228. As the Second Circuit held, under ordinary circumstances, the fact that a contract dispute arises from a pre-petition contract typically weighs against its core status. Id., 229. However, the appeals court found that a number of circumstances in Petrie overrode the typical presumption, including that the dispute arose post-petition, and was

> based on rights established in the sale order [entered by the Bankruptcy Court]. "[O]rders approving the sale of property" are core bankruptcy proceedings…. [T]he sale order, plan of reorganization, and confirmation order set forth the rights Luan [challenger] could assert vis-à-vis Marianne in connection with the sale of the lease, specifically prohibiting actions for excluded liabilities. Thus, <u>although the original lease was a pre-petition contract, many of Marianne's rights with regard to the lease were established as part of the core bankruptcy court function of approving the sale of the Petrie property.</u> Id.

Here, Crocetti is not asserting the violation of any rights established by the Bankruptcy Court pursuant to a core bankruptcy function. Rather, the essence of Crocetti's claim is that it performed

certain pre-petition work pursuant to a subcontract with Trataros, for which it did not receive compensation during the pre-petition period, and therefore it is entitled to receive those funds as part of the estate. Other than the automatic stay itself, there are no orders or injunctions entered by the Bankruptcy Court establishing the rights and remedies as between Crocetti, Carolina, DASNY, TDX, KPF, Dayton, Bartec, Travelers and Trataros. Rather, the instant proceeding is predicated upon pre-petition claims and counterclaims which have little if any relation to the bankruptcy matter. In fact, the delay claim which Crocetti currently advances in its adversary complaint was asserted by Crocetti against DASNY at least as far back as March 11, 2003. (Supp. Rogers Dec., Exh. A.)[3]

Similarly, In re Iridium Operating, LLC, 285 B.R. 822 (S.D.N.Y. 2002), presents factual circumstances strikingly dissimilar to those present in the within action. In Iridium, the District Court specifically found that "[i]nterests of judicial efficiency and uniformity of the administration of bankruptcy law weigh against [movant's] ... request to withdraw the reference" because the Bankruptcy Court was "already intimately familiar with ... the special issues that [Iridium's] ... relationship with Motorola and the Space System Contract raise." Iridium, 285 B.R. at 835. Here, however, it is the District Court which possesses "intimate familiarity" with the claims and issues arising from the Project's alleged flooring defects. (Rogers Dec., ¶¶ 5-23, 35-47.)[4]

In addition, the parties to the 2007 Action have consented to proceed with a jury trial. If Travelers, Trataros, and numerous other parties are compelled to litigate in the Bankruptcy Court, they will be obligated to do so without recourse to the opportunity for trial by jury. See, In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993) (identifying the presence of a jury demand as a factor for consideration in determining motion to withdraw the reference).

---

[3] Crocetti did not file for Chapter 11 bankruptcy protection until nearly four (4) years later, on or about February 8, 2007. (Rogers Dec., Exh. G.)

[4] The Adversary Proceeding is only in the initial stages of pleading, and to date only one court conference has transpired in that action (with the exception of a motion to stay filed by Travelers and Trataros, and which Crocetti has not opposed). (Rogers Supp. Dec., ¶¶ 5-6.)

8

Further, neither Petrie nor Iridium involved circumstances where the identical claim was already being asserted by two other parties in a District Court action pending before the Adversary Proceeding was commenced. Here, such circumstances are present, as Trataros has already asserted a pass-through claim on Crocetti's behalf as part of its case-in-chief, and Crocetti's surety, Carolina, has asserted an entitlement to receive the funds which Crocetti seeks in the Adversary Proceeding. Unlike Petrie and Iridium, the Debtor's rights have been placed in dispute in the prior, pending 2007 Action, as a result of DASNY's allegations of at least $20,000,000 worth of damages purportedly arising from Crocetti's work, *inter alia*.

As discussed in the moving brief, the "plaintiff's causes of action are essentially contract claims dressed up as bankruptcy claims," and should be "considered non-core for the purpose of the present motion to withdraw the reference from Bankruptcy Court." Enron Power Marketing, 2003 WL 68036 at *9. However, even assuming this Court finds the Adversary Proceeding "to be core, such a determination would not be dispositive of the motion to withdraw." In re Northwest Airlines, 384 B.R. at 59. "Questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors [also] bear on the determination of whether it is appropriate to withdraw the reference." Id.

Here, in light of the overwhelming problems of judicial inefficiency, risk of inconsistent verdicts, and the avoidable and unnecessary costs which would be incurred by the numerous parties who would be obligated to litigate identical issues in two forums, the jury demand, the movants respectfully submit that the within motion should be granted. And see, Complete Mgmt., Inc. v. Arthur Andersen, LLP (In re Complete Mgmt., Inc.), 2002 WL 31163878, at *3 (S.D.N.Y. Sept.27, 2002) ("[E]ven assuming that the … adversary proceeding is technically a core proceeding, we find that the other factors to be considered favor the discretionary withdrawal of the adversary proceeding.")

9

### III. SUBCONTRACT AND CASE LAW BAR PAYMENT OF CROCETTI'S CLAIM

Contrary to Plaintiff's contention, there is nothing unenforceable about the provisions of its subcontract which require payment from DASNY to Trataros before it incurs liability to Crocetti for Crocetti's delay claim. Crocetti willingly and knowingly negotiated and entered into its subcontract with Trataros containing an exculpatory clause. In pertinent part, the subcontract provides:

> [s]hould the Subcontractor's performance of this Subcontract be <u>delayed, impacted or disrupted by any acts of the Contractor, other subcontractors,</u> or the Contractor's suppliers, <u>or delayed impacted or disrupted by **any** acts or causes</u> which would entitle Contractor to an extension of time under the Contract Documents, <u>the Subcontractor shall receive an equitable extension of time</u> for the performance of this Subcontract, <u>but shall **not** be entitled to any increase in the Subcontract Price or to damages or additional compensation</u> as a consequence of such delays impacts, disruptions, or acceleration resulting therefrom ***unless*** <u>the Owner is liable and pays Contractor</u> for such delays, impacts, disruptions, or acceleration.

(Rogers Dec., Exh. B, at ¶ 6.d) (emphasis added).

This exculpatory provision undeniably precludes Crocetti from recovering delay damages against Trataros and/or its surety unless and until DASNY pays Trataros for Crocetti's alleged delay damages. Such an arrangement is completely legal under New York state case law. See e.g., <u>Triangle Sheet Metal Works, Inc. v. James H. Merritt and Co.</u>, 79 N.Y. 2d 801 (1991).

### CONCLUSION

For the foregoing reasons, and those adduced in the moving papers, Travelers and Trataros respectfully request that their Motion to Withdraw the Reference for the Adversary Proceeding be granted.

Dated:    Florham Park, New Jersey    Respectfully submitted,
           August 29, 2008                  **DREIFUSS BONACCI & PARKER, LLP**

                                                        By:    /S/
                                                                Eli J. Rogers (ER:6564)