```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
In Re:                                   :
                                         :
G.M. CROCETTI, INC.,                     :   Bankruptcy Case No.
                    Debtor.              :   07-10319 (BRL)
                                         :
-----------------------------------------X
-----------------------------------------X
                                         :
G.M. CROCETTI, INC.,                     :
                                         :
                    Plaintiff,           :
                                         :   08 Civ. 6239 (DLC)
            -v-                          :
                                         :   OPINION AND ORDER
                                         :
TRATAROS CONSTRUCTION, INC. and          :
TRAVELERS CASUALTY AND SURETY COMPANY,   :
                    Defendants.          :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:
Leonard I. Spielberg
Harold, Salant, Strassfield & Spielberg
81 Main Street
White Plains, NY 10601

For Defendants:
JoAnne M. Bonacci
Eli J. Rogers
Derek A. Popeil
Dreifuss Bonacci & Parker, LLP
26 Columbia Turnpike, North Entrance
Florham Park, NJ 07932

Denise Cote, District Judge:

Trataros Construction, Inc. ("Trataros") and Travelers Casualty and Surety Company ("Travelers") move to withdraw the reference for an adversary proceeding in the bankruptcy of G.M.

Crocetti, Inc. ("Crocetti"). For the following reasons, the motion is granted.

BACKGROUND

This motion is brought in the midst of complex construction litigation that is proceeding before this Court. The litigation has been described in Travelers Cas. & Sur. Co. v. Dormitory Auth., No. 07 Civ. 6915(DLC), 2008 WL 1882714 (S.D.N.Y. Apr. 25, 2008), and Travelers Cas. & Sur. Co. v. Dormitory Auth., No. 07 Civ. 6915(DLC), 2008 WL 2567784 (S.D.N.Y. June 25, 2008), and familiarity with those Opinions is assumed. Only the facts necessary to a resolution of the pending motion are described here.

Trataros was awarded the prime contract for construction work at Baruch College (the "Project"), and hired Crocetti to install the Project's epoxy terrazzo floors. Crocetti's work was bonded by Carolina Casualty Insurance Company ("Carolina"). Crocetti used material manufactured by Specialty Construction Brands, Inc. t/a TEC ("TEC"), and installed its portion of the flooring over underlayment installed in part by Bartec Industries, Inc. ("Bartec"). Dayton Superior Specialty Corp. a/k/a Dayton Superior Corporation ("Dayton") supplied materials to Bartec.

Travelers filed an action in this Court on August 1, 2007 (the "2007 Action"), asserting delay and other claims on behalf of Trataros' subcontractors, including Crocetti, against the "owner" of the Project, Dormitory Authority-State of New York ("DASNY") and associated parties.[1] DASNY responded with a third-party action against Trataros, asserting, inter alia, a breach of contract claim for over $20 million based on defective work in the terrazzo flooring that Crocetti installed, which covers almost 90,000 square feet. Trataros responded by impleading Carolina, TEC[2], Bartec, Dayton, and others, and by seeking inter alia indemnification and contribution. As a fourth-party defendant, Carolina has alleged that it is entitled to receive payments due to Crocetti, and has asserted its claim both as a set-off against the fourth-party claims and as an affirmative counterclaim. Trataros did not implead Crocetti because Crocetti had recently filed for bankruptcy protection.

Crocetti filed a petition for Chapter 11 bankruptcy on February 8, 2007. It listed as an account receivable over $900,000 it alleges it is owed by Trataros. On April 7, 2008,

---

[1] An earlier action was voluntarily dismissed without prejudice to refiling in the hope that the parties to this construction dispute could mediate their claims. When that proved unsuccessful, this action was filed.

[2] On April 25, 2008, the fourth party complaint against TEC was dismissed. Travelers Cas. & Sur. Co. v. Dormitory Auth., No. 07 Civ. 6915(DLC), 2008 WL 1882714 (S.D.N.Y. Apr. 25, 2008). Carolina, however, has not released its cross-claim against TEC.

Travelers and Trataros filed a Proof of Claim asserting contingent claims arising from DASNY's claims for damages in excess of $20 million due to defects in the epoxy terrazzo flooring.

On May 19, 2008, Crocetti filed an adversary proceeding against Travelers and Trataros, seeking roughly $900,000 from the alleged breach of Crocetti's subcontract. Crocetti asserts as an objection to the Proof of Claim that it did not perform any of its work negligently. Travelers and Trataros have impleaded DASNY into the adversary proceeding as a third-party defendant.

On July 10, 2008, Trataros and Travelers filed the instant motion to withdraw the bankruptcy reference. They argue that they will be exposed to a risk of inconsistent verdicts if the same issues proceed in the adversary proceeding as in the 2007 Action.

DISCUSSION

Pursuant to 28 U.S.C. § 157(a), all Chapter 11 cases are automatically referred to this district's bankruptcy judges. A party, however, may move to withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) ("Section 157(d)"), which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis supplied).

Travelers and Trataros seek withdrawal pursuant to the permissive "for cause" standard of Section 157(d). Section 157(d) does not define "cause," but the Second Circuit has identified a number of relevant factors, including "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993); see also South Street Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996). The initial inquiry in evaluating a request for permissive withdrawal is whether the claim is core or non-core, and after the court makes that determination "it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." In re Orion, 4 F.3d at 1101. While the core/non-core inquiry is important, no

5

one factor is dispositive.  See, e.g., Northwest Airlines, Inc. v. City of Los Angeles (In re Northwest Airlines Corp.), 384 B.R. 51, 56 (S.D.N.Y. 2008); see also In re Burger Boys, 94 F.3d at 762 (affirming district court's withdrawal of reference even though matter involved was "plainly a core bankruptcy matter").

A.  Whether the Claims in the Adversary Proceeding are Core or Non-Core

Section 157(b)(2) sets forth a non-exhaustive list of categories of core proceedings, which includes "(A) matters concerning the administration of the estate," "(B) allowance or disallowance of claims against the estate," and "(C) counterclaims by the estate against persons filing claims against the estate."  28 U.S.C. § 157(b)(2).  Whether a proceeding is core should be given a "broad interpretation." United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re United States Line, Inc.), 197 F.3d 631, 637 (2d Cir. 1999); see also Resolution Trust Corp. v. Best Products Co. (In re Best Products Co.), 68 F.3d 26, 31 (2d Cir. 1995).

In the context of determining whether a contract claim is core, courts are to consider "(1) whether a contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization."

Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 419 F.3d 83, 97 (2d Cir. 2005) (citing In re U.S. Lines, 197 F.3d at 637).  "The latter inquiry depends upon the nature of the proceeding."  Id. (citation omitted).  "A proceeding's nature can be core if either (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function."  Id. (citation omitted).

The Second Circuit has held that a "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." In re Orion, 4 F.3d at 1102.  If, however, "a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law."  S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.), 45 F.3d 702, 705 (2d Cir. 1995) (citing Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.), 896 F.2d 1384, 1389-90 (2d Cir. 1990)).  The court in S.G. Phillips found the matter to be core because the creditor "filed a proof of claim resulting in an adversary proceeding that involved the 'allowance or disallowance of claims against the estate.'  28 U.S.C. §

157(b)(2)(B). In so doing, the [creditor] necessarily became a party under the court's core jurisdiction." Id.

Likewise, the Second Circuit has found that an adversary proceeding involving a pre-petition contract claim was core when the proceeding "involve[d] a simple objection to a proof of claim," and therefore "clearly f[ell] within the literal language of § 157(b)(2)(B), which provides that all proceedings involving the 'allowance or disallowance of claims against the estate'" are core. In re Manville, 896 F.2d at 1389. The court found that "[b]y filing a proof of claim, [the creditor] submitted itself to the equitable power of the bankruptcy court to disallow its claim." Id.

In Bankruptcy Servs. Inc. v. Ernst & Young (In re CBI Holding Co.), 529 F.3d 432, 441-42 (2d Cir. 2008), the Second Circuit examined various claims that were raised in an adversary proceeding after a creditor, E & Y, had filed a proof of claim relating to certain audit fees that it had incurred prepetition. The Second Circuit first found that the debtor's claim for expungement of the proof of claim was "unquestionably a core proceeding; it directly affects the allowance of E & Y's claim against CBI's estate. See 28 U.S.C. § 157(b)(2)(B)." Id. at 461. The court went on to find that insofar as the debtor's claims for fraud, negligence, and breach of contract were related to those audit services for which the creditor filed its

8

proof of claim, those claims were also core. Id. The court reasoned that because these claims were defenses to the fees claim in the proof of claim, they "also directly affect the allowance of that claim" and were therefore core. Id. The court then stated that because the debtor's

> remaining claims of negligence, breach of contract, and fraud are based upon the same operative facts as the above core proceedings and were filed in response to E & Y's Proof of Claim, which is based on the same set of facts, those claims are also . . . core. A response to a proof of claim which is, in essence, a counterclaim, is a core proceeding under 28 U.S.C. § 157(b)(2)(C).

Id. at 461-62 (citation omitted). Because all of the debtor's claims were interconnected to the fee claim in the proof of claim, they were all "counterclaims . . . and core pursuant to § 157(b)(2)(C)." Id. at 463.

Finally, the In re CBI Holding court addressed a separate set of claims that did not directly affect the allowance of the fees claim in the proof of claim. The Second Circuit still had "no trouble" finding the claims to be core because they were "related to and arise out of the same transaction as E & Y's fees claim, and a determination on the[se] claims would likely be dispositive of [the fees] claim." Id. at 464-65. "Similarly, a decision by the bankruptcy court on" the fees claim or defenses to the claim would "resolve many of the factual and legal issues involved in [these] claims, including

9

the central issue: Whether E & Y committed fraud, or was reckless and/or negligent, in connection with its audits . . . ." Id.

As discussed above, the main claim to be litigated in the adversary proceeding filed in connection with Crocetti's bankruptcy action is Crocetti's claim that Travelers and Trataros owe it approximately $900,000 under the prepetition subcontract between Crocetti and Trataros. In addition, Crocetti's complaint in the adversary proceeding includes an objection to Traveler's proof of claim. Trataros' and Travelers' proof of claim asserts a contingent claim against Crocetti, based upon the claim for damages DASNY has asserted against Travelers and Trataros. Crocetti's objection to their proof of claim states that it did not perform its work in installing the epoxy terrazzo flooring negligently. Finally, Crocetti's complaint in the adversary proceeding explicitly styles its claim against Travelers as a counterclaim.

Crocetti's objection to the proof of claim is "core" under 28 U.S.C. § 157(b)(2)(B) and In re CBI Holdings. Whether Crocetti's main breach of contract claim is core is a closer question. The claim is based on a pre-petition contract, which weighs against a finding of core status. Crocetti's ability to recover on this claim, however, is inextricably bound up with, and requires consideration of, the issues Travelers and Trataros

10

assert in their proof of claim.  The interrelationship between the claims is best demonstrated by the parties' positions in the 2007 Action; after Trataros impleaded Carolina, seeking payment based on the claim for damages DASNY asserted, Carolina asserted its claim that Crocetti was due approximately $900,000 in payments on its subcontract with Trataros as both a set-off and as an affirmative counterclaim.  The posture is similar in the bankruptcy matter; after Travelers and Trataros asserted their proof of claim based on DASNY's claim of damages, Crocetti instituted its adversary proceeding as essentially a counterclaim.  A decision on the issue of whether Crocetti was entitled to payment under the subcontract will necessarily require consideration of the issues raised in the proof of claim pertaining to the defective flooring.  As such, Crocetti's claim in the adversary proceeding is best construed as a counterclaim to the proof of claim, and is therefore core.

Travelers and Trataros cite <u>Nanodata Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.)</u>, 52 B.R. 334 (Bankr. W.D.N.Y. 1985), for the proposition that a non-core claim cannot "become 'core' simply because it is technically or arguably within a given [Section 157](b)(2) description," <u>id.</u> at 341, but rather that a "dispute first must be a 'core' proceeding as that term is used in section 157(b)(1); that is to say, it must arise under or arise in a case under Title 11."

Id. at 342. The Second Circuit, however, addressed a similar argument in In re CBI Holdings, and responded that "even if not all claims that fall within the 'core' categories designated by § 157(b)(2)(B) and (C) would fall within the constitutional limits" of bankruptcy jurisdiction, the claims in the adversary proceeding were "so factually and legally interconnected with [the creditor's] fees claim against the estate, as well as with [the debtor's] primary defenses to that claim, that their designation as core does not breach those limits." 529 F.3d at 462. The claims against the estate and the claims in the adversary proceeding in the instant case are similarly interconnected, and as such the claims in the adversary proceeding are core.

The determination that the claims in the adversary proceeding are core is, however, just one important factor in deciding whether withdrawal of the reference is warranted. In this case, the other factors the Court must consider, especially those relating to judicial efficiency, dictate the withdrawal of the reference.

B. <u>Judicial Efficiency</u>

As discussed above, the Second Circuit has laid out several other factors besides the core/non-core inquiry to consider in deciding a motion to withdraw a bankruptcy reference, including

the "efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." In re Orion, 4 F.3d at 1101. Thus, concededly core proceedings may be withdrawn where "direct[ing] such questions to the Bankruptcy Court in the first instance would be inefficient and counterproductive." Grant Thornton Int'l v. Parmalat Finanziaria (In Re Parmalat Finanziaria, S.p.A.), 320 B.R. 46, 51 (S.D.N.Y. 2005). See also Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.), 163 B.R. 41, 42-44 (S.D.N.Y. 1993).

In the present case, concerns of judicial efficiency overwhelmingly favor withdrawing the bankruptcy reference for the adversary proceeding, and constitute a higher interest than the fact that the claims are core. First and foremost, the issues to be litigated in the adversary proceeding -- involving Crocetti's rights to payment under its subcontract in light of Travelers' and Trataros' claims for damages stemming from the claims made by DASNY that Crocetti's work under that subcontract was negligent -- are identical to issues that will necessarily be determined in the 2007 Action. Failure to withdraw the reference in this case would subject the parties to the risk of inconsistent verdicts on these issues, not to mention significant inefficiency and expense from having to duplicate efforts and litigate the same issues twice.

Furthermore, this Court has extensive familiarity with the facts underlying this litigation and with the specific issues in the adversary proceeding pertaining to the flooring claims. Additionally, there are over a dozen parties with interests in the flooring claims who are not parties to the adversary proceeding, but who are parties in the 2007 Action. As such, a complete resolution of all parties' claims can only be obtained by withdrawing the reference. Finally, the action in this Court is proceeding apace; there will be no undue delay and therefore no prejudice to Crocetti from the withdrawal. The remaining Orion factors do not apply with any force to the questions presented by this motion.

CONCLUSION

The July 10, 2008 motion by Trataros and Travelers to withdraw the reference for an adversary proceeding in the Crocetti bankruptcy is granted.

SO ORDERED:

Dated:   New York, New York
         October 15, 2008

                                    _____
                                           DENISE COTE
                                    United States District Judge